**RYDER LAW FIRM**
Jesse P. Ryder, Esq.
121 E. Water Street, 3rd. Floor
Syracuse, NY 13202
Tel: (315) 382-3617
Fax: (315) 295-2502

CHARLES A. BONNER, ESQ.  SB# 85413
*Pro Hac Vice*
A. CABRAL BONNER, ESQ. SB# 247528
*Pro Hac Vice*
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE RD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
charles@bonnerlaw.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| ALONZO GRANT AND STEPHANIE GRANT,<br><br>            Plaintiffs,<br><br>     vs.<br><br>CITY OF SYRACUSE, SYRACUSE POLICE DEPARTMENT, POLICE OFFICERS DAMON LOCKETT AND PAUL MONTALTO, POLICE OFFICER BRIAN NOVITSKY,  CHIEF OF POLICE FRANK FOWLER, and Does 1-100,<br><br>            Defendants. | Case No.: 5:15-CV-0445 (LEK/TWD)<br>**COMPLAINT FOR DAMAGES<br>     AMENDED**<br>1.  **VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**<br>2.  **VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1985)**<br>3.  **VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1986)**<br>4.  **MONEL CLAIM AGAINST CITY OF SYRACUSE 42 U.S.C. 1983**<br>5.  **ASSAULT and BATTERY 42 U.S.C. 1983;**<br>6.  **FALSE ARREST 42 U.S.C. 1983;**<br>7.  **FALSE IMPRISONMENT 42 U.S.C. 1983 ;**<br>8.  **FALSE IMPRISONMENT**<br>9.  **TRESPASS;**<br>10. **INVASION OF PRIVACY 42 U.S.C. 1983** |

*ALONZO AND STEPHANIE GRANT AMENDED COMPLAINT FOR DAMAGES  -  1*

**11. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**12. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
**13. MALICIOUS PROSECUTION;**
**14. NEGLIGENT TRAINING, HIRING, RETENTION, AND SUPERVISION;**
**15. LOSS OF CONSORTIUM**
**16. DEFAMATION PER SE**
**17. PUNITIVE DAMAGES AGAINST INDIVIDUAL POLICE OFFICERS IN THEIR INDIVIDUAL CAPACITY.**
**18. DECLARATION RELIEF**
**19. RESPONDEAT SUPERIOR LIABILITY OF CITY OF SYRACUSE**

**JURY TRIAL DEMANDED**

# Contents

I. INTRODUCTION ................................................................................................ 5

II. PARTIES ....................................................................................................... 5

III. DOE DEFENDANTS ........................................................................................ 5

IV. RESPONDEAT SUPERIOR ................................................................................ 5

V. EXHAUSTION OF ADMINISTRATIVE REMEDIES .............................................. 6

VI. JURISDICTION ............................................................................................... 6

VII. VENUE ........................................................................................................ 6

VIII. STATEMENT OF FACTS ............................................................................... 6

    Police Officer Paul Montalto's False Perjured Police Report Deposition ................... 8

    Police Officer Lockett's False Perjured Deposition Statements ............................ 22

    Sergeant Brian Novitsky's False Perjured Deposition Statements ........................ 30

    Syracuse District Attorney Dismissed All Charges ........................................... 46

    Citizen Review Board Findings of Excess Force & Untruthfulness........................ 47

IX. DAMAGES ................................................................................................... 48

FEDERAL LAW CLAIMS .................................................................................... 48

FIRST CAUSE OF ACTION Violation Of United States Civil Rights Laws 42 U.S.C. Sections 1983 Use of Excessive Force ................................................................. 48

    *Fourth Amendment Claim Excessive Force* ..................................................... 49

    *Police Officer Paul Montalto* ....................................................................... 50

    *Police Officer Lockett* ................................................................................ 50

    *Sergeant Novitsky*..................................................................................... 51

SECOND CAUSE OF ACTION Violation Of United States Civil Rights Laws 42 U.S.C. Sections 1985 Conspiracy to Violate Civil Rights .......................................... 53

    *Obstructing Justice and Conspiracies to Interfere with Civil Rights* .................... 53

    *Constitutional Violation: False Depositions and Credibility of the Police Officers* ............. 53

THIRD CAUSE OF ACTION Violation Of United States Civil Rights Laws 42 U.S.C. Sections 1986 ................................................................................................... 55

    *Sergeant Novitsky Liability for Neglect to Prevent Violation of Constitutional Rights* ......... 55

FOURTH CAUSE OF ACTION Monell Claim: 42 U.S.C. 1983 ............................... 57

    *Monell Claim: City of Syracuse's Liability for Excessive Force and False Arrest*................ 57

    *Evidence of a Policy and Custom and Practice of the Use of Excessive Police Force* .......... 60

FIFTH CAUSE OF ACTION 42 U.S.C. Sections 1983  Assault and Battery ......................... 61

SIXTH CAUSE OF ACTION 42 U.S.C. Sections 1983 False Arrest....................................... 61

*Qualified Immunity No Defense* ......................................................................... 62

SEVENTH CAUSE OF ACTION False Imprisment  42 U.S.C. § 1983 ............................ 64

NEW YORK STATE LAW CLAMS................................................................................ 65

EIGHTH CAUSE OF ACTION False Imprisment ........................................................... 65

NINTH CAUSE OF ACTION Trespass........................................................................... 65

TENTH CAUSE OF ACTION Invasion of Privacy  42 U.S.C. 1983 ...................................... 66

ELEVENTH CAUSE OF ACTION Negligent Infliction Of Emotional Distress ................... 67

TWELFTH CAUSE OF ACTION Intentional Infliction Of Emotional Distress.................... 68

THIRTEENTH CAUSE OF ACTION Malicious Prosecution ................................................ 69

FOURTEENTH CAUSE OF ACTION  Negligent Training, Hiring, Retention, And Supervision ................................................................................................................... 70

FIFTEENTH CAUSE OF ACTION   Loss Of Consortium ...................................................... 71

*Mrs. Grant's Loss of Consortium Claim* ................................................................... 71

SIXTEENTH CAUSE OF ACTION Defamation Per Se ...................................................... 71

X. REQUEST FOR DECLARATORY JUDGMENT................................................................ 72

PRAYER FOR RELIEF ................................................................................................. 73

## I. INTRODUCTION

1. This is a complaint for Civil Rights violations, including claims for excessive force, assault, battery and false arrest of Plaintiff Alonzo Grant, and for Intentional and Negligent Infliction of Emotional Distress and Loss of Consortium for his wife, Mrs. Stephanie Grant. PLAINTIFFS, ALONZO GRANT AND STEPHANIE GRANT, by their attorneys, JESSE P. RYDER, ESQ. and CHARLES A. BONNER ESQ., allege as their Complaint for Damages and Civil Rights violations the following facts, and facts upon information and belief.

## II. PARTIES

2. PLAINTIFFS, ALONZO GRANT AND STEPHANIE GRANT, are citizens of the United States and residents of the City of Syracuse.

3. Defendants DAMON LOCKETT AND PAUL MONTALTO, BRIAN NOVITSKY, and CHIEF OF POLICE FRANK FOWLER, are police officers employed by Defendant City of Syracuse.

4. Defendant City of Syracuse POLICE DEPARTMENT is a division of the City of Syracuse governmental organization of the State of New York.

5. Defendant City of Syracuse is a governmental organization of the State of New York.

## III. DOE DEFENDANTS

4. Plaintiffs do not know the true names and capacities, whether individual, corporate, associate, or otherwise of DEFENDANT Does 1 through 200 inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend their complaint to allege their true names and capacities when this has been ascertained.

## IV. RESPONDEAT SUPERIOR

### _Respondeat Superior_

5. Mr. Alonzo Grant claims that the City of Syracuse is liable under the theory of respondeat superior for Defendants Police Officer Lockett and Police Officer Paul Montalto's

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

assault on Plaintiff. Cities may be held vicariously liable for state law torts committed by police officers under a theory of respondeat superior. See Williams v. City of White Plains, 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010). Therefore, the respondeat superior claim against the City of Syracuse regarding Defendants Police Officer Lockett and Police Officer Paul Montalto are valid claims, establishing liability against the City of Syracuse.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

### *Notice of Claim (GML 50-E)*

6.   Plaintiffs have complied with all conditions precedent, including filing of a Notice of Claim under General Municipal Law § 50-e, which only applies to State Law Causes of Action; these requirements are not applicable to Plaintiffs' first cause of action asserted pursuant to 42. U.S.C. §1983 ["[A]; notice of claim is not a condition precedent to a cause of action, asserted pursuant to 42 USC § 1983, which seeks to recover damages premised on violations of federal civil or constitutional rights under color of state law"][1];

## VI. JURISDICTION

7.   This Court has jurisdiction over this lawsuit because the suit arises under 42 U.S.C. § 1983 and asserts facts showing that Defendants, and each of them, acted willfully, deliberately and pursuant to a policy, custom and practice, and with reckless disregard of Mr. and Mrs. Grant's established Federal and State Constitutional rights.

## VII. VENUE

8.   Venue is proper in this district under 28 U.S. C. § 1391 (b) (1) because Defendants reside in this district. Venue is also proper in this district under 28 U.S.C§1391 (b) (2) because the events, acts and omissions giving rise to this claim occurred in this district.

## VIII. STATEMENT OF FACTS

9.   On Saturday**,** June 28, 2014, Alonzo Grant came home from work at his second job and planned a barbeque with his family**.** A peaceful man, beloved in his neighborhood, he had never

---

[1]   see *Felder v Casey*, 487 U.S. 131; *Rowe v NYCPD,* 85 AD3d 1001, 1002 [2d Dept 2011]

had any run-in of any kind with police in his 53 years. Rather, he was and is a peace keeper in the neighborhood. He cuts everyone's lawns and is highly respected in his community. At around 7:00 p.m., he tried, in vain, to defuse a noisy verbal argument occurring outside his home between his then pregnant adult daughter and a female neighbor. Desperate for some peace and quiet and embarrassed by the commotion, he decided to call police to calm and end the argument, specifically noting in his call that he was calling about his daughter. When two Syracuse Police Officers arrived at Mr. Grant's house, they ignored the statements by Mr. Grant and his wife that his daughter had already left and that there was no longer any need for their help.

10. Instead of following proper police protocol and procedure to conduct an investigative interview consistent with protecting Mr. Grant's constitutional rights, one officer, Defendant Lockett, entered Mr. Grant's house without ringing either of his two door bells, without knocking and without ever asking for permission to enter. Standing inside of his home at the top of his inside stairs, Mr. Grant informed Officer Lockett that his daughter had left and they no longer needed the assistance of the police. Standing inside the house at the bottom of the stairs, Officer Lockett firmly ordered Mr. Grant to "go outside and talk with my partner!"  Mr. Grant lawfully and immediately complied with the officer's directive, walking down the stairs, past Officer Lockett and out of the house, pushing the self-closing screen door open and proceeding to the outside, followed by Officer Lockett.

11. Mr. Grant paused momentarily, standing on his landing, and proceeded walking down his front steps towards the second officer, Defendant Montalto who was waiting at the bottom of the outside stairs. Officer Lockett followed behind Mr. Grant through the still open door which then slammed shut behind him. As soon as he had gone through the door, Officer Lockett violently, and without warning or notice, charged Mr. Grant from behind, grabbed both of his arms in a bear hug while Officer Montalto grabbed Mr. Grant's feet from below, and both officers flung Mr. Grant viciously over the four-foot high, black, wrought iron railing of his front porch, slamming him four-feet down to the ground. Frightened, shocked, confused, and in a mental state of total terror, Mr. Grant landed on the ground face up. Officer Lockett immediately began

striking Mr. Grant, raining fist blows to Mr. Grant's face and head. Officer Montalto, having previously put on his black "weighted gloves", jumped in on top of Mr. Grant and also began violently punching, hitting, and beating Mr. Grant in his head, ribs, and face. The officers forced Mr. Grant over onto his stomach, trapping his left arm underneath his body, while demanding that he put his hands behind his back. This was impossible, as his left arm was trapped under his body, with Officer Montalto kneeling on his back.

12. By his own admission, Officer Lockett struck **"…A. Grant in the head and face area…" "…I struck him four times at first…."** Officer Lockett also admitted **"…I had to strike him four more times…"** and "…**I subsequently had to strike A. Grant two more times in the face**…." Officer Montalto, having already put on his black leather "weighted gloves", charged forward and dropped his knees with all of his body weight on Mr. Grant's back while Officer Lockett held him in a choke hold. Officer Montalto then pulled back his left arm and struck the side of Mr. Grant's head repeatedly with his balled fist. The officers' repeated blows resulted in bloodying Mr. Grant's face, breaking his nose, splitting his lip, cutting a gash in his face and causing a concussion.[2] In addition, Office Montalto struck Mr. Grant with his knees in the thigh.

13. The two officers then falsely charged Mr. Grant with Resisting Arrest, Disorderly Conduct and Harassing and Annoying Police.

**Police Officer Paul Montalto's False Perjured Police Report Deposition**

14. **Officer Montalto's Police Report Deposition: "Upon arrival we spoke to the complainant, Alonzo Grant who was standing in the front yard of the residence**." This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant was never out of his home, "his castle". He was never standing in the front yard.

   **Proof Testimony:**

---

[2]  See Exhibit 1-3, photos of Mr. Grant's injuries.

1) PO Lockett: "When I arrived, I heard a male voice from the above residence yell through the screen door, "We don't need the police." I approached the front door and was met by A. Grant."

2) Mr. Grant: "He [The black Officer] opened the door and stepped right in. I don't know why he came in. I have two door bells. He did not knock. He walked in my house. I was standing at the top [of the stairs]."

3) Mrs. Stephanie Grant: "One officer [black officer] stepped into the house; he stood on the first step. I stood up from my chair."

4) Witness Cory McMullin, Neighbor:  Sharon Hayes, Neighbor: "The black Officer came first. They came 1-2 minutes apart. Alonzo came to the door".

**The Proven Credible Facts:** Mr. Grant was inside his home when the officers arrived. He was not "**standing in the front yard of the residence."**

15. **Officer Montalto's Police Report Deposition: "…We observed that Grant appeared highly agitated. Grant stated "We don't need the fucking police my daughter is gone…."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant did not call them "fucking police" or swear at the police at any time. P.O. Montalto did not observe Mr. Grant at all until Mr. Grant left the inside of his home.

**Proof Testimony:**

1) PO Lockett: "A. Grant said, "Officer she left," and then started yelling at his wife, Stephanie Grant. He went back up his stairs which was in the entry way as you walk through the door and began yelling. He then came back down to the front door and said, "Officer, this is all because of my daughter, I don't want her here anymore."

2) Mr. Grant: "I was talking to my wife about taking care of the house. We were not arguing. I was not angry."

3) Stephanie Grant: "We were talking. He was not yelling. Alonzo has a loud voice."

4) Witness Corey McMullin: "Alonzo was tellin' them his daughter was gone and they didn't need them no more. If I'm not mistaken his wife yelled the same out the window."

5) Witness Sharon Hayes: "Alonzo said, never mind, we don't need you because my daughter left. I think Alonzo's wife said it too, but the black officer kept coming and went right in, no knock."

**The Proven Credible Facts:** Mr. Grant did not swear ("fucking police") at the Officers; did not speak to PO Montalto; Mr. Grant talked only to P.O. Lockett from a position inside his house.

16. **Officer Montalto's Police Report Deposition: "Grant then began to walk back inside the house. Grant then began yelling at his wife Stephanie Grant who was inside of the residence."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant and Mrs. Grant both were at all times inside the house together. Mr. Grant was not outside the house until ordered to go outside by Officer Lockett.

**Proof Testimony**:

1) PO Lockett Deposition: "He went back up his stairs which was in the entry way as you walk through the door and began yelling."

2) Mr. Grant: "I was talking to Stephanie about the house. The black officer was not saying anything regarding why he came into my house. He walked into my house. He opened the door and stepped right in. I didn't invite him in. I have two door bells. He did not ring either."

3) Mrs. Stephanie Grant: "We were talking. Alonzo was not yelling. Alonzo has a loud voice."

4) Witness Corey McMullin: "His wife ended up saying something to him and he leaned back in the house and walked back in the house. And when the police walked in the house; the police walked in the house behind him. The black officer walked in the house.

5) Witness Sharon Hayes: "Alonzo was upset but at his daughter. He's not a confrontational person. I could not hear what was said inside the house"

**The Proven Credible Facts:** Mr. Grant was inside the house the entire time and was not yelling at his wife.

17. **Officer Montalto's Police Report Deposition: "We then asked Grant to calm down and speak to us but he continued to yell and violently flail his arms towards his wife."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: P.O. Montalto did not speak to Mr. Grant at any time because he was not inside the house.

**Proof Testimony**:

1) PO Lockett Deposition:  "At that time I said to A. Grant to please go outside and talk with my partner."

2) Mr. Grant: "He didn't really say anything. He just said to go outside to talk to his partner. He asked me to go outside, so that's what I did. I didn't say anything. I went right down, within 2 seconds."

3) Mrs. Stephanie Grant: "Alonzo was not yelling. The [black] officer did not try to calm him down."

4) Corey McMullin: "The black officer walked in the house. The white officer was standing right here by the bottom of the stairs."

5) Sharon Hayes: "The white officer never even went in the house."

**The Proven Credible Facts:** Mr. Grant only went outside of his home when ordered to do so by Officer Lockett and did not speak to Officer Montalto. Mr. Grant also did not yell or violently flail his arms towards his wife.

**The Proven Credible Facts:** Officer Montalto never went inside of Mr. Grant's home and did not "…asked Grant to calm down…." Neither Officer asked Mr. Grant to calm down. Mr. Grant did not "yell and violently flail his arms towards his wife."

18. **Officer Montalto Police Report Deposition: "Grant then walked pass both PO Lockett and I and violently punched the front door of the house."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: P.O. Montalto was not inside the house. Mr. Grant could not walk past him. He only walked by P.O. Lockett. Montalto could not have observed Mr. Grant "violently" punching anything while Montalto was inside the house because Montalto was never inside the house.

**Proof Testimony**:

1) PO Lockett Deposition: "Grant stormed down the stairs and was still yelling. As he approached the front door he punched the door causing it to swing open… I followed A. Grant outside and as we began walking down the outside…" [Note: P. O. Lockett says, "I [not we] followed A. Grant…]

2) Mr. Grant: I went down the stairs and pushed the door open and it hit the railing." [Note: The screen door is routinely pushed or "punched" by everyone in the home. It has a broken spring that causes it to swing open rapidly and lets it hit the railing every time it is opened.]

3) Stephanie Grant: "Alonzo was calm, not yelling. That is when the police went outside with Alonzo. He ran out, charged out, grabbed Alonzo from behind."

4) Corey McMullin: "He [Alonzo] was just walking out of the house. He didn't have an angry or mad expression. He wasn't mad or aggravated, he was like sad."

5) Sharon Hayes: "Alonzo walked out of the house. He pushed the door open and it hit the railing. It's a metal door and a metal railing. I hear that sound all the time, the kids when they're playing, or the wind."

**The Proven Credible Facts:** Mr. Grant did not walk past Officer Montalto because Montalto never entered Mr. Grant's home, nor did Mr. Grant "violently" punch the door.

19. **Officer Montalto's Police Report Deposition: "PO Lockett then exited the house and PO Lockett ordered Alonzo to stop because he was under arrest for domestic related disorderly conduct."** This Is A Willfully Perjured False Statement. **The True Facts**: PO Lockett did not warn Mr. Grant that he was going to put him in handcuffs or that he was planning to arrest him at any time. He grabbed both of Mr. Grant's arms from behind in a bear hug without any warning.

**Proof Testimony**:

1) PO Lockett Deposition: "As a result of A. Grant's behavior, I decided to place him in handcuffs. I followed A. Grant outside and as we began walking down the outside, I grabbed both of his arms and told him to put his hands behind his back."

2) Mr. Grant: "I didn't close the door. It closes on its own. I wasn't looking back, the PO was behind me. That's when the cop jumped on me."

3) Stephanie Grant: "When the Officer Lockett grabbed Alonzo, I walked down the stairs. When I got to the door, I was seeing my husband thrown over the railing down to the ground."

4) Witness Corey McMullin: "The black cop came running out and jumped on Alonzo's back for no reason."

5) Witness Sharon Hayes: "Alonzo had his back to the officer. The officer came charging out of the house, jumped on his back and grabbed Alonzo's arms from behind."

**The Proven Credible Facts:** PO Lockett grabbed both of Mr. Grant's arms. Officer Lockett did not tell Mr. Grant to put his hands behind his back. Officer Lockett grabbed Mr. Grant's arms from behind.

20. **Officer Montalto's Police Report Deposition:  "PO Lockett then attempted to grab Alonzo by the arm to place him in handcuffs."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: PO Lockett grabbed both of Mr. Grant's arms and locked them in a bear hug from behind without verbal warning of any kind.

**Proof Testimony**:

1) PO Lockett Deposition**:** "I grabbed both of his arms and told him to put his hands behind his back."

2) Mr. Grant: "I didn't close the door [it closes on its own]. I wasn't looking back, the PO was behind me. That's when the cop jumped on me."

3) Stephanie Grant: "When he [the officer] grabbed Alonzo, I walked down the stairs. When I got to the door, I was seeing my husband go over the railing down to the ground."

4) Corey McMullin: "As Alonzo was coming down the stairs, he got to about midway down the stairs, when the black officer came out behind him, so by the time Alonzo hit the bottom of the steps, he kind of like dived on his back, kind of wrestler's style fashion.

Slung him on the ground over the railing. He was blindsided. Never saw it coming. He wasn't even aware of what was happening."

5) Sharon Hayes: "Alonzo had his back to the officer. The officer came charging out of the house, jumped on his back and grabbed Alonzo's arms from behind."

**The Proven Credible Facts:** PO Lockett did not attempt to grab Mr. Grant by the arm; he in fact abruptly, without notice or request, locked up both of Mr. Grant's arms behind his back and threw Mr. Grant over the black wrought iron stair railing. Officer Lockett did not attempt to put him in handcuffs as he did not have his handcuffs out, not did the officer ask Mr. Grant to put his hands behind his back to be handcuffed.

21. **Officer Montalto's Police Report Deposition: "Alonzo then attempted to get away from PO Lockett and they both went out of my visual sight."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: Mr. Grant never tried to get away from PO Lockett, nor did he try to engage him. Both PO Lockett and Mr. Grant were in plain view of PO Montalto since he was standing right in front of them at the bottom of the outside stairs, never having been inside the house.

**Proof Testimony:**

1) PO Lockett: "A. Grant said to me, "get your hands off of me" and then turned violently and grabbed me around my waist." [Note: Mr. Grant had no way of turning while both his arms were locked in a bear hug behind his back.]

2) Mr. Grant: "I wasn't fighting with them. He grabbed me, my arms behind my back, the other one grabbed my feet and they threw me over."

3) Stephanie Grant: "Alonzo did not fight with the police. When I got to the door, I was seeing my husband go over the railing down to the ground."

4) Corey Mc Mullin: "He wasn't even aware of what was happening. He didn't argue with the police. [He] slung him to the ground over the railing. The black officer was on top of him. The white officer ran in and the first thing he did was punch him."

5) Sharon Hayes: "Alonzo never turned around at all. The officer swung him over the railing; they both went over with the black officer on top."

**The Proven Credible Facts:** Mr. Grant never tried to "get away" and Officer Montalto never lost sight of Mr. Grant nor Officer Lockett, as both Officer Lockett and Mr. Grant were right in front of Officer Montalto, who immediately began punching Mr. Grant.

22. **Officer Montalto's Police Report Deposition: "I then exited the house and observed PO Lockett and Alonzo Grant in a physical altercation…."** This Is A Willfully Perjured False Statement. **The True Fact**: PO Montalto never exited the house because he was not in the house. He could not have observed a physical altercation because he was fully occupied with battering Mr. Grant.

**Proof Testimony**:

    1) Mr. Grant: "He [black officer] walked in my house. He asked me to go outside to talk to his partner."

    2) Stephanie Grant: "One [black] officer stepped into the house, stood on the first step."

    3) Corey McMullin: The black officer walked in the house. The white officer was standing right here by the bottom of the steps."

    4) Sharon Hayes: "The white officer never even went in the house."

The Proven Credible Fact: Officer Montalto never observed Officer Lockett and Mr. Grant in a physical altercation, which implies a mutual combat. Rather, Officer Lockett grabbed Mr. Grant and threw him over the railing. Officer Montalto observed Officer Lockett's assault while standing outside of the house on the ground, where he had been during the entire time of this incident.

**The Proven Credible Facts:** Since Officer Montalto was never inside of Mr. Grant's home, he perjured himself when he testified that he "…then exited the house and observed PO Lockett and Alonzo Grant in a physical altercation…."

23. **Officer Montalto's Police Report Deposition: "Grant had his arms wrapped around PO Lockett's waist…."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant's arms were locked behind him until he was thrown across the

railing to the ground. He never turned around to face PO Lockett until he landed face-up on the ground and was held in a choke hold and turned on his face.

**Proof Testimony**:

1) Mr. Grant: "I wasn't fighting with them. I did not resist."

2) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him. Alonzo was trying to protect his face with his right hand."

3) Corey McMullin: "There was a lot of grabbing and choking. They had his arms bent all ways. His arm was bleeding. I think his mouth too. The officers were throwing him around. He did not resist. I was yelling to keep the video going."

**The Proven Credible Facts:** Mr. Grant never had his arms wrapped around Officer Lockett's waist. Officer Lockett had Mr. Grant's arms bent around behind his back.

24. **Officer Montalto's Police Report Deposition:  "Alonzo and PO Lockett were both lying on their sides, facing each other…"** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant landed face-up, with his left arm trapped beneath him, making it impossible for him to grasp PO Lockett around the waist.

**Proof Testimony**:

1) PO Lockett: "…We began rolling around on the ground…."

2) Mr. Grant: "I wasn't fighting with them. I did not resist."

3) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him. Alonzo was trying to protect his face with his right hand."

4) Corey McMullin: "There was a lot of grabbing and choking. They had his arms bent all ways. His arm was bleeding. I think his mouth too. The officers were throwing him around. He did not resist. I was yelling to keep the video going."

**The Proven Credible Facts:** Officer Lockett and Mr. Grant were not lying on their sides facing each other. Rather, Officer Lockett and Officer Montalto threw Mr. Grant over the railing,

causing Mr. Grant to land face-up and Officer Lockett jumped on top of Mr. Grant and began punching, grabbing, and choking Mr. Grant, who did not resist.

25. **Officer Montalto's Police Report Deposition:  "…and it appeared that Alonzo was trying to roll and get on top of PO Lockett…."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: At no time was Mr. Grant in any position to roll on top of PO Lockett.

**Proof Testimony**:

1) Mr. Grant: "I wasn't fighting with them. I did not resist."
2) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him. Alonzo was trying to protect his face with his right hand."
3) Corey McMullin: "If I'm not mistaken he had a knee on his back."

**The Proven Credible Facts**: Officer Lockett was holding, choking and punching Mr. Grant in the face, while Officer Montalto was holding and punching Mr. Grant. The officers rolled Mr. Grant over onto his stomach, trapping his left arm, while Mr. Grant attempted to protect his face with his right hand and did not fight the officers.

26. **Officer Montalto's Police Report Deposition:  "I then grabbed Alonzo's left arm and tried to pry it away from PO Lockett…."** <u>This Is A Willfully Perjured False Statement</u>.

**The True Fact**: Mr. Grant was laying face-down, with his left arm trapped beneath him, using his right arm to try to shield his face from relentless blows to the head by both officers. He had no way of holding PO Lockett around his waist so that his arm would need to be pried off him.

**Proof Testimony**:

1) PO Lockett. "I was finally able to get him to release his grasp from around my waist and PO Montalto was able to grab his left arm and place it behind his back." [Note: PO Montalto injured Mr. Grant's left arm severely by contorting the arm and pulling ligaments and the elbow joint, causing abrasions and bleeding.]
2) Mr. Grant: "I did not resist."
3) Stephanie Grant: "Alonzo was trying to protect his face with his right hand."
4) Corey McMullin: "They had his arms bent all ways…At no time did he resist."

**The Proven Credible Facts:** Mr. Grant was never holding on to Officer Lockett's waist. Officer Montalto did not pry Mr. Grant's arm away from Officer Lockett because Officer Montalto admits that he grabbed Mr. Grant's left arm, which was trapped underneath Mr. Grant, and Mr. Grant's right arm was shielding his face.

27. **Officer Montalto's Police Report Deposition: "I was able to pull Alonzo arm off of PO Lockett and he continued to resist my efforts to place his arm behind his back…"** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: Mr. Grant did not resist in any way, he simply attempted to protect his face from the vicious blows. Mr. Grant's arm was not grasping PO Lockett's waist. It would have been a physical impossibility.

**Proof Testimony**:

1) PO Lockett: "… [Grant] kept trying to pull his left arm away from PO Montalto."

2) Mr. Grant: "I did not resist."

3) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him."

4) Corey McMullin: "…the first thing he did was punch him, looked like in the head area. He kept bringing it [his fist] back, I'd say about five times."

**The Proven Credible Facts:** Officer Montalto did not pull Mr. Grant's arm off of Officer Lockett because Mr. Grant never grabbed Officer Lockett, as he was being repeatedly punched with his right hand attempting to shield his face, while his left arm was trapped beneath his body.

28. **Officer Montalto's Police Report Deposition: "I then punched Alonzo in the left side the face with my right hand two times in an attempt to get him to comply…"** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: PO Montalto struck Mr. Grant more than two times and at least four to five times with "weighted gloves".

**Proof Testimony**:

1) PO Lockett Deposition: "I struck him four times at first….while still on the ground I had to strike him four more times…I subsequently had to strike A. Grant two more times in the face…"

2) Mr. Grant: "I wasn't fighting with them."

3)  Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him."

4)  Corey McMullin: "…the first thing he did was punch him, looked like in the head area. He kept bringing it [his fist] back, I'd say about five times. If I'm not mistaken he had his knee on his back."

**The Proven Credible Facts:** Officer Montalto struck Mr. Grant more than two times and at least four to five times in the face.

29. **Officer Montalto's Police Report Deposition: "I then forced Alonzo's left arm behind his back and placed it in handcuffs."** This Is A Willfully Perjured False Statement.
**The True Fact**: PO Montalto used brute force to bend back Mr. Grant's left arm.

**Proof Testimony**:

1)  Mr. Grant: "I did not resist."

2)  Stephanie Grant: "Alonzo was trying to protect his face with his right hand."

3)  Corey McMullin: "They had his arms bent all ways…At no time did he resist."

**The Proven Credible Facts:** Mr. Grant did not resist and the officers tore his arm from underneath his stomach by force and forced it behind his back.

30. **Officer Montalto's Police Report Deposition:  "I then ordered Alonzo to place his other hand behind his back and he would not comply…"** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant's left arm was trapped underneath him and immobilized, with one officer holding him in a choke hold, the other kneeling on top of his back.

**Proof Testimony**:

1)  PO Lockett: "He continued to resist by laying on his right arm…"

2)  Mr. Grant: 'I did not resist."

3)  Stephanie Grant: "Alonzo was trying to protect his face with his right hand."

4)  Cory McMullin: "They had his arms bent all ways…At no time did he resist."

**The Proven Credible Facts**: Mr. Grant did comply and put his right arm behind his back and he did not lie on his right arm. As is shown on the video of the incident, Officer Lockett has Mr.

Grant in a death choke hold while Mr. Grant's right arm is free. Mr. Grant immediately complied by putting his right hand behind his back upon the command.

31. **Officer Montalto's Police Report Deposition: "I then struck Alonzo in the left thigh with a right knee strike in another attempt to get him to comply with my orders."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: Officer Montalto struck Mr. Grant in his face, head, body, and thigh without giving Mr. Grant any orders.

**Proof Testimony**:

1) PO Lockett: "I subsequently had to strike A. Grant two more times in the face, at which time he stopped resisting and lifted up off his right arm…."

2) Mr. Grant: "I did not resist."

3) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him."

4) Corey McMullin: "The officers were throwing him around, I was yelling to keep the video going."

**The Proven Credible Facts:** Mr. Grant did not resist. He was never told he was under arrest and the officers, without probable cause, began to strike, hit, punch, and beat Mr. Grant, including placing him in a death choke hold. Subsequent to this brutality, the officers ordered Mr. Grant to place his hand behind his back and he complied.

32. **Officer Montalto's Police Report Deposition: "I then ordered him to put his other hand behind his back and he finally complied."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: Mr. Grant finally managed to extricate his left arm. At no time was he resisting.

**Proof Testimony**:

1) Mr. Grant: "I did what they asked me to do."

2) Stephanie Grant: "He did not swing, punch, strike, annoy, do anything illegal."

3) Corey McMullin: "The cops were just punching him in the face for no reason at all."

**The Proven Credible Facts:** Mr. Grant always complied with the officers' demands, which came only after they had beaten Mr. Grant.

33. **Officer Montalto Police Report Deposition: "Alonzo was placed in handcuffs without incident..."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: Mr. Grant was placed in hand cuffs after being viciously beaten. At no time was he warned that he was being placed in handcuffs before the beating, nor was he ever advised that he was being arrested and for what reason.

**Proof Testimony**:

1) PO Lockett: "I subsequently had to strike A. Grant two more times in the face, at which time he stopped resisting and lifted up off his right arm…." [Note: A concussion, broken nose, laceration on the cheek, split lip, bruises and contusions, torn elbow ligaments and severe bruising of the arm does not constitute "without incident."]

2) Mr. Grant: "I was hurtin'. I was hurtin'. I got problems sleeping. I start visualizing in my mind what happened."

3) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him."

4) Corey McMullin: "There was a lot of grabbing and choking. They had his arms bent all ways. His arm was bleeding. I think his mouth too."

5) Sharon Hayes: "I saw him when he got up, all bloody. I'm saying why'd they beat him up like that? I've never seen him in no argument around here."

**The Proven Credible Facts:** There was a huge incident in which the officers, without probable cause or any provocation, beat Mr. Grant, who had called the police for help, to a bloody pulp requiring the police to call an ambulance.

34. **Officer Montalto's Police Report Deposition: "I then spoke to Stephanie Grant who stated that Alonzo was upset with his daughter, Alyssa Grant because Alyssa was involved in a dispute with their neighbor."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: PO Montalto never spoke to Stephanie Grant.

**Proof Testimony**:

1) Stephanie Grant: "No male officer spoke to me. A young white lady officer was the only one who spoke to me. She interviewed me for less than two minutes. I was sitting on the

**ALONZO AND STEPHANIE GRANT AMENDED COMPLAINT FOR DAMAGES** - 21

3rd step; she was standing inside the door. She wrote down my name, age and birth date, nothing else. She asked if I needed an ambulance or something because my husband beat me. And that's when I stopped her and said my husband did not beat me or hit me, he did not lay a finger on me. She walked out saying, "We have to get this story straight."

The Proven Credible Fact: Officer Montalto gave false testimony as he did not ever speak with Ms. Stephanie Grant.

35. **Officer Montalto's Police Report Deposition: "Stephanie stated that Alonzo just wanted Alyssa to leave and she left just prior to police arrival."** This Is A Willfully Perjured False Statement. **The True Fact**: PO Montalto never spoke to Stephanie Grant.

**Proof Testimony**:

1) Stephanie Grant: "No male officer spoke to me. Sergeant Novitsky did not interview me. PO Montalto did not interview me."

**The Proven Credible Fact:** Officer Montalto has given false testimony as he did not ever speak with Ms. Stephanie Grant.

**Police Officer Lockett's False Perjured Deposition Statements**

36. **Officer Lockett's Police Report Deposition: "He went back up his stairs which was in the entry way as you walk through the door and began yelling."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant was admonishing his wife about housework and their daughter's disruptive behavior.

**Proof Testimony**:

1) Mr. Grant: "I was not yelling. I was talking to my wife about taking care of the house."

2) Stephanie Grant: "We were talking. He was not yelling. Alonzo has a loud voice."

The Proven Credible Fact: Mr. Grant was not yelling at his wife.

37. **Officer Lockett's Deposition: "A. Grant was extremely upset, he went back up the stairs and began yelling and flailing his arms violently at S. Grant and said, "I don't care. I don't want that bitch here anymore. I don't care about the police, I'll go to jail."** This Is A

<u>Willfully Perjured False Statement</u>. **The True Fact**: Mr. Grant did not make this statement. He was the one who called the police and certainly did not have any thought of going to jail.

**Proof Testimony**:

1) Mr. Grant: "This statement is false. I was not yelling or flailing my arms. I don't even think I said anything."

2) Stephanie Grant: "We were talking. He was not yelling. Alonzo has a loud voice."

**The Proven Credible Fact:** Mr. Grant was not yelling at his wife, nor was he flailing his arms at all. Mr. Grant did not call his daughter a "bitch." Nor did he say "I don't care about the police, I'll go to jail." Mr. Grant has never been arrested in his 53 years and is proud of his unblemished record.

38. **Officer Lockett's Police Report Deposition: "Grant stormed down the stairs and was still yelling."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: Mr. Grant walked down the stairs at PO Lockett's order, promptly and obediently.

**Proof Testimony**:

1) Mr. Grant: "When he asked me to go outside to talk to his partner I went down the stairs and pushed the door open and it hit the railing. That's what he asked me to do, that's what I did. I don't even think I said anything."

2) Stephanie Grant: "That is when the police went outside with Alonzo."

3) Corey McMullin: "He was just walking out of the house. He didn't have an angry or mad expression. He wasn't mad or aggravated, he was like sad."

**The Proven Credible Facts:** Mr. Grant complied with Officer Lockett's instruction and calmly walked down the stairs to speak with Officer Montalto.

39. **Officer Lockett's Police Report Deposition: "I followed A. Grant outside and as we began walking down the outside, I grabbed both of his arms and told him to put his arms behind his back."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: PO Lockett grabbed both of Mr. Grant's arms in a bear hug behind his back. He did not tell Mr. Grant to put his arms behind his back.

**Proof Testimony**:

1) PO Montalto: "PO Lockett then attempted to grab Alonzo by the arm to place him in handcuffs."

2) Mr. Grant: "I wasn't looking back, the PO was behind me. He grabbed me, my arms behind my back, the other one grabbed my feet and they threw me over."

3) Stephanie Grant: "He [black officer] ran out, charged out, grabbed Alonzo from behind. When he grabbed Alonzo, I walked down the stairs."

4) Corey McMullin: "As Alonzo was coming down the stairs, he got to about midway down the stairs when the black officer came out behind him, so by the time the black officer came out behind him, so by the time Alonzo hit the bottom of the stairs, he kind of like dived on his back, kind of wrestler style fashion."

5) Sharon Hayes: "Alonzo walked out of the house, he pushed the door open and it hit the railing. Alonzo had his back to the officer. The officer came charging out of the house, jumped on his back and grabbed Alonzo's arms from behind."

**The Proven Credible Facts:** Officer Lockett grabbed both of Mr. Grant's arms, forcing them behind his back while Officer Montalto grabbed his feet and they both threw him over the railing without ordering him to put his hands behind his back or announcing that he was under arrest.

40. **Officer Lockett's Police Report Deposition: "A. Grant said, "get your hands off of me", and then he turned violently and grabbed me around my waist."**<u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: Mr. Grant had no chance to say anything. He was not able to turn around because both his arms were behind his back and he was being flung across the railing.

**Proof Testimony**:

1) PO Montalto: "Alonzo then attempted to get away from PO Lockett and they both went out of my visual sight." [Note: PO Montalto was standing right in front of them at the bottom of the stairs.]

2) Mr. Grant: "I wasn't fighting with them. I wasn't looking back, the PO was behind me. He grabbed me, my arms behind my back, the other one grabbed my feet and they threw me over."

3) Stephanie Grant: "Alonzo did not fight the police."

4) Corey McMullin: "He was blindsided. He never saw it coming. He wasn't even aware of what was happening."

5) Sharon Hayes: "Alonzo never turned around at all."

**The Proven Credible Fact:** Mr. Grant did not turn around at all. Rather, Officer Lockett grabbed his arms, forcing them behind his back, while Officer Montalto grabbed his feet and both officers threw him over the railing and began to beat him.

41. **Officer Lockett's Police Report Deposition: "We went down the stairs and then both fell to the ground in the front lawn."** This Is A Willfully Perjured False Statement. **The True Fact**: PO Lockett flung Mr. Grant across the railing and followed.

**Proof Testimony**:

1) PO Montalto: "Alonzo then attempted to get away from PO Lockett and they both went out of my visual sight." [Note: PO Montalto was standing right in front of them at the bottom of the stairs. And if indeed Alonzo had attempted to get away, how would PO Montalto have seen that if they were out of his visual sight? Not only that, but Alonzo would have run right into Officer Montalto]

2) Mr. Grant: "He grabbed me, my arms behind my back, the other one grabbed my feet and they threw me over."

3) Stephanie Grant: "When I got to the door, seeing my husband go over the railing down to the ground."

4) Corey McMullin: "Slung him on the ground over the railing. The black officer was on top of him."

**The Proven Credible Fact**: Officer Lockett and Mr. Grant did not "fall to the ground." Instead, Officer Lockett grabbed his arms, forcing them behind his back, while Officer Montalto grabbed his feet and both officers threw him over the railing and began to beat him, without probable cause or provocation.

42. **Officer Lockett's Police Report Deposition: "I yelled back at A. Grant and told him to let me go and to put his hands behind his back once again. He refused."** This Is A

Willfully Perjured False Statement. **The True Fact**: PO Lockett did not speak to Mr. Grant. He rolled him on his face and held him with both hand around his neck in a death choke hold. PO Montalto struck and beat him repeatedly.

**Proof Testimony**:

1) PO Montalto: "Alonzo then attempted to get away from PO Lockett and they both went out of my visual sight." [Note: PO Montalto was standing right in front of them at the bottom of the stairs.]

2) Mr. Grant: "I wasn't fighting with them."

3) Stephanie Grant: "Alonzo did not fight with the police."

4) Corey McMullin: "He didn't argue with police. At no time did he resist. He wasn't even aware of what was happening…The police were never saying anything to Alonzo. He was only groaning."

**The Proven Credible Facts:** Mr. Grant did not refuse any command by either officer. The officers did not give Mr. Grant a command until after they had thrown him over the railing and beaten him, at which point they beat him, ripping his left arm from under his body, and ordered him to place his right hand behind his back, which he did.

43. **Officer Lockett's Police Report Deposition: "We began rolling around on the ground, and I tried to get A. Grant's arms from around my waist by pushing them back, however, he would not release his grasp."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant did not resist in any way.

**Proof Testimony**:

1) PO Montalto: "I then exited the house and observed PO Lockett and Alonzo Grant in a physical altercation…."   PO Montalto was never in Mr. Grant's house. He was standing at the bottom of the stairs.

2) Mr. Grant: "I wasn't fighting with them."

3) Stephanie Grant: "Alonzo was not fighting the police."

4) Corey McMullin: The black officer was on top of him. The white officer ran in and the first thing he did was punch him. Looked like in the head area…kept bringing it back."

**The Proven Credible Fact:** Mr. Grant at no time grabbed Officer Lockett's waist or any part of his body. Mr. Grant did not resist in any way the beating that was wrongfully inflicted upon him. Officer Lockett and Mr. Grant did not "began rolling around on the ground…." Rather, the Officers forcibly and violently, without probably cause, grabbed Mr. Grant, after having thrown him to the ground, and rolled him over from a face up position to a face down position, while striking him in the face and head repeatedly.

44. **Officer Lockett's Police Report Deposition: "He then tried to roll over on top of me at which time I began to strike A. Grant in the head and face area to get him to release his grasp and keep him from rolling over on top of me."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: Mr. Grant did not attempt to roll over on top of PO Lockett. He was face down, with his left arm trapped, using his right arm to shield his face.

**Proof Testimony**:

1) Mr. Grant: "I did not try to grab the police officer. I did not resist arrest."

2) Stephanie Grant: "Alonzo was not fighting the police."

3) Corey McMullin: "At no time did he resist. If I'm not mistaken he had a knee on his back. The officers were throwing him around. There was a lot of grabbing and choking."

**The Proven Credible Fact:** Officer Lockett admission of striking Mr. Grant: "**I began to strike A. Grant in the head and face area….**" Mr. Grant did not attempt to roll over on top of PO Lockett. He was face down, with his left arm trapped under his body, with Officer Montalto's knee pressing on his back with his full body weight, and Mr. Grant was using his right arm to shield his face.

46. **Officer Lockett's Police Report Deposition: "I struck him four times at first while yelling at him to let me go, stop fighting and to put his hands behind his back. A. Grant still did not release his grasp from my waist."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: At no time did Mr. Grant resist, nor did he grasp the Officer.

**Proof Testimony**:

1) Corey McMullin: "The cops were just punching him in the face for no reason at all."

2) Mr. Grant: "I did not try to grab the police officer. I did not resist arrest."

3) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him."

**The Proven Credible Facts:** Officer Lockett admission repeatedly striking Mr. Grant: **"I struck him four [4] times**…." At no time did Mr. Grant resist, nor did he grasp the Officer. Mr. Grant was never "fighting" the officers.

47. **Officer Lockett's Police Report Deposition: "While still on the ground, I had to strike him four more times to get him to let me go."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant did not have any hold on Officer Lockett at any time. **Proof Testimony**:

1) Corey McMullin:"The cops were just punching him in the face for no reason at all."

2) Mr. Grant: "I did what they asked me to do. I did not try to grab the police officer."

3) Stephanie Grant: "Alonzo was trying to protect his face with his right hand."

**The Proven Credible Facts:** Officer Lockett admission to repeatedly striking Mr. Grant: **"I had to strike him four [4] more times…."** Mr. Grant did not grab Office Lockett. Both cops were punching Mr. Grant.

**48. Officer Lockett's Police Report Deposition: "A. Grant finally released his grasp from around my waist, and Officer Montalto was able to grasp his left arm and place it behind his back."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant never had a "grasp" around Officer Lockett's waist, or any part of Officer Lockett's body. **Proof Testimony**:

1) PO Montalto: "I then forced Alonzo's left arm behind his back and placed it in handcuffs."

2) Mr. Grant: "I did what they asked me to do."

3) Stephanie Grant: "Both were holding him, both were punching him."

4) Corey McMullin: "They had his arms bent all ways. His arm was bleeding. I think his mouth was also bleeding"

**The Proven Credible Facts:** Mr. Grant always complied with the orders of the offers to the best of his ability; the Officers had Mr. Grant's arms bent all ways and both were punching him.

**49. Officer Lockett's Police Report Deposition:** "**Still, while on the ground, I yelled at A. Grant to put his right arm behind his back but he still continued to resist by laying on his right arm and kept trying to pull his left arm away from P.O. Montalto."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: The officers rolled Mr. Grant's body over clock-wise, trapping his left arm underneath his body. Officer Lockett began chocking Mr. Grant, while PO Montalto was kneeling with his knee and full body weight on Mr. Grant's back. **Proof Testimony**:

1) PO Montalto: "I then struck Alonzo in the left thigh with a right knee strike in another attempt to get him to comply with my orders."

2) Mr. Grant: "I didn't try to fight them."

3) Stephanie Grant: "Alonzo was trying to protect his face with his right hand."

4) Corey McMullin: "They had his arms bent all ways."

**The Proven Credible Facts:** Office Montalto's admission to striking Mr. Grant: "I then struck Alonzo in the left thigh with a right knee strike" Mr. Grant always complied with the orders of the offers to the best of his ability; the Officers had Mr. Grant's arms bent all ways and both were punching him.

**50. Officer Lockett's Police Report Deposition:** "**I subsequently had to strike A. Grant two more times in the face, at which point he stopped resisting and lifted up off his right arm and allowed P.O. Montalto to place both hands into handcuffs to the rear of his person."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: Mr. Grant never resisted. He was placed in handcuffs and arrested without cause and without prior warning or verbal communication. He was severely beaten, never told that he was under arrest, and beaten while not resisting arrest. **Proof Testimony**:

1) PO Montalto: "Alonzo was placed in handcuffs without incident..."

2) Mr. Grant: "I hate it happened. I did what they asked me to do."

3) Stephanie Grant: "The black officer said, go back in the house or I'll Tase you, so I went back in the house."

4) Corey McMullin: "He wasn't even aware what was happening. I yelled to keep the video going."

5) Sharon Hayes: "I saw him when he got up, all bloody. I'm saying why'd they beat him up like that? I've never seen him in no argument around here."

**The Proven Credible Facts:** Officer Lockett admission: "**I subsequently had to strike A. Grant two [2] more times in the face….**"

<u>**Sergeant Brian Novitsky's False Perjured Deposition Statements**</u>

**51.     Sergeant Novitsky's Police Report Deposition: "Bleeding was minor but appeared worse because of the profuse sweating."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: The evidence of the police photos taken at the scene shows that Mr. Grant suffered profuse bleeding about the face, arm and head.

**Proof Testimony**:

1. Corey McMullin: "They had his arms bent all ways. His arm was bleeding. I think his mouth was also bleeding"

2. Sharon Hayes: "I saw him when he got up, all bloody.

3. Exhibit 1-3, Photos of Mr. Grant's bloody face.

**The Proven Credible Facts: Mr. Grant was "all bloody". The bleeding was not "minor".**

**52. Sergeant Novitsky's Police Report Deposition:  "I spoke with PO Lockett and PO Montalto. Their verbal account of the Incident was properly documented and was consistent with their written account."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: The Police Report Depositions of PO Montalto and Lockett are 180 degrees opposite of each other: Officer Montalto said he was in Mr. Grant's home; Officer Lockett testified he order Mr. Grant to go outside of his home and speak with Officer Montalto outside. Defendants Montalto and Lockett's sworn accounts are widely divergent from each other and from the accounts of the witnesses.

**Proof Testimony**: Mr. Grant: "He [black officer] walked in my house. He asked me to go outside to talk to his partner."

   1)  Stephanie Grant: "One [black] officer stepped into the house, stood on the first step."

   2)  Corey McMullin: The black officer walked in the house. The white officer was standing right here by the bottom of the [outside] steps."

**The Proven Credible Facts:** Sgt. Novitsky ignored and covered-up the blatant and irreconcilable contradictions between the deposition testimony of Officers Montalto and Lockett regarding Montalto's statement that he was **inside** Mr. Grant's home and Officer Lockett's testimony that Officer Montalto was **outside** of Mr. Grant's home.

    **53. Sergeant Novitsky's Police Report Deposition: "I spoke with Stephanie Grant, Alonzo's Wife."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: Sergeant Novitsky never spoke with Stephanie Grant, nor did he take a statement from her. Even the female officer took no written statement and spoke to Stephanie Grant for less than 2 minutes.

**Proof Testimony**

   1)  Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me. The lady officer is the only one who spoke to me. She was a white lady officer. She had a note pad just to write my name, age, and birth date. She came in the house. She asked if I needed an ambulance or something because my husband beat me. And that's when I stopped her and said my husband did not beat me or hit me, he did not put a finger on me. She walked out saying, "We have to get this story straight." The female officer interviewed me for two minutes or less. I was sitting on the 3rd step of my stairs leading into my house."

**The Proven Credible Facts:** Sgt. Novitsky perjured himself when he swore under oath that he "spoke with Stephanie Grant…."

    **54. Sergeant Novitsky's Police Report Deposition: "She told the following; Stephanie, Alonzo and Alyssa were arguing about Alyssa and the neighbor."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: Alonzo and Stephanie were talking about keeping the house clean.

**Proof Testimony:**

1) Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me."

**The Proven Credible Facts:** Sgt. Novitsky perjured himself when he swore under oath that he "spoke with Stephanie Grant…." "Novitsky did not interview Mrs. Grant. No male officer spoke to Mrs. Grant."

**55. Sergeant Novitsky's Police Report Deposition: "Alyssa began arguing with the neighbor in front of the house, which prompted Alonzo to become irate."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: Alonzo was angry about the peace being disturbed by his daughter; therefore he called the police to calm the situation. He was upset and wanted the police to come and restore peace.

**Proof Testimony:**

1) Stephanie Grant: ""Novitsky did not interview me. No male officer spoke to me."

**The Proven Credible Facts:** Sgt. Novitsky perjured himself when he swore under oath that he "spoke with Stephanie Grant…." "Novitsky did not interview Mrs. Grant. No male officer spoke to Mrs. Grant."

**56. Sergeant Novitsky's Police Report Deposition:  "Stephanie said both Alonzo and Alyssa have a bad temper and sometimes can't control themselves."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: Stephanie Grant did not make this statement to anyone. And she did not speak with Sergeant Novitsky at all.

**Proof Testimony:**

1) Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me." That is a false statement. I did not tell a police officer that."

2) Sharon Hayes: "I've never seen him in an argument around here. He is a good citizen, cuts everyone's grass, socializes with everybody, don't get in no confrontations. He might call the police on other people."

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant and she did not make this false statement to any police officer: "**both Alonzo and Alyssa have a bad temper and sometimes can't control themselves."**

**57. Sergeant Novitsky's Police Report Deposition: "Alonzo eventually called the police to have Alyssa removed from the house."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: Alonzo called the police to break up an argument between his daughter and a neighbor in front of the house.

**Proof Testimony**:

1) Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me." That is a false statement. I did not tell a police officer that."

2) Mr. Grant: "I just wanted her to go home to give me some peace and quiet."

3) Stephanie Grant: "Alonzo called the police to have Alyssa leave from the front."

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant.

**58.  Sergeant Novitsky's Police Report Deposition: "Alyssa left prior to police arrival but Alonzo was still irate. He was still yelling when the police arrived."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: Mr. Grant was not yelling.

**Proof Testimony**:

1) Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me." That is a false statement. I did not tell a police officer that."

2) Mr. Grant: "I was already calm."

3) Stephanie Grant: "Alonzo was calm, he was not yelling. We were talking. Talking about taking care of the house. Alonzo has a loud voice."

4) PO Lockett: "A. Grant said, "Officer she left," and then started yelling at his wife, Stephanie Grant. He went back up his stairs which was in the entry way as you walk through the door and began yelling. He then came back down to the front door and said, "Officer, this is all because of my daughter, I don't want her here anymore." Mr. Grant did not swear at the Officers, did not speak to PO Montalto; talked only to P.O. Lockett who forced himself inside of Mr. Grant's house.

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant.

**59.**      **Sergeant Novitsky's Police Report Deposition:  "The police tried to calm him down but Alonzo was still very mad and continued yelling."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: The officer did not try to calm Mr. Grant down.

**Proof Testimony**:

1)   Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me." That is a false statement. I did not tell a police officer that."

2)   Mr. Grant: "He opened the door and walked in, stepped right in. I don't know why he came in. He walked in my house, I have two doorbells. I didn't ask him to come in, I didn't invite him in. He didn't really say anything. He just said to go outside to talk to his partner."

3)   Stephanie Grant: "One officer stepped into the house. He stood on the first step. I stood up from my chair. The officer did not try to calm him down. He asked, what's going on?"

4)   PO Lockett: "At that time I said to A. Grant to please go outside and talk with my partner."

5)   PO Montalto: "We then asked Grant to calm down and speak to us but he continued to yell and violently flail his arms towards his wife." [Note: PO Montalto was not in the house at any time and never spoke to Mr. Grant]

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant. Mrs. Grant did not make the following statement to any officer: **"The police tried to calm him down but Alonzo was still very mad and continued yelling."**

**60. Sergeant Novitsky's Police Report Deposition: "Finally, Alonzo went outside and slammed the door closed behind him."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: There was no "Finally". When PO Lockett asked Mr. Grant to go outside to talk to his partner, he did so immediately. Mr. Grant did not slam the door behind him. The door closes on its own and did not close until after PO Lockett had followed Mr. Grant out.

**Proof Testimony**:

1)   Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me." That is a false statement. I did not tell a police officer that."

2) Mr. Grant: "When he asked me to go outside to talk to his partner I went down the stairs and pushed the door open and it hit the railing. He asked me to go outside so that's what I did. I didn't close the door."

3) Stephanie Grant: "That is not true. That is when the police went outside with Alonzo. He ran out, charged out, grabbed Alonzo from behind."

4) Corey McMullin: Not true. He didn't come out where you could visibly see he was angry. He was just walking out of the house. He didn't have an angry or mad expression. He wasn't mad or aggravated, he was like sad. The black cop PO Lockett came running out and jumped on Alonzo's back for no reason at all."

5) Sharon Hayes: "Alonzo walked out of the house. He pushed the door open and it hit the railing."

6) PO Lockett: "As he approached the front door he punched the door causing it to swing open… I followed A. Grant outside."

7) PO Montalto: ""Grant then walked pass both PO Lockett and I and violently punched the front door of the house." [Note: PO Montalto was not in the house. Mr. Grant could not have walked pass [sic] him.]

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant.

**61.     Sergeant Novitsky's Police Report Deposition: "That is when the police went outside with Alonzo."** This Is A Willfully Perjured False Statement. **The True Fact**: PO Lockett followed Mr. Grant out of the house.

**Proof Testimony:**

1) Mr. Grant: "When he asked me to go outside to talk to his partner I went down the stairs and pushed the door open…"

2) Stephanie Grant: "…ran out, charged out, grabbed Alonzo from behind."

3) Corey McMullin: "Alonzo came out of the house. As Alonzo was coming down the stairs, he got to about midway down the stairs, when the black officer came out behind him…"

4) Sharon Hayes: "Alonzo had his back to the officer. The officer came charging out of the house, jumped on his back, grabbed Alonzo's arms from behind."

5) PO Lockett: "I followed A. Grant outside…"

6) PO Montalto: "PO Lockett then exited the house…"

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant and she did not make this false statement any police officer:

**62. Sergeant Novitsky's Police Report Deposition: "Stephanie has trouble ambulating and stairs are difficult for her to negotiate. She was not outside when Alonzo fought with the police."** This Is A Willfully Perjured False Statement. **The True Fact**: Stephanie Grant watched from the top of the inside stairs as Mr. Grant walked down the stairs, complying with Officer Lockett's order to "go outside and talk with my partner", and she went down the stairs and watched both officers throw Mr. Grant over the railing onto the grown. Mr. Grant did not fight with the police.

**Proof Testimony**:

1) Stephanie Grant: "When he grabbed Alonzo, I walked down the stairs. When I got to the door, seeing my husband go over the railing down to the ground. The white officer hit him 4-5 times in his face. The black officer was punching him too. Both holding him; both punching him. Alonzo was trying to protect his face with his right hand. The black officer yelled at me to go in the house. The black officer said, go back in the house or I'll Tase you; so I went back in the house."

**The Proven Credible Facts**: Mrs. Stephanie Grant is clearly present outside on the video taken by witnesses and saw her husband. She went inside only after Mr. Grant had been beaten bloody, and after the wrongful command to "go back in the house" by Officer Lockett and his assaultive threat of violence to "Tase" Mrs. Grant.

**63. Sergeant Novitsky's Police Report Deposition: "I also spoke with Corey McMullin. He told the following: He was standing on the sidewalk near Alonzo's driveway and saw everything."** *This Is A True Statement*. **The True Fact**: Corey McMullin moved from his porch to the front steps of Mr. Grant's house and witnessed the entire incident.

**Proof Testimony**:

   1)  Corey McMullin: "That is true.

   2)  Sharon Hayes: "Corey and I were sitting on the porch. Cory went over there…"

**The Proven Credible Facts**: Corey McMullin: "was standing on the sidewalk near Alonzo's driveway and saw everything."

**64. Sergeant Novitsky's Police Report Deposition: "Alonzo was very mad and came outside, slamming the door shut behind him."** <u>This Is A Willfully Perjured False Statement</u>.

**The True Facts**: Mr. Grant exited the house calmly and did not slam the door behind him.

**Proof Testimony**:

   1) Corey McMullin: "Not true. He [Mr. Grant] didn't come out where you could visibly see he was angry. He was just walking out of the house. He didn't have an angry or mad expression. He wasn't mad or aggravated, he was like sad.

   2)  Mr. Grant: "When he asked me to go outside to talk to his partner I went down the stairs and pushed the door open and it hit the railing. He asked me to go outside so that's what I did. I didn't close the door."

   3)  Stephanie Grant: "That [statement by officer Novitsky] is not true."

   4)  Sharon Hayes: "Alonzo walked out of the house."

   5)  PO Lockett: "As he approached the front door he punched the door causing it to swing open…"

   6)  PO Montalto: "Grant then walked pass both PO Lockett and I and violently punched the front door of the house." [Note: PO Montalto was never inside the house, therefore Mr. Grant did not walk pass[sic] him]

**The Proven Credible Facts**: Mr. Grant, complying with Officer Lockett's order, went outside and opened his front screen door, which banged the iron railing because of a defective hinge-spring.

**65. Sergeant Novitsky's Police Report Deposition:  "The other cop (PO Montalto) came running across the street and started punching Alonzo in the face for no reason at all."** <u>This</u>

Is A Willfully Perjured False Statement. **The True Fact**: PO Montalto was standing at the bottom of the stairs in front of Mr. Grant's house.

**Proof Testimony**:

1) Corey McMullin: "I don't think he ran across the street. By the time Alonzo came out he was already in the front [of the stairs]."

2) Sharon Hayes: "The white officer came towards the house. He was standing by the sidewalk."

3) PO Montalto: "Alonzo then attempted to get away from PO Lockett and they both went out of my visual sight." [Note: PO Montalto was standing at the bottom of the stairs in front of PO Lockett and Mr. Grant]

**The Proven Credible Facts**: By the time Mr. Grant came out of his house, Officer Montalto was already in the front of the stairs on the sidewalk."

**66. Sergeant Novitsky's Police Report Deposition: "I asked McMullin what the police were saying to Alonzo. McMullin told me nothing, the cops were just punching him in the face for no reason at all. He stated Alonzo was not doing anything at all."** ***These are True Facts***. **The True Facts**: Mr. Grant was ambushed without probable cause and viciously beaten, and was never told he was under arrest.

**Proof Testimony**:

1) Mr. Grant: "I didn't close the door [it closes on its own]. I wasn't looking back, the PO was behind me. That's when the cop jumped on me."

2) Stephanie Grant: "Ran out, charged out, grabbed Alonzo from behind."

3) Corey McMullin: "As Alonzo was coming down the stairs, he got to about midway down the stairs, when the black officer came out behind him, so by the time Alonzo hit the bottom of the steps, he kind of like dived on his back, kind of wrestler's style fashion. Slung him on the ground over the railing. He was blindsided. Never saw it coming. He wasn't even aware of what was happening."

4) Sharon Hayes: "People said why are you punching him?"

5) PO Lockett: "I followed A. Grant outside and as we began walking down the outside, I grabbed both of his arms and told him to put his hands behind his back." [Note: Since PO Lockett grabbed both of Mr. Grant's arms, he did not need to tell him to put his hands behind his back because he had already grabbed both arms]

6) PO Montalto: "PO Lockett then exited the house and PO Lockett ordered Alonzo to stop because he was under arrest for domestic related disorderly conduct." [Note: This was happening while PO Montalto claims that "they both went out of my visual sight"]

**The Proven Credible Facts:** As Mr. Grant was coming down the stairs. He got to about midway down the stairs, when Officer Lockett came out of the house behind him. By the time Mr. Grant stepped on the bottom of the steps, Officer Lockett kind of like dived on his back, kind of wrestler's style fashion, and slung Mr. Grant on the ground over the railing. Mr. Grant was blindsided. Never saw it coming. He wasn't even aware of what was happening.

**67. Sergeant Novitsky's Police Report Deposition: "McMullin's account is in contradiction to the account of PO Lockett's, PO Montalto's, Stephanie's and Alonzo's."** This Is A Willfully Perjured False Statement. **The True Fact**: Witness Corey McMullin's account matches those of Mr. Grant, Stephanie Grant, Sharon Hayes, and other eye witnesses. **Proof Testimony**:

1) See testimony of Mr. Grant, Stephanie Grant, and Sharon Hayes as stated hereinabove.

**The Proven Credible Facts:** Sergeant Novitsky is covering up for Officers Montalto and Lockett by falsely stating that Mr. McMullins's testimony contradicts that of Mrs. Grant and Sharon Hayes.

**68. Sergeant Novitsky's Police Report Deposition: "I interviewed Alonzo at the hospital. He told the following; He was frustrated with Stephanie because she was not keeping up with the housework as well as he thought she should. He was arguing with her when Alyssa began arguing with the neighbor."** This Is A Willfully Perjured False Statement. **The True Fact**: Sergeant Novitsky interrogated Mr. Grant while he was sitting, handcuffed to a hospital gurney, suffering from bloody bruises, a broken nose and a concussion, and Sergeant Novitsky failed to read Mr. Grant his Miranda rights, violating Mr. Grant's 5th Amended Rights.

**Proof Testimony**:

1) Sergeant Novitsky's report

**The Proven Credible Facts:** Sergeant Novitsky failed to read Mr. Grant his Miranda rights, violating Mr. Grant's 5th Amended Rights.

**69. Sergeant Novitsky's Police Report Deposition: "This increased Alonzo's anger and he began arguing with Alyssa as well. Alonzo told me Alyssa gets him really angry. Alonzo called the police to get Alyssa out of the house."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant called the police to curtail an argument in front of the house between his daughter and a neighbor.

**Proof Testimony**:

1) Officer Lockett: "A. Grant said, "Officer she left,"

2) Mr. Grant: "That's false that I told him Alyssa gets me really angry. I called the police to make Alyssa go home. She was arguing with a neighbor in front of my house."

**The Proven Credible Facts**: Mr. Grant called the police to curtail an argument in front of the house between his daughter and a neighbor.

**70. Sergeant Novitsky's Police Report Deposition:  "She left prior to police arrival but he was still angry. He continued yelling at Stephanie even after the police arrived."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant and Stephanie Grant were talking.

**Proof Testimony**:

1) Mr. Grant: "That's false. I was not yelling. That's false. I never said that."

**2)** Stephanie Grant: "We were talking. He was not yelling.

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause, by the officers under his supervision— Officers Montalto and Lockett.

**71. Sergeant Novitsky's Police Report Deposition: "Eventually, he went outside and closed the door behind him. That is when the cops jumped on him."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant did not close the door behind him. He did

not go outside "Eventually". Rather, Mr. Grant immediately obeyed PO Lockett's order and went outside to speak with Lockett's partner, as instructed. This is when the cops jumped on him.

**Proof Testimony**:

1) Mr. Grant: "That's false. I never said that. I did not close the door. It wasn't eventually, I went right down. Right away – within 2 seconds. The PO asked me to go outside to talk to his partner. "Could you step outside and talk to my partner?" That's what he asked me to do, that's what I did."

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause

**72. Sergeant Novitsky's Police Report Deposition: "I asked him if he slammed the door shut. Alonzo hesitated to answer but did. He said, "I don't remember but I think I may have."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant did not make this statement.

**Proof Testimony**:

1) Mr. Grant: "I never said that."

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

**73. Sergeant Novitsky's Deposition: "I asked him what he did when the cops jumped on him. He told me, "I tried to push them away from me."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant did not make this statement. He did not push the police away from him.

**Proof Testimony**:

1) Mr. Grant: "No, I did not tell him that. I did not push him away. "No!" They had my arms behind my back! I have never been arrested nor have I ever touched an officer. "No!"

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

**74. Sergeant Novitsky's Police Report Deposition: "I asked him if he knew it was the police and he said yes. I followed up with the question, if you knew it was the police why did you try to fight them and not follow their commands?"** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: Mr. Grant did not fight the police. He followed their commands.

**Proof Testimony**:

1) Mr. Grant: "Of course I knew it was the police! I didn't try to fight them!"

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

**75. Sergeant Novitsky's Police Report Deposition: "Alonzo's body posture changed dramatically when he answered this question. Initially, he was sitting on the side of the hospital bed with his legs over the side, back straight and looking at me in the eyes. When he answered my last question, his head dropped, he looked to the floor, his shoulders slumped down and he let out a long sigh. Alonzo told me he just couldn't stop himself. He knew it was the police but he just could not stop fighting with them."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: Mr. Grant did not make this statement.

**Proof Testimony**:

1) Mr. Grant: "Yes, my legs were over the side. I never told him that. I never told him anything like that. I wasn't fighting with them. He grabbed me, my arms behind my back, the other one grabbed my feet and they threw me over. Never said that! That's False."

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

**76. Sergeant Novitsky's Police Report Deposition: "Alonzo added that Alyssa gets him really mad and his temper gets out of control."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: Mr. Grant did not make this statement.

**Proof Testimony**:

1) Mr. Grant: "That's False."

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

**77. Sergeant Novitsky's Police Report Deposition: "Alonzo sustained a nasal fracture and laceration to the left side of his face. He was treated at the hospital and released."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: Mr. Grant sustained a concussion, nasal fracture, laceration needing sutures, multiple contusions and bruises, a split lip, severe swelling of the entire left side of his face, torn ligaments, bruises and abrasions to his left arm, and permanent close head brain damage, in addition to severe mental and emotional distress .

**Proof Testimony**:

1)  Medical Records

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover up for the excessive force inflicted on Mr. Grant, without probable cause.

**78. Sergeant Novitsky's Police Report Deposition:  "Alonzo was booked in the Justice Center after his release from the hospital. The actions of PO Lockett and PO Montalto were in compliance with the Syracuse Police Department's rules and regulations and in compliance with New York State Penal Law Article 35. Their actions were lawful, justified and not reckless. The force used was necessary and reasonable."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: The force used by PO Montalto and PO Lockett was reckless, excessive, unnecessary and unlawful.

**Proof Testimony**:

1)  Mr. Grant: "No, I was not released. I was hurtin'. I was hurtin'. I was pretty down. I got problems sleeping. I start visualizing in my mind what happened. I got a tetanus shot. I hate it happened. I did what they asked me to do."

2)  Stephanie Grant: "When I got to the door, seeing my husband go over the railing down to the ground. The white officer hit him 4-5 times in his face. The black officer was punching him too. Both holding him, both punching him. Alonzo was trying to protect his face with his right hand."

3)  Corey McMullin: "…the first thing he did was punch him, looked like in the head area. He kept bringing it [his fist] back, I'd say about five times. If I'm not mistaken he had his knee on his back…There was a lot of grabbing and choking… They had his arms bent all

ways… His arm was bleeding. I think his mouth. The officers were throwing him around. He did not resist… He was just groaning."

4) Sharon Hayes: "I saw him when he got up, all bloody. I'm saying why'd they beat him up like that? He's not a confrontational person."

5) PO Lockett: "…at which time I began to strike A. Grant in the head and face area…" "I struck him four times at first…" "While still on the ground, I had to strike him four more times…" "I subsequently had to strike him two more times in the face…"

6) PO Montalto: "I then punched Alonzo in the left side the face with my right hand two times in an attempt to get him to comply…" "I then struck Alonzo in the left thigh with a right knee strike…" "I then forced Alonzo's left arm behind his back…"

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

79. On June 28, 2014, Officer Montalto falsely affirmed Under the Penalty of Perjury the following:

On the aforementioned date and time and location the above defendant, Alonzo Grant did commit the crime of Resisting Arrest. Defendant Grant was informed that he was under arrest for domestic related disorderly conduct. Grant then intentionally attempted to prevent a Police Officer from effecting [sic] an authorized arrest of himself. Defendant Grant physically grabbed an officer and wrestled with officers who were attempting to place him in handcuffs. Defendant Walker [sic] refused to comply with several commands to place his hand behind his back so that he could be placed in handcuffs.  In order to effect this authorized arrest the defendant's hand were physically pulled behind his back. The above listed actions by the defendant constitute the crime of Resisting Arrest.

"On the above date and time and location: while inside the house of Stephanie Grant and being husband of Stephanie Grant The defendant Alonzo Grant intentionally and continuously flailed his arms at his wife Stephanie Grant. The defendant was screaming, yelling and acting aggressively toward his wife and police. The defendant violently

punched the front door of the house causing it to fly open in the presence of police officers and continued to annoy and alarm all parties involved with his violent tumultuous threatening behavior. The above actions of the defendants constitute the violations of Disorderly Conduct pursuant to NYSPL 240.20 (1) and NYSCPL 530.11. (1)"

80.     Officer Montalto made a "request that certain criminal process be issued to compel defendant [Mr. Grant] to answer the aforesaid accusation"  Officer Montalto signed his name, and badge Number "302" "Under the Penalty of Perjury on June 28, 2014"  issuing a criminal complaint against Mr. Grant, an innocent man. Officer Montalto signed his name just below the warning: "NOTE: False Statements made herein are punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York."

81. Likewise, Officer Lockett falsely affirmed Under the Penalty of Perjury on June 28, 2014 the following:

On the above date and time and place the above defendant Alonzo Grant with intent to harass, annoy and alarm did intentionally subjected me to physical contact by wrapping both of his arms around my waist and trying to take me down to the ground. As a result of the defendants actions I was harassed, annoyed and alarmed.  By intentionally harassing me and subjecting me to physical contact the defendant did commit the violation of Harassment In the 2nd Degree.

82. Officer Lockett also signed his name, and badge Number "0366" "Under the Penalty of Perjury on June 28, 2014"  issuing a criminal complaint against Mr. Grant, an innocent man. Officer Lockett signed his name just below the warning: "NOTE: False Statements made herein are punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York."

83.     Based on the Reports of Defendants Lockett and Montalto, the Syracuse District Attorney initiated prosecution against Mr. Grant, and he was charged for the first time in his 53 years of

life with a crime, and specifically with the crimes of Resisting Arrest, Harassment 2nd, and Disorderly Conduct for an alleged altercation with the police at his home on June 28, 2014.

**Syracuse District Attorney Dismissed All Charges**

84.     On September 10, 2014, the Syracuse District Attorney dismissed all charges against Mr. Grant, concluding after thoroughly investigating and reviewing the case, and exonerated Mr. Grant completely, averring that **"Mr. Grant had done nothing wrong"** "Witnesses at the scene, both related and unrelated to Mr. Grant, did not report any conduct by him that could reasonably be considered resisting arrest," prosecutors said in a news release. The law did not support the disorderly conduct charge, either. "It appears that Mr. Grant has an unblemished record and is well-established in the community," the DA's office continued. "Based upon all of the foregoing factors, this office has moved to dismiss these charges in the interest of justice."

85.     The District Attorney stated in dismissing the charges:

"It was Mr. Grant who made the call to police in an attempt to prevent the verbal dispute from escalating further. He was not suspected as the perpetrator of any crime. When an officer entered the residence to assess the situation he eventually asked Mr. Grant to exit his home and speak to SPD Officer Paul Montalto. As he was walking out the door, Mr. Grant punched his screen door, causing the door to slam against the side of his house. Almost immediately following Mr. Grant's action, the police decided to arrest for him Disorderly Conduct.

SPD Officer Damon Lockett reached for Mr. Grant and both parties went over the side of railing and fell to the ground. At this point, Officers Lockett and Montalto struck Mr. Grant about the face and head several times. Mr. Grant suffered injuries which required medical attention."

The actions and findings of the District Attorney are consistent the findings of the Syracuse Citizen Review Board proving Mr. Grant is Factually Innocent of the dismissed charges.

**ALONZO AND STEPHANIE GRANT AMENDED COMPLAINT FOR DAMAGES  –  46**

**Citizen Review Board Findings of Excess Force & Untruthfulness**

86.     On October 16, 2014, the Syracuse CITIZEN REVIEW BOARD, "**In the matter of Alonzo *Grant vs. Syracuse Police Officers* Allegations of Misconduct: Excessive Force, False Arrest, Untruthfulness",** issued its finding to Mr. Grant as follows:

**"Dear Mr. Grant:**

**In accordance with our authorizing local law, a CRB panel met on October 15, 2014 to review the above captioned matter. After careful review of the testimony and facts submitted, the CRB panel made the following determination:**

**CRB Findings:**

**• Excessive Force:** Sustained for Officers #1 and #2

**• False Arrest:** Sustained for Officers #1 and #2

**• Untruthfulness**: Sustained for Officers #1, #2, and #3

**In addition, the CRB panel recommended specific discipline to the Chief of Police for the sustained allegations against the officers.**

**Mr. Grant, thank you for coming forward to file your complaint. This can ultimately lead to recommendations for changes and improvements in SPD policy, practices and training. Your input and feedback on such police interactions is critical to the operations of the Citizen Review Board…."** [Emphasis added]

87**.** The findings by the Syracuse District Attorney and the Syracuse Citizen Review Board compel a Declaratory Judgment that Mr. Grant is Factually Innocent of the dismissed charges, consistent with the Due Process Clause protection in the Fourteenth Amendment of the United States Constitution. Since the State of New York does not have a law permitting wrongfully accused persons to reclaim their status of innocent, a Declaratory Judgment is hereby requested, declaring Mr. Grant is factually innocent of the dismissed charges. Such Declaratory Judgment is hereby prayed for in this Complaint.

88. All of the evidence, the facts established by each of the witnesses, including the patently false and contrived sworn Deposition Testimony of Defendants Officers Lockett, Montalto, and Novitsky, as confirmed by the Syracuse District Attorney and the Syracuse Citizen Review

Board, support and compel a Declaratory Judgment as follows: ***Defendant Officers Lockett, Montalto, and Novitsky willfully made False Statements in their Deposition Police Reports and by so doing, each violation is punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.*** This Declaratory Judgment is needed for the ultimate benefit of the Defendant Police Officers, the Syracuse Police Department, and the Public in order to restore public trust in the Syracuse Police Department and to heal the Syracuse Community from a metastasizing mistrust of the Police, one of our most valued public servants.

## IX. DAMAGES

89. Mr. Grant's damages include, but are not limited to, the following: brain damage, fractured nose, cut lip, cut left side of head, bruised and injured left arm and elbow, including torn ligaments, concussion syndrome, anxiety, mental and emotional distress, humiliation, fear, discomfort, loss of enjoyment of life, inconvenience and suffering, physical and psychic injuries, headaches, nightmares, insomnia, and misery. The injuries, illnesses and harms caused, and continue to cause, Mr. Grant and Mrs. Grant to seek and obtain medical treatment and ongoing medical care for their injuries, illnesses and medical conditions, and to incur medical expenses, loss of wages, medical bills, loss of work benefits all caused by the Defendants, and each of them.

## FEDERAL LAW CLAIMS

### FIRST CAUSE OF ACTION
Violation Of United States Civil
Rights Laws 42 U.S.C. Sections 1983
Use of Excessive Force
**(Against Officer Lockett and Montalto)**
<u>As to Mr. Grant</u>

90. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

91. Federal Law 42. U.S.C. §1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress".

#### *Fourth Amendment Claim Excessive Force*

92. "The Fourth Amendment protects individuals from the government's use of excessive force while detaining or arresting individuals."[3] "When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively reasonable 'in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'"[4]

93. Defendant Police Officers Lockett and Montalto's use of unreasonable, unnecessary and excessive force violated Mr. Grant's clearly established constitutional rights and was not objectively reasonable in light of the circumstances. Indeed, it was Mr. Grant who summoned the police to help diffuse an escalating argument between his adult daughter and a female neighbor. Mr. Grant was not a suspect for any crime and had not committed any crime in his 53 years of life. The Defendant Police Officers Lockett and Montalto acted willfully, deliberately, maliciously and with reckless disregard for Mr. Grant's established constitutional rights.[5]

94. As the True Facts above prove, Police Officer Lockett and Police Officer Paul Montalto inflicted objectively excessive and unreasonable force upon Mr. Grant, including bloodying his face, head, body, breaking his nose, cutting his lip and bashing a gash in the side on his head, requiring stitches. Mr. Grant had called 911 and summoned the police to remove his adult daughter from his front yard, in hope of diffusing and breaking up a verbal altercation his

---

[3] *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citing Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)).
[4] Jones, 465 F.3d at 61 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)) (punctuation omitted). Among the most relevant facts and circumstances are (1) the severity of the crime allegedly committed; (2) the threat of danger to the officer and society; and (3) whether the suspect was resisting or attempting to evade arrest. *Thomas*, 165 F.3d at 143. Reasonableness is generally a question of fact. See *McKelvie v. Cooper*, 190 F.3d 58 (2d Cir. 1999) (reversing magistrate judge's grant of summary judgment to officers of Fourth Amendment excessive force claim).

[5] *Smith v Wade, 461 U.S. 30,45-48 (1983)*

daughter was having with an adult female neighbor. Neither Mr. Grant, nor his daughter, nor the neighbor had committed any crime. There was never any threat of danger to either Officer Lockett or Montalto because each confirmed that Mr. Grant's daughter had left the front yard before the officers arrived. Mr. Grant was lawfully in his home, where he remained the entire time, until ordered by Officer Lockett to "go outside and speak with my partner". Neither officer had cause to arrest Mr. Grant, nor did either of the officers announce to Mr. Grant that he was under arrest. Neither officer had any probable cause to touch, hit, punch, strike, or seize Mr. Grant. Any force against an American Citizen without probable cause is excessive and a constitutional violation. Even though Mr. Grant is privileged to resist and defend himself against unreasonable force, he did not at any time do so.

95.     At all times Mr. Grant was a law abiding citizen, and was encased and enshrined in the protection of the United States Constitution. The Police Officers engaged in the following unreasonable, excessive and illegal force:

***Police Officer Paul Montalto***

1. "I then grabbed Alonzo's left arm and tried to pry it away from PO Lockett…."

2. "I was able to pull Alonzo arm off of PO Lockett…

3. "I then punched Alonzo in the left side the face with my right hand two [2] times in an attempt to get him to comply…"

4. "I then forced Alonzo's left arm behind his back and placed it in handcuffs."

5.   . "I then struck Alonzo in the left thigh with a right knee strike in another attempt to get him to comply with my orders."

6. "Alonzo was placed in handcuffs without incident..."

***Police Officer Lockett***

7. "I followed A. Grant outside and as we began walking down the outside, I grabbed both of his arms and told him to put his arms behind his back."

8. "We went down the stairs and then both fell to the ground in the front lawn."

9. "I struck him four [4] times at first…."

10. "While still on the ground, I had to strike him four [4] more times…"

11. "I subsequently had to strike A. Grant two [2] more times in the face…"

**_Sergeant Novitsky_**

96. Sergeant Novitsky had Mr. Grant shackled, handcuffed to a hospital bed while he interrogated him without reading him his Miranda Warnings. During this illegal interrogation, Mr. Grant was bleeding, swollen, hurting, writhing in pain from a severe concussion and from having been beaten, struck, hit, with closed fists in the face, head, and jaw. Sgt. Novitsky continued the violations of Mr. Grant's constitutional rights, including the false arrest and excessive force. Sgt. Novitsky admissions of violating Mr. Grants Constitutional rights are as follows:

97. "I interviewed Alonzo at the hospital. He told the following; He was frustrated with Stephanie because she was not keeping up with the housework as well as he thought she should. He was arguing with her when Alyssa began arguing with the neighbor." Nowhere in Sergeant Novitsky's Deposition does he note that he read Mr. Grant his Miranda rights, thereby making his entire interview a violation of Mr. Grant's Fifth Amendment Rights against self-incrimination and due process of law; and his Sixth Amendment Right "…to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; and to have the assistance of counsel for his defense."

98. Police officers Lockett and Montalto never informed Mr. Grant that he was under arrest. Instead, Officer Lockett suddenly and abruptly, without probable cause, grabbed Mr. Grant, while he was lawfully standing on his own front steps of his own property, from behind and violently threw Mr. Grant over the black wrought iron railing. The police officers never informed Mr. Grant of "the nature and cause of the accusation" against him. The Fourth Amendment enforces the doctrine that "each man's [woman's] home is his [her] castle", secure from unreasonable searches and seizures of property by the government. The police officers, and each of them, violated Mr. Grant's Fourth, Fifth, Sixth and Fourteenth Amendment Rights. Hence, under the law of the United States Constitution, they must pay Mr. Grant for all damages flowing from their illegal actions and inactions.

99.     The Defendant Police Officers Lockett and Montalto admitted beating Mr. Grant in the face, head, back and thigh. Medical records reflect that Mr. Grant sustained a broken nose, a concussion, busted lip, cut on the forehead and serious and severe post-concussive syndrome, including nightmares, flashbacks, sleeplessness nights and a daily fear of the police.

100.    A reasonable police officer would have knocked on Mr. Grant's door, or rung one of the two door bells, and approached Mr. Grant politely and respectfully in efforts to ascertain the reason for his 911 call to the police, who are his community public servants. After gathering the true facts that the daughter had left the front yard, and there was no longer a need for the police, a reasonable officer would have thanked Mr. Grant for the call and advised him to call again should the need arise. That should have been the end any police contact if a reasonable officer had responded to Mr. Grant's call for assistance. This is not the reasonable course the Defendant Police Officers took. Instead, these police officers beat, hit, struck and arrested Mr. Grant, violating his United States Constitutional Rights, including his Fourth Amendment Right against unreasonable search and seizures, and his Fourteenth Amendment Right of liberty, property, equal protection, and due process, all of which violations are entitling Mr. Grant to damages.

101.    Mr. Grant is now permanent injured, in mind and body, because Defendants Lockett and Montalto acted unreasonably. These Defendant Police Officers engaged in a practice and pattern of violations of citizen's constitutional rights because their superiors, such as Defendant Novitsky, and by extension, Police Chief Fowler, covered up for their constitutional abuses. Defendants' conduct was intentional, malicious, fraudulent, and showed a reckless disregard of the constitutional rights, safety and health of Mr. and Mrs. Grant. Defendants' conduct warrants punitive damages to protect the public in the future, in an amount according to proof.

        WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

//

//

## SECOND CAUSE OF ACTION
Violation Of United States Civil
Rights Laws 42 U.S.C. Sections 1985
Conspiracy to Violate Civil Rights
**(Against Officer Lockett and Montalto and Novitsky)**
**As to Mr. Grant**

102. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

### Obstructing Justice and Conspiracies to Interfere with Civil Rights

103. Federal Law 42 U.S.C. § 1985 states in relevant parts: "[T]he party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators: [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

104. To recover under a § 1985 conspiracy claim for deprivation of civil rights, a plaintiff must prove: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws . . .; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States."

105. Mr. Grant alleges facts that Defendant Police Officers Lockett, Montalto and Novitsky have acted in concert to fabricate statements in order to prosecute Mr. Grant for crimes they knew he did not commit. The fabrication and falsification of Mr. Grant's statements were overt acts in furtherance of this conspiracy, as were the subsequent acts of concealing the fabrication and withholding evidence.

### Constitutional Violation: False Depositions and Credibility of the Police Officers

106. In the Supporting Deposition of Police Officer Montalto, he states as follows:

"Upon arrival, we spoke to the complainant, Alonzo Grant who was standing in the front yard of the residence.  We observed that Grant appeared highly agitated. Grant states, "We don't need the fucking Police, my daughter is gone."

**ALONZO AND STEPHANIE GRANT AMENDED COMPLAINT FOR DAMAGES** – 53

107. In the Supporting Deposition of Police Officer Lockett he states as follows: "When I arrived, I heard a male voice from the above residence yell through the screen door "we don't need the police." I approached the front door and was met by Grant. A. Grant said "Officer she left."

108.    In the Supporting Deposition of Police Officer Montalto, he states as follows: "PO Lockett then attempted to grab Alonzo by the arm to place him in handcuffs. Alonzo then tried to get away from PO Lockett and they both went momentarily out of my visual sight. I then exited the house and observed PO Lockett and Alonzo Grant involved in a physical altercation."

109. In the Supporting Deposition of Police Officer Lockett, he states as follows:  "At that time I said to A. Grant to please go outside and speak to my partner."

110. All of the witness statements, including the statements of Mr. Grant and his wife, confirm that Mr. Grant was in his own home when the police arrived.  Further, all witnesses including Mr. Grant and his wife, state that Police Officer Montalto never entered their residence. It was Police Officer Lockett who forced his way into the Grant residence without permission and without knocking. Police Officer Montalto and Lockett's statements are so contradictory that they rise to the level of willfully false statements and police misconduct.

111. The truth is that Officer Montalto was outside the residence the entire time, as his partner indicates.  Further, Alonzo never swore at the Police as was indicated by Police Officer Lockett. Multiple witnesses confirm that Officer Montalto was putting on black "Weighted Gloves" as he was walking from his parked patrol car towards the Grant home, and that he was standing at the bottom of Mr. Grant's front yard stairs when Mr. Grant was exiting his home in compliance with Officer Lockett's command. Officer Montalto then grabbed Alonzo's legs and assisted his partner in tackling Mr. Grant over the iron railing in an unprovoked attack. All of the witnesses agree that Officer Lockett never told Mr. Grant he was under arrest at the time the Defendant Officers grabbed him.

112.    Sergeant Novitsky Deposition: "Upon my arrival, I observed the suspect, Alonzo Grant, sitting up on the front lawn of 105 Hudson St. secured in handcuffs. Alonzo was sweating profusely and had a laceration proximal to the lateral aspect of his left eyebrow. Bleeding was

minor but appeared worse because of the profuse sweating. I could also see swelling on Alonzo's left cheek bone…. I spoke with PO Lockett and PO Montalto. Their verbal account of the Incident was properly documented and was consistent with their written account."

113.   Sergeant Novitsky willfully filed a false Deposition, a "Use of Force Report", concluding: "The actions of PO Lockett and PO Montalto were in compliance with the Syracuse Police Department's rules and regulations and in compliance with New York State Penal Law Article 35. Their actions were lawful, justified and not reckless. The force used was necessary and reasonable." This is a "cookie-cutter" boiler plate finding, designed to cover up and conspire with the Defendant Officers to "sweep under the rug" the constitutional violations committed by these Defendant Officers. Sergeant Novitsky selectively chose to ignore all of the witness statements and the internal irreconcilable statements by the Defendants Lockett and Montalto to justify the excessive force, the result of which he personally observed on Mr. Grant's body while Mr. Grant was sitting on his lawn in handcuffs, solely for having the audacity to call 911 for help. Defendants' conduct was intentional, malicious, fraudulent, and showed a reckless disregard of the constitutional rights, safety and health of Mr. and Mrs. Grant. Defendants' conduct warrants punitive damages to protect the public, in an amount according to proof.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION
Violation Of United States Civil Rights
Laws 42 U.S.C. Sections 1986
**(Against Defendant Sergeant Novitsky)**
<u>**As to Mr. Grant**</u>

114.   Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

### *<u>Sergeant Novitsky Liability for Neglect to Prevent Violation of Constitutional Rights</u>*

115.   42 U.S. Code § 1986 provides: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party

injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented…." 42 U.S. Code § 1986.

116.    Sergeant Novitsky filed a false Deposition, covering up and fictionalizing the true facts in order to attempt to exonerate his fellow police officers and convict an innocent American Citizen. He reviewed the depositions of Officer Lockett and Officer Montalto and was aware of the clear and plain, willful material variations in the officers' testimony compared to each other, and compared to each of the witnesses he interviewed. Sergeant Novitsky stated in his deposition: "I spoke with PO Lockett and PO Montalto. Their verbal account of the Incident was properly documented and was consistent with their written account."

117.    Sergeant Novitsky admits he spoke with PO Lockett and PO Montalto, and therefore he knew that these officers had formed an agreement to falsely fabricate their depositions to justify their excessive force. Sergeant Novitsky stated, "I also spoke with Corey McMullin. He told the following; He was standing on the sidewalk near Alonzo's driveway and saw everything." Sgt. Novitsky totally disregards Mr. McMullin's statement when he "… asked McMullin what the police were saying to Alonzo. McMullin told me nothing, the cops were just punching him in the face for no reason at all. He stated Alonzo was not doing anything at all."

118.    Armed with the eye witness statements from Mr. McMullin, Sergeant Novitsky, a seasoned Police Officer, interrogated Mr. Grant while he was handcuffed to his hospital bed and deliberately failed to read Mr. Grant his Miranda Warnings, instead fabricating a Grishamesque crime novel admission from Mr. Grant: "Alonzo's body posture changed dramatically when he answered this question. Initially, he was sitting on the side of the hospital bed with his legs over the side, back straight and looking at me in the eyes. When he answered my last question, his head dropped, he looked to the floor, his shoulders slumped down and he let out a long sigh. Alonzo told me he just couldn't stop himself. He knew it was the police but he just could not stop fighting with them."

119.    Sergeant Novitsky, having the power to prevent, or aid in preventing, the commission of the violation of Mr. Grant's constitutional rights, neglected and refused so to do. Sergeant Novitsky not only neglected to stop the "wrongs conspired to be done" to Mr. Grant by officers

1  under his supervision, but Sergeant Novitsky actively joined the conspiracy by falsely declaring
2  in regard to Officers Lockett and Montalto: "Their actions were lawful, justified and not reckless.
3  The force used was necessary and reasonable." Hence, Mr. Grant's Claim against Sergeant
4  Novitsky for "Neglect to Prevent Violation of Constitutional Rights" and conspiring to violate,
5  and participating in the violation of, his Fourth, Fifth, and Fourteenth Amendment Rights.

6       WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### FOURTH CAUSE OF ACTION
Monell Claim: 42 U.S.C. 1983
**(Against Defendants City Of Syracuse**
**Chief Frank Fowler and The Syracuse Police Department )**
**As to Mr. and Mrs. Grant**

10  120.   Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as
11  though fully set forth herein.

_**Monell Claim: City of Syracuse's Liability for Excessive Force and False Arrest**_

13  121.   At the time of Mr. Grant's arrest and vicious beating, Officers Lockett, Montalto and
14  Novitsky were acting under color of all the laws and regulations of the State of New York and
15  the City of Syracuse. The City of Syracuse has a policy, custom, practice and pattern of conduct
16  in place that enables it agents and employees police officers to act with deliberate indifference to
17  the constitutional rights of individuals. This policy, custom, practice and pattern of conduct,
18  includes, but is not limited to, tolerating misconduct by its police officers, encouraging
19  misconduct by failing to adequately supervise, discipline and train its police officers.

20  122.   Plaintiffs assert that the City of Syracuse is liable for any constitutional torts committed
21  by the individual Defendant Police Officers because the City of Syracuse maintains a custom,
22  policy and pattern and practice of failing to exercise reasonable care in training, supervising and
23  hiring its officers. Plaintiffs further allege the City of Syracuse maintains a custom, policy,
24  pattern and practice of inaction regarding disciplining police officers for excess force; and a
25  custom, policy, practice and pattern of failing to discipline it Police Officers for violating the
26  constitutional rights of its citizens. Plaintiffs also allege that City Police Department has an
27  inadequate Use of Force Policy, which does not clearly draw a bright line defining constitutional

28

violations for excessive force such as choking, using "weighted gloves", or knees in the back of a suspect. The City of Syracuse's policy, custom, practice and pattern were a motivating factor causing a deprivation of Mr. Grant's constitutional rights.

123.    The City of Syracuse has an urgent need for a clear policy regarding excessive force, choking, knees in the back of a suspect and racial profiling. Plaintiffs request a Declaratory Judgment that the City of Syracuse policy on excessive force is inadequate and presents clear and present danger of deprivation of the constitutional rights of persons who have contact with the Syracuse Police.

124.    Under Monell, local governments and their agencies can be sued as "persons" under § 1983 and may be liable where a government policy or custom gives rise to a constitutional deprivation. A "custom" does not require official sanction; instead, a custom "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."[6] Thus, the elements of a Monell claim include: 1) an official policy or custom that, 2) causes the plaintiff to be subjected to, 3) a deprivation of a constitutional right.[7]

125.    An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; and (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees.[8]

---

[6]   *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) To make a claim for municipal liability, it is not sufficient to allege merely conduct attributable to the municipality. Id. "A plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.

[7]   *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1987).

[8]   Dorsett-Felicelli v. C'nty of Clinton, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing Monell, 436 U.S at 690, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986), and City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

126.    The record of this case, based on investigation, research, complaints to the Syracuse Police Citizen Board, Police Records, News Paper Reports of Claims of excessive force and false arrests of citizens by the City of Syracuse shows a pattern, practice, custom and policy by Chief of Police Frank Fowler in failing to respect, uphold and enforce the constitutional rights of the citizens of the City of Syracuse. Defendant Chief of Police Frank Fowler's failure to discipline, train and supervise the police officers under his command has resulted in the assault and battery, false arrest and civil rights violations of Mr. Alonzo Grant and many, many other law abiding citizens of Syracuse. Defendant Chief of Police Frank Fowler's actions and inactions as the government official responsible for establishing municipal policies related to discipline, training and supervising the City of Syracuse police officers have been the motivating factors in the deprivations of constitutional rights of Mr. Grant and of many other victims of police brutality and misconduct in Syracuse.

127.    Chief Fowler's inactions, resulting in a policy of inaction, a policy of lack of supervision, and a policy of lack of training for his police officers in how to protect the constitutional rights of citizens was a direct and proximate cause of the violation of Mr. Grant's Constitutional Rights as stated herein. Chief Fowler's policy, custom and practice of inaction, lack of discipline and lack of training of his officers led one of these officers to declare during the vicious beating of an unarmed, 20 year old young college student without any prior criminal record, that: "We can do whatever the Fuck we want to do!" This officer, along with his fellow officers, then beat, struck, and punched this young man in the back, stomach, and head, followed by dragging this college student by his legs on the pavement, scraping and bruising his face bloody. This young man is Elijah Johnson who asserts that the Syracuse police beat him, and used racial slurs when they arrested him after a party on University Hill. Chief Fowler and Sergeant Novitsky's ratification of the police officers' misconduct constitutes also a pattern, practice and custom and unwritten policy in the Syracuse Police Department to cover up the police brutality and violations of constitutional rights.

### *Evidence of a Policy and Custom and Practice of the Use of Excessive Police Force*

128.    On or about June 23, 2010, Syracuse Mayor Stephanie Miner refused to sign and approve a coveted award for a veteran Syracuse Police Officer, due to proven claims of excessive force. Mayor Miner did not sign the commendation for Detective Alp Llukaci to receive the Wallie Howard Jr. Award for his undercover work on drug investigations. Mayor Miner cited a federal court jury verdict in December in which a jury found that Llukaci used excessive force against suspect John R. Kelly in a 2001 drug and assault case.

129.    In August 2014, Ms. Louise Thompson, age 76, reported that the Syracuse police handcuffed her and charged her with resisting arrest earlier that month when she tried to talk to them during a dispute between her daughter, who is disabled, and a neighbor. "Seventy-six years old I am, never had a problem like that," Thompson asserted. "But they manhandled me."

130.    Rev. L. Micah O. Dexter II, pastor of Greater New Salem Missionary Baptist Church, alleges that he and his wife were roughed up by police in January, 2014, after calling to report two suspicious people on their property. The police ignored Rev. Dexter's complaint about the trespassers, instead began handcuffing the Rev. and Mrs. Dexter and placing them under arrest. Rev. Dexter stated: "The officer . . . immediately grabs me and throws me against the intruders' car, handcuffs me and says, 'This is compliments of (Police Chief) Frank Fowler and (Mayor) Stephanie Miner. "

131.    Syracuse police officers Tasered Mr. Brad Hulett, a disabled man, multiple times for standing on a bus when was unable to sit due to his disability. A Syracuse Police Officer pulled up the disabled man's shirt and used the Taser to electric shock the man's naked skin. Police also broke Mr. Hulett's hip in the process of the arrest.

132.    These few case examples of excessive force, out of a long list of similar cases is evidence to prove that the policy maker, Chief of Police Officer Frank Fowler, maintains an official policy, pattern, practice or custom of the City of Syracuse that led to the deprivation of Plaintiff Alonzo Grant's constitutional rights. Therefore, Defendants Chief Fowler and the City of Syracuse are liable to Plaintiff Alonzo Grant for directly and proximately causing violations of his United States Constitutional Rights and resulting in economic and non-economic damages.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
42 U.S.C. Sections 1983
Assault and Battery
**(Against Defendants Lockett and Montalto)**
<u>**As to Mr. Grant**</u>

133.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

134.    Plaintiff Alonzo Grant alleges that Defendants Police Officer Lockett and Police Officer Paul Montalto assaulted and battered him. "[T]he test for whether a plaintiff can maintain . . . a cause of action against law enforcement officials [for assault and battery] is whether the force used was 'reasonable,' the exact same test as the one used to analyze a Fourth Amendment excessive force claim." [9] Defendants Police Officer Lockett and Police Officer Paul Montalto used unreasonable force against Mr. Grant. The undisputed facts are that Defendants Police Officer Lockett and Police Officer Paul Montalto assaulted and battered Mr. Grant, causing him permanent damages as hereinabove alleged. Defendants' conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Mr. and Mrs. Grant. Defendants' conduct warrants punitive damages to protect the public in an amount according to proof.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
42 U.S.C. Sections 1983
False Arrest
**(Against Officer Lockett and Montalto and Novitsky)**
<u>**As to Mr. Grant**</u>

135.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

136.    Mr. Grant alleges that Defendants Police Officers Lockett and Montalto violated his Fourth Amendment rights by subjecting him to "an unreasonable search and seizure of his

---

[9]  *Hogan v. Franco*, 896 F. Supp. 1313, 1315 n.2 (N.D.N.Y. 1995).

person" and the "loss of his physical liberty." The elements of a Fourth Amendment false arrest claim under 42 U.S.C. § 1983 are the same as those for a false arrest claim under New York law. [10]"To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." [11]

137.    The evidence proves by the requisite preponderance standard that Police Officer Paul Montalto, Police Officer Lockett and Sgt. Novitsky, and each of them, made a false arrest of Mr. Grant by confining him at his home, and at the hospital, and at all times until release. Mr. Grant was at all time conscious of his unprivileged and humiliating confinement to which he did not consent. Defendants, and each of them, are liable for Mr. Grant's damages.

### *Qualified Immunity No Defense*

138.    Defendants might argue that even if the court finds that Defendants PO Lockett and Paul Montalto used excessive force, they are entitled to qualified immunity. The qualified immunity inquiry generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." [12]

139.    In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in the Second Circuit consider three factors: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional laws of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. [13]In the excessive force context "the question for the purposes of qualified immunity is whether a reasonable officer

---

[10]   *Kraft v. City of New York*, 696 F. Supp. 2d 403, (S.D.N.Y. 2010).

[11]   *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir.2003) Where an officer has probable cause to arrest a plaintiff, the confinement is privileged. Id. at 76. The burden of showing that there was probable cause for the arrest is on the officer. Id.

[12]   *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) accord, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007)

[13]   Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991) cert. denied, 503 U.S. 962 (1992).

could have believed that the use of force was objectively reasonable in light of the circumstances." [14] In excessive force cases, then, the analysis "converge[s] on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful." [15]

140.    In the particular circumstances faced by the officers as shown by the evidence, a reasonable officer would believe that no force at all needed to be employed and that any force against an innocent man, not a suspect in any crime, and calling 911 for help, would be unlawful. Police Officers Lockett and Montalto were not presented with any facts, events or circumstances to lead either of them to reasonably believe that beating a citizen who has called 911 for help, and who was at all times abiding by all laws and in his own home, was a lawful use of force. As Sworn Police Officers to uphold the laws of the United States of America, Police Officers Lockett and Montalto are presumed to know the limits of lawful force under the Fourth Amendment of the Constitution. These officers willfully, knowingly and with a conscious disregard of Mr. Grant's health, safety, and rights violated Mr. Grant's Fourth Amended Rights against unreasonable seizures. They committed a false arrest upon Mr. Grant, and willfully filed false depositions to cover up their illegal excessive force. Plaintiff's constitutional excessive force claim, and assault and battery claims are not subject to the defense of qualified immunity by Defendants Police Officer Lockett and Police Officer Paul Montalto. These Defendants are not entitled to qualified immunity. [16] Defendants' conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Mr. and Mrs. Grant. Defendants' conduct warrants punitive damages to protect the public in an amount according to proof.

        WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

---

[14]  Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995).

[15]  Cowan v. Breen, 352 F.3d 756, 764 n.7 (2d Cir. 2003)

[16]  Jones, 465 F.3d at 63.

## SEVENTH CAUSE OF ACTION
False Imprisonment
42 U.S.C. § 1983
**(Against Defendant Lockett)**
<u>As to Mrs. Grant</u>

141.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

142.    Mrs. Grant alleges that Defendant Police Officers Lockett violated her Fourth Amendment rights by subjecting her to "seizure of her person" and the "loss of her physical liberty" by ordering her, under the color of law, to "get back in the house or I will Tase you", repeating his threat to Tase her if she did not immediately go back into her home. Mrs. Grant at all times was at liberty to stand on the porch of her own home, free from such an illegal order from Officer Damon Lockett. She complied with Officer Lockett's unlawful order and involuntarily went inside her home in fear of being shocked with a Taser gun.

 The elements of a Fourth Amendment false arrest claim under 42 U.S.C. § 1983 are the same as those for a false arrest claim under New York law. [17]"To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." [18]

143.    The evidence proves by the requisite preponderance standard that Police Officer Lockett created a "loss of her physical liberty" for Mrs. Grant by confining her inside her home. Mrs. Grant was at all times conscious of this unprivileged and humiliating confinement to which she did not consent. Defendant Damon Lockett is liable for the damages Mrs. Grant suffered, including mental and emotional distress, humiliation and shock. Defendant's conduct was intentional, malicious, fraudulent, and show a reckless disregard of the constitutional rights, safety and health of Mrs. Grant. Defendant's conduct warrants punitive damages to protect the public in an amount according to proof.

---

[17]  *Kraft v. City of New York*, 696 F. Supp. 2d 403, (S.D.N.Y. 2010).
[18]  *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir.2003) Where an officer has probable cause to arrest a plaintiff, the confinement is privileged. Id. at 76. The burden of showing that there was probable cause for the arrest is on the officer. Id.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## NEW YORK STATE LAW CLAMS

### EIGHTH CAUSE OF ACTION
False Imprisonment
**(Against Officer Lockett and Montalto and Novitsky)**
**As to Mr. Grant**

144.   Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

145.   Plaintiff Alonzo Grant alleges that Defendants Police Officer Lockett and  Police Officer Paul Montalto falsely imprisoned him  by subjecting him to "an unreasonable search and seizure of his person" and the "loss of his physical liberty."

146.   The evidence proves by the requisite preponderance standard that Police Officer Paul Montalto and Police Officer Lockett and Sgt. Novitsky, and each of them, engaged in the False Imprisonment of Mr. Grant by confining him at his home, and at the hospital, and at all times until release. Mr. Grant was at all times conscious of his unprivileged and humiliating confinement to which he did not consent. Defendants, and each of them, are liable for Mr. Grant's damages. Defendants' conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Mr. and Mrs. Grant. Defendants' conduct warrants punitive damages to protect the public in an amount according to proof.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### NINTH CAUSE OF ACTION
Trespass
**(Against Defendant Lockett)**
**As to Mr. and Mrs. Grant**

147.   Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

148.   Mr. and Mrs. Grant allege that they are the owners of their home and that Defendant Damon Lockett entered their home without their consent, permission or agreement. His entry

was unwelcomed. Defendant Damon Lockett entered their home without knocking or ringing either of their two (2) door bells. This was an abuse of police power and presumptively based on racism and classism in that Defendant Damon Lockett, an African-American, would not have entered the home of a rich white family in a wealthy, affluent neighborhood in the same manner. Defendant Damon Lockett felt free to open the door of Mr. and Mrs. Grant's home and walk right in, completely disregarding their constitutional rights of privacy under federal and state law.

149.    Defendant Damon Lockett trespassed on the property of Mr. and Mrs. Grant, causing Mr. and Mrs. Grant great distress, humiliation and injuries and harm and committed a major invasion of their privacy. Defendant's conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Mr. and Mrs. Grant. Defendant's conduct warrants punitive damages to protect the public in an amount according to proof.

## TENTH CAUSE OF ACTION
Invasion of Privacy
42 U.S.C. 1983
**(Against Defendant Lockett)**
**As to Mr. and Mrs. Grant**

150.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

151.    Defendant Damon Lockett invaded the privacy of Mr. and Mrs. Grant when Defendant Damon Lockett entered their home without their consent, permission or agreement. His entry was unwelcomed. Defendant Damon Lockett entered their home without knocking or ringing either of their two (2) door bells, and without asking for admission into their home.

152.    Defendant Damon Lockett's invasion of privacy caused Mr. and Mrs. Grant great distress, humiliation, injuries and harm and was a major invasion of their privacy. Defendant's conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Mr. and Mrs. Grant. Defendant's conduct warrants punitive damages to protect the public in an amount according to proof.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### ELEVENTH CAUSE OF ACTION
Negligent Infliction Of Emotional Distress
**(Against Officer Lockett and Montalto)**
**As to Mrs. Grant**

153.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

154.    In New York, the general rule is that bystanders are not owed a duty and cannot assert such a claim; however, New York recognizes an exception to this principle: the "zone of danger"[19] rule. The exception is premised on the concept that the defendant breached a duty owed to the plaintiff. Where a defendant's [negligent conduct creates] an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence, the plaintiff may recover damages for such injuries.

155.    Mrs. Grant followed her husband outside when Officer Lockett ordered him to "go outside and talk with my partner". Walking down the stairs inside of her home, she saw Officer Lockett grabbing her husband from behind and throwing him over the iron railing. Standing on her porch, Mrs. Grant screamed at Police Officers Lockett and Montalto to "stop beating him…!! Stop!! Stop!! He called you!! He called you!!! She saw his bloody face and his futile efforts to protect his face with his right hand from the hail of fast blows of both officers' fists, and she screamed to stop choking him. She felt powerless to stop the officers' violent assault, without provocation or cause, on her husband.

---

[19]   The zone of danger rule was first recognized by the New York Court of Appeals in *Bovsun v. Sanperi*, 61 N.Y.2d 219. In that case, the plaintiff was inspecting the rear of his family's vehicle when another vehicle crashed into the car, pinning him between the two vehicles and causing serious injuries. The court ruled that plaintiff's wife and daughter, who were in the vehicle at the time, were within the zone of danger, even though they did not actually see the collision, as they were "subjected to an unreasonable risk of bodily injury" by defendant's negligent conduct, were instantly aware of the impact, feared for their immediate family member's safety and immediately observed his serious injuries.

156.   Officer Lockett yelled at Mrs. Grant to "get back in the house or I will Tase you" repeating his threat to Tase her if she did not go back into her home. Mrs. Grant was in the "zone of danger", directly witnessing her husband being beaten by officers Lockett and Montalto. Mrs. Grant has and hereby makes a valid claim for Negligent Infliction of Emotional Distress as she suffered severe and lasting mental and emotional distress.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

**TWELFTH CAUSE OF ACTION**
Intentional Infliction Of Emotional Distress
**(Against Officer Lockett and Montalto)**
**As to Mr. and Mrs. Grant**

157.   Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

158.   Under New York law, "To prevail on a cause of action for intentional infliction of emotional distress, a plaintiff must prove four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard for the substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." [20]

159.   Defendants Police Officer Lockett and Police Officer Paul Montalto inflicted objectively excessive and unreasonable force upon Mr. Grant, including bloodying his face, head, body, breaking his nose, cutting his lip and bashing a gash in the side on his head, requiring stitches. Defendant Police Officer Lockett and Police Officer Montalto engaged in extreme and outrageous conduct that should not be tolerated in a civilized society and is not tolerated in our society by police officers who are our public servants.

160.   Officer Lockett's yelling at Mrs. Grant to "get back in the house or I will Tase you", repeating his threat to Tase her if she did not go back into her home was also extreme and outrageous conduct, since Officer Lockett was abusing his authority to make such an illegal order to restrain the liberty of Mrs. Grant. Mr. and Mrs. Grant have each suffered damages, injuries and harms as a direct result of the extreme and outrageous conduct of both officers

---

[20]   *Marmelstein v. Kehillat New Hempstead, 45 A.D.3d 33, 841 N.Y.S.2d 493, 499 (2007).*

Lockett and Montalto. Defendants' conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Mr. and Mrs. Grant. Defendants' conduct warrants punitive damages to protect the public in an amount according to proof.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### THIRTEENTH CAUSE OF ACTION
Malicious Prosecution
**(Against Officer Lockett and Montalto and Novitsky)**
**As to Mr. Grant**

161.   Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

162. "A plaintiff alleging the constitutional tort of malicious prosecution in an action pursuant to § 1983 must establish a termination of the prosecution in his favor in accordance with applicable state law." [21]Rather, the law in New York could not be clearer: "[A]ny termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." [22]

163. In a § 1983 malicious prosecution claim, the presumption of probable cause is likewise analyzed in accordance with state law. "[T]he analysis of the state and the federal claims is identical."[23] Mr. Grant alleges that Defendants, and each of them, suppressed exculpatory evidence, fabricated statements, and failed to adequately investigate evidence of innocence. The prosecution pressed against Mr. Grant was procured by fraudulent and coercive conduct by Officers Lockett, Montalto and Sergeant Novitsky by filing false depositions, and ignoring eye witness statements at the scene. These claims are sufficient to put each Defendant on notice of

---

[21]  *Hygh v. Jacobs,* 961 F.2d 359, 367-68 (2d Cir. 1992) (emphasis added); see also, Pinaud v. County of Suffolk, 52 F.3d 1139 (2d Cir. 1995) not "New York law does not require  a malicious prosecution plaintiff to prove his innocence, or even that the termination of the criminal proceeding was indicative of innocence." *Rothstein v. Carriere,* 373 F.3d 275, 286 (2d Cir. 2004).

[22]  *Cantolino v. Danner*, 96 N.Y.2d 391, 395, 754 N.E.2d 164, 729 N.Y.S.2d 405 (2001).

[23]  *Boyd v. City of New York,* 336 F.3d 72, 75 (2d Cir. 2003)

what they allegedly did or did not do. Mr. Grant alleges that these Defendant Police Officers, including Sergeant Novitsky, acted with malice under New York law because they "commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."[24] Thus Mr. Grant is entitled to relief and to all of his damages against all Defendants. Defendants' conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Mr. and Mrs. Grant. Defendants' conduct warrants punitive damages to protect the public in an amount according to proof.

      WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## FOURTEENTH CAUSE OF ACTION
Negligent Training, Hiring, Retention, And Supervision
**(Against City of Syracuse)**
**As to Mr. and Mrs. Grant**

164.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

165.    Defendant City of Syracuse maintains a custom, policy and pattern and practice of negligently failing to exercise reasonable care in training, supervising and hiring its officers. Defendant City of Syracuse has a duty to conduct training, hiring, retention, and supervision of its police officers so these agents and employees will protect and serve, rather than break the very laws, including the United States Constitution, they are sworn to uphold. Defendant City of Syracuse breached, and still breaches, this legally imposed duty by allowing its police officers to engage in lawless behavior and conduct, including terrorizing the citizens of the city.

166.    Plaintiffs further allege that the City of Syracuse maintains a custom, policy, pattern and practice of inaction regarding the disciplining of police officers for excess force; and a custom, policy, practice and pattern of failing to discipline it Police Officers for violating the constitutional rights of its citizens. Plaintiffs also allege that the City of Syracuse Police Department has an inadequate Use of Force Policy, which does not clearly draw a bright line defining constitutional violations for excessive force such as choking, using "weighted gloves", or knees in the back of a suspect. The City of Syracuse's policy, custom, practice and pattern

---

[24]  *Lowth*, 82 F.3d at 573

were a motivating factor in causing a deprivation of Mr. Grant's constitutional rights and causing all of his injuries, damages and harms.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### FIFTEENTH CAUSE OF ACTION
Loss Of Consortium
**(Against All Defendants)**
**As to Mrs. Grant**

### *Mrs. Grant's Loss of Consortium Claim*

166.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

167.    Mrs. Stephanie Grant has been married to Mr. Grant for 28 years. They have three children, two adult females and one minor male. Under New York Law, Mrs. Grant makes her claim for the loss of Mr. Grant's "services", including household services such as cooking, cleaning, lawn work as well as loss of love, companionship, affection and sexual relations, disposition and temperament. Mr. Grant suffers post-concussive syndrome, including headaches, memory loss, anxiety, fear, insomnia, and severe mental and emotional distress, all of which divert and steal his attention from Mrs. Grant. Mrs. Grant has sustained a great loss. Her husband is not the person he has been for the previous 28 years due to his daily and continuing suffering from injuries he incurred at the hands of Defendants, and each of them.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### SIXTEENTH CAUSE OF ACTION
Defamation Per Se
**(Against All Defendants)**
**As to Mr. Grant**

168. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

169.    Libel Per Se consists of "[a]ny written or printed article . . . if it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society."*Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977) (where "the

complaint states a good cause of action for libel per se . . . there was no need for plaintiff to allege special damage").

170. Defendant Police Officers Damon Lockett, Paul Montalto, Police Officer Brian Novitsky, committed Defamation and Libel Per Se against Mr. Grant when each intentionally and knowingly published false Sworn Deposition Reports, falsely charging Mr. Grant with serious crimes, which they knew he did not commit.

171. Mr. Grant has suffered damages, injuries and harms as a direct result of the Libel and Defamation Per Se conduct by officers Lockett and Montalto and Novitsky . Defendants' conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Mr. and Mrs. Grant. Defendants' conduct warrants punitive damages to protect the public in an amount according to proof.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.


## X. REQUEST FOR DECLARATORY JUDGMENT

172.   Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

173.   Since the State of New York does not have a law permitting wrongfully accused persons to reclaim their status of innocent, a Declaratory Judgment is hereby requested and needed, declaring that Mr. Grant is factually innocent of the dismissed charges. Plaintiffs request a Declaration that Mr. Grant is, and has always, been factually innocent of all the dismissed charges. This Declaration is consistent with the findings by the Syracuse District Attorney and the Syracuse Citizen Review Board, compelling a Declaratory Judgment that Mr. Grant is Factually Innocent of the dismissed charges. Such a Declaration is also consistent with the Due Process Clause protection in the Fourteenth Amendment of the United States Constitution. Simple because the charges were dismissed, does not restore Mr. Grant's pre-arrest, pre-criminally charged status of innocence is not restored, a status he has enjoyed and taken pride in for all of his 53 years before his wrongful criminal prosecution.

Fairness, Justice and the Due Process provision of the 14th Amendment require a Declaratory Judgment of Factual Innocence for Mr. Grant.

174.   Plaintiffs further request a Declaratory Judgment that the Defendant Police officers filed false police report depositions. All of the evidence, the facts established by each the witnesses, including the patently false and contrived Sworn Deposition Testimony of Defendants Officers Lockett, Montalto, and Novitsky, as confirmed by the Syracuse District Attorney and the Syracuse Citizen Review Board, support and compel a Declaratory Judgment as follows: *Defendant Officers Lockett, Montalto, and Novitsky willfully made False Statements in their Deposition Police Reports, and by so doing, each violation is punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.*

175.   This Declaratory Judgment is needed for the benefit of the Defendant Police Officers, the Syracuse Police Department, and for the Public to restore public trust in the Syracuse Police Department and to heal the Syracuse Community from a metastasizing mistrust in the Police, one of our most valued public servants.

## PRAYER FOR RELIEF

1.   For special and economic damages, including lost wages, for all Claims

2.   For general and non-economic damages for all Causes of Action;

3.   For $3,000,000.00 against each defendant, individually and severally for brain damage, pain, bleeding, swelling,  misery, suffering, lost of enjoyment of life, for lost of ability to pursuit happiness, for severe mental and emotional distress, anxiety, humiliation and other non-economic and economic damages.

4.   For punitive damages for all Claims only against the Defendant Police Officers DAMON LOCKETT, PAUL MONTALTO, BRIAN NOVITSKY, and  in their individual capacity for the protection of the public;

5.   For pre-judgment and post-judgment interest at the prevailing legal rate;

6.   For costs of the suit including reasonable attorney's fees;

7.   An order declaring Mr. Grant factually innocent of all dismissed charges;

8.      An order declaring that Officers Lockett, Montalto and Novitsky filed false Police Reports, committing Class A misdemeanors.

9.      An order declaring that the City of Syracuse Use of Force Policy is inadequate to protect the constitutional rights of individuals and citizens who come in contact with the Syracuse police.

10.     An order declaring that such force as Choke holds, knees in an individual's back, head strikes, and death due to "Excited delirium" are per se excessive force.

11.     A Declaratory Judgment as follows: ***Defendant Officers Locket, Montalto, and Novitsky willfully made False Statements in their Deposition Police Reports, and by so doing, each violation is punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York."***

12.     For such other and further relief, including injunctive relief, as the Court may deem proper.

**Dated: May 19, 2015**                    **RESPECTFULLY SUBMITTED,**
                                           **LAW OFFICES OF BONNER & BONNER**

                                           */ s/*Charles A. Bonner
                                           Charles A. Bonner Attorney for
                                           Alonzo Grant and Stephanie Grant
                                           *Pro Hac Vice*


**Dated: May 19, 2015**                    **RYDER LAW FIRM**

                                           /s/ Jesse P. Ryder
                                           Jesse P. Ryder, Esq.
                                           Attorney for
                                           Alonzo Grant and Stephanie Grant

**ALONZO AND STEPHANIE GRANT AMENDED COMPLAINT FOR DAMAGES  –  74**

# EXHIBIT 1



# EXHIBIT 2



# EXHIBIT 3

