UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALONZO GRANT, *et al*.,

                        Plaintiffs,

       -against-                            5:15-CV-445 (LEK/TWD)

CITY OF SYRACUSE, *et al.*,

                        Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On April 14, 2015, Alonzo and Stephanie Grant commenced this action pursuant to

42 U.S.C. §§ 1983, 1985, and 1986, and New York law, against the City of Syracuse, the

Syracuse Police Department (the "SPD"), and various named and unnamed Police Department

officers. Dkt. No. 1 ("Complaint"). The four named officers are Officer Damon Lockett, Officer

Paul Montalto, Sergeant Brian Novitsky (collectively, "Arresting Officers"), and Chief of Police

Frank Fowler. Id. at 1. On May 19, 2015, Plaintiffs filed an Amended Complaint. Dkt. No. 10

("Amended Complaint").[1]

In the Amended Complaint, Plaintiffs assert claims arising out of an incident at their

house on the evening of June 28, 2014, which led to Alonzo's arrest. Alonzo asserts claims for

false arrest, excessive force, malicious prosecution, and conspiracy to interfere with civil rights

in violation of the United States Constitution. Amended Compl. at 48–69. He also asserts claims

---

[1] Plaintiffs' Amended Complaint includes "Does 1-100" as Defendants in addition to the four named police officers. Amended Compl. at 1. Because Plaintiffs failed to identify "Does 1-100" during the course of discovery, any claims against them must be dismissed. Bishop v. City of New York, No. 13-CV-9203, 2016 WL 4484245, at *3 (S.D.N.Y. Aug. 18, 2016) (citing Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1997)).

for assault and battery, false imprisonment, and defamation in violation of New York law. Id. at 61, 65, 71. Additionally, Stephanie asserts claims for false imprisonment in violation of the Constitution, id. at 64, and negligent infliction of emotional distress and loss of consortium in violation of New York law, id. at 67, 71. Finally, Alonzo and Stephanie together assert claims under the Constitution for unlawful entry against Lockett and for failure to train, supervise, or discipline police officers against the City and the Police Department, id. at 57, 66, and under New York law for trespass, intentional infliction of emotional distress, and negligent training, hiring, retention, and supervision of police officers, id. at 65–66, 68, 70.

Presently before the Court is Defendants' motion for summary judgment, filed on March 21, 2017. Dkt. No. 63 ("Motion"); see also Dkt. Nos. 63-2 ("Defendants' Statement of Material Facts"), 63-3 ("Memorandum"). On May 2, 2017, and May 8, 2017, Plaintiffs filed papers in opposition. Dkt. Nos. 68 ("Opposition"), 73-1 ("Plaintiffs' Statement of Material Facts"). Defendants filed an Amended Reply on May 18, 2017. Dkt. No. 78 ("Amended Reply").[2] Pursuant to the Court's request, Dkt. No. 80, the parties submitted supplemental briefings regarding Alonzo's malicious prosecution and defamation claims. Dkt. Nos. 81 ("Defendants' Supplement"), 83 ("Plaintiffs' Supplement"), 84 ("Defendants' Reply Supplement.") For the reasons stated below, Defendants' Motion is granted in part and denied in part.

---

[2] Defendants filed their original reply on May 8, 2017. Dkt. No. 71. However, because the Court allowed Plaintiffs to file a statement of material facts on May 8, 2017—six days after they originally filed opposition papers—the Court also provided Defendants leave to file an amended reply. Dkt. No. 77.

## II.    BACKGROUND

At all relevant times, Plaintiffs resided at 105 Hudson Street in the City ("Grant Home"), where they lived with their youngest child, Alonzo Grant, Jr. Defs.' SMF ¶¶ 1–2. On Saturday, June 28, 2014, Alonzo left the Grant Home at approximately 7:15 AM in order to perform work at his friend's farm. Dkt. No. 63-38, Ex. JJ ("Alonzo Deposition") at 23. He returned at approximately 3:00 PM, and he consumed two beers while sitting outside. Defs.' SMF ¶ 3; Alonzo Dep. at 24–25. After grilling dinner, Alonzo entered the Grant Home in order to shower at approximately 6:30 PM. Defs.' SMF ¶ 4; Alonzo Dep. at 28. Upon noticing items on the floor and dirty dishes in the kitchen, Alonzo became upset because he "expected things to be a little neater." Defs.' SMF ¶¶ 4–5. "In a loud voice," he told Stephanie and Alyssa, Plaintiffs' adult daughter, that "you guys need to get off your asses and make sure the house get [sic] take care of." Id. ¶ 6. Alonzo's comment precipitated an argument between Alonzo, Stephanie, and Alyssa. Id. ¶ 8. Alonzo asked Alyssa to leave the Grant Home three times. Id. ¶¶ 10–11.

Eventually, Alyssa left the Grant Home and began to argue with Plaintiffs' neighbor. Id. ¶ 12. Alonzo called 911 in response to this argument. Id. ¶ 13. He "yelled" at the 911 dispatcher to "send the cops over here right now," because Alyssa was "acting like a fucking asshole and is just fucking with my house, okay." Id. at 14. Alonzo hung up the phone within thirty seconds, and the Police Department distributed the following bulletin: "M911 OPEN LINE W/ ARGUMENT – MALE REQUESTING OFFICERS BE SENT TO ADDRESS RE: DAUGHTER ALYSSA GRAHAM – COMPL[AINANT] UNCOOPERATIVE – DISC." Id. at 16–17. SPD Officers Lockett and Montalto arrived at the Grant Home less than five minutes

later. Defs.' SMF ¶ 18. Upon their arrival, Plaintiffs told them that their assistance was not needed. Defs.' SMF ¶ 19.

However, Defendants allege that Plaintiffs were arguing loudly inside their home, and Alonzo appeared to be extremely upset. Defs.' SMF ¶¶ 20–21. In turn, Lockett entered the Grant Home and saw Alonzo "flailing his arms violently." Defs.' SMF ¶¶ 22–23. Lockett asked Alonzo to exit his house and speak with Montalto. Id. ¶ 24. While exiting, Alonzo "shoved" the front door, causing it to "slam" against the iron rail of the house's front porch. Id. ¶¶ 25–26. Lockett then attempted to place Grant under arrest, but Alonzo resisted. Id. ¶¶ 28–29. In order to subdue Alonzo, Lockett and Montalto punched and kicked him, and Lockett placed him in a "hold" to immobilize his head. Id. ¶¶ 30–32. Eventually, the officers handcuffed Alonzo. Id. ¶ 35.

In contrast, Plaintiffs allege that their argument had ceased by the time Lockett and Montalto arrived. Pls.' SMF ¶¶ 79–80. Plaintiffs were inside their home, and the officers arrived in separate cars approximately thirty seconds apart. Id. ¶¶ 81–85. Lockett approached the Grant Home first, and both Plaintiffs told Lockett that "his services were no longer necessary as [Alyssa] had left the premises." Id. ¶¶ 86–87. Stephanie spoke to Lockett through an open window, Dkt. No. 63-39, Ex. KK ("Stephanie Deposition") at 23, while Alonzo opened the house's front door to speak to him, Pls.' SMF ¶ 87. Lockett did not respond, and Alonzo closed the door and ascended the house's interior staircase. Pls.' SMF ¶¶ 88–89.

Alonzo then spoke to Stephanie about his desire for the house to be clean and that he was tired from work. Id. ¶ 90. He gesticulated while he spoke, but he did not yell or pace wildly. Id. ¶ 92. At some point during this conversation Lockett entered the Grant Home "without invitation

4

and without announcing himself." <u>Id.</u> ¶ 95. Lockett asked, "What's going on here?" <u>Id.</u> ¶ 97. Alonzo explained that his daughter had been arguing with his neighbor, which is why he called 911, but now Alyssa was gone. <u>Id.</u> ¶ 98. Lockett ordered Alonzo to go outside and speak with Montalto, and Alonzo immediately complied. <u>Id.</u> ¶¶ 102–03. To exit the Grant Home, Alonzo pushed open the house's storm door, which lacked a spring and therefore struck the front porch's iron railing and made a noise. <u>Id.</u> ¶ 108.

After Alonzo descended three steps from the top of the porch, Lockett locked Alonzo's hands behind his back. <u>Id.</u> ¶ 110. Lockett did not tell Alonzo that he was under arrest. <u>Id.</u> ¶ 111. Montalto, who was standing at the bottom of the house's outdoor staircase, then ascended the steps and grabbed Alonzo's ankles. <u>Id.</u> ¶¶ 112–13. The officers threw Alonzo over the staircase's railing, and Alonzo landed on his back. <u>Id.</u> ¶ 113. The officers punched and kicked Alonzo repeatedly, and Lockett placed him in a chokehold. <u>Id.</u> ¶¶ 116, 123–24. After Stephanie questioned the officers' actions, she was told to "take [her] ass back in the house" or she would be "taze[d]." <u>Id.</u> ¶ 119. Eventually the officers handcuffed Alonzo, who by then was bleeding from his nose. <u>Id.</u> 131, 137.

Following the incident, Alonzo received medical attention from paramedics and was transported to the hospital. Defs.' SMF ¶¶ 37, 39. Plaintiffs allege that Alonzo suffered a concussion, broken nose, and a laceration above his left eye that required stitches. Pls.' SMF ¶ 142. The officers charged Alonzo with violating New York Penal Law § 240.26(1) ("Harassment in the Second Degree"), Penal Law § 240.20(1) and Criminal Procedure Law § 530.11 ("Domestic Disorderly Conduct"), and Penal Law § 205.30 ("Resisting Arrest"). Defs.' SMF ¶ 41. On September 10, 2014, the Syracuse Criminal Court dismissed these charges in the

interest of justice pursuant to Penal Law § 170.30. Id. ¶ 42; Dkt. No. 63-9, Ex. G ("City Court File") at 23.[3]

## III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some

---

[3]   The cited page numbers for this document refer to those generated by the Court's electronic filing system ("ECF").

metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000); <u>Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.</u>, 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.    DISCUSSION

### A.  Alonzo's Claims Against Individual Officers

#### 1. Section 1983 Claims

Plaintiffs have brought this action pursuant to § 1983, which provides a cause of action for anyone subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under the color of state law. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." <u>Thomas v. Roach</u>, 165 F.3d 137, 142 (2d Cir. 1999).

##### a.  False Arrest and False Imprisonment

###### i. Applicable Law

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV; <u>accord</u> <u>Garenani v. County of Clinton</u>, 552 F. Supp. 2d 328, 333 (N.D.N.Y. 2008). "The unreasonable seizure of a person in the form of a false

arrest and imprisonment is violative of the Fourth Amendment and actionable under § 1983."
Garenani, 552 F. Supp. 2d at 333.

"A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). Moreover, "[u]nder New York law, the torts of false arrest and false imprisonment are synonymous." Fincher v. County of Westchester, 979 F. Supp. 989, 998 (S.D.N.Y. 1997) (citing Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991)). To prove the elements of false arrest under New York law, a plaintiff must show that "(1) the defendant intended to confine plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Garenani, 552 F. Supp. 2d at 333 (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).

"The existence of probable cause to arrest is a complete defense to a claim of false arrest and imprisonment; in other words, it renders the confinement privileged." Id. (citing Bernard, 25 F.3d at 102 and Weyant, 101 F.3d at 852). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. "A district court must look to the 'totality of the circumstances' in deciding whether probable cause exists to effect an arrest." Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (quoting Illinois v. Gates, 462 U.S. 213, 233 (1983)).

Even if there was not probable cause to arrest the plaintiff, the defense of qualified immunity entitles public officials to freedom from suit, as a result of the consequences of the performance of their discretionary duties, when "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Martinez v. Simonetti, 202 F.3d 625, 633–34 (2d Cir. 2000) (quoting Weyant, 101 F.3d at 857). Qualified immunity is an affirmative defense, and, as such, defendants bear the burden of proving that the privilege of qualified immunity applies. Coolick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012). In considering a qualified immunity defense, courts should not be "concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene." Martinez, 202 F.3d at 634 (quoting Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995)).

"[I]n the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause." Martinez, 202 F.3d at 634 (citing Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1987)). "An officer's determination is objectively reasonable"—and thus, arguable probable cause is demonstrated—when "officers of reasonable competence could disagree on whether the probable cause test was met." Jenkins, 478 F.3d at 87 (quoting Lennon, 66 F.3d at 423–24). As the Second Circuit explained in Jenkins, "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause . . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of the arrest did not add up to probable cause, the fact that it came close does not immunize the officer." Id.

*ii. Analysis*

Alonzo brings claims for false arrest and false imprisonment stemming from his arrest on June 28, 2014.[4] Defendants contend that the Arresting Officers had probable cause to arrest Alonzo, and that therefore his false arrest claim must be dismissed. Mem. 19–22. Defendants also contend that the Arresting Officers' actions in arresting Alonzo are shielded by qualified immunity. Id. at 23–24.

It is undisputed that the Arresting Officers: (1) intended to confine Alonzo by arresting him; (2) Alonzo was conscious of that confinement; and (3) Alonzo did not consent to his confinement. Thus, the only issue in dispute is whether Alonzo's confinement was privileged—in other words, whether the officers had sufficient probable cause to arrest Alonzo, or at least arguable probable cause such that the their actions are shielded by qualified immunity.

As outlined above, Plaintiffs and Defendants sharply dispute what happened at the Grant Home on the evening of June 28, 2014. The Court concludes that summary judgment is inappropriate on this claim, as there are material issues of fact as to the circumstances surrounding Alonzo's arrest. See Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) ("Where the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence *vel non* of probable cause is to be decided by the jury."); Yorzinski v. City of New York, 175 F. Supp. 3d 69, 80 (S.D.N.Y. 2016) (denying defendants' motion for summary judgment on false arrest claim since "it is not

---

[4]  The Amended Complaint includes claims on behalf of Alonzo for false arrest under § 1983 and false imprisonment under New York law. Amended Compl. 61, 65. The Court will analyze the claims together, because—as described above—a § 1983 claim for false arrest is substantially the same as a claim for false arrest or false imprisonment under New York law. Jenkins, 478 F.3d at 84; Fincher, 979 F. Supp. at 998.

clear from the record that [plaintiff] was, in fact, 'disorderly'"); Milfort v. Prevete, 922 F. Supp.

2d 398, 406 (S.D.N.Y. 2013) ("If a jury were to credit Plaintiff's version of events, it could

conclude that the police lacked probable cause to arrest Plaintiff.").

According to Plaintiffs, Alonzo and Stephanie had ceased arguing by the time Lockett

and Montalto arrived. Pls.' SMF ¶¶ 79–80. Although Alonzo gesticulated while he spoke to

Stephanie about his desire for the house to be clean, he did not yell or pace wildly. Id. ¶ 92. He

also pushed his storm door open against an iron railing, making a noise, when he exited his

home. Id. ¶ 108. Viewing these facts in the light most favorable to Alonzo, his conduct does not

necessarily evidence the mens rea that is required to violate Penal Law § 240.20 or Criminal

Procedure Law ("CPL") § 530.11.[5]

The disorderly conduct statute requires that the defendant act with 'intent to cause public

inconvenience, annoyance or alarm' or with recklessness 'creating a risk thereof.'" Provost v.

City of Newburgh, 262 F.3d 146, 158 (2d Cir. 2001) (quoting § 240.20)); see also People v.

Baker, 984 N.E.2d 902, 905 (N.Y. 2013) ("As is clear from precedent, critical to a charge of

disorderly conduct is a finding that defendant's disruptive statements and behavior were of a

public rather than an individual dimension. This requirement stems from the mens rea

_____

[5] Criminal Procedure Law § 530.11 provides concurrent jurisdiction in the family courts and criminal courts of New York State for proceedings concerning acts which would constitute disorderly conduct, as defined in the Penal Law, and also involve members of the accused's family. Section 530.11 sweeps more broadly than Penal Law § 240.20, because it does not require that offensive conduct occur in public. However, it still contains the same mens rea requirement as § 240.20. See Sharon D. v. Dara K., 13 N.Y.S.3d 656, 659 (App. Div. 2015) ("Although the conduct necessary to support a finding of the family offense of disorderly conduct is not limited to that which took place in public, the requisite mens rea is that a person had the 'intent to cause public inconvenience, annoyance or alarm, or recklessly creat[ed] a risk thereof.'" (quoting § 240.20) (citations omitted)).

component . . . ."). Even under Defendants' version of the events, in which Alonzo violently

flailed his arms at Stephanie and slammed open his front door, Defs.' SMF ¶¶ 22–26, the officers

did not make any accusations "establishing the proximity of that altercation to neighbors or other

members of the public such that [Alonzo's] actions could support a logical inference that [he]

acted with intent or recklessness in regard to members of the public," Sharon D. v. Dara K.,

13 N.Y.S.3d 656, 659 (App. Div. 2015) (finding that altercation between mother and

grandmother in the confines of great-aunt's home did not illustrate requisite mens rea).

      Therefore, a reasonable jury could find that the Arresting Officers did not have sufficient

probable cause to arrest Alonzo for disorderly conduct. See, e.g., Provost, 262 F.3d at 158

(holding that mens rea did not necessarily exist when plaintiff "banged on the glass," "hollered,"

and "yelled through the window" inside a police station, since plaintiff wanted to communicate

with an officer); People v. Pritchard, 265 N.E.2d 532, 533 (N.Y. 1970) (holding that defendant,

who fought with another teenager on the dance floor of a crowded nightclub, did not necessarily

intend to cause public inconvenience, annoyance, or alarm, because the fight was prompted by a

personal insult); Kirsten G. v. Melvin G. Sr., 39 N.Y.S.3d 460, 462 (App. Div. 2016) (holding

that defendant's "ranting and raging" outside of her apartment door did not constitute disorderly

conduct because no evidence was presented regarding proximity of neighbors or other members

of the public, or that her conduct could have caused public alarm).

      The Court also concludes that these issues of fact preclude a determination that the

Arresting Officers possessed arguable probable cause to arrest Plaintiff, and therefore the Court

cannot determine whether their actions are protected by qualified immunity. See, e.g., Thomas,

165 F.3d at 143 ("Summary judgment on qualified immunity grounds is not appropriate when

there are facts in dispute that are material to a determination of reasonableness."); Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994) ("Though '[i]mmunity ordinarily should be decided by the court,' that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required." (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)). As described above, there are material issues of fact as to whether Alonzo's conduct prior to his arrest was disorderly, and thus whether the Arresting Officers' decision to arrest him was objectively reasonable. See Milfort, 922 F. Supp. 2d at 407 ("Under Plaintiff's version [of the facts], his arrest was entirely unprovoked. Under those circumstances, no reasonably competent officer would have acted in the same way.").

Accordingly, Defendants' motion for summary judgment with respect to Alonzo's false arrest and false imprisonment claims are denied.

### b. Excessive Force

#### i. Applicable Law

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Freshwater, 623 F.3d 90, 96 (2d. Cir. 2010); see also Graham v. Connor, 490 U.S. 386, 394–95 (1989). The Court does not evaluate the record in hindsight, but, instead, from the "perspective of a reasonable officer on the scene." Graham, 490 U.S. at 396. The court must carefully review the totality of the circumstances of each particular case, considering: "(1) the nature of and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Tracy, 623 F.3d at 96 (citing Graham, 490 U.S. at 396). "Application of

physical force is excessive when it is more than is necessary under the circumstances." Brown v. City of New York, No. 11-CV-1068, 2013 WL 491926, at *10 (S.D.N.Y. Feb. 8, 2013) (citing Curry v. City of Syracuse, 316 F.3d 324, 332 (2d Cir. 2003)).

"Given the need for such a fact-intensive inquiry, 'granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively reasonable.'" Hill v. City of New York, No. 03-CV-1283, 2005 WL 3591719, at *3 (E.D.N.Y. Dec. 30, 2005) (quoting Amnesty America v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004)); see also Greenaway v. County of Nassau, 97 F. Supp. 3d 225, 235 (E.D.N.Y. 2015) ("Because objective reasonableness is extremely fact-specific, summary judgment on the issue is often inappropriate.").

Here, as described above, a significant dispute exists between the parties regarding Alonzo's conduct prior to and during the arrest. Accordingly, the Court finds that the determination as to the objective reasonableness of the force used is one to made by a jury following a trial. See Jackson v. City of New York, 939 F. Supp. 2d 235, 254 (E.D.N.Y. 2013) (finding that summary judgment was inappropriate on the issue of excessive force because of the significant dispute between plaintiff's and officers' descriptions of the arrest and force used). Therefore, Lockett and Montalto are not entitled to summary judgment on Plaintiffs' excessive force claim, nor are they entitled to qualified immunity. See Curry, 316 F.3d at 334 ("In this case it is impossible to 'determine whether the officers reasonably believed that their force was not excessive when several material facts [are] still in dispute, [and therefore] summary judgement on the basis of qualified immunity [is] precluded.'" (quoting Thomas, 165 F.3d at 144)); Milfort, 922 F. Supp. 2d at 409 ("Given the factual dispute as to the type and degree of force Defendants

14

employed against Plaintiff, the Court is unable to conclude as a matter of law that it was objectively reasonable for Defendants to believe that they were not violating Plaintiff's rights.").[6]

c.  Malicious Prosecution[7]

In order to establish a malicious prosecution claim under § 1983, a plaintiff must demonstrate "(1) that the defendant initiated a prosecution against plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with [actual] malice, . . . (4) that the prosecution terminated in plaintiff's favor, . . . [and] (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Noga v. City of Schenectady Police Officers, 169 F. Supp. 2d 83, 90 (N.D.N.Y. 2001) (quoting Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000)).

Alonzo brings a claim for malicious prosecution arising from the charges brought pursuant to his arrest. The elements in dispute are (1) whether the Arresting Officers had

---

[6]  The Amended Complaint's fifth cause of action asserts a claim of assault and battery against Lockett and Montalto. Amended Compl. at 61. Although Alonzo styles the cause of action as falling under § 1983, the Court assumes that he intended to bring this cause of action under New York state law, since his cause of action brought under § 1983 for excessive force already considers Lockett and Montalto's alleged assaults. Cf. Graham v. City of New York, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) ("Federal excessive force claims and state law assault and battery claims against police officers are nearly identical."). Since there are questions of fact regarding Alonzo's excessive force claims, there are also questions of fact regarding his state law assault and battery claims. Thus, the Court denies summary judgment on the assault and battery claims against Lockett and Montalto.

[7]  The Amended Complaint's thirteenth cause of action asserts a claim of malicious prosecution against the Arresting Officers. Amended Compl. at 69. Although this cause of action is included in the section of the Amended Complaint entitled "New York State Law Claims," id. at 65, Alonzo cites § 1983—and cases brought under § 1983—to support the claim, id. at 69. Therefore, the Court will analyze the claim as if it were brought under § 1983.

15

probable cause to initiate the prosecution; (2) whether Alonzo has demonstrated a final

determination of the criminal proceeding in his favor; and (3) whether Alonzo suffered a

sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights.

 As noted above, there are material issues of fact as to whether the Arresting Officers had

probable cause to arrest Alonzo.[8] With regard to whether Alonzo demonstrated a final

determination of the criminal proceeding in his favor, Defendants argue that because the

Syracuse Criminal Court dismissed the charges against Alonzo "in the interest of justice"

pursuant to CPL section 170.30, Alonzo cannot establish the favorable termination element.

Mem. at 31; see also City Court File at 23 (noting that charges were missed on September 10,

2014, "per 170.30"). This is incorrect.

 Pursuant to the New York Court of Appeals's decision in Cantalino v. Danner,

754 N.E.2d 164 (N.Y. 2001), the Second Circuit has adopted a case-by-case analysis as to

whether a dismissal in the interest of justice may constitute a favorable termination. Stampf v.

Long Island R. Co., 761 F.3d 192, 200 (2d Cir. 2014) (citing Cantalino, 754 N.E.2d at 164));

Norton v. Town of Brookhaven, 47 F. Supp. 3d 152, 160 (E.D.N.Y. 2014) (same). There is no

"per se rule that a dismissal in the interest of justice can never constitute favorable termination.

Rather . . . the question is whether, under the circumstances of each case, the disposition was

inconsistent with the innocence of the accused." Cantalino, 754 N.E.2d at 168.

---

 [8]  The Court notes that the probable cause inquiry for false arrest claims often differs
from the probable cause inquiry for malicious prosecution claims. E.g., Boyd v. City of New
York, 336 F.3d 72, 75–77 (2d Cir. 2003). However, if a plaintiff—as is the case here—"does not
allege that there was any difference in the facts known to the police officers between arrest and
arraignment," the Court need "analyze only the existence of probable cause at the time of []
arrest[]." Lanning v. City of Glen Falls, No. 116-CV-132, 2017 WL 922058, at *6 (N.D.N.Y.
Mar. 8, 2017). In any event, Defendants did not raise this issue in their Motion.

Defendants have presented no evidence that the dismissal of Alonzo's claims was inconsistent with innocence, either because it represented mercy on behalf of the court or the district attorney or because the accused accepted the charges. See id. (providing examples of inconsistency with innocence). In fact, a letter from William J. Fitzpatrick, the Onondaga County District Attorney, strongly indicates that his office moved to dismiss the charges against Alonzo because of his innocence. Dkt. No. 68-14, Ex. 11 ("Fitzpatrick Letter") at 2–3.[9] The Court cannot conclude at this stage of the proceedings that the reasons for dismissing the charges against Alonzo were inconsistent with his innocence.

However, Defendants are correct that Alonzo has not pointed to sufficient facts indicating that he suffered a post-arraignment liberty restraint that implicated his Fourth Amendment rights. Defs.' Supplement at 3. While the "case law from this Circuit is somewhat unclear with respect to the approach courts should take when considering this final element," Oxman v. Downs, 999 F. Supp. 2d 404, 413 (E.D.N.Y. 2014), the Amended Complaint is devoid of any detail regarding Alonzo's arraignment and the requirements that the Syracuse City Court may or may not have imposed upon him. Even assuming that Alonzo was arraigned and required to appear at the Syracuse City Court on three occasions, Defs.' Supplement at 3, "these allegations alone are insufficient" to demonstrate a sufficient liberty restraint implicating Alonzo's Fourth Amendment rights. Arbuckle v. City of New York, No. 14-CV-10248, 2016 WL 5793741, at *10 (S.D.N.Y. Sept. 30, 2016) ("Soriano's claim for malicious prosecution fails because Plaintiffs only allege that he was required to make at least three court appearances after

---

[9] The cited page numbers for this document refer to those generated by ECF.

his arraignment." (citing <u>Faruki v. City of New York</u>, 517 F. App'x 1, 2 (2d Cir. 2013)

(summary order))).

Accordingly, Defendants' motion for summary judgment with respect to this claim

is granted.

d.  <u>Section 1985 Conspiracy</u>

Section 1985 provides a statutory remedy where a plaintiff can prove a conspiracy to

violate his civil rights. <u>Vertical Broad., Inc. v. Town of Southampton</u>, 84 F. Supp. 2d 379, 389

(E.D.N.Y. 2000). Section 1985 does not create any substantive rights, but rather provides a

remedy for the deprivation of rights guaranteed by the United States Constitution. <u>Id.</u>

To state a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of
> persons of the equal protection of the laws, or the equal privileges
> and immunities under the laws; (3) an overt act in furtherance of the
> conspiracy; and (4) an injury to the plaintiff's person or property, or
> a deprivation of a right or privilege of a citizen of the United States.

<u>Roach</u>, 165 F.3d at 146. "A conspiracy is an agreement between two or more individuals, where

one individual acts in furtherance of the objective of the conspiracy, and each member has

knowledge of the nature and scope of the agreement." <u>Dove v. Fordham Univ.</u>, 56 F. Supp. 2d

330, 337 (S.D.N.Y. 1999). A plaintiff must provide "some factual basis supporting a meeting of

the minds, such that defendants entered into an agreement, express or tacit, to achieve the

unlawful end." <u>Webb v. Goord</u>, 340 F.3d 105, 110–11 (2d Cir. 2003) (quoting <u>Romer v.</u>

<u>Morgenthau</u>, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). In addition, a plaintiff "must allege,

with at least some degree of particularity, overt acts which defendants engaged in which were

reasonably related to the promotion of the claimed conspiracy." <u>Thomas</u>, 165 F.3d at 147.

18

Finally, a plaintiff must also show that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." <u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting <u>United Bhd. of Carpenters, Local 610 v. Scott</u>, 463 U.S. 825, 829 (1983)).

Here, Alonzo did not present any facts that the Arresting Officers' alleged conspiracy was motivated by racial or class-based invidious discriminatory animus. Defendants are correct that this is fatal to his claim. <u>See</u> <u>Gagliardi v. Village of Pawling</u>, 18 F.3d 188, 194 (2d Cir. 1994) (dismissing § 1985 claim because "[t]he complaint is devoid of any allegation that the alleged conspiracy was undertaken with any racial or class-based animus"). Alonzo's argument in support of his conspiracy claim consists of conclusory statements that the Arresting Officers' alleged misconduct can only be explained by implicit racial bias. <u>E.g.</u> Opp'n at 18. While it is undisputed that Alonzo is African-American, conclusory statements linking officers' actions to race are insufficient to survive summary judgment. <u>See</u> <u>Carson v. Lewis</u>, 35 F. Supp. 2d 250, 271 (E.D.N.Y. 1999) (granting summary judgment for defendants on § 1985 claim where "Plaintiff has failed to produce any evidence whatsoever, beyond conclusory statements, that [Defendant] arrested [Plaintiff] and/or searched the [Plaintiffs'] residence because of the Plaintiffs' race"). Therefore, Defendants are entitled to summary judgment on this claim.

### e.  Section 1986

Because the Arresting Officers are entitled to summary judgment with respect to Alonzo's § 1985 claim, Sergeant Novitsky is also entitled to summary judgment with respect to Alonzo's § 1986 claim. <u>See</u> <u>Gagliardi</u>, 18 F.3d at 194 (upholding dismissal of § 1986 claim based on dismissal of § 1985 claim).

19

*2. State Law Claims*

Since some of Alonzo's claims under federal law survive summary judgment, the Court maintains original jurisdiction over this action and must exercise supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367(a).

a. Plaintiffs' Notice of Claim

"Under New York law, a notice of claim is a mandatory precondition to bringing a tort claim against a municipality or any of its officers, agents or employees." Hyde v. Caputo, No. 98-CV-6722, 2001 WL 521699, at *4 (E.D.N.Y. May 11, 2001) (citing N.Y. General Municipal Law §§ 50-e, 50-i(1)(a)). "It must set forth, *inter alia*, the nature of the claim and must be served within 90 days after the claim arises." Fincher, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997). "The purpose underlying the notice of claim provision . . . is to protect the municipality against unfounded claims and to assure it 'an adequate opportunity . . . to explore the merits of the claim while information is readily available.'" Annis v. N.Y.C. Transit Auth., 485 N.Y.S.2d 529, 530–31 (App. Div. 1985) (quoting Teresta v. City of New York, 108 N.E.2d 397, 398 (N.Y. 1952)).

It is undisputed that Plaintiffs timely filed a notice of claim. Mem. at 34; Dkt. No. 63-4, Ex. A ("Notice of Claim"). However, Defendants argue that the Notice of Claim did not include three claims that were included in Plaintiffs' Amended Complaint—their claims for trespass, IIED, and defamation under New York law—and therefore those claims must be dismissed. Mem. at 34–35. Defendants are incorrect with regard to IIED; that claim is included, albeit tersely, in the Notice of Claim. Notice of Claim at 36. But Plaintiffs failed to include their claims for trespass and defamation.

Defendants correctly note that "notice of claim requirements are strictly construed by New York state courts. Failure to comply with these requirements *ordinarily* requires a dismissal for failure to state a cause of action." Hardy v. New York, 164 F.3d 789, 793–94 (2d Cir. 1999) (emphasis added). "However, New York's notice of claim statute also permits the court to disregard such defects if they were made in good faith and did not prejudice the [Defendants]." Hill, 2005 WL 3591719, at *10 (citing N.Y. General Municipal Law § 50-e(6)). Defendants did not present any facts establishing that they were prejudiced by the Notice of Claim's defects or that such defects were made in bad faith. The Notice of Claim is thirty-nine pages and includes ample factual allegations regarding the events that allegedly occurred at Plaintiffs' house on June 28, 2014, and their consequences. Therefore, the Court will exercise its discretion to disregard the Notice of Claim's defects. See id.

### b.  Defamation

Alonzo alleges that the Arresting Officers published criminal complaints containing false statements, which constitutes defamation or libel per se. Amended Compl. at 45–46, 71.[10] "Libel is a method of defamation expressed in writing or print." Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 176 (2d Cir. 2000). A plaintiff must prove five elements in a successful libel claim: "(1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) [the] defendant's fault; (4) the falsity of the defamatory statement;

---

[10]  The Amended Complaint asserts Alonzo's defamation claim "against All Defendants," though Plaintiffs only present facts relevant to the conduct of the Arresting Officers. Amended Compl. at 71. In addition, Plaintiffs' Memorandum of Law does not argue that Chief Fowler, the City, or the Police Department were culpable. Opp'n at 33. Therefore, to the extent that Alonzo asserted this claim against Fowler, the City, or the Police Department, those claims are dismissed.

and (5) injury to [the] plaintiff." <u>Meloff v. N.Y. Life Ins. Co.</u>, 240 F.3d 138, 145 (2d Cir.2001);

<u>see also</u> <u>Lore v. City of Syracuse</u>, 583 F. Supp. 2d 345, 383 (N.D.N.Y. 2008) (collecting cases).

In addition, "the plaintiff must plead in her complaint the particular words giving rise to her

claim" and "must set forth in her complaint the time, place, manner of the allegedly defamatory

statement as well as the persons to whom the statement was made." <u>Lore</u>, 583 F. Supp. 2d at 383.

Here, the Arresting Officers may not be held liable for any allegedly defamatory

statements in their criminal complaints, because "individuals participating in a public function

such as judicial proceedings are afforded protection from liability by an absolute immunity."

<u>Frederique v. County of Nassau</u>, 168 F. Supp. 3d 455, 488 (E.D.N.Y. 2016) (quoting <u>Remley v.</u>

<u>State</u>, 665 N.Y.S.2d 1005, 1007–8 (N.Y. Ct. Cl. 1997)). "A person filing a formal complaint

charging another with a crime is . . . entitled to absolute immunity from a civil suit for

defamation." <u>Remley</u>, 665 N.Y.S.2d at 1008; <u>see also</u> <u>Frederique</u>, 168 F. Supp. 3d at 488

("[T]o the extent that Plaintiffs argue that the Felony Complaints and District Court Informations

contained defamatory statements, the [Nassau County Police Department] officers who made

those statements are protected from liability by an absolute immunity.").

Alonzo accuses the Arresting Officers of defaming him through the publication of false

criminal complaints, but the publication of such complaints is protected from liability by an

absolute immunity. Therefore, Defendants' Motion with respect to Alonzo's defamation claim

is granted.

### B.  Plaintiffs' Claims Against Individual Officers

### 1. Section 1983 Claim

#### a. Unlawful Entry[11]

As discussed above, the Fourth Amendment protects individuals against unreasonable searches and seizures. In addition, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)). "Warrantless searches inside a home are presumptively unreasonable." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998). "However, warrantless entry into a home is permitted 'in those situations where exigent circumstances demand that law enforcement agents act without delay.'" Hicks v. City of New York, No. 12-CV-5081, 2015 WL 5774575, at *7 (E.D.N.Y. Aug. 27, 2015) (quoting United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990)), adopted by 2015 WL 5774658 (E.D.N.Y. Sept. 30, 2015).

It is undisputed that Lockett entered Plaintiffs' home without a warrant or consent. Defendants argue that exigent circumstances justified his entry, because Lockett needed to provide emergency aid in response to Alonzo's 911 call and an argument that he heard coming from the Grant Home. Mem. at 28.

"Police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." Tierney, 133 F.3d at 196. "Courts must apply an objective standard to determine the

---

[11]  The Amended Complaint's tenth cause of action is styled as a claim of "invasion of privacy" against Lockett. Amended Compl. at 66. However, both Defendants' Memorandum and Plaintiffs' Opposition treat the claim as an allegation that Lockett unlawfully entered the Grants' home in violation of the Fourth Amendment. See Mem. at 27–29; Opp'n at 25–27.

reasonableness of the officer's belief, taking into account 'the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences.'" Montanez v. Sharoh, 444 F. App'x 484, 486 (2d Cir. 2011) (quoting Tierney, 133 F.3d at 196–97). "Exigent circumstances arise when police officers have probable cause to believe 'a person is in danger.'" Hicks, 2015 WL 5774575, at *7 (quoting Kerman v. City of New York, 261 F.3d 229, 236 (2d Cir. 2001)). "Warrantless entry is not justified, though, by the mere 'possibility' of danger." Id.

As discussed extensively above, Plaintiffs deny that they were arguing loudly when Lockett and Montalto arrived at 105 Hudson Street. Pls.' SMF ¶¶ 79–80. Nevertheless, "[c]ourts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger." Hicks, 2015 WL 5774575, at *8 (quoting Tierney, 133 F.3d at 197). Lockett was also responding to a 911 call, which in certain circumstances can justify warrantless entry. See, e.g., Anthony v. City of New York, 339 F.3d 129, 136 (2d Cir. 2003) (holding that a 911 call in which a caller reported that she was being attacked by a man with a knife and a gun constituted exigent circumstances).

However, the facts presented to Lockett "did not rise to the danger and immediacy, nor did they contain the specificity, of the Anthony report." Fernandez v. Sacco, No. 10-CV-1624, 2012 WL 6102136, at *5 (E.D.N.Y. Dec. 10, 2012). Lockett was informed by the 911 dispatcher that "MALE REQUESTING OFFICERS BE SENT TO ADDRESS RE: DAUGHTER . . . COMPL[AINANT] UNCOOPERATIVE." Defs.' SMF ¶ 17. The dispatcher did not inform

Lockett about a weapon, imminent violence, or a history of domestic disputes at the address. Cf. Tierney, 133 F.3d at 197 (holding that a officer's warrantless entry was justified upon receiving a 911 dispatch describing a "bad" domestic dispute and a history of violent domestic disputes at the address). Moreover, Plaintiffs told Lockett that they no longer needed the SPD's assistance, Defs.' SMF ¶ 19, but Lockett made no attempt to discuss the basis for this statement with Plaintiffs before entering their home, cf. Fernandez, 2012 WL 6102136, at *6 ("[T]he appearance of the Fernandezes and Fonsecas at the door to the Fernandez home and the alleged insistence of all four that nothing was amiss arguably suggests an inference that there was no immediate need for an exigent-circumstances entry.").

While SPD may instruct its officers to investigate every domestic call, Amended Reply at 7, the Second Circuit has recently reiterated that an alleged domestic dispute does not provide an open invitation to police officers to enter the victim's location without a warrant. "It is possible—indeed, an officer is, absent exigent circumstances, required—to secure the substantive due process rights of domestic violence victims through legal means such as by obtaining consent or a warrant to enter a home." Penree v. City of Utica, 694 F. App'x 30, 32 (2d Cir. 2017). Because a reasonable jury could find that exigent circumstances did not exist when Lockett's arrived at the Grant Home, Defendants' motion for summary judgment on this claim is denied.[12]

_____

[12] Defendants raised Lockett's entitlement to qualified immunity with respect to unlawful entry for the first time in one sentence in their reply. Amended Reply at 7. It is well established "that a district court is free to disregard argument[s] raised for the first time in a reply papers, especially on a motion for summary judgment." Am. Hotel Int'l Grp., Inc., v. OneBeacon Ins. Co., 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009). Therefore, the Court will not address this argument, which is also completely undeveloped. See Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 298 (D.D.C. 2012) ("[T]he [defendant] has simply failed to support its argument

2.  *State Law Claims*

a.  Trespass

Under New York law, "[t]respass is an intentional entry into the land of another without justification or permission." Woodhull v. Town of Riverhead, 849 N.Y.S.2d 79, 81 (App. Div.2007). "However, 'law-enforcement officials have a privilege to enter private property to perform their legal duties.'" Frederique, 168 F. Supp. 3d at 489 (quoting Reynolds v. United States, 927 F. Supp. 91, 96 (W.D.N.Y. 1996)).

It is undisputed that Lockett and Montalto entered Plaintiffs' property in order to respond to Alonzo's 911 call. Defs.' SMF ¶ 18. Therefore, their entry was justified. Frederique, 168 F. Supp. 3d at 489. In addition, it is undisputed that Novitsky entered Plaintiffs' property in response to a dispatch. Defs.' SMF ¶ 38. Therefore, his entry also was justified. The relevant inquiry, then, is whether Lockett's entry into the Grant Home constituted trespass.

As discussed above, a reasonable jury could find that exigent circumstances did not exist to justify Lockett's entry into the Grant Home. Absent exigent circumstances or Plaintiffs' permission, which Defendants do not allege, Lockett's entry into the Grant Home would have constituted trespass. See People v. Abruzzi, 385 N.Y.S.2d 94, 97 (App. Div. 1976) ("But having failed to obtain a warrant where no exigent circumstances were present, the investigator's position in the defendant's backyard was unlawful . . ."), aff'd, 364 N.E.2d 1342 (N.Y. 1977); People v. Vernon B., 35 Misc. 3d 1241(A), at *1 (N.Y. Crim. Ct. 2012) ("Where an officer's

---

with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here.").

warrantless presence on private property is not based on consent or exigent circumstances, his presence may be unlawful . . . .").

Accordingly, Defendants' motion for summary judgment on this claim is denied with respect to Lockett, and it is granted with respect to Montalto and Novitsky.

### b.  Intentional Infliction of Emotional Distress

In order to state a claim for IIED in New York, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999). The standard for stating a valid claim is "rigorous, and difficult to satisfy" because the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell v. N.Y. Post Co., 612 N.E.2d 699, 702 (N.Y. 1993). Further, IIED is a "highly disfavored claim[ ] under New York law." Williams v. City of Mount Vernon, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006); see also Seltzer v Bayer, 709 N.Y.S.2d 21, 23 (App. Div. 2000) ("This threshold of outrageousness is so difficult to reach that, of the intentional infliction of emotional distress claims considered by the Court of Appeals, every one has failed because the alleged conduct was not sufficiently outrageous."). "The Court of Appeals has also strongly cautioned against claiming IIED where other tort remedies are available." Hill, 2005 WL 3591719, at *7 (citing Fisher v. Maloney, 373 N.E.2d 1215 (1978)).

In this case, since the conduct complained of is encompassed in Plaintiffs' claims for assault and battery and false imprisonment, their claim for IIED must be dismissed. Id. (citing

Moore v. City of New York, 219 F. Supp. 2d 335, 339 (S.D.N.Y. 2002)); Naccarato v. Scarselli,

124 F. Supp. 2d 36, 44–45 (N.D.N.Y. 2000).

### C. Stephanie's Claims Against Individual Officers

#### 1. Section 1983 Claim

##### a. False Imprisonment

As discussed above, "[t]he unreasonable seizure of a person in the form of a false arrest

and imprisonment is violative of the Fourth Amendment and actionable under § 1983."

Garenani, 552 F. Supp. 2d at 333. To prove the elements of false arrest or false imprisonment

under New York law, a plaintiff must show that "(1) the defendant intended to confine plaintiff,

(2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the

confinement, and (4) the confinement was not otherwise privileged." Id. (quoting Bernard, 25

F.3d at 102). "In addition, a 'false imprisonment claim requires a prima facie showing of actual

confinement or threatening behavior.'" Kravtsov v. Town of Greenburgh, No. 10-CV-3142,

2012 WL 2719663, at *16 (S.D.N.Y. July 9, 2012) (quoting Lee v. Bankers Trust Co., No. 96-

CV-8153, 1998 WL 107119, at *4 (S.D.N.Y. Mar. 11, 1998), aff'd, 166 F.3d 540 (2d Cir.

1999)).

Defendants argue that Lockett did not intend to confine Stephanie when he spoke to her

while attempting to handcuff Alonzo. Mem. at 25. Stephanie argues that she felt threatened by

Lockett's statement that she must "take [her] ass back in the house or he was gonna fucking taze

[her]." Pls.' SMF ¶¶ 119–20. Viewing the facts in the light most favorable to Stephanie, a

reasonable jury could find that Lockett acted threateningly when he addressed her. Lockett

allegedly directed Stephanie to stay inside her home, under the threat of significant force. Cf.

Hulett v. City of Syracuse, No. 14-CV-152, 2017 WL 2333712, at *16 (N.D.N.Y. May 30, 2017)

(describing the employment of a taser as "an indisputably significant use of force"). Moreover, a

reasonable jury could find that Lockett intended to confine Stephanie inside her house. See

Samirah v. Sabhnani, 772 F. Supp. 2d 437, 451 (E.D.N.Y. 2011) ("By knowingly obtaining the

plaintiffs' labor *through use of threats of serious harm* or physical restraint, the defendants

necessarily confined the plaintiffs to the space in which they were forced to work." (emphasis

added)). Lockett's alleged conduct is not analogous to instances where officers demand that

members of the public disperse from a crime scene or accident site and such members are "free

to go anywhere else that [they] wish[]." Salmon v. Blesser, 802 F.3d 249, 253 (2d Cir. 2015).

"A person is seized by the police . . . when the officer, by means of physical force or

show of authority, terminates or restrains [her] freedom of movement through means

intentionally applied." Brendlin v. California, 551 U.S. 249, 254 (2007). "To explain when a

sufficient 'show of authority' effects restraint, the Supreme Court has relied on a totality-of-the-

circumstances test, asking whether a reasonable person would believe that he was 'not free to

leave,'" Salmon, 802 F.3d at 251 (quoting INS v. Delgado, 466 U.S. 210, 215 (1984)), or "would

feel free to decline the officers' requests or otherwise terminate the encounter," id. (quoting

Florida v. Bostick, 501 U.S. 429, 436 (1991)). A reasonable person in Stephanie's position could

have felt unable to decline Lockett's order, particularly given the violent nature of the unfolding

situation. Accordingly, Defendants' motion for summary judgment on this claim is denied.

   *2.  State Law Claims*

   a.  Negligent Infliction of Emotional Distress

"Under New York law, a plaintiff may establish [a claim for negligent infliction of emotional distress] in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty theory.'" Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000) (quoting Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996)). As relevant here, the "bystander theory" provides that a defendant's conduct is negligent when it creates

> an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence.

Id. (quoting Bovsun v. Sanperi, 461 N.E.2d 843 (N.Y. 1984)). Defendants specifically argue that Stephanie did not experience an unreasonable risk of bodily harm, because she was outside the "zone of danger" created by the altercation between Lockett, Montalto, and Alonzo. Mem. at 29.

Defendants are correct. "Under New York law, a party may only recover for emotional damage resulting from witnessing an injury to an immediate family member if the alleged negligent act simultaneously exposes both the injured party and the plaintiff to an unreasonable risk of bodily injury or death." Erony v. Alza Corp., 913 F. Supp. 195, 201 (S.D.N.Y. 1995). Stephanie did not plead any facts indicating that she was in physical danger *because of* the altercation. Lockett's verbal threat to Stephanie is not the operative act that caused physical harm to Alonzo—the operative acts are the punches and kicks that Alonzo experienced. See, e.g., Gonzalez v. N.Y.C. Housing Auth., 580 N.Y.S.2d 760, 761 (App. Div. 1992) (finding that "zone of danger" element was not satisfied by mother whose daughter died while trying to climb through the doors of stopped elevator, because the mother was at the rear of the elevator);

Arroyo v. N.Y.C. Health and Hosp. Corp., 558 N.Y.S.2d 8, 9 (App. Div. 1990) (finding that a brother and sister who were treated by discrete intravenous systems in the same hospital room were not exposed to injury by a single negligent act when the sister's intravenous system, but not the brother's, malfunctioned and she died). Since there is no evidence that the physical attack experienced by Alonzo exposed Stephanie to the risk of bodily injury, her claim for negligent infliction of emotional distress must be dismissed.

### b.  Loss of Consortium

Stephanie also asserts a loss of consortium claim under New York law. Amended Compl. at 71. Although Defendants are correct to note that consortium "is not an independent cause of action, but is derivative," Mem. at 32, multiple primary torts alleged under New York law survive the motion for the summary judgment. Therefore, Stephanie's loss of consortium claim also survives, and Defendants' Motion must be denied with respect to this claim. Wang v. Yum! Brands, Inc., No. 05-CV-1783, 2007 WL 1521496, at *5 (E.D.N.Y. May 22, 2007).

### D.  Claims Against Municipal Defendants

Both the City and the Police Department have been named as defendants in this action. While a municipality may be susceptible to suit under § 1983, a municipal police department is not. Fowler v. Kingston City Police Dept., No. 07-CV-873, 2009 WL 3064775, at *9 (N.D.N.Y. Sept. 22, 2009) (Kahn, J.); see also Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."). Claims asserted under federal or state law will be dismissed against a municipality's police department. Accordingly, the Police Department is dismissed from this

action. See Ottati v. City of Amsterdam, No. 06-CV-1370, 2008 WL 1744557 at *4 (N.D.N.Y. Apr. 11, 2008) (dismissing the police department sua sponte as a defendant because the department "has no legal capacity to sue or be sued.").

       1. *Section 1983 Claim*

     To establish municipal liability under § 1983, a plaintiff must plead and prove that the deprivation of his constitutional rights was "caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell v. Dep't of Social Servs. of the City of N.Y., 436 U.S. 658, 690–91 (1978)). First, a plaintiff may establish the existence of a municipal policy or custom by showing

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

McLennan v. City of New York, 171 F. Supp. 3d 69, 94 (S.D.N.Y. 2016). "Second, the plaintiff must establish a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985).

     "Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." Hulett,

2017 WL 2333712, at *23 (quoting <u>Triano v. Town of Harrison, NY</u>, 895 F. Supp. 2d 526, 534

(S.D.N.Y. 2012)). To prove that this inaction constituted deliberate indifference,

> [T]he plaintiff must show that the need for more or better supervision
> to protect against constitutional violations was obvious. An obvious
> need may be demonstrated through proof of repeated complaints of
> civil rights violations; deliberate indifference may be inferred if the
> complaints are followed by no meaningful attempt on the part of the
> municipality to investigate or to forestall further incidents.

<u>Vann v. City of New York</u>, 72 F.3d 1040, 1049 (2d. Cir. 1995) (citations omitted).

Plaintiffs allege that the City's deliberate indifference to civil complaints of police

brutality has resulted in the customary use of excessive force by its police officers, and, as a

proximate result of such policy, Plaintiffs suffered injuries from their interaction with the

Arresting Officers. Amended Compl. at 57–60. Defendants argue that Plaintiffs have failed to

highlight a specific deficiency in SPD's use-of-force policy and have failed to demonstrate a

pattern of verified and unpunished misconduct that shows a deliberate indifference to the

deprivation of constitutional rights. Mem. at 12–19.

The evidence presented to the Court on this claim is very similar to the evidence recently

analyzed by Judge David N. Hurd in <u>Hulett v. City of Syracuse</u>, No. 14-CV-152, 2017

WL 2333712, at *22–25 (N.D.N.Y. May 30, 2017). The City operates a Citizen Review Board

("CRB") to conduct independent investigations of complaints against SPD officers. Pls.' SMF

¶ 174. In 2014, for example, CRB investigated 107 complaints against officers and

recommended discipline in twenty-one instances, eighteen of which involved excessive force. <u>Id.</u>

¶¶ 197–98. The Police Department imposed discipline only once in response to those instances.

<u>Id.</u> ¶ 199. The ratio is only slightly higher across 2012 and 2013, when CRB sustained thirty-five

complaints and SPD imposed discipline in response to approximately five. Id. ¶¶ 191–95. CRB has also recommended multiple times that the Police Department review its use-of-force policy and related training in light of these complaints and new recommendations from the United States Department of Justice. Id. ¶¶ 178–79. SPD did not engage in the process, even though "CRB saw an exponential rise in excessive force claims" from 2012 to 2016. Id. ¶ 177. CRB's former administrator testified that Chief Fowler made a blanket refusal to adopt any changes to SPD's use-of-force policy. Id. ¶ 180.

While "the persuasive value of this evidence is not overwhelming . . . [Plaintiffs'] evidence is sufficient to create a jury question regarding whether, from the top down, the SPD took an unduly permissive attitude toward its officers' use-of-force prior to, and in the wake of, the [] incident . . . ." Hulett, 2017 WL 2333712, at *25 (citing Vann, 72 F.3d at 1049); see also Fiacco v. City of Rensselaer, 783 F.2d 319, 328 (2d Cir. 1986) ("Whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force."); Galindez v. Miller, 285 F. Supp. 2d 190 (D. Conn. 2003) (holding that plaintiff's § 1983 claim against City of Hartford survived motion for summary judgment based, *inter alia*, on evidence that no officer was disciplined following forty-seven excessive force complaints over the course of two years). A reasonable jury could conclude that SPD's "subordinate officers felt empowered to use force with relative impunity and that, as a result, used excessive force on plaintiff in this case." Hulett, 2017 WL 2333712, at *25.

Accordingly, Defendants' motion for summary judgment on this claim is denied.[13]

      *2.  State Law Claim*

Plaintiffs' claim under New York law for negligent hiring and supervision must be dismissed, because Defendants have conceded that the Arresting Officers were acting within the scope of their employment. Mem. at 32; see also Rosseti v. Bd. of Educ. of Schalmont Cent. Sch. Dist., 716 N.Y.S.2d 460, 461–62 (App. Div. 2000) ("After the School District stipulated that Marshall was acting within the scope of her employment, these causes of action are unnecessary for the purposes of imposing liability for plaintiff's damages against the School District."). "Where an employee is acting within the scope of her employment, the employer is liable under the theory of respondeat superior [for state law claims] and no claim may proceed against the employer for negligent hiring or retention." Murns v. City of New York, No. 00-CV-9590, 2001 WL 515201, at *5 (S.D.N.Y. May 15, 2001) (quoting Rossetti, 716 N.Y.S.2d at 461).

Accordingly, Defendants' motion for summary judgment on this claim is granted.

---

[13] The Amended Complaint also names Chief Fowler as a defendant with respect to this claim. Plaintiffs do not clarify—and Defendants do not discuss—whether Fowler is sued in his individual or official capacity. Where doubt exists as to whether an official is sued in her official or personal capacity, "the course of proceedings ordinarily resolves the nature of the liability sought to be imposed." Rodriguez v. Phillips, 66 F.3d 470, 482 (2d Cir. 1995). However, since the parties have not addressed this issue, the Court will simply note that if Fowler is tried in his individual capacity, Plaintiffs must demonstrate "his direct, personal involvement in the [] incident or for plaintiff[s] to establish one of the Colon bases for supervisory liability." Hulett, 2017 WL 2333712, at *22 (citing Burwell v. Payton, 131 F. Supp. 3d 268, 302 (D. Vt. 2015)). If Fowler is tried in his official capacity, "district courts have [regularly] dismissed official capacity claims against individuals as redundant or unnecessary where Monell claims are asserted against an entity." Id. (quoting Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist., 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002)).

V.       **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 63) is **GRANTED in part** and

**DENIED in part**; the Motion is **GRANTED** as to Alonzo's § 1983 malicious prosecution

claim; the Motion is **GRANTED** as to Alonzo's § 1985 claim; the Motion is **GRANTED** as to

Alonzo's § 1986 claim; the Motion is **GRANTED** as to Alonzo's state law claim for intentional

infliction of emotional distress; the Motion is **GRANTED** as to Alonzo's state law claim for

defamation; the Motion is **GRANTED** as to Stephanie's state law claim for negligent infliction

of emotional distress; the Motion is **GRANTED** as to Plaintiffs' state law claim for trespass with

respect to defendants Montalto and Novitsky; the Motion is **GRANTED** as to Plaintiffs' state

law claim for negligent hiring, retention, and supervision; the Motion is otherwise **DENIED**; and

it is further

**ORDERED**, that the Syracuse Police Department is **DISMISSED** as a defendant in this

action; and it is further

**ORDERED**, that "Does 1-100" are **DISMISSED** as defendants in this action; and it is

further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:        November 17, 2017
              Albany, New York

Lawrence E. Kahn
U.S. District Judge

36