UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALONZO GRANT AND
STEPHANIE GRANT,

       Plaintiffs,

vs.

CITY OF SYRACUSE, SYRACUSE POLICE
DEPARTMENT, POLICE OFFICERS
DAMON LOCKETT AND PAUL
MONTALTO, POLICE OFFICER BRIAN
NOVITSKY,  CHIEF OF POLICE FRANK
FOWLER, and Does 1-100,

       Defendants

**Civil Action No.. 5:15-CV-00445 (DNH/TWD)**

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESS

Dated: August 28, 2018    By:    **CHARLES A. BONNER, ESQ.  SB# 85413**
Pro Hac Vice
**A. CABRAL BONNER, ESQ. SB# 247528**
Pro Hac Vice
LAW OFFICES OF BONNER & BONNER
475 GATE FIVE RD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
charles@bonnerlaw.com
cabral@bonnerlaw.com

**RYDER LAW FIRM**
**Jesse P. Ryder, Esq. #3923190**
121 E. Water Street, 3rd. Floor
Syracuse, NY 13202
Tel: (315) 382-3617
Fax: (315) 295-2502

# I. INTRODUCTION



Deposition of Defendant Lockett:

**Q       And if you turn the picture there to the second photograph, he did not look like this when you saw him in his house with the blood all over his face; isn't that true?**
**A       Oh, that 's true.**
…
**A       Oh, no, I did that. Go ahead. I mean, I did that.**
**Q       You did that. You blooded him up like that; isn't that true?**
**A       Yes, sir.**

What did Mr. Grant do to deserve being beaten bloody, "bloodied", by Defendant Lockett?  He allegedly yelled (not at Defendant Lockett or anyone Defendant Lockett could see, flailed his arms (not at Defendant Lockett or in proximity to any individual visible to Defendant Lockett), shoved open his screen door (causing it to hit the metal railing because of a broken spring), and complied with every request Defendant Lockett made of him.  See Defendants' Motion for Summary Judgment Docket 63-3 at pg 12.  At the time Defendant Lockett grabbed

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* #1 TO PRECLUDE
EXPERT REPORT AND TESTIMONY                                           Case No.: 5:15-CV-00445 (DNH/TWD)

Mr. Grant from behind, setting in motion the events that led to Defendants Lockett and Montalto savagely beating Mr. Grant, Mr. Grant had broken no laws, posed no threat to the officers or anyone else, and was not trying to flee from his home. It is undisputed that Mr. Grant called 911 for the police to remove his daughter from his front yard. It is undisputed that Mr. Grant's and Mrs. Grant both informed the officers that they did not need their assistance any nonger because their daughter has left the premises. This excessive force case is a violent assault on our Constitution, the Rights of Mr. and Mrs. Grant and reflects a pattern, practice and policy that endorses and tolerate such governmental abuse. Jurors would be aided by the testimony of Plaintiffs' Expert Lt. Rick Brown.

## II. ARGUMENT

### A. LIEUTENANT BROWN IS UNDULY QUALIFIED TO TESTIFY AS AN EXPERT ON USE OF FORCE

Contrary to Defendants' conclusion that the undertaking of "administrative police investigations" and their reliance on "after-the-fact investigations conducted with the benefit of hindsight" has little or no bearing on the kind of expertise required to opine on questions of use of force, it is equally contrary to reason to fail to perceive that experience with such investigations is the very skill and experience required in deciphering a use of force case.

Here, Lieutenant *(*"Lt.) Brown, despite having served as a police officer for over thirty (30) years which in itself provides the expertise necessary, *see* Exhibit C, Lieutenant Brown's CV*; Lee v. Metro. Gov't of Nashville & Davidson County*, 596 F.Supp.2d 1101, 1122 (M.D. Tenn. 2011) (officer's nearly three decades of experience in the police department, including work as a high level supervisor and instructor, make him uniquely qualified to discuss whether the defendants' used an appropriate level of force here), he was in fact positioned as an Officer,

Commander and Director of the Pennsylvania Department of Police (Harrisburg, Pa) Office of Internal Affairs.

As the purpose of the Pennsylvania State Police Internal Affairs Division (IAD) is to thoroughly evaluate all reports of personnel misconduct, including excessive force claims, see, https://www.psp.pa.gov/contact/Pages/Compliment-Complaint-Procedures.aspx Lt. Brown was charged with evaluating the very question that he is being asked to consider as an expert, i.e., whether an officer's use of force was objectively reasonable under the circumstances presented to him.

Thus, the very skill set and knowledge base required in investigating internal affairs complaints draws on the same skills and knowledge required of an expert evaluating an excessive force claim. *See, Stoeckley v. City of N.Y.*, 700 F. Supp. 2d 489, 492 (S.D.N.Y. 2010)(Internal Affairs Bureau investigates use of force claims); *Mercy v. Cty. of Suffolk*, 93 F.R.D. 520, 522 (E.D.N.Y. 1982)(the central purpose of an internal affairs' investigation is to determine whether any disciplinary action should be taken against certain police officers as a result of the incident complained of); *McAllister v. City of N.Y.*, 2002 U.S. Dist. LEXIS 8554, at *52 (S.D.N.Y. May 9, 2002)(Internal Affairs investigates excessive force and police shootings). Upon moving onward from the IAD, Lt. Brown carried forth the wealth of experience on excessive force and misconduct that he had gleaned from his experience at the IAD and offered it in assistance to remediating systemic abuses of excessive force and misconduct at several police departments who were under forced to change under legally supervised consent decrees.

In fact, Lt. Brown's credentials were such that he was sought out and invited to take the role of Independent Monitor in overseeing consent decrees imposed on three police departments across the nation:

(1) Lt. Brown was selected to serve as Independent monitor to oversee 2003 Consent Decree brought by US Justice Department over the Detroit Police Department after an investigation uncovered excessive use of deadly force, illegal dragnet arrests of possible witnesses to crimes and improper treatment of prisoners. *See, United States v. City of Detroit*, No. 03-72258;

(2) Lt. Brown was selected to serve as Independent monitor to oversee 2003 Consent Decree entered into by parties and overseen by the U.S. Justice Department that to date. The "Riders" case as it is known entailed a group of rogue veteran police officers, "the Riders" who engaged in excessive use of force, kidnapping and the planting of evidence. *See Allen v. City of Oakland*, USDC Master Case No. 00-4599 THE.

(3) Lt. Brown was selected to serve as Independent monitor to oversee 2010 Consent Decree between the Niagara Falls Department and N.Y.S Attorney General to respond and remediate the Department's use of excessive force and police misconduct.

Similarly, Lt. Brown was additionally selected to serve as a subject matter expert on (a) community relations, citizen complaints and the use of force for the Springettsbury Township Police Department, and (b) tactics and use of deadly force on a shooting incident involving the University of Cincinnati Police Department. Considering that Lt. Brown was selected for the above positions, a strong inference exists that those who selected him were apprised of his qualifications and found them to be sufficient for handling issues regarding excessive force, police misconduct and police accountability.[1] It is beyond reason that with such credentials,

---

[1] In furtherance of continuing his knowledge of excessive force and police misconduct, Lt. Brown in 2013 underwent training at the Force Science Institute, a center dedicated to the study of deadly force by police officers. See,

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* #1 TO PRECLUDE
EXPERT REPORT AND TESTIMONY                    Case No.: 5:15-CV-00445 (DNH/TWD)

Defendants are challenging Lt. Brown's qualifications and ability to evaluate one excessive force case under the pertinent legal standards that based on his extensive experience, he is very much capable of considering and articulating to a jury. [2]

Thus, Lt. Brown's experience more than satisfies and surpasses the bar to ensuring that his qualifications are sufficient enough to comply with Fed. R. Evid. 702's requirements. *See In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d at 413 (quoting Fed. R. Evid. 702 advisory committee's note)(expert testimony may be based on 'experience alone — or experience in conjunction with other knowledge, skill, training or education.).

As such, given that "liberality and flexibility in evaluating qualifications should be the rule and that the expert should not be required to satisfy an overly narrow test of his own qualifications," *Lappe v. Am. Honda Motor Co., Inc.*, 857 F. Supp. 222, 227 (N.D.N.Y. 1994) defendants' arguments opposing Lt. Brown's qualifications are fundamentally unavailing:

(1) Defendants' insistence that an expert must have personal knowledge of the subject he is testifying to is a proposition against the weight of authority. *See,* Fed. R. Evid. 703(experts need not have firsthand knowledge to testify on a given issue "if it is of a type reasonably relied on by experts in the field); *In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1223, 1243 (E.D.N.Y. 1985) (Rule 703 permits experts to rely upon hearsay. The guarantee of trustworthiness [of the hearsay] is that it be the kind normally employed by experts in the field. The expert is assumed,… to have the skill to properly evaluate the hearsay, giving it probative force appropriate to the circumstances); Rule 703 Advisory Committee Notes( an expert can rely

---

[2] Defendants themselves acknowledge that the majority of Lt. Brown's experience as a paid police consultant appears related to administrative police investigations and the use of force. Defendants Opening Brief, P. 5.

both on personal observation and "presentation of data to the expert outside of court and other than by his own perception.")[3]

(2) The fact that Lt. Brown does not define himself as a use of force expert on his resume and is perceived by Defendant's to be  "far removed from the subject matter of his expected testimony" is by no means relevant nor dispositive. See, 3 Weinstein's Evidence at 702-61 (it is "the actual qualifications of witnesses that matter, rather than titles, by providing that an expert can be qualified by knowledge, skill, experience, training or education*); Hilaire v. DeWalt Industrial Tool Co.*, 54 F. Supp. 3d 223, 236 (E.D.N.Y. 2014)(an expert need not be precluded 'from testifying merely because he or she does not possess experience tailored to the precise process that is the subject matter of the dispute.); *United States v. Ruffin*, 575 F.2d 346, 357 (2d Cir. 1978)(if the court finds that the witness's qualifications are sufficiently similar to the issues in the case, the expert is qualified and opposing counsel can use cross-examination to attack any deficiencies in the expert's background); *Valentin v. New York City*, 1997 U.S. Dist. LEXIS 24059, at *70-71 (E.D.N.Y. Sep. 9, 1997) (the mere fact that an expert's opinions are not based on formal studies does not make the opinions inadmissible… The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the

---

[3] If Defendants criteria, as articulated were indeed applicable, the Court itself would be barred, as would anyone but a police officer on the beat (or perhaps the victim of the excessive force) from opining on the reasonableness of force employed. Thus, Defendants articulation of expert qualifications are overly narrow and considerably outside the 'liberality and flexibility' requirement that such an evaluation demands. *Lappe* , 857 F. Supp. At 227(the proposed expert should not be required to satisfy an overly narrow test of his own qualifications).

particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.)

Moreover, Defendants base their entire argument on the contents of Lt. Brown's curriculum vitae and expert report because they did not take Lt. Brown's deposition. While a CV is a good starting place to determine an expert's level of skill and experience, no CV can capture any professionals' full experience. However, it is hard to view Lt. Brown's experience as anything other than sufficient to provide expert testimony on issues related to police excessive force. For example Lt. Brown includes the following entries in his CV:

> ***Director, Internal Affairs Division; Rank: Captain, 2000-2003***
> ***(Acting Captain form April 26, 1999 - January 29, 2000)***
> Responsible for directing the work of fifteen subordinates; direct and investigate complex criminal and administrative investigations involving allegations of misconduct involving Department personnel. Responsible for non-complaint investigations mandated by directives, assist the Office of Chief Counsel and conduct other confidential investigations as directed by the Commissioner
>
> ***Commander, Central Section, Internal Affairs Division; Rank: Lieutenant, 1997-2000***
> Direct and investigate complex confidential criminal and administrative investigations involving allegations *of personnel misconduct and the use of deadly force*. Supervise the work of four investigators.

These entries alone provide sufficient experience regarding police use of force to qualify Lt. Brown as an expert. It is hard to imagine how Lt. Brown could work for IA for six years as an investigator and a director and not develop an expertise in excessive force. This experience is strengthened by his six years as **Deputy Commissioner of Professional Responsibility** for Pennsylvania state police, where he "Contribute to the oversight of an annual budget over $840 Million involving 4664 sworn and 1600 non-sworn personnel; and responsible for all segments logically related in scope to the prevention, investigation and accountability measures employed

by the department with regard to *police misconduct*." It strains credibility to argue that a Lieutenant Colonel with such responsibilities is not an absolute expert on issues related to excessive force. However, Defendants did not take Lt. Brown's deposition in order to have him elucidate on the various entries in his CV. Instead they ask this Court to find his experience lacking, based solely his CV. If this Court were to grant the motion, it would be based on the choice of words in Lt. Brown's CV, not his actual experience.

(3) The fact that this trial would be the first time Lt. Brown will testify as an expert in Federal Court is patently unavailing. *See, Catapult Commc'ns Corp. v. Foster*, 2010 WL 659072, *2 (N.D.Ill.2010) ("by that logic, no witness could ever qualify as an expert for the first time because that would require being retained previously as an expert); *United States v. Parra,* 402 F.3d 752, 758-59 (7th Cir.2005) (every expert witness must have a first time, and expert witnesses do not need to be "professional witnesses" to be qualified to testify);

Thus, when considering that Rule 702 recognizes that it is "the actual qualifications of witnesses that matter, rather than titles, by providing that an expert can be qualified by knowledge, skill, experience, training or education," 3 Weinstein's Evidence at 702-61 Lt. Brown's qualifications to serve as an expert in this case is more than satisfactory. The fact that he may not possess the overly narrow and specific qualifications that defendants' demand by no means automatically renders his proffered testimony inadmissible. If the Court finds that the Lt. Brown's qualifications are "sufficiently similar to the issues in the case, the expert is qualified and opposing counsel can use cross-examination to attack any deficiencies in the expert's background." *United States v. Ruffin*, 575 F.2d 346, 357 (2d Cir. 1978); *see also, McCullock v. H.B. Fuller Co*., 61 F.3d 1038, 1043 (2d Cir. 1995)(where expert had extensive practical experience, "quibble" over expert's lack of academic qualifications goes to the weight, not

admissibility, of expert testimony); *Zwillinger v. Garfield Slope Housing Corp.*, 1998 U.S. Dist. LEXIS 21107, at *9 (E.D.N.Y. Aug. 17, 1998(assuming that expert has the requisite minimal experience in a relevant field, courts have not barred an expert from testifying merely because he or she lacks a degree or training narrowly matching the point of dispute in the lawsuit)

As the above argument makes plain, *Lt.* Brown more than sufficiently qualifies to serve as an expert in this case and thus, assurance is warranted that whatever opinion he ultimately provides will by no means be necessarily speculative. *Nisanov v. Black & Decker (U.S.) In*c., 2008 U.S. Dist. LEXIS 27044, at *1 (E.D.N.Y. Apr. 3, 2008)(expert must possess that level of experience that ensures whatever opinion he or she will ultimately express is not speculative)

### B. LIEUTENANT BROWN'S REPORT AND PROFFERED TESTIMONY MEET WELL-SETTLED RELIABILITY STANDARDS

In determining reliability, the district court must determine "whether the proffered testimony has a sufficiently 'reliable foundation' to permit it to be considered. *Campbell v. Metropolitan Property and Cas. Ins. Co*., 239 F.3d 179, 184-85 (2d Cir. 2001). The 'foundation' here is Lt. Brown's ample experience at evaluating allegations of excessive force while having to conduct such investigations while undertaking the fullest range of duties, from Deputy to Director at the Internal Affairs Division Office of the Pennsylvania State Police as well as his service as Independent Monitor overseeing Police Department's use of force policies. Although Defendants' assert that Lieutenant Brown, in his Use of Force Review Assessment Report, failed to expressly relate and refer the observations and conclusions he drew to his particular experience as set out in his CV, it is clear from the tenor and tone of the Assessment Report that Lt. Brown employed "the same level of intellectual rigor that characterizes the practice of an

expert in the relevant field," i.e., an Internal Affairs investigator. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999).

Lieutenant Brown's reliance on his experience as a basis for the reliability of his proffered testimony is well accepted as courts expressly recognize that "experts of all kinds tie observations to conclusion through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013)(*quoting Kumho Tire*, 526 U.S. at 149-50(reliability focuses on personal knowledge and experience of the expert)); *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) ("An expert may certainly rely on his experience in making conclusions, particularly in [the] context where an expert is asked to opine about police behavior."); *Kumho Tire,* 526 U.S. at 156("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")

Lt. Brown's report (Exhibit D, Lieutentant Brown's Expert Report) falls squarely within the Court's mandate to test an expert's reliability in a "flexible' manner that applies "the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination*." Kumho,* 526 U.S. at 141-42. Here, despite Defendants assertion to the contrary that Lt. Brown failed to cite to particular 'procedures' to support his conclusions and that his conclusions were not based on a meaningful knowledge of use of force, Lt. Brown expressly referenced Police Department regulations and protocols as the standards upon which he reviewed the factual record he was hired to review. For example, Lt. Brown cited to the SPD's policy and protocols for Use of Physical Force and then pointed out inconsistencies, both in the policies themselves and Defendants' compliance with said protocols. Brown's Use of Force Review, at p. 11. Similarly, Lt. Brown relied upon documentary still photographs in

support of his conclusion that Defendant Officers were in violation of Department policies regarding use of force. Id. at p. 12-16.

Overall, given that Second Circuit has held that under the Federal Rules of Evidence, there is a general presumption of admissibility of evidence, *Hilaire*, 54 F. Supp. 3d at 235 and that the rejection of expert testimony is the exception rather than the rule,"(Advisory Committee Notes: amendments to Fed. R. Evid. 70, dated, 2000) Lt. Brown's testimony, as founded both on his qualifications and experience, as well as on the rigor of his analysis, is well deserving of a finding of reliability required for admissibility. *See, Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) ("an expert may certainly rely on his experience in making conclusions, particularly in [the] context where an expert is asked to opine about police behavior."); *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009)(police officers can acquire specialized knowledge of criminal practices and thus the expertise to opine on such matters). Such result is even further warranted given that the trial court should only exclude expert testimony "if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

The proper Second Circuit standard and the one to applied here is that "a trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence 'an apples and oranges comparison.'" *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009). This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony. As the Supreme Court has explained, "[v]igorous cross-examination, presentation of contrary evidence,

and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596; Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 702.05[3], at 702-76); *Amorgianos,* 303 F.3d at 267(our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony).

Thus, where like here, defendants dispute "the strength of [Lt. Brown's] credentials, faults in his use of different etiology as a methodology, or lack of textual authority for his opinion," such disputes "go to the weight, not the admissibility of his testimony." *McCullock v. H.B. Fuller Co.,* 61 F.3d 1044 (2d Cir. 1995); see also, *Valentin v. New York City*, 1997 U.S. Dist. LEXIS 24059, at *88 (E.D.N.Y. Sep. 9, 1997)(expert need not have complete knowledge and be absolutely certain in his opinions but such only affects the weight of the testimony, not its admissibility).

**C. LIEUTENANT BROWN'S REPORT AND TESTIMONY IS RELEVANT AND WILL ASSIST JURORS IN NAVIGATING THEIR UNDERSTANDING OF POLICE PROCEDURE AND PROTOCOLS THAT SPEAK DIRECTLY TO THE ISSUE THAT THEY WILL BE REQUIRED TO EVALUATE**

It is well established that the use of expert testimony regarding procedures may be used to assist the jury in deciding whether excessive force was used. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992); *United States v. Perkins*, 470 F.3d 150, 160 (4th Cir. 2006) (holding that district court did not err, in prosecution of police officer for use of excessive force, in admitting expert testimony regarding reasonableness of force used). Expert testimony can be helpful to jurors in explaining police control techniques unfamiliar to many jurors. *Outlaw v. City of Hartford*, 2015 U.S. Dist. LEXIS 44800, at *40 (D. Conn. Apr. 6, 2015), *citing Jennings v. Jones*, 499 F.3d 2, 15 (1st Cir. 2007). *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33

(S.D.N.Y. 2016) (Experts may . . . offer testimony discussing 'ordinary practices and usages' in a particular industry.)

Here, Lt. Brown's testimony would immensely serve the purpose of providing the jurors with the context and understanding of police procedure and protocol that speaks directly to the issue they will be required to evaluate. *Daubert,* 509 U.S. at 594-95. Lt. Brown's testimony will assist in clarifying considerations that underlie the question of whether it was objectively reasonable for Defendant Officers to use that quantum of force they indeed chose to use upon Mr. Grant. *See, United States v. Taylor*, 18 F.3d 55, 59-60 (2d Cir. 1994) (even when jurors are well-equipped to make judgments based on their own knowledge and experience, expert testimony can still be helpful by bringing specialized knowledge that could lend support to a jury's inference and generally be helpful to the jury).

Whether an expert's testimony will assist the trier of fact is a question of relevancy where, under Fed. R. Evid. 702, the expert's opinion must relate to an issue that is actually in dispute." Here, it is clear that when evaluating Lt. Brown's testimony in light of Fed. R. Evid. 402, which admits only testimony that "has any tendency to make a fact that is of consequence . . . more probable or less probable," and whether the testimony is "sufficiently tied to the facts of the case." *Daubert*, 509 U.S. at 591, it is clear that Lt. Brown's testimony is unequivocally relevant to the issues of Lt. Grant's case.

With recognition that the Second Circuit has generally not permitted experts to render an ultimate opinion articulated as a legal conclusion, see, *United States v. Scop,* 846 F.2d 135, 139 (2d Cir. 1988) (holding that an expert's statements may not invade the province of the court to determine the applicable law and to instruct the jury as to that law) Mr. Grant acknowledges that Lt. Brown in fact derived a conclusion that could be understood as a legal conclusion. Thus, Lt .

Brown will in fact be instructed to refrain from expressing such legal conclusion and counsel will ensure such through proper questioning on direct examination.

However, to the extent that Lt. Brown may, as an expert, testify to hypothetical facts, provided that they are properly designated as such and experts in his particular field "would reasonably rely on those kinds of facts" Lt. Grant reserves such right. *See, United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)(an expert's "mere use of hypotheticals does not usurp the jury's function of applying the law to the facts of the case."); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 14 F. Supp. 2d 391, 398 (S.D.N.Y. 1998)("Under the usual format, . . . [the plaintiff's] fact witnesses would testify first." The expert "would then be asked to respond to hypothetical questions based upon the prior testimony," which would "allow the factual underpinnings of the expert's opinions to be tested by cross-examination.").

### D. LIEUTENANT BROWN'S EXPERT REPORT AND PROFFERED TESTIMONY REGARDING SPD'S POLICE PROCEDURES REFERRING TO MR. GRANT'S EXCESSIVE FORCE CLAIM ARE RELEVANT AND ADMISSIBLE

When considering the applicability of Fed. R. Evid. 402, which admits testimony that "has any tendency to make a fact that is of consequence . . . more probable or less probable," and the Second Circuit's allowance of evidence of police procedures to prove excessive force claims, *Hygh,* 961 F.2d at 364,[4] Defendants application to strike Lt. Brown's testimony regarding SPD's

---

[4] *See also Parker v. Gerrish*, 547 F.3d 1, 9 (1st Cir. 2008) ("the use of expert testimony is permissible in assisting the jury in evaluating claims of excessive force."); *United States v. Perkins*, 470 F.3d 150, 160 (4th Cir. 2006) (holding that district court did not err, in prosecution of police officer for use of excessive force, in admitting expert testimony regarding reasonableness of force used); *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 908-09 (6th Cir, 2004) (holding district court did not err in admitting expert testimony regarding whether police officers violated nationally recognized police standards in excessive-force case). Subject to any specific objections raised at trial, this Court should allow Lt. Brown's testimony to proceed because it will likely assist the trier of fact in deciding whether the use of force was appropriate in this case.

investigation of the use of force against Lt. Grant is meritless. Such testimony is relevant to uncovering inconsistencies between police reports and articulations made during the excessive force investigation which again, will speak to credibility concerns in evaluating the objective reasonableness of defendants' conduct. Lt. Brown's testimony is additionally relevant to Mr. Grant's *Monell* claim.

Further, Lt. Brown's testimony will help the juror to understand rationale of SPD use of force of the policies and procedures, testimony the juror can use in evaluating the evidence in this case. Indeed, this is one of the main functions of expert testimony.

### E.  REQUEST FOR A *DAUBERT* HEARING

For the reasons stated above, this Court should deny Defendants' motion in its entirety. Lt. Brow has sufficient experience and expertise to provide opinions regarding use of force; his opinions are based on sound standards and will assist the fact finder.  Based solely on Lt. Brown's CV and report, Defendants cannot establish that Lt. Brown's testimony is inadmissible.

If, however, the Court has any concerns regarding Lt. Brown's qualifications or testimony, Plaintiffs request that the court hold a *Daubert* hearing in advance of Lt. Brown's testimony instead of granting Defendants' motion.  Courts often hold pretrial evidentiary hearings -- known as *Daubert* hearings -- to determine whether challenged expert testimony is reliable under Rule 702 and admissible under Rule 403. *Louis Vuitton Malletier v. Dooney & Bourke, Inc*., 525 F. Supp. 2d 558, 581 (S.D.N.Y. 2007).  Whether to hold a *Daubert* hearing is within the discretion of the court. See Committee Note to 2000 Amendment to Rule 702 (noting that the Rule "makes no attempt to set forth procedural requirements for exercising the trial court's gatekeeping function over expert testimony").  *Id.*

"In *Daubert*, the Supreme Court held that it was the duty of the trial judge to examine expert evidence before trial to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. Thus, the district court serves a "gatekeeping" function to prevent expert testimony from carrying more weight with the jury than it deserves. *Daubert*, 509 U.S. at 595.

Generally a *Daubert* hearing is unnecessary when the evidentiary record pertinent to the expert opinions is already well-developed. *Louis Vuitton Malletier* 525 F. Supp. 2d at 581. For example in *Louis Vuitton Malletier* the court found that the challenged experts had been subjected to "lengthy deposition" in addition to submitting reports. *Id.* at 582.  The court concluded that a *Daubert* hearing was not necessary based on the extensive record before the court. *Id.*  Given the fact that Defendants did not take Lt. Brown's deposition, the record regarding his testimony is far from extensive.   In this case, should the Court have any concern about Lt. Brown's qualifications or testimony, a *Daubert* hearing would be appropriate because, "the basic requirement under the law is that parties have an opportunity to be heard before the district court makes its decisions." *Louis Vuitton Malletier* 525 F. Supp. 2d at 581(quoting *Miller v. Baker Implement Co*., 439 F.3d 407, 412 (8th Cir. 2006).

The hearing before the trial judge will prove by the requisite preponderance of evidence that Plaintiffs' expert is fully qualified under *Daubert* to render expert testimony in this case.

### V. CONCLUSION

As the foregoing argument makes plaint, Defendants' Motion to Exclude Lt. Brown's Expert testimony must be denied.

DATED: **August 27, 2018**              RESPECTFULLY SUBMITTED

        LAW OFFICES OF BONNER AND BONNER

        By:*/s/ CHARLES A. BONNER*
        CHARLES A. BONNER
        ATTORNEY FOR PLAINTIFF