**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ALONZO GRANT AND STEPHANIE
GRANT,

          Plaintiffs,

   vs.

CITY OF SYRACUSE, SYRACUSE POLICE
DEPARTMENT, POLICE OFFICERS
DAMON LOCKETT AND PAUL
MONTALTO, POLICE OFFICER BRIAN
NOVITSKY,  CHIEF OF POLICE FRANK
FOWLER, and Does 1-100,

          Defendants

**CASE NO. 5:15-CV-00445-DNH-TWD**

**Judge:  Honorable DANIEL N. HURD**

**Date:**     October 2, 2018
**Time:**     9:30 AM
**Place:**    Alexander Pirnie Federal
             Building & U.S. Courthouse
             10 Broad Street
             Utica NY. 13501

# <u>PLAINTIFF'S TRIAL BRIEF</u>

## Table of Contents

I. INTRODUCTION ...................................................................................................... 3

II. PARTIES ................................................................................................................... 3

IV. STATEMENT OF FACTS ...................................................................................... 4

    Police Officer Paul Montalto's False Perjured Police Report Deposition .................................. 6

    Police Officer Lockett's False Perjured Deposition Statements ................................ 20

    Sergeant Brian Novitsky's False Perjured Deposition Statements ............................ 27

    Syracuse District Attorney Dismissed All Charges .................................................. 43

    Citizen Review Board Findings of Excess Force & Untruthfulness.......................... 44

V. DAMAGES .............................................................................................................. 46

VII. NEW YORK STATE LAW CLAIMS ................................................................... 61

## I. INTRODUCTION

1. This is a complaint for Civil Rights violations, including claims for excessive force, assault, battery and false arrest of Plaintiff Alonzo Grant, and for Intentional and Negligent Infliction of Emotional Distress and Loss of Consortium for his wife, Mrs. Stephanie Grant. PLAINTIFFS, ALONZO GRANT AND STEPHANIE GRANT, by their attorneys, JESSE P. RYDER, ESQ. and CHARLES A. BONNER ESQ., allege as their Complaint for Damages and Civil Rights violations the following facts, and facts upon information and belief.

## II. PARTIES

2. PLAINTIFFS, ALONZO GRANT AND STEPHANIE GRANT, are citizens of the United States and residents of the City of Syracuse.

3. Defendants DAMON LOCKETT AND PAUL MONTALTO, BRIAN NOVITSKY, and CHIEF OF POLICE FRANK FOWLER, are police officers employed by Defendant City of Syracuse.

4. Defendant City of Syracuse POLICE DEPARTMENT is a division of the City of Syracuse governmental organization of the State of New York.

5. Defendant City of Syracuse is a governmental organization of the State of New York.

## III. RESPONDEAT SUPERIOR

***Respondeat Superior***

6. Mr. Alonzo Grant claims that the City of Syracuse is liable under the theory of respondeat superior for Defendants Police Officer Lockett and Police Officer Paul Montalto's assault on Plaintiff. Cities may be held vicariously liable for state law torts committed by police officers under a theory of respondeat superior. See Williams v. City of White Plains, 718 F.

Supp. 2d 374, 381 (S.D.N.Y. 2010). Therefore, the respondeat superior claim against the City of Syracuse regarding Defendants Police Officer Lockett and Police Officer Paul Montalto are valid claims, establishing liability against the City of Syracuse.

## IV. STATEMENT OF FACTS

7.  On Saturday**,** June 28, 2014, Alonzo Grant came home from work at his second job and planned a barbeque with his family**.** A peaceful man, beloved in his neighborhood, he had never had any run-in of any kind with police in his 53 years. Rather, he was and is a peace keeper in the neighborhood. He cuts everyone's lawns and is highly respected in his community. At around 7:00 p.m., he tried, in vain, to defuse a noisy verbal argument occurring outside his home between his then pregnant adult daughter and a female neighbor. Desperate for some peace and quiet and embarrassed by the commotion, he decided to call police to calm and end the argument, specifically noting in his call that he was calling about his daughter. When two Syracuse Police Officers arrived at Mr. Grant's house, they ignored the statements by Mr. Grant and his wife that his daughter had already left and that there was no longer any need for their help.

8.  Instead of following proper police protocol and procedure to conduct an investigative interview consistent with protecting Mr. Grant's constitutional rights, one officer, Defendant Lockett, entered Mr. Grant's house without ringing either of his two door bells, without knocking and without ever asking for permission to enter. Standing inside of his home at the top of his inside stairs, Mr. Grant informed Officer Lockett that his daughter had left and they no longer needed the assistance of the police. Standing inside the house at the bottom of the stairs, Officer Lockett firmly ordered Mr. Grant to "go outside and talk with my partner!"  Mr. Grant lawfully and immediately complied with the officer's directive, walking down the stairs, past

Officer Lockett and out of the house, pushing the self-closing screen door open and proceeding to the outside, followed by Officer Lockett.

9.   Mr. Grant paused momentarily, standing on his landing, and proceeded walking down his front steps towards the second officer, Defendant Montalto who was waiting at the bottom of the outside stairs. Officer Lockett followed behind Mr. Grant through the still open door which then slammed shut behind him. As soon as he had gone through the door, Officer Lockett violently, and without warning or notice, charged Mr. Grant from behind, grabbed both of his arms in a bear hug while Officer Montalto grabbed Mr. Grant's feet from below, and both officers flung Mr. Grant viciously over the four-foot high, black, wrought iron railing of his front porch, slamming him four-feet down to the ground. Frightened, shocked, confused, and in a mental state of total terror, Mr. Grant landed on the ground face up. Officer Lockett immediately began striking Mr. Grant, raining fist blows to Mr. Grant's face and head. Officer Montalto, having previously put on his black "weighted gloves", jumped in on top of Mr. Grant and also began violently punching, hitting, and beating Mr. Grant in his head, ribs, and face. The officers forced Mr. Grant over onto his stomach, trapping his left arm underneath his body, while demanding that he put his hands behind his back. This was impossible, as his left arm was trapped under his body, with Officer Montalto kneeling on his back.

10. By his own admission, Officer Lockett struck **"…A. Grant in the head and face area…" "…I struck him four times at first…."** Officer Lockett also admitted **"…I had to strike him four more times…"** and "…**I subsequently had to strike A. Grant two more times in the face**…." Officer Montalto, having already put on his black leather "weighted gloves", charged forward and dropped his knees with all of his body weight on Mr. Grant's back while Officer Lockett held him in a choke hold. Officer Montalto then pulled back his left arm

and struck the side of Mr. Grant's head repeatedly with his balled fist. The officers' repeated blows resulted in bloodying Mr. Grant's face, breaking his nose, splitting his lip, cutting a gash in his face and causing a concussion. In addition, Office Montalto struck Mr. Grant with his knees in the thigh.

11. The two officers then falsely charged Mr. Grant with Resisting Arrest, Disorderly Conduct and Harassing and Annoying Police.

### Police Officer Paul Montalto's False Perjured Police Report Deposition

12. **Officer Montalto's Police Report Deposition: "Upon arrival we spoke to the complainant, Alonzo Grant who was standing in the front yard of the residence**." <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: Mr. Grant was never out of his home, "his castle". He was never standing in the front yard.

  **Proof Testimony:**

   1) PO Lockett: "When I arrived, I heard a male voice from the above residence yell through the screen door, "We don't need the police." I approached the front door and was met by A. Grant."

   2) Mr. Grant: "He [The black Officer] opened the door and stepped right in. I don't know why he came in. I have two door bells. He did not knock. He walked in my house. I was standing at the top [of the stairs]."

   3) Mrs. Stephanie Grant: "One officer [black officer] stepped into the house; he stood on the first step. I stood up from my chair."

   4) Witness Cory McMullin, Neighbor:  Sharon Hayes, Neighbor: "The black Officer came first. They came 1-2 minutes apart. Alonzo came to the door".

**The Proven Credible Facts:** Mr. Grant was inside his home when the officers arrived. He was not "**standing in the front yard of the residence."**

13. **Officer Montalto's Police Report Deposition:  "…We observed that Grant appeared highly agitated. Grant stated "We don't need the fucking police my daughter is gone…."**

This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant did not call them "fucking police" or swear at the police at any time. P.O. Montalto did not observe Mr. Grant at all until Mr. Grant left the inside of his home.

**Proof Testimony:**

1) PO Lockett: "A. Grant said, "Officer she left," and then started yelling at his wife, Stephanie Grant. He went back up his stairs which was in the entry way as you walk through the door and began yelling. He then came back down to the front door and said, "Officer, this is all because of my daughter, I don't want her here anymore."

2) Mr. Grant: "I was talking to my wife about taking care of the house. We were not arguing. I was not angry."

3) Stephanie Grant: "We were talking. He was not yelling. Alonzo has a loud voice."

4) Witness Corey McMullin: "Alonzo was tellin' them his daughter was gone and they didn't need them no more. If I'm not mistaken his wife yelled the same out the window."

5) Witness Sharon Hayes: "Alonzo said, never mind, we don't need you because my daughter left. I think Alonzo's wife said it too, but the black officer kept coming and went right in, no knock."

**The Proven Credible Facts:** Mr. Grant did not swear ("fucking police") at the Officers; did not speak to PO Montalto; Mr. Grant talked only to P.O. Lockett from a position inside his house.

14. **Officer Montalto's Police Report Deposition: "Grant then began to walk back inside the house. Grant then began yelling at his wife Stephanie Grant who was inside of the residence."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant and Mrs. Grant both were at all times inside the house together. Mr. Grant was not outside the house until ordered to go outside by Officer Lockett.

**Proof Testimony**:

1) PO Lockett Deposition: "He went back up his stairs which was in the entry way as you walk through the door and began yelling."

2) Mr. Grant: "I was talking to Stephanie about the house. The black officer was not saying anything regarding why he came into my house. He walked into my house. He opened the door and stepped right in. I didn't invite him in. I have two door bells. He did not ring either."

3) Mrs. Stephanie Grant: "We were talking. Alonzo was not yelling. Alonzo has a loud voice."

4) Witness Corey McMullin: "His wife ended up saying something to him and he leaned back in the house and walked back in the house. And when the police walked in the house; the police walked in the house behind him. The black officer walked in the house.

5) Witness Sharon Hayes: "Alonzo was upset but at his daughter. He's not a confrontational person. I could not hear what was said inside the house"

**The Proven Credible Facts:** Mr. Grant was inside the house the entire time and was not yelling at his wife.

15. **Officer Montalto's Police Report Deposition: "We then asked Grant to calm down and speak to us but he continued to yell and violently flail his arms towards his wife."** This Is A Willfully Perjured False Statement. **The True Facts**: P.O. Montalto did not speak to Mr. Grant at any time because he was not inside the house.

**Proof Testimony**:

1) PO Lockett Deposition: "At that time I said to A. Grant to please go outside and talk with my partner."

2) Mr. Grant: "He didn't really say anything. He just said to go outside to talk to his partner. He asked me to go outside, so that's what I did. I didn't say anything. I went right down, within 2 seconds."

3) Mrs. Stephanie Grant: "Alonzo was not yelling. The [black] officer did not try to calm him down."

4) Corey McMullin: "The black officer walked in the house. The white officer was standing right here by the bottom of the stairs."

5) Sharon Hayes: "The white officer never even went in the house."

**The Proven Credible Facts:** Mr. Grant only went outside of his home when ordered to do so by Officer Lockett and did not speak to Officer Montalto. Mr. Grant also did not yell or violently flail his arms towards his wife.

**The Proven Credible Facts:** Officer Montalto never went inside of Mr. Grant's home and did not "…asked Grant to calm down…." Neither Officer asked Mr. Grant to calm down. Mr. Grant did not "yell and violently flail his arms towards his wife."

16. **Officer Montalto Police Report Deposition: "Grant then walked pass both PO Lockett and I and violently punched the front door of the house."** This Is A Willfully Perjured False Statement. **The True Facts**: P.O. Montalto was not inside the house. Mr. Grant could not walk past him. He only walked by P.O. Lockett. Montalto could not have observed Mr. Grant "violently" punching anything while Montalto was inside the house because Montalto was never inside the house.

**Proof Testimony**:

1) PO Lockett Deposition: "Grant stormed down the stairs and was still yelling. As he approached the front door he punched the door causing it to swing open… I followed A. Grant outside and as we began walking down the outside…" [Note: P. O. Lockett says, "I [not we] followed A. Grant…]

2) Mr. Grant: I went down the stairs and pushed the door open and it hit the railing." [Note: The screen door is routinely pushed or "punched" by everyone in the home. It has a broken spring that causes it to swing open rapidly and lets it hit the railing every time it is opened.]

3) Stephanie Grant: "Alonzo was calm, not yelling. That is when the police went outside with Alonzo. He ran out, charged out, grabbed Alonzo from behind."

4) Corey McMullin: "He [Alonzo] was just walking out of the house. He didn't have an angry or mad expression. He wasn't mad or aggravated, he was like sad."

5) Sharon Hayes: "Alonzo walked out of the house. He pushed the door open and it hit the railing. It's a metal door and a metal railing. I hear that sound all the time, the kids when they're playing, or the wind."

**The Proven Credible Facts:** Mr. Grant did not walk past Officer Montalto because Montalto never entered Mr. Grant's home, nor did Mr. Grant "violently" punch the door.

17. **Officer Montalto's Police Report Deposition: "PO Lockett then exited the house and PO Lockett ordered Alonzo to stop because he was under arrest for domestic related disorderly conduct."** <u>This Is A Willfully Perjured False Statement</u>. **The True Facts**: PO Lockett did not warn Mr. Grant that he was going to put him in handcuffs or that he was planning to arrest him at any time. He grabbed both of Mr. Grant's arms from behind in a bear hug without any warning.

**Proof Testimony**:

1) PO Lockett Deposition: "As a result of A. Grant's behavior, I decided to place him in handcuffs. I followed A. Grant outside and as we began walking down the outside, I grabbed both of his arms and told him to put his hands behind his back."

2) Mr. Grant: "I didn't close the door. It closes on its own. I wasn't looking back, the PO was behind me. That's when the cop jumped on me."

3) Stephanie Grant: "When the Officer Lockett grabbed Alonzo, I walked down the stairs. When I got to the door, I was seeing my husband thrown over the railing down to the ground."

4) Witness Corey McMullin: "The black cop came running out and jumped on Alonzo's back for no reason."

5) Witness Sharon Hayes: "Alonzo had his back to the officer. The officer came charging out of the house, jumped on his back and grabbed Alonzo's arms from behind."

**The Proven Credible Facts:** PO Lockett grabbed both of Mr. Grant's arms. Officer Lockett did not tell Mr. Grant to put his hands behind his back. Officer Lockett grabbed Mr. Grant's arms from behind.

18. **Officer Montalto's Police Report Deposition: "PO Lockett then attempted to grab Alonzo by the arm to place him in handcuffs."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: PO Lockett grabbed both of Mr. Grant's arms and locked them in a bear hug from behind without verbal warning of any kind.

**Proof Testimony**:

1) PO Lockett Deposition**:** "I grabbed both of his arms and told him to put his hands behind his back."

2) Mr. Grant: "I didn't close the door [it closes on its own]. I wasn't looking back, the PO was behind me. That's when the cop jumped on me."

3) Stephanie Grant: "When he [the officer] grabbed Alonzo, I walked down the stairs. When I got to the door, I was seeing my husband go over the railing down to the ground."

4) Corey McMullin: "As Alonzo was coming down the stairs, he got to about midway down the stairs, when the black officer came out behind him, so by the time Alonzo hit the bottom of the steps, he kind of like dived on his back, kind of wrestler's style fashion. Slung him on the ground over the railing. He was blindsided. Never saw it coming. He wasn't even aware of what was happening."

5) Sharon Hayes: "Alonzo had his back to the officer. The officer came charging out of the house, jumped on his back and grabbed Alonzo's arms from behind."

**The Proven Credible Facts:** PO Lockett did not attempt to grab Mr. Grant by the arm; he in fact abruptly, without notice or request, locked up both of Mr. Grant's arms behind his back and threw Mr. Grant over the black wrought iron stair railing. Officer Lockett did not attempt to put him in handcuffs as he did not have his handcuffs out, not did the officer ask Mr. Grant to put his hands behind his back to be handcuffed.

19. **Officer Montalto's Police Report Deposition: "Alonzo then attempted to get away from PO Lockett and they both went out of my visual sight."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: Mr. Grant never tried to get away from PO Lockett, nor did he try to engage him. Both PO Lockett and Mr. Grant were in plain view of PO Montalto since he

was standing right in front of them at the bottom of the outside stairs, never having been inside the house.

**Proof Testimony**:

1) PO Lockett: "A. Grant said to me, "get your hands off of me" and then turned violently and grabbed me around my waist." [Note: Mr. Grant had no way of turning while both his arms were locked in a bear hug behind his back.]

2) Mr. Grant: "I wasn't fighting with them. He grabbed me, my arms behind my back, the other one grabbed my feet and they threw me over."

3) Stephanie Grant: "Alonzo did not fight with the police. When I got to the door, I was seeing my husband go over the railing down to the ground."

4) Corey Mc Mullin: "He wasn't even aware of what was happening. He didn't argue with the police. [He] slung him to the ground over the railing. The black officer was on top of him. The white officer ran in and the first thing he did was punch him."

5) Sharon Hayes: "Alonzo never turned around at all. The officer swung him over the railing; they both went over with the black officer on top."

**The Proven Credible Facts:** Mr. Grant never tried to "get away" and Officer Montalto never lost sight of Mr. Grant nor Officer Lockett, as both Officer Lockett and Mr. Grant were right in front of Officer Montalto, who immediately began punching Mr. Grant.

20. **Officer Montalto's Police Report Deposition: "I then exited the house and observed PO Lockett and Alonzo Grant in a physical altercation…."** This Is A Willfully Perjured False Statement. **The True Fact**: PO Montalto never exited the house because he was not in the house. He could not have observed a physical altercation because he was fully occupied with battering Mr. Grant.

**Proof Testimony**:

1) Mr. Grant: "He [black officer] walked in my house. He asked me to go outside to talk to his partner."

2) Stephanie Grant: "One [black] officer stepped into the house, stood on the first step."

3) Corey McMullin: The black officer walked in the house. The white officer was standing right here by the bottom of the steps."

4) Sharon Hayes: "The white officer never even went in the house."

The Proven Credible Fact: Officer Montalto never observed Officer Lockett and Mr. Grant in a physical altercation, which implies a mutual combat. Rather, Officer Lockett grabbed Mr. Grant and threw him over the railing. Officer Montalto observed Officer Lockett's assault while standing outside of the house on the ground, where he had been during the entire time of this incident.

**The Proven Credible Facts:** Since Officer Montalto was never inside of Mr. Grant's home, he perjured himself when he testified that he "…then exited the house and observed PO Lockett and Alonzo Grant in a physical altercation…."

21. **Officer Montalto's Police Report Deposition: "Grant had his arms wrapped around PO Lockett's waist…."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant's arms were locked behind him until he was thrown across the railing to the ground. He never turned around to face PO Lockett until he landed face-up on the ground and was held in a choke hold and turned on his face.

**Proof Testimony**:

1) Mr. Grant: "I wasn't fighting with them. I did not resist."

2) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him. Alonzo was trying to protect his face with his right hand."

3) Corey McMullin: "There was a lot of grabbing and choking. They had his arms bent all ways. His arm was bleeding. I think his mouth too. The officers were throwing him around. He did not resist. I was yelling to keep the video going."

**The Proven Credible Facts:** Mr. Grant never had his arms wrapped around Officer Lockett's waist. Officer Lockett had Mr. Grant's arms bent around behind his back.

22. **Officer Montalto's Police Report Deposition:  "Alonzo and PO Lockett were both lying on their sides, facing each other…"** This Is A Willfully Perjured False Statement. **The**

**True Fact**: Mr. Grant landed face-up, with his left arm trapped beneath him, making it impossible for him to grasp PO Lockett around the waist.

**Proof Testimony**:

1) PO Lockett: "…We began rolling around on the ground…."

2) Mr. Grant: "I wasn't fighting with them. I did not resist."

3) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him. Alonzo was trying to protect his face with his right hand."

4) Corey McMullin: "There was a lot of grabbing and choking. They had his arms bent all ways. His arm was bleeding. I think his mouth too. The officers were throwing him around. He did not resist. I was yelling to keep the video going."

**The Proven Credible Facts:** Officer Lockett and Mr. Grant were not lying on their sides facing each other. Rather, Officer Lockett and Officer Montalto threw Mr. Grant over the railing, causing Mr. Grant to land face-up and Officer Lockett jumped on top of Mr. Grant and began punching, grabbing, and choking Mr. Grant, who did not resist.

23. **Officer Montalto's Police Report Deposition:  "…and it appeared that Alonzo was trying to roll and get on top of PO Lockett…."** <u>This Is A Willfully Perjured False Statement</u>.

**The True Fact**: At no time was Mr. Grant in any position to roll on top of PO Lockett.

**Proof Testimony**:

1) Mr. Grant: "I wasn't fighting with them. I did not resist."

2) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him. Alonzo was trying to protect his face with his right hand."

3) Corey McMullin: "If I'm not mistaken he had a knee on his back."

**The Proven Credible Facts**: Officer Lockett was holding, choking and punching Mr. Grant in the face, while Officer Montalto was holding and punching Mr. Grant. The officers rolled Mr. Grant over onto his stomach, trapping his left arm, while Mr. Grant attempted to protect his face with his right hand and did not fight the officers.

24. **Officer Montalto's Police Report Deposition:  "I then grabbed Alonzo's left arm and tried to pry it away from PO Lockett…."** This Is A Willfully Perjured False Statement.

**The True Fact**: Mr. Grant was laying face-down, with his left arm trapped beneath him, using his right arm to try to shield his face from relentless blows to the head by both officers. He had no way of holding PO Lockett around his waist so that his arm would need to be pried off him.

**Proof Testimony**:

1) PO Lockett. "I was finally able to get him to release his grasp from around my waist and PO Montalto was able to grab his left arm and place it behind his back." [Note: PO Montalto injured Mr. Grant's left arm severely by contorting the arm and pulling ligaments and the elbow joint, causing abrasions and bleeding.]

2) Mr. Grant: "I did not resist."

3) Stephanie Grant: "Alonzo was trying to protect his face with his right hand."

4) Corey McMullin: "They had his arms bent all ways…At no time did he resist."

**The Proven Credible Facts:** Mr. Grant was never holding on to Officer Lockett's waist. Officer Montalto did not pry Mr. Grant's arm away from Officer Lockett because Officer Montalto admits that he grabbed Mr. Grant's left arm, which was trapped underneath Mr. Grant, and Mr. Grant's right arm was shielding his face.

25. **Officer Montalto's Police Report Deposition: "I was able to pull Alonzo arm off of PO Lockett and he continued to resist my efforts to place his arm behind his back…"** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant did not resist in any way, he simply attempted to protect his face from the vicious blows. Mr. Grant's arm was not grasping PO Lockett's waist. It would have been a physical impossibility.

**Proof Testimony**:

1) PO Lockett: "… [Grant] kept trying to pull his left arm away from PO Montalto."

2) Mr. Grant: "I did not resist."

3) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him."

4) Corey McMullin: "…the first thing he did was punch him, looked like in the head area. He kept bringing it [his fist] back, I'd say about five times."

**The Proven Credible Facts:** Officer Montalto did not pull Mr. Grant's arm off of Officer Lockett because Mr. Grant never grabbed Officer Lockett, as he was being repeatedly punched with his right hand attempting to shield his face, while his left arm was trapped beneath his body.

26. **Officer Montalto's Police Report Deposition: "I then punched Alonzo in the left side the face with my right hand two times in an attempt to get him to comply…"** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: PO Montalto struck Mr. Grant more than two times and at least four to five times with "weighted gloves".

**Proof Testimony**:

1) PO Lockett Deposition: "I struck him four times at first….while still on the ground I had to strike him four more times…I subsequently had to strike A. Grant two more times in the face…"

2) Mr. Grant: "I wasn't fighting with them."

3) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him."

4) Corey McMullin: "…the first thing he did was punch him, looked like in the head area. He kept bringing it [his fist] back, I'd say about five times. If I'm not mistaken he had his knee on his back."

**The Proven Credible Facts:** Officer Montalto struck Mr. Grant more than two times and at least four to five times in the face.

27. **Officer Montalto's Police Report Deposition: "I then forced Alonzo's left arm behind his back and placed it in handcuffs."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: PO Montalto used brute force to bend back Mr. Grant's left arm.

**Proof Testimony**:

1) Mr. Grant: "I did not resist."

2) Stephanie Grant: "Alonzo was trying to protect his face with his right hand."

3) Corey McMullin: "They had his arms bent all ways…At no time did he resist."

**The Proven Credible Facts:** Mr. Grant did not resist and the officers tore his arm from underneath his stomach by force and forced it behind his back.

28. **Officer Montalto's Police Report Deposition:   "I then ordered Alonzo to place his other hand behind his back and he would not comply…"**This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant's left arm was trapped underneath him and immobilized, with one officer holding him in a choke hold, the other kneeling on top of his back.

**Proof Testimony**:

1) PO Lockett: "He continued to resist by laying on his right arm…"

2) Mr. Grant: 'I did not resist."

3) Stephanie Grant: "Alonzo was trying to protect his face with his right hand."

4) Cory McMullin: "They had his arms bent all ways…At no time did he resist."

**The Proven Credible Facts**: Mr. Grant did comply and put his right arm behind his back and he did not lie on his right arm. As is shown on the video of the incident, Officer Lockett has Mr. Grant in a death choke hold while Mr. Grant's right arm is free. Mr. Grant immediately complied by putting his right hand behind his back upon the command.

29. **Officer Montalto's Police Report Deposition: "I then struck Alonzo in the left thigh with a right knee strike in another attempt to get him to comply with my orders."** This Is A Willfully Perjured False Statement. **The True Fact**: Officer Montalto struck Mr. Grant in his face, head, body, and thigh without giving Mr. Grant any orders.

**Proof Testimony**:

1) PO Lockett: "I subsequently had to strike A. Grant two more times in the face, at which time he stopped resisting and lifted up off his right arm…."

2) Mr. Grant: "I did not resist."

3) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him."

4) Corey McMullin: "The officers were throwing him around, I was yelling to keep the video going."

**The Proven Credible Facts:** Mr. Grant did not resist. He was never told he was under arrest and the officers, without probable cause, began to strike, hit, punch, and beat Mr. Grant, including placing him in a death choke hold. Subsequent to this brutality, the officers ordered Mr. Grant to place his hand behind his back and he complied.

30. **Officer Montalto's Police Report Deposition: "I then ordered him to put his other hand behind his back and he finally complied."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant finally managed to extricate his left arm. At no time was he resisting.

**Proof Testimony**:

1) Mr. Grant: "I did what they asked me to do."

2) Stephanie Grant: "He did not swing, punch, strike, annoy, do anything illegal."

3) Corey McMullin: "The cops were just punching him in the face for no reason at all."

**The Proven Credible Facts:** Mr. Grant always complied with the officers' demands, which came only after they had beaten Mr. Grant.

31. **Officer Montalto Police Report Deposition: "Alonzo was placed in handcuffs without incident..."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant was placed in hand cuffs after being viciously beaten. At no time was he warned that he was being placed in handcuffs before the beating, nor was he ever advised that he was being arrested and for what reason.

**Proof Testimony**:

1) PO Lockett: "I subsequently had to strike A. Grant two more times in the face, at which time he stopped resisting and lifted up off his right arm…." [Note: A concussion, broken nose, laceration on the cheek, split lip, bruises and contusions, torn elbow ligaments and severe bruising of the arm does not constitute "without incident."]

2) Mr. Grant: "I was hurtin'. I was hurtin'. I got problems sleeping. I start visualizing in my mind what happened."

3) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him."

4)  Corey McMullin: "There was a lot of grabbing and choking. They had his arms bent all ways. His arm was bleeding. I think his mouth too."

5)  Sharon Hayes: "I saw him when he got up, all bloody. I'm saying why'd they beat him up like that? I've never seen him in no argument around here."

**The Proven Credible Facts:** There was a huge incident in which the officers, without probable cause or any provocation, beat Mr. Grant, who had called the police for help, to a bloody pulp requiring the police to call an ambulance.

32.  **Officer Montalto's Police Report Deposition: "I then spoke to Stephanie Grant who stated that Alonzo was upset with his daughter, Alyssa Grant because Alyssa was involved in a dispute with their neighbor."** This Is A Willfully Perjured False Statement. **The True Fact**: PO Montalto never spoke to Stephanie Grant.

**Proof Testimony**:

1)  Stephanie Grant: "No male officer spoke to me. A young white lady officer was the only one who spoke to me. She interviewed me for less than two minutes. I was sitting on the 3rd step; she was standing inside the door. She wrote down my name, age and birth date, nothing else. She asked if I needed an ambulance or something because my husband beat me. And that's when I stopped her and said my husband did not beat me or hit me, he did not lay a finger on me. She walked out saying, "We have to get this story straight."

The Proven Credible Fact: Officer Montalto gave false testimony as he did not ever speak with Ms. Stephanie Grant.

33.  **Officer Montalto's Police Report Deposition: "Stephanie stated that Alonzo just wanted Alyssa to leave and she left just prior to police arrival."** This Is A Willfully Perjured False Statement. **The True Fact**: PO Montalto never spoke to Stephanie Grant.

**Proof Testimony**:

1)  Stephanie Grant: "No male officer spoke to me. Sergeant Novitsky did not interview me. PO Montalto did not interview me."

**The Proven Credible Fact:** Officer Montalto has given false testimony as he did not ever speak with Ms. Stephanie Grant.

**Police Officer Lockett's False Perjured Deposition Statements**

34. **Officer Lockett's Police Report Deposition: "He went back up his stairs which was in the entry way as you walk through the door and began yelling."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant was admonishing his wife about housework and their daughter's disruptive behavior.

**Proof Testimony**:

1) Mr. Grant: "I was not yelling. I was talking to my wife about taking care of the house."

2) Stephanie Grant: "We were talking. He was not yelling. Alonzo has a loud voice."

   The Proven Credible Fact: Mr. Grant was not yelling at his wife.

35. **Officer Lockett's Deposition: "A. Grant was extremely upset, he went back up the stairs and began yelling and flailing his arms violently at S. Grant and said, "I don't care. I don't want that bitch here anymore. I don't care about the police, I'll go to jail."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant did not make this statement. He was the one who called the police and certainly did not have any thought of going to jail.

   **Proof Testimony**:

1) Mr. Grant: "This statement is false. I was not yelling or flailing my arms. I don't even think I said anything."

2) Stephanie Grant: "We were talking. He was not yelling. Alonzo has a loud voice."

**The Proven Credible Fact:** Mr. Grant was not yelling at his wife, nor was he flailing his arms at all. Mr. Grant did not call his daughter a "bitch." Nor did he say "I don't care about the police, I'll go to jail."  Mr. Grant has never been arrested in his 53 years and is proud of his unblemished record.

36. **Officer Lockett's Police Report Deposition: "Grant stormed down the stairs and was still yelling."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant walked down the stairs at PO Lockett's order, promptly and obediently.

**Proof Testimony**:

1) Mr. Grant: "When he asked me to go outside to talk to his partner I went down the stairs and pushed the door open and it hit the railing. That's what he asked me to do, that's what I did. I don't even think I said anything."

2) Stephanie Grant: "That is when the police went outside with Alonzo."

3) Corey McMullin: "He was just walking out of the house. He didn't have an angry or mad expression. He wasn't mad or aggravated, he was like sad."

**The Proven Credible Facts:** Mr. Grant complied with Officer Lockett's instruction and calmly walked down the stairs to speak with Officer Montalto.

37. **Officer Lockett's Police Report Deposition: "I followed A. Grant outside and as we began walking down the outside, I grabbed both of his arms and told him to put his arms behind his back."** This Is A Willfully Perjured False Statement. **The True Fact**: PO Lockett grabbed both of Mr. Grant's arms in a bear hug behind his back. He did not tell Mr. Grant to put his arms behind his back.

**Proof Testimony**:

1) PO Montalto: "PO Lockett then attempted to grab Alonzo by the arm to place him in handcuffs."

2) Mr. Grant: "I wasn't looking back, the PO was behind me. He grabbed me, my arms behind my back, the other one grabbed my feet and they threw me over."

3) Stephanie Grant: "He [black officer] ran out, charged out, grabbed Alonzo from behind. When he grabbed Alonzo, I walked down the stairs."

4) Corey McMullin: "As Alonzo was coming down the stairs, he got to about midway down the stairs when the black officer came out behind him, so by the time the black officer came out behind him, so by the time Alonzo hit the bottom of the stairs, he kind of like dived on his back, kind of wrestler style fashion."

5) Sharon Hayes: "Alonzo walked out of the house, he pushed the door open and it hit the railing. Alonzo had his back to the officer. The officer came charging out of the house, jumped on his back and grabbed Alonzo's arms from behind."

**The Proven Credible Facts:** Officer Lockett grabbed both of Mr. Grant's arms, forcing them behind his back while Officer Montalto grabbed his feet and they both threw him over the railing without ordering him to put his hands behind his back or announcing that he was under arrest.

38. **Officer Lockett's Police Report Deposition: "A. Grant said, "get your hands off of me", and then he turned violently and grabbed me around my waist."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant had no chance to say anything. He was not able to turn around because both his arms were behind his back and he was being flung across the railing.

**Proof Testimony:**

1) PO Montalto: "Alonzo then attempted to get away from PO Lockett and they both went out of my visual sight." [Note: PO Montalto was standing right in front of them at the bottom of the stairs.]

2) Mr. Grant: "I wasn't fighting with them. I wasn't looking back, the PO was behind me. He grabbed me, my arms behind my back, the other one grabbed my feet and they threw me over."

3) Stephanie Grant: "Alonzo did not fight the police."

4) Corey McMullin: "He was blindsided. He never saw it coming. He wasn't even aware of what was happening."

5) Sharon Hayes: "Alonzo never turned around at all."

**The Proven Credible Fact:** Mr. Grant did not turn around at all. Rather, Officer Lockett grabbed his arms, forcing them behind his back, while Officer Montalto grabbed his feet and both officers threw him over the railing and began to beat him.

39. **Officer Lockett's Police Report Deposition: "We went down the stairs and then both fell to the ground in the front lawn."** This Is A Willfully Perjured False Statement. **The True Fact**: PO Lockett flung Mr. Grant across the railing and followed.

**Proof Testimony:**

1) PO Montalto: "Alonzo then attempted to get away from PO Lockett and they both went out of my visual sight." [Note: PO Montalto was standing right in front of them at the

bottom of the stairs. And if indeed Alonzo had attempted to get away, how would PO Montalto have seen that if they were out of his visual sight? Not only that, but Alonzo would have run right into Officer Montalto]

2) Mr. Grant: "He grabbed me, my arms behind my back, the other one grabbed my feet and they threw me over."

3) Stephanie Grant: "When I got to the door, seeing my husband go over the railing down to the ground."

4) Corey McMullin: "Slung him on the ground over the railing. The black officer was on top of him."

**The Proven Credible Fact**: Officer Lockett and Mr. Grant did not "fall to the ground." Instead, Officer Lockett grabbed his arms, forcing them behind his back, while Officer Montalto grabbed his feet and both officers threw him over the railing and began to beat him, without probable cause or provocation.

40. **Officer Lockett's Police Report Deposition: "I yelled back at A. Grant and told him to let me go and to put his hands behind his back once again. He refused."** This Is A Willfully Perjured False Statement. **The True Fact**: PO Lockett did not speak to Mr. Grant. He rolled him on his face and held him with both hand around his neck in a death choke hold. PO Montalto struck and beat him repeatedly.

**Proof Testimony**:

1) PO Montalto: "Alonzo then attempted to get away from PO Lockett and they both went out of my visual sight." [Note: PO Montalto was standing right in front of them at the bottom of the stairs.]

2) Mr. Grant: "I wasn't fighting with them."

3) Stephanie Grant: "Alonzo did not fight with the police."

4) Corey McMullin: "He didn't argue with police. At no time did he resist. He wasn't even aware of what was happening…The police were never saying anything to Alonzo. He was only groaning."

**The Proven Credible Facts:** Mr. Grant did not refuse any command by either officer. The officers did not give Mr. Grant a command until after they had thrown him over the railing and beaten him, at which point they beat him, ripping his left arm from under his body, and ordered him to place his right hand behind his back, which he did.

41. **Officer Lockett's Police Report Deposition: "We began rolling around on the ground, and I tried to get A. Grant's arms from around my waist by pushing them back, however, he would not release his grasp."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant did not resist in any way.

**Proof Testimony**:

1) PO Montalto: "I then exited the house and observed PO Lockett and Alonzo Grant in a physical altercation…."   PO Montalto was never in Mr. Grant's house. He was standing at the bottom of the stairs.

2) Mr. Grant: "I wasn't fighting with them."

3) Stephanie Grant: "Alonzo was not fighting the police."

4) Corey McMullin: The black officer was on top of him. The white officer ran in and the first thing he did was punch him. Looked like in the head area…kept bringing it back."

**The Proven Credible Fact:** Mr. Grant at no time grabbed Officer Lockett's waist or any part of his body. Mr. Grant did not resist in any way the beating that was wrongfully inflicted upon him. Officer Lockett and Mr. Grant did not "began rolling around on the ground…." Rather, the Officers forcibly and violently, without probably cause, grabbed Mr. Grant, after having thrown him to the ground, and rolled him over from a face up position to a face down position, while striking him in the face and head repeatedly.

42. **Officer Lockett's Police Report Deposition: "He then tried to roll over on top of me at which time I began to strike A. Grant in the head and face area to get him to release his grasp and keep him from rolling over on top of me."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant did not attempt to roll over on top of PO Lockett. He was face down, with his left arm trapped, using his right arm to shield his face.

**Proof Testimony**:

1) Mr. Grant: "I did not try to grab the police officer. I did not resist arrest."

2) Stephanie Grant: "Alonzo was not fighting the police."

3) Corey McMullin: "At no time did he resist. If I'm not mistaken he had a knee on his back. The officers were throwing him around. There was a lot of grabbing and choking."

**The Proven Credible Fact:** Officer Lockett admission of striking Mr. Grant: "**I began to strike A. Grant in the head and face area….**"  Mr. Grant did not attempt to roll over on top of PO Lockett. He was face down, with his left arm trapped under his body, with Officer Montalto's knee pressing on his back with his full body weight, and Mr. Grant was using his right arm to shield his face.

**46. Officer Lockett's Police Report Deposition: "I struck him four times at first while yelling at him to let me go, stop fighting and to put his hands behind his back. A. Grant still did not release his grasp from my waist."** This Is A Willfully Perjured False Statement. **The True Fact**: At no time did Mr. Grant resist, nor did he grasp the Officer.

**Proof Testimony**:

1) Corey McMullin: "The cops were just punching him in the face for no reason at all."

2) Mr. Grant: "I did not try to grab the police officer. I did not resist arrest."

3) Stephanie Grant: "The white officer punched him 4 or 5 times in the face. The black officer was punching him too. Both were holding him, both were punching him."

**The Proven Credible Facts:** Officer Lockett admission repeatedly striking Mr. Grant: "**I struck him four [4] times**…." At no time did Mr. Grant resist, nor did he grasp the Officer. Mr. Grant was never "fighting" the officers.

47. **Officer Lockett's Police Report Deposition: "While still on the ground, I had to strike him four more times to get him to let me go."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant did not have any hold on Officer Lockett at any time.

**Proof Testimony**:

1) Corey McMullin:"The cops were just punching him in the face for no reason at all."

2) Mr. Grant: "I did what they asked me to do. I did not try to grab the police officer."

3) Stephanie Grant: "Alonzo was trying to protect his face with his right hand."

**The Proven Credible Facts:** Officer Lockett admission to repeatedly striking Mr. Grant: **"I had to strike him four [4] more times…."** Mr. Grant did not grab Office Lockett. Both cops were punching Mr. Grant.

**48. Officer Lockett's Police Report Deposition: "A. Grant finally released his grasp from around my waist, and Officer Montalto was able to grasp his left arm and place it behind his back."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant never had a "grasp" around Officer Lockett's waist, or any part of Officer Lockett's body.

**Proof Testimony**:

1) PO Montalto: "I then forced Alonzo's left arm behind his back and placed it in handcuffs."

2) Mr. Grant: "I did what they asked me to do."

3) Stephanie Grant: "Both were holding him, both were punching him."

4) Corey McMullin: "They had his arms bent all ways. His arm was bleeding. I think his mouth was also bleeding"

**The Proven Credible Facts:** Mr. Grant always complied with the orders of the offers to the best of his ability; the Officers had Mr. Grant's arms bent all ways and both were punching him.

**49. Officer Lockett's Police Report Deposition: "Still, while on the ground, I yelled at A. Grant to put his right arm behind his back but he still continued to resist by laying on his right arm and kept trying to pull his left arm away from P.O. Montalto."** This Is A Willfully Perjured False Statement. **The True Facts**: The officers rolled Mr. Grant's body over clock-wise, trapping his left arm underneath his body. Officer Lockett began chocking Mr. Grant, while PO Montalto was kneeling with his knee and full body weight on Mr. Grant's back.

**Proof Testimony**:

1) PO Montalto: "I then struck Alonzo in the left thigh with a right knee strike in another attempt to get him to comply with my orders."

2) Mr. Grant: "I didn't try to fight them."

3) Stephanie Grant: "Alonzo was trying to protect his face with his right hand."

4) Corey McMullin: "They had his arms bent all ways."

**The Proven Credible Facts:** Office Montalto's admission to striking Mr. Grant: "I then struck Alonzo in the left thigh with a right knee strike" Mr. Grant always complied with the orders of the offers to the best of his ability; the Officers had Mr. Grant's arms bent all ways and both were punching him.

**50. Officer Lockett's Police Report Deposition:** "**I subsequently had to strike A. Grant two more times in the face, at which point he stopped resisting and lifted up off his right arm and allowed P.O. Montalto to place both hands into handcuffs to the rear of his person."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant never resisted. He was placed in handcuffs and arrested without cause and without prior warning or verbal communication. He was severely beaten, never told that he was under arrest, and beaten while not resisting arrest.

**Proof Testimony**:

1) PO Montalto: "Alonzo was placed in handcuffs without incident..."

2) Mr. Grant: "I hate it happened. I did what they asked me to do."

3) Stephanie Grant: "The black officer said, go back in the house or I'll Tase you, so I went back in the house."

4) Corey McMullin: "He wasn't even aware what was happening. I yelled to keep the video going."

5) Sharon Hayes: "I saw him when he got up, all bloody. I'm saying why'd they beat him up like that? I've never seen him in no argument around here."

**The Proven Credible Facts:** Officer Lockett admission: "**I subsequently had to strike A. Grant two [2] more times in the face…."**

**Sergeant Brian Novitsky's False Perjured Deposition Statements**

**51.    Sergeant Novitsky's Police Report Deposition: "Bleeding was minor but appeared worse because of the profuse sweating."** This Is A Willfully Perjured False Statement. **The True Facts**: The evidence of the police photos taken at the scene shows that Mr. Grant suffered profuse bleeding about the face, arm and head.

**Proof Testimony:**

    1. Corey McMullin: "They had his arms bent all ways. His arm was bleeding. I think his mouth was also bleeding"

    2. Sharon Hayes: "I saw him when he got up, all bloody."

    3. Exhibit 1-3, Photos of Mr. Grant's bloody face.

    **The Proven Credible Facts: Mr. Grant was "all bloody". The bleeding was not "minor".**

    **52. Sergeant Novitsky's Police Report Deposition:  "I spoke with PO Lockett and PO Montalto. Their verbal account of the Incident was properly documented and was consistent with their written account."** This Is A Willfully Perjured False Statement. **The True Facts**: The Police Report Depositions of PO Montalto and Lockett are 180 degrees opposite of each other: Officer Montalto said he was in Mr. Grant's home; Officer Lockett testified he order Mr. Grant to go outside of his home and speak with Officer Montalto outside. Defendants Montalto and Lockett's sworn accounts are widely divergent from each other and from the accounts of the witnesses.

**Proof Testimony**: Mr. Grant: "He [black officer] walked in my house. He asked me to go outside to talk to his partner."

    1) Stephanie Grant: "One [black] officer stepped into the house, stood on the first step."

    2) Corey McMullin: The black officer walked in the house. The white officer was standing right here by the bottom of the [outside] steps."

**The Proven Credible Facts:** Sgt. Novitsky ignored and covered-up the blatant and irreconcilable contradictions between the deposition testimony of Officers Montalto and Lockett regarding Montalto's statement that he was **inside** Mr. Grant's home and Officer Lockett's testimony that Officer Montalto was **outside** of Mr. Grant's home.

    **53. Sergeant Novitsky's Police Report Deposition: "I spoke with Stephanie Grant, Alonzo's Wife."** This Is A Willfully Perjured False Statement. **The True Facts**: Sergeant Novitsky never spoke with Stephanie Grant, nor did he take a statement from her. Even the female officer took no written statement and spoke to Stephanie Grant for less than 2 minutes.

**Proof Testimony**

1) Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me. The lady officer is the only one who spoke to me. She was a white lady officer. She had a note pad just to write my name, age, and birth date. She came in the house. She asked if I needed an ambulance or something because my husband beat me. And that's when I stopped her and said my husband did not beat me or hit me, he did not put a finger on me. She walked out saying, "We have to get this story straight." The female officer interviewed me for two minutes or less. I was sitting on the 3rd step of my stairs leading into my house."

**The Proven Credible Facts:** Sgt. Novitsky perjured himself when he swore under oath that he "spoke with Stephanie Grant…."

**54. Sergeant Novitsky's Police Report Deposition: "She told the following; Stephanie, Alonzo and Alyssa were arguing about Alyssa and the neighbor."** This Is A Willfully Perjured False Statement. **The True Facts**: Alonzo and Stephanie were talking about keeping the house clean.

**Proof Testimony**:

1) Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me."

**The Proven Credible Facts:** Sgt. Novitsky perjured himself when he swore under oath that he "spoke with Stephanie Grant…." "Novitsky did not interview Mrs. Grant. No male officer spoke to Mrs. Grant."

**55. Sergeant Novitsky's Police Report Deposition: "Alyssa began arguing with the neighbor in front of the house, which prompted Alonzo to become irate."** This Is A Willfully Perjured False Statement. **The True Facts**: Alonzo was angry about the peace being disturbed by his daughter; therefore he called the police to calm the situation. He was upset and wanted the police to come and restore peace.

**Proof Testimony**:

1) Stephanie Grant: ""Novitsky did not interview me. No male officer spoke to me."

**The Proven Credible Facts:** Sgt. Novitsky perjured himself when he swore under oath that he "spoke with Stephanie Grant…." "Novitsky did not interview Mrs. Grant. No male officer spoke to Mrs. Grant."

**56. Sergeant Novitsky's Police Report Deposition:  "Stephanie said both Alonzo and Alyssa have a bad temper and sometimes can't control themselves."** This Is A Willfully Perjured False Statement. **The True Facts**: Stephanie Grant did not make this statement to anyone. And she did not speak with Sergeant Novitsky at all.

**Proof Testimony**:

1) Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me." That is a false statement. I did not tell a police officer that."

2) Sharon Hayes: "I've never seen him in an argument around here. He is a good citizen, cuts everyone's grass, socializes with everybody, don't get in no confrontations. He might call the police on other people."

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant and she did not make this false statement to any police officer: "**both Alonzo and Alyssa have a bad temper and sometimes can't control themselves.**"

**57. Sergeant Novitsky's Police Report Deposition: "Alonzo eventually called the police to have Alyssa removed from the house."** This Is A Willfully Perjured False Statement. **The True Facts**: Alonzo called the police to break up an argument between his daughter and a neighbor in front of the house.

**Proof Testimony**:

1) Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me." That is a false statement. I did not tell a police officer that."

2) Mr. Grant: "I just wanted her to go home to give me some peace and quiet."

3) Stephanie Grant: "Alonzo called the police to have Alyssa leave from the front."

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant.

**58.  Sergeant Novitsky's Police Report Deposition: "Alyssa left prior to police arrival but Alonzo was still irate. He was still yelling when the police arrived."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant was not yelling.

**Proof Testimony**:

1) Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me." That is a false statement. I did not tell a police officer that."

2) Mr. Grant: "I was already calm."

3) Stephanie Grant: "Alonzo was calm, he was not yelling. We were talking. Talking about taking care of the house. Alonzo has a loud voice."

4) PO Lockett: "A. Grant said, "Officer she left," and then started yelling at his wife, Stephanie Grant. He went back up his stairs which was in the entry way as you walk through the door and began yelling. He then came back down to the front door and said, "Officer, this is all because of my daughter, I don't want her here anymore." Mr. Grant did not swear at the Officers, did not speak to PO Montalto; talked only to P.O. Lockett who forced himself inside of Mr. Grant's house.

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant.

**59.    Sergeant Novitsky's Police Report Deposition:  "The police tried to calm him down but Alonzo was still very mad and continued yelling."** This Is A Willfully Perjured False Statement. **The True Facts**: The officer did not try to calm Mr. Grant down.

**Proof Testimony**:

1) Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me." That is a false statement. I did not tell a police officer that."

2) Mr. Grant: "He opened the door and walked in, stepped right in. I don't know why he came in. He walked in my house, I have two doorbells. I didn't ask him to come in, I didn't invite him in. He didn't really say anything. He just said to go outside to talk to his partner."

3) Stephanie Grant: "One officer stepped into the house. He stood on the first step. I stood up from my chair. The officer did not try to calm him down. He asked, what's going on?

4) PO Lockett: "At that time I said to A. Grant to please go outside and talk with my partner."

5) PO Montalto: "We then asked Grant to calm down and speak to us but he continued to yell and violently flail his arms towards his wife." [Note: PO Montalto was not in the house at any time and never spoke to Mr. Grant]

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant. Mrs. Grant did not make the following statement to any officer: "**The police tried to calm him down but Alonzo was still very mad and continued yelling.**"

**60. Sergeant Novitsky's Police Report Deposition: "Finally, Alonzo went outside and slammed the door closed behind him."** This Is A Willfully Perjured False Statement. **The True Facts**: There was no "Finally". When PO Lockett asked Mr. Grant to go outside to talk to his partner, he did so immediately. Mr. Grant did not slam the door behind him. The door closes on its own and did not close until after PO Lockett had followed Mr. Grant out.

**Proof Testimony**:

1) Stephanie Grant: "Novitsky did not interview me. No male officer spoke to me." That is a false statement. I did not tell a police officer that."

2) Mr. Grant: "When he asked me to go outside to talk to his partner I went down the stairs and pushed the door open and it hit the railing. He asked me to go outside so that's what I did. I didn't close the door."

3) Stephanie Grant: "That is not true. That is when the police went outside with Alonzo. He ran out, charged out, grabbed Alonzo from behind."

4) Corey McMullin: Not true. He didn't come out where you could visibly see he was angry. He was just walking out of the house. He didn't have an angry or mad expression. He wasn't mad or aggravated, he was like sad. The black cop PO Lockett came running out and jumped on Alonzo's back for no reason at all."

5) Sharon Hayes: "Alonzo walked out of the house. He pushed the door open and it hit the railing."

6) PO Lockett: "As he approached the front door he punched the door causing it to swing open… I followed A. Grant outside."

7) PO Montalto: ""Grant then walked pass both PO Lockett and I and violently punched the front door of the house." [Note: PO Montalto was not in the house. Mr. Grant could not have walked pass [sic] him.]

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant.

**61.   Sergeant Novitsky's Police Report Deposition: "That is when the police went outside with Alonzo."** This Is A Willfully Perjured False Statement. **The True Fact**: PO Lockett followed Mr. Grant out of the house.

**Proof Testimony**:

1) Mr. Grant: "When he asked me to go outside to talk to his partner I went down the stairs and pushed the door open…"

2) Stephanie Grant: "…ran out, charged out, grabbed Alonzo from behind."

3) Corey McMullin: "Alonzo came out of the house. As Alonzo was coming down the stairs, he got to about midway down the stairs, when the black officer came out behind him…"

4) Sharon Hayes: "Alonzo had his back to the officer. The officer came charging out of the house, jumped on his back, grabbed Alonzo's arms from behind."

5) PO Lockett: "I followed A. Grant outside…"

6) PO Montalto: "PO Lockett then exited the house…"

**The Proven Credible Facts:** Sgt. Novitsky perjured himself since he did not speak with Mrs. Grant and she did not make this false statement any police officer:

**62. Sergeant Novitsky's Police Report Deposition: "Stephanie has trouble ambulating and stairs are difficult for her to negotiate. She was not outside when Alonzo fought with the police."** This Is A Willfully Perjured False Statement. **The True Fact**: Stephanie

Grant watched from the top of the inside stairs as Mr. Grant walked down the stairs, complying with Officer Lockett's order to "go outside and talk with my partner", and she went down the stairs and watched both officers throw Mr. Grant over the railing onto the grown. Mr. Grant did not fight with the police.

**Proof Testimony**:

1) Stephanie Grant: "When he grabbed Alonzo, I walked down the stairs. When I got to the door, seeing my husband go over the railing down to the ground. The white officer hit him 4-5 times in his face. The black officer was punching him too. Both holding him; both punching him. Alonzo was trying to protect his face with his right hand. The black officer yelled at me to go in the house. The black officer said, go back in the house or I'll Tase you; so I went back in the house."

**The Proven Credible Facts**: Mrs. Stephanie Grant is clearly present outside on the video taken by witnesses and saw her husband. She went inside only after Mr. Grant had been beaten bloody, and after the wrongful command to "go back in the house" by Officer Lockett and his assaultive threat of violence to "Tase" Mrs. Grant.

**63. Sergeant Novitsky's Police Report Deposition: "I also spoke with Corey McMullin. He told the following: He was standing on the sidewalk near Alonzo's driveway and saw everything."** _**This Is A True Statement**_. **The True Fact**: Corey McMullin moved from his porch to the front steps of Mr. Grant's house and witnessed the entire incident.

**Proof Testimony**:

1) Corey McMullin: "That is true.

2) Sharon Hayes: "Corey and I were sitting on the porch. Cory went over there…"

**The Proven Credible Facts**: Corey McMullin: "was standing on the sidewalk near Alonzo's driveway and saw everything."

**64. Sergeant Novitsky's Police Report Deposition: "Alonzo was very mad and came outside, slamming the door shut behind him."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant exited the house calmly and did not slam the door behind him.

**Proof Testimony**:

1) Corey McMullin: "Not true. He [Mr. Grant] didn't come out where you could visibly see he was angry. He was just walking out of the house. He didn't have an angry or mad expression. He wasn't mad or aggravated, he was like sad.

2) Mr. Grant: "When he asked me to go outside to talk to his partner I went down the stairs and pushed the door open and it hit the railing. He asked me to go outside so that's what I did. I didn't close the door."

3) Stephanie Grant: "That [statement by officer Novitsky] is not true."

4) Sharon Hayes: "Alonzo walked out of the house."

5) PO Lockett: "As he approached the front door he punched the door causing it to swing open…"

6) PO Montalto: "Grant then walked pass both PO Lockett and I and violently punched the front door of the house." [Note: PO Montalto was never inside the house, therefore Mr. Grant did not walk pass[sic] him]

**The Proven Credible Facts**: Mr. Grant, complying with Officer Lockett's order, went outside and opened his front screen door, which banged the iron railing because of a defective hinge-spring.

**65. Sergeant Novitsky's Police Report Deposition:  "The other cop (PO Montalto) came running across the street and started punching Alonzo in the face for no reason at all."** <u>This Is A Willfully Perjured False Statement</u>. **The True Fact**: PO Montalto was standing at the bottom of the stairs in front of Mr. Grant's house.

**Proof Testimony**:

1) Corey McMullin: "I don't think he ran across the street. By the time Alonzo came out he was already in the front [of the stairs]."

2) Sharon Hayes: "The white officer came towards the house. He was standing by the sidewalk."

3) PO Montalto: "Alonzo then attempted to get away from PO Lockett and they both went out of my visual sight." [Note: PO Montalto was standing at the bottom of the stairs in front of PO Lockett and Mr. Grant]

**The Proven Credible Facts**: By the time Mr. Grant came out of his house, Officer

Montalto was already in the front of the stairs on the sidewalk."

66. **Sergeant Novitsky's Police Report Deposition: "I asked McMullin what the police were saying to Alonzo. McMullin told me nothing, the cops were just punching him in the face for no reason at all. He stated Alonzo was not doing anything at all."** ***These are True Facts***. **The True Facts**: Mr. Grant was ambushed without probable cause and viciously beaten, and was never told he was under arrest.

**Proof Testimony**:

1) Mr. Grant: "I didn't close the door [it closes on its own]. I wasn't looking back, the PO was behind me. That's when the cop jumped on me."

2) Stephanie Grant: "Ran out, charged out, grabbed Alonzo from behind."

3) Corey McMullin: "As Alonzo was coming down the stairs, he got to about midway down the stairs, when the black officer came out behind him, so by the time Alonzo hit the bottom of the steps, he kind of like dived on his back, kind of wrestler's style fashion. Slung him on the ground over the railing. He was blindsided. Never saw it coming. He wasn't even aware of what was happening."

4) Sharon Hayes: "People said why are you punching him?"

5) PO Lockett: "I followed A. Grant outside and as we began walking down the outside, I grabbed both of his arms and told him to put his hands behind his back." [Note: Since PO Lockett grabbed both of Mr. Grant's arms, he did not need to tell him to put his hands behind his back because he had already grabbed both arms]

6) PO Montalto: "PO Lockett then exited the house and PO Lockett ordered Alonzo to stop because he was under arrest for domestic related disorderly conduct." [Note: This was happening while PO Montalto claims that "they both went out of my visual sight"]

**The Proven Credible Facts:** As Mr. Grant was coming down the stairs. He got to about midway down the stairs, when Officer Lockett came out of the house behind him. By the time Mr. Grant stepped on the bottom of the steps, Officer Lockett kind of like dived on his back, kind of

wrestler's style fashion, and slung Mr. Grant on the ground over the railing. Mr. Grant was blindsided. Never saw it coming. He wasn't even aware of what was happening.

**67. Sergeant Novitsky's Police Report Deposition: "McMullin's account is in contradiction to the account of PO Lockett's, PO Montalto's, Stephanie's and Alonzo's."** This Is A Willfully Perjured False Statement. **The True Fact**: Witness Corey McMullin's account matches those of Mr. Grant, Stephanie Grant, Sharon Hayes, and other eye witnesses. **Proof Testimony**:

1) See testimony of Mr. Grant, Stephanie Grant, and Sharon Hayes as stated hereinabove.

**The Proven Credible Facts:** Sergeant Novitsky is covering up for Officers Montalto and Lockett by falsely stating that Mr. McMullins's testimony contradicts that of Mrs. Grant and Sharon Hayes.

**68. Sergeant Novitsky's Police Report Deposition: "I interviewed Alonzo at the hospital. He told the following; He was frustrated with Stephanie because she was not keeping up with the housework as well as he thought she should. He was arguing with her when Alyssa began arguing with the neighbor."** This Is A Willfully Perjured False Statement. **The True Fact**: Sergeant Novitsky interrogated Mr. Grant while he was sitting, handcuffed to a hospital gurney, suffering from bloody bruises, a broken nose and a concussion, and Sergeant Novitsky failed to read Mr. Grant his Miranda rights, violating Mr. Grant's 5th Amended Rights.

**Proof Testimony**:

1) Sergeant Novitsky's report

**The Proven Credible Facts:** Sergeant Novitsky failed to read Mr. Grant his Miranda rights, violating Mr. Grant's 5th Amended Rights.

**69. Sergeant Novitsky's Police Report Deposition: "This increased Alonzo's anger and he began arguing with Alyssa as well. Alonzo told me Alyssa gets him really angry. Alonzo called the police to get Alyssa out of the house."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant called the police to curtail an argument in front of the house between his daughter and a neighbor.

**Proof Testimony**:

1) Officer Lockett: "A. Grant said, "Officer she left,"

2) Mr. Grant: "That's false that I told him Alyssa gets me really angry. I called the police to make Alyssa go home. She was arguing with a neighbor in front of my house."

**The Proven Credible Facts**: Mr. Grant called the police to curtail an argument in front of the house between his daughter and a neighbor.

**70. Sergeant Novitsky's Police Report Deposition:  "She left prior to police arrival but he was still angry. He continued yelling at Stephanie even after the police arrived."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant and Stephanie Grant were talking.

**Proof Testimony**:

1) Mr. Grant: "That's false. I was not yelling. That's false. I never said that."

**2)** Stephanie Grant: "We were talking. He was not yelling.

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause, by the officers under his supervision—Officers Montalto and Lockett.

**71. Sergeant Novitsky's Police Report Deposition: "Eventually, he went outside and closed the door behind him. That is when the cops jumped on him."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant did not close the door behind him. He did not go outside "Eventually". Rather, Mr. Grant immediately obeyed PO Lockett's order and went outside to speak with Lockett's partner, as instructed. This is when the cops jumped on him.

**Proof Testimony**:

1) Mr. Grant: "That's false. I never said that. I did not close the door. It wasn't eventually, I went right down. Right away – within 2 seconds. The PO asked me to go outside to talk to his partner. "Could you step outside and talk to my partner?" That's what he asked me to do, that's what I did."

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause

**72. Sergeant Novitsky's Police Report Deposition: "I asked him if he slammed the door shut. Alonzo hesitated to answer but did. He said, "I don't remember but I think I may have."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant did not make this statement.

**Proof Testimony**:

1) Mr. Grant: "I never said that."

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

**73. Sergeant Novitsky's Deposition:  "I asked him what he did when the cops jumped on him. He told me, "I tried to push them away from me."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant did not make this statement. He did not push the police away from him.

**Proof Testimony**:

1) Mr. Grant: "No, I did not tell him that. I did not push him away. "No!" They had my arms behind my back! I have never been arrested nor have I ever touched an officer. "No!"

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

**74. Sergeant Novitsky's Police Report Deposition: "I asked him if he knew it was the police and he said yes. I followed up with the question, if you knew it was the police why did you try to fight them and not follow their commands?"** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant did not fight the police. He followed their commands.

**Proof Testimony**:

1) Mr. Grant: "Of course I knew it was the police! I didn't try to fight them!"

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

**75. Sergeant Novitsky's Police Report Deposition: "Alonzo's body posture changed dramatically when he answered this question. Initially, he was sitting on the side of the**

**hospital bed with his legs over the side, back straight and looking at me in the eyes. When he answered my last question, his head dropped, he looked to the floor, his shoulders slumped down and he let out a long sigh. Alonzo told me he just couldn't stop himself. He knew it was the police but he just could not stop fighting with them."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant did not make this statement.

**Proof Testimony**:

1) Mr. Grant: "Yes, my legs were over the side. I never told him that. I never told him anything like that. I wasn't fighting with them. He grabbed me, my arms behind my back, the other one grabbed my feet and they threw me over. Never said that! That's False."

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

**76. Sergeant Novitsky's Police Report Deposition: "Alonzo added that Alyssa gets him really mad and his temper gets out of control."** This Is A Willfully Perjured False Statement. **The True Fact**: Mr. Grant did not make this statement.

**Proof Testimony**:

1) Mr. Grant: "That's False."

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

**77. Sergeant Novitsky's Police Report Deposition: "Alonzo sustained a nasal fracture and laceration to the left side of his face. He was treated at the hospital and released."** This Is A Willfully Perjured False Statement. **The True Facts**: Mr. Grant sustained a concussion, nasal fracture, laceration needing sutures, multiple contusions and bruises, a split lip, severe swelling of the entire left side of his face, torn ligaments, bruises and abrasions to his left arm, and permanent close head brain damage, in addition to severe mental and emotional distress .

**Proof Testimony**:

1) Medical Records

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover up for the excessive force inflicted on Mr. Grant, without probable cause.

**78. Sergeant Novitsky's Police Report Deposition:  "Alonzo was booked in the Justice Center after his release from the hospital. The actions of PO Lockett and PO Montalto were in compliance with the Syracuse Police Department's rules and regulations and in compliance with New York State Penal Law Article 35. Their actions were lawful, justified and not reckless. The force used was necessary and reasonable."** This Is A Willfully Perjured False Statement. **The True Facts**: The force used by PO Montalto and PO Lockett was reckless, excessive, unnecessary and unlawful.

**Proof Testimony**:

1) Mr. Grant: "No, I was not released. I was hurtin'. I was hurtin'. I was pretty down. I got problems sleeping. I start visualizing in my mind what happened. I got a tetanus shot. I hate it happened. I did what they asked me to do."

2) Stephanie Grant: "When I got to the door, seeing my husband go over the railing down to the ground. The white officer hit him 4-5 times in his face. The black officer was punching him too. Both holding him, both punching him. Alonzo was trying to protect his face with his right hand."

3) Corey McMullin: "…the first thing he did was punch him, looked like in the head area. He kept bringing it [his fist] back, I'd say about five times. If I'm not mistaken he had his knee on his back…There was a lot of grabbing and choking… They had his arms bent all ways… His arm was bleeding. I think his mouth. The officers were throwing him around. He did not resist… He was just groaning."

4) Sharon Hayes: "I saw him when he got up, all bloody. I'm saying why'd they beat him up like that? He's not a confrontational person."

5) PO Lockett: "…at which time I began to strike A. Grant in the head and face area…" "I struck him four times at first…" "While still on the ground, I had to strike him four more times…" "I subsequently had to strike him two more times in the face…"

6) PO Montalto: "I then punched Alonzo in the left side the face with my right hand two times in an attempt to get him to comply…" "I then struck Alonzo in the left thigh with a right knee strike…" "I then forced Alonzo's left arm behind his back…"

**The Proven Credible Facts**: Sergeant Novitsky created false facts to cover-up for the excessive force inflicted on Mr. Grant, without probable cause.

79. On June 28, 2014, Officer Montalto falsely affirmed Under the Penalty of Perjury the following:

On the aforementioned date and time and location the above defendant, Alonzo Grant did commit the crime of Resisting Arrest. Defendant Grant was informed that he was under arrest for domestic related disorderly conduct. Grant then intentionally attempted to prevent a Police Officer from effecting [sic] an authorized arrest of himself. Defendant Grant physically grabbed an officer and wrestled with officers who were attempting to place him in handcuffs. Defendant Walker [sic] refused to comply with several commands to place his hand behind his back so that he could be placed in handcuffs.  In order to effect this authorized arrest the defendant's hand were physically pulled behind his back. The above listed actions by the defendant constitute the crime of Resisting Arrest.

"On the above date and time and location: while inside the house of Stephanie Grant and being husband of Stephanie Grant The defendant Alonzo Grant intentionally and continuously flailed his arms at his wife Stephanie Grant. The defendant was screaming, yelling and acting aggressively toward his wife and police. The defendant violently punched the front door of the house causing it to fly open in the presence of police officers and continued to annoy and alarm all parties involved with his violent tumultuous threatening behavior. The above actions of the defendants constitute the violations of Disorderly Conduct pursuant to NYSPL 240.20 (1) and NYSCPL 530.11. (1)"

80.    Officer Montalto made a "request that certain criminal process be issued to compel defendant [Mr. Grant] to answer the aforesaid accusation"  Officer Montalto signed his name, and badge Number "302" "Under the Penalty of Perjury on June 28, 2014"  issuing a criminal complaint against Mr. Grant, an innocent man. Officer Montalto signed his name just below the

warning: "NOTE: False Statements made herein are punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York."

81. Likewise, Officer Lockett falsely affirmed Under the Penalty of Perjury on June 28, 2014 the following:

> On the above date and time and place the above defendant Alonzo Grant with intent to harass, annoy and alarm did intentionally subjected me to physical contact by wrapping both of his arms around my waist and trying to take me down to the ground. As a result of the defendants actions I was harassed, annoyed and alarmed.  By intentionally harassing me and subjecting me to physical contact the defendant did commit the violation of Harassment In the 2nd Degree.

82. Officer Lockett also signed his name, and badge Number "0366" "Under the Penalty of Perjury on June 28, 2014"  issuing a criminal complaint against Mr. Grant, an innocent man. Officer Lockett signed his name just below the warning: "NOTE: False Statements made herein are punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York."

83.     Based on the Reports of Defendants Lockett and Montalto, the Syracuse District Attorney initiated prosecution against Mr. Grant, and he was charged for the first time in his 53 years of life with a crime, and specifically with the crimes of Resisting Arrest, Harassment 2nd, and Disorderly Conduct for an alleged altercation with the police at his home on June 28, 2014.

**Syracuse District Attorney Dismissed All Charges**

84.     On September 10, 2014, the Syracuse District Attorney dismissed all charges against Mr. Grant, concluding after thoroughly investigating and reviewing the case, and exonerated Mr. Grant completely, averring that **"Mr. Grant had done nothing wrong"** "Witnesses at the scene, both related and unrelated to Mr. Grant, did not report any conduct by him that could reasonably be considered resisting arrest," prosecutors said in a news release. The law did not support the disorderly conduct charge, either. "It appears that Mr. Grant has an unblemished record and is

well-established in the community," the DA's office continued. "Based upon all of the foregoing factors, this office has moved to dismiss these charges in the interest of justice."

85.     The District Attorney stated in dismissing the charges:

"It was Mr. Grant who made the call to police in an attempt to prevent the verbal dispute from escalating further. He was not suspected as the perpetrator of any crime. When an officer entered the residence to assess the situation he eventually asked Mr. Grant to exit his home and speak to SPD Officer Paul Montalto. As he was walking out the door, Mr. Grant punched his screen door, causing the door to slam against the side of his house. Almost immediately following Mr. Grant's action, the police decided to arrest for him Disorderly Conduct.

SPD Officer Damon Lockett reached for Mr. Grant and both parties went over the side of railing and fell to the ground. At this point, Officers Lockett and Montalto struck Mr. Grant about the face and head several times. Mr. Grant suffered injuries which required medical attention."

The actions and findings of the District Attorney are consistent the findings of the Syracuse Citizen Review Board proving Mr. Grant is Factually Innocent of the dismissed charges.

**Citizen Review Board Findings of Excess Force & Untruthfulness**

86.     On October 16, 2014, the Syracuse CITIZEN REVIEW BOARD, "**In the matter of Alonzo _Grant vs. Syracuse Police Officers_ Allegations of Misconduct: Excessive Force, False Arrest, Untruthfulness",** issued its finding to Mr. Grant as follows:

"**Dear Mr. Grant:**

**In accordance with our authorizing local law, a CRB panel met on October 15, 2014 to review the above captioned matter. After careful review of the testimony and facts submitted, the CRB panel made the following determination:**

**CRB Findings:**

• **Excessive Force:** Sustained for Officers #1 and #2

• **False Arrest:** Sustained for Officers #1 and #2

**• Untruthfulness**: <u>Sustained for Officers #1, #2, and #3</u>

**In addition, the CRB panel recommended specific discipline to the Chief of Police for the sustained allegations against the officers.**

**Mr. Grant, thank you for coming forward to file your complaint. This can ultimately lead to recommendations for changes and improvements in SPD policy, practices and training. Your input and feedback on such police interactions is critical to the operations of the Citizen Review Board…."** [Emphasis added]

87**.** The findings by the Syracuse District Attorney and the Syracuse Citizen Review

Boar d compel a Declaratory Judgment that Mr. Grant is Factually Innocent of the dismissed charges, consistent with the Due Process Clause protection in the Fourteenth Amendment of the United States Constitution. Since the State of New York does not have a law permitting wrongfully accused persons to reclaim their status of innocent, a Declaratory Judgment is hereby requested, declaring Mr. Grant is factually innocent of the dismissed charges. Such Declaratory Judgment is hereby prayed for in this Complaint.

88. All of the evidence, the facts established by each of the witnesses, including the patently false and contrived sworn Deposition Testimony of Defendants Officers Lockett, Montalto, and Novitsky, as confirmed by the Syracuse District Attorney and the Syracuse Citizen Review Board, support and compel a Declaratory Judgment as follows: ***Defendant Officers Lockett, Montalto, and Novitsky willfully made False Statements in their Deposition Police Reports and by so doing, each violation is punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.*** This Declaratory Judgment is needed for the ultimate benefit of the Defendant Police Officers, the Syracuse Police Department, and the Public in order to restore public trust in the Syracuse Police Department and to heal the Syracuse Community from a metastasizing mistrust of the Police, one of our most valued public servants.

## V. DAMAGES

89.     Mr. Grant's damages include, but are not limited to, the following: brain damage,fractured nose, cut lip, cut left side of head, bruised and injured left arm and elbow, including torn ligaments, concussion syndrome, anxiety, mental and emotional distress, humiliation, fear, discomfort, loss of enjoyment of life, inconvenience and suffering, physical and psychic injuries, headaches, nightmares, insomnia, and misery. The injuries, illnesses and harms caused, and continue to cause, Mr. Grant and Mrs. Grant to seek and obtain medical treatment and ongoing medical care for their injuries, illnesses and medical conditions, and to incur medical expenses, loss of wages, medical bills, loss of work benefits all caused by the Defendants, and each of them.

## VI. FEDERAL LAW CLAIMS

   1.  **Alonzo's § 1983 Claim For False Arrest;**

   (7.) **[Alonzo's State Law Claim For False Imprisonment]**

   A. Alonzo's Claims Against Individual Officers

   *Section 1983 Claims* [1]

   Plaintiffs have brought this action pursuant to § 1983, which provides a cause of action for anyone subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under the color of state law. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).

   *a. False Arrest and False Imprisonment*
         (*Federal #1claim and State #9 claim together*)

   *i. Applicable Law*

---

[1]  Plaintiffs have adopted the MEMORANDUM-DECISION AND ORDER in pertinent part, outlined in the Court's Order, Dkt. 89.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV; accord Garenani v. County of Clinton, 552 F. Supp. 2d 328, 333 (N.D.N.Y. 2008). "The unreasonable seizure of a person in the form of a false arrest and imprisonment is violative of the Fourth Amendment and actionable under § 1983." Garenani, 552 F. Supp. 2d at 333.

"A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). Moreover, "[u]nder New York law, the torts of false arrest and false imprisonment are synonymous." Fincher v. County of Westchester, 979 F. Supp. 989, 998 (S.D.N.Y. 1997) (citing Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991)). To prove the elements of false arrest under New York law, a plaintiff must show that "(1) the defendant intended to confine plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Garenani, 552 F. Supp. 2d at 333 (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).

"The existence of probable cause to arrest is a complete defense to a claim of false arrest and imprisonment; in other words, it renders the confinement privileged." Id. (citing Bernard, 25 F.3d at 102 and Weyant, 101 F.3d at 852). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. "A district court must look to the 'totality of the circumstances' in deciding whether probable cause exists to effect an

arrest." Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (quoting Illinois v. Gates, 462 U.S. 213, 233 (1983)).

Even if there was not probable cause to arrest the plaintiff, the defense of qualified immunity entitles public officials to freedom from suit, as a result of the consequences of the performance of their discretionary duties, when "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Martinez v. Simonetti, 202 F.3d 625, 633–34 (2d Cir. 2000) (quoting Weyant, 101 F.3d at 857). Qualified immunity is an affirmative defense, and, as such, defendants bear the burden of proving that the privilege of qualified immunity applies. Coolick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012). In considering a qualified immunity defense, courts should not be "concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene." Martinez, 202 F.3d at 634 (quoting Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995)).

"[I]n the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause." Martinez, 202 F.3d at 634 (citing Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1987)). "An officer's determination is objectively reasonable"—and thus, arguable probable cause is demonstrated—when "officers of reasonablecompetence could disagree on whether the probable cause test was met." Jenkins, 478 F.3d at 87 (quoting Lennon, 66 F.3d at 423–24). As the Second Circuit explained in Jenkins, "'[a]rguable'probable cause should not be misunderstood to mean 'almost' probable cause . . . . If officers of reasonable competence would have to agree that the information possessed by the

officer at the time of the arrest did not add up to probable cause, the fact that it came close does not immunize the officer." Id.

*ii. Analysis*

Alonzo brings claims for false arrest and false imprisonment stemming from his arrest on June 28, 2014.[4] [2] Defendants contend that the Arresting Officers had probable cause to arrest Alonzo, and that therefore his false arrest claim must be dismissed. Mem. 19–22. Defendants also contend that the Arresting Officers' actions in arresting Alonzo are shielded by qualified immunity. Id. at 23–24.

It is undisputed that the Arresting Officers: (1) intended to confine Alonzo by arresting him; (2) Alonzo was conscious of that confinement; and (3) Alonzo did not consent to his confinement. Thus, the only issue in dispute is whether Alonzo's confinement was privileged— in other words, whether the officers had sufficient probable cause to arrest Alonzo, or at least arguable probable cause such that the their actions are shielded by qualified immunity.

As outlined above, Plaintiffs and Defendants sharply dispute what happened at the Grant Home on the evening of June 28, 2014. The Court concludes that summary judgment is inappropriate on this claim, as there are material issues of fact as to the circumstances surrounding Alonzo's arrest. See Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) ("Where the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence vel non of probable cause is to be decided by the jury."); Yorzinski v. City of New York, 175 F. Supp. 3d 69, 80 (S.D.N.Y.2016) (denying defendants' motion for summary judgment on false arrest claim since "it is not clear

---

[2]    The Amended Complaint includes claims on behalf of Alonzo for false arrest under § 1983 and false imprisonment under New York law. Amended Compl. 61, 65. The Court will **analyze the claims together**, because—as described above—a § 1983 claim for false arrest is substantially the same as a claim for false arrest or false imprisonment under New York law. Jenkins, 478 F.3d at 84; Fincher, 979 F. Supp. at 998.

from the record that [plaintiff] was, in fact, 'disorderly'"); Milfort v. Prevete, 922 F. Supp.2d 398, 406 (S.D.N.Y. 2013) ("If a jury were to credit Plaintiff's version of events, it could conclude that the police lacked probable cause to arrest Plaintiff.").

According to Plaintiffs, Alonzo and Stephanie had ceased arguing by the time Lockettand Montalto arrived. Pls.' SMF ¶¶ 79–80. Although Alonzo gesticulated while he spoke to Stephanie about his desire for the house to be clean, he did not yell or pace wildly. Id. ¶ 92. He also pushed his storm door open against an iron railing, making a noise, when he exited his home. Id. ¶ 108. Viewing these facts in the light most favorable to Alonzo, his conduct does not necessarily evidence the mens rea that is required to violate Penal Law § 240.20 or Criminal Procedure Law ("CPL") § 530.11. [3]

The disorderly conduct statute requires that the defendant act with 'intent to cause public inconvenience, annoyance or alarm' or with recklessness 'creating a risk thereof.'" Provost v. City of Newburgh, 262 F.3d 146, 158 (2d Cir. 2001) (quoting § 240.20)); see also People v. Baker, 984 N.E.2d 902, 905 (N.Y. 2013) ("As is clear from precedent, critical to a charge of disorderly conduct is a finding that defendant's disruptive statements and behavior were of a public rather than an individual dimension. This requirement stems from the mens rea component . . . ."). Even under Defendants' version of the events, in which Alonzo violently flailed his arms at Stephanie and slammed open his front door, Defs.' SMF ¶¶ 22–26, the officers did not make any accusations "establishing the proximity of that altercation to neighbors or other

---

[3]  Criminal Procedure Law § 530.11 provides concurrent jurisdiction in the family courts and criminal courts of New York State for proceedings concerning acts which would constitute disorderly conduct, as defined in the Penal Law, and also involve members of the accused's family. Section 530.11 sweeps more broadly than Penal Law § 240.20, because it does not require that offensive conduct occur in public. However, it still contains the same mens rea requirement as § 240.20. See Sharon D. v. Dara K., 13 N.Y.S.3d 656, 659 (App. Div. 2015) ("Although the conduct necessary to support a finding of the family offense of disorderly conduct is not limited to that which took place in public, the requisite mens rea is that a person had the 'intent to cause public inconvenience, annoyance or alarm, or recklessly creat[ed] a risk thereof.'" (quoting § 240.20) (citations omitted)).

members of the public such that [Alonzo's] actions could support a logical inference that [he] acted with intent or recklessness in regard to members of the public," Sharon D. v. Dara K., 13 N.Y.S.3d 656, 659 (App. Div. 2015) (finding that altercation between mother and grandmother in the confines of great-aunt's home did not illustrate requisite mens rea).

Therefore, a reasonable jury could find that the Arresting Officers did not have sufficient probable cause to arrest Alonzo for disorderly conduct. See, e.g., Provost, 262 F.3d at 158 (holding that mens rea did not necessarily exist when plaintiff "banged on the glass," "hollered," and "yelled through the window" inside a police station, since plaintiff wanted to communicate with an officer); People v. Pritchard, 265 N.E.2d 532, 533 (N.Y. 1970) (holding that defendant, who fought with another teenager on the dance floor of a crowded nightclub, did not necessarily intend to cause public inconvenience, annoyance, or alarm, because the fight was prompted by a personal insult); Kirsten G. v. Melvin G. Sr., 39 N.Y.S.3d 460, 462 (App. Div. 2016) (holding that defendant's "ranting and raging" outside of her apartment door did not constitute disorderly conduct because no evidence was presented regarding proximity of neighbors or other members of the public, or that her conduct could have caused public alarm).

The Court also concludes that these issues of fact preclude a determination that the Arresting Officers possessed arguable probable cause to arrest Plaintiff, and therefore the Court cannot determine whether their actions are protected by qualified immunity. See, e.g., Thomas, 165 F.3d at 143 ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness."); Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994) ("Though '[i]mmunity ordinarily should be decided by the court,' that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required." (quoting Hunter v.

Bryant, 502 U.S. 224, 228 (1991)). As described above, there are material issues of fact as to whether Alonzo's conduct prior to his arrest was disorderly, and thus whether the Arresting Officers' decision to arrest him was objectively reasonable. See Milfort, 922 F. Supp. 2d at 407 ("Under Plaintiff's version [of the facts], his arrest was entirely unprovoked. Under those circumstances, no reasonably competent officer would have acted in the same way.").

Accordingly, Defendants' motion for summary judgment with respect to Alonzo's false arrest and false imprisonment claims are denied.

### 2.  Alonzo's § 1983 Claim For Excessive Force

*b. Excessive Force*

*i. Applicable Law*

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Freshwater, 623 F.3d 90, 96 (2d.Cir. 2010); see also Graham v. Connor, 490 U.S. 386, 394–95 (1989). The Court does not evaluate the record in hindsight, but, instead, from the "perspective of a reasonable officer on the scene." Graham, 490 U.S. at 396. The court must carefully review the totality of the circumstances of each particular case, considering: "(1) the nature of and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Tracy, 623 F.3d at 96 (citing Graham, 490 U.S. at 396). "Application of physical force is excessive when it is more than is necessary under the circumstances." Brown v. City of New York, No. 11-CV-1068, 2013 WL 491926, at *10 (S.D.N.Y. Feb. 8, 2013) (citing Curry v. City of Syracuse, 316 F.3d 324, 332 (2d Cir. 2003)).

"Given the need for such a fact-intensive inquiry, 'granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could

conclude that the officers' conduct was objectively reasonable.'" Hill v. City of New York, No. 03-CV-1283, 2005 WL 3591719, at *3 (E.D.N.Y. Dec. 30, 2005) (quoting Amnesty America v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004)); see also Greenaway v. County of Nassau, 97 F. Supp. 3d 225, 235 (E.D.N.Y. 2015) ("Because objective reasonableness is extremely fact-specific, summary judgment on the issue is often inappropriate.").

Here, as described above, a significant dispute exists between the parties regarding Alonzo's conduct prior to and during the arrest. Accordingly, the Court finds that the determination as to the objective reasonableness of the force used is one to made by a jury following a trial. See Jackson v. City of New York, 939 F. Supp. 2d 235, 254 (E.D.N.Y. 2013) (finding that summary judgment was inappropriate on the issue of excessive force because of the significant dispute between plaintiff's and officers' descriptions of the arrest and force used).

Therefore, Lockett and Montalto are not entitled to summary judgment on Plaintiffs' excessive force claim, nor are they entitled to qualified immunity. See Curry, 316 F.3d at 334 ("In this case it is impossible to 'determine whether the officers reasonably believed that their force was not excessive when several material facts [are] still in dispute, [and therefore] summary judgement on the basis of qualified immunity [is] precluded.'" (quoting Thomas, 165 F.3d at 144)); Milfort, 922 F. Supp. 2d at 409 ("Given the factual dispute as to the type and degree of force Defendants employed against Plaintiff, the Court is unable to conclude as a matter of law that it was objectively reasonable for Defendants to believe that they were not violating Plaintiff's rights."). [4]

---

[4]  The Amended Complaint's fifth cause of action asserts a claim of assault and battery against Lockett and Montalto. Amended Compl. at 61. Although Alonzo styles the cause of action as falling under § 1983, the Court assumes that he intended to bring this cause of action under New York state law, since his cause of action brought under § 1983 for excessive force already considers Lockett and Montalto's alleged assaults. Cf. Graham v. City of New York, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) ("Federal excessive force claims and state law assault and

### 3.  Stephanie's § 1983 Claim For False Imprisonment
###     Stephanie's Claims Against Individual Officers

*Section 1983 Claim*
a. False Imprisonment

As discussed above, "[t]he unreasonable seizure of a person in the form of a false arrest and imprisonment is violative of the Fourth Amendment and actionable under § 1983." Garenani, 552 F. Supp. 2d at 333. To prove the elements of false arrest or false imprisonment under New York law, a plaintiff must show that "(1) the defendant intended to confine plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Id. (quoting Bernard, 25F.3d at 102). "In addition, a 'false imprisonment claim requires a prima facie showing of actual confinement or threatening behavior.'" Kravtsov v. Town of Greenburgh, No. 10-CV-3142, 2012 WL 2719663, at *16 (S.D.N.Y. July 9, 2012) (quoting Lee v. Bankers Trust Co., No. 96-CV-8153, 1998 WL 107119, at *4 (S.D.N.Y. Mar. 11, 1998), aff'd, 166 F.3d 540 (2d Cir.1999)).

Defendants argue that Lockett did not intend to confine Stephanie when he spoke to her while attempting to handcuff Alonzo. Mem. at 25. Stephanie argues that she felt threatened by Lockett's statement that she must "take [her] ass back in the house or he was gonna fucking taze [her]." Pls.' SMF ¶¶ 119–20. Viewing the facts in the light most favorable to Stephanie, a reasonable jury could find that Lockett acted threateningly when he addressed her. Lockett allegedly directed Stephanie to stay inside her home, under the threat of significant force. Cf.

---

battery claims against police officers are nearly identical."). Since there are questions of fact regarding Alonzo's excessive force claims, there are also questions of fact regarding his state law assault and battery claims. Thus, the Court denies summary judgment on the assault and battery claims against Lockett and Montalto.

Hulett v. City of Syracuse, No. 14-CV-152, 2017 WL 2333712, at *16 (N.D.N.Y. May 30, 2017) (describing the employment of a taser as "an indisputably significant use of force"). Moreover, a reasonable jury could find that Lockett intended to confine Stephanie inside her house. See Samirah v. Sabhnani, 772 F. Supp. 2d 437, 451 (E.D.N.Y. 2011) ("By knowingly obtaining the plaintiffs' labor through use of threats of serious harm or physical restraint, the defendants necessarily confined the plaintiffs to the space in which they were forced to work." (emphasis added)). Lockett's alleged conduct is not analogous to instances where officers demand that members of the public disperse from a crime scene or accident site and such members are "free to go anywhere else that [they] wish[]." Salmon v. Blesser, 802 F.3d 249, 253 (2d Cir. 2015).

"A person is seized by the police . . . when the officer, by means of physical force or show of authority, terminates or restrains [her] freedom of movement through means intentionally applied." Brendlin v. California, 551 U.S. 249, 254 (2007). "To explain when a sufficient 'show of authority' effects restraint, the Supreme Court has relied on a totality-of-the-circumstances test, asking whether a reasonable person would believe that he was 'not free to leave,'" Salmon, 802 F.3d at 251 (quoting INS v. Delgado, 466 U.S. 210, 215 (1984)), or "would feel free to decline the officers' requests or otherwise terminate the encounter," id. (quotingFlorida v. Bostick, 501 U.S. 429, 436 (1991)). A reasonable person in Stephanie's position could have felt unable to decline Lockett's order, particularly given the violent nature of the unfolding situation. Accordingly, Defendants' motion for summary judgment on this claim is denied.

## 4.  Both Plaintiffs' § 1983 Claim Of Unlawful Entry Against Lockett

*a. Unlawful Entry*[5]

As discussed above, the Fourth Amendment protects individuals against unreasonable searches and seizures. In addition, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)). "Warrantless searches inside a home are presumptively unreasonable." Tierney v. Davidson, 133 F.3d 189,196 (2d Cir. 1998). "However, warrantless entry into a home is permitted 'in those situations where exigent circumstances demand that law enforcement agents act without delay.'" Hicks v.City of New York, No. 12-CV-5081, 2015 WL 5774575, at *7 (E.D.N.Y. Aug. 27, 2015) (quoting United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990)), adopted by 2015 WL 5774658 (E.D.N.Y. Sept. 30, 2015).

It is undisputed that Lockett entered Plaintiffs' home without a warrant or consent. Defendants argue that exigent circumstances justified his entry, because Lockett needed to provide emergency aid in response to Alonzo's 911 call and an argument that he heard coming from the Grant Home. Mem. at 28.

"Police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." Tierney, 133 F.3d at 196. "Courts must apply an objective standard to determine the reasonableness of the officer's belief, taking into account 'the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences.'" Montanez v. Sharoh, 444 F. App'x 484, 486 (2d

---

[5]   The Amended Complaint's tenth cause of action is styled as a claim of "invasion of privacy" against Lockett. Amended Compl. at 66. However, both Defendants' Memorandum and Plaintiffs' Opposition treat the claim as an allegation that Lockett unlawfully entered the Grants' home in violation of the Fourth Amendment. See Mem. at 27–29; Opp'n at 25–27.

Cir. 2011) (quoting Tierney, 133 F.3d at 196–97). "Exigent circumstances arise when police officers have probable cause to believe 'a person is in danger.'" Hicks, 2015 WL 5774575, at *7 (quoting Kerman v. City of New York, 261 F.3d 229, 236 (2d Cir. 2001)). "Warrantless entry is not justified, though, by the mere 'possibility' of danger." Id.

As discussed extensively above, Plaintiffs deny that they were arguing loudly when Lockett and Montalto arrived at 105 Hudson Street. Pls.' SMF ¶¶ 79–80. Nevertheless, "[c]ourts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger." Hicks, 2015 WL 5774575, at *8 (quoting Tierney, 133 F.3d at 197). Lockett was also responding to a 911 call, which in certain circumstances can justify warrantless entry. See, e.g., Anthony v. City of New York, 339 F.3d 129, 136 (2d Cir. 2003) (holding that a 911 call in which a caller reported that she was being attacked by a man with a knife and a gun constituted exigent circumstances).

However, the facts presented to Lockett "did not rise to the danger and immediacy, nor did they contain the specificity, of the Anthony report." Fernandez v. Sacco, No. 10-CV-1624, 2012 WL 6102136, at *5 (E.D.N.Y. Dec. 10, 2012). Lockett was informed by the 911 dispatcher that "MALE REQUESTING OFFICERS BE SENT TO ADDRESS RE: DAUGHTER . . . COMPL[AINANT] UNCOOPERATIVE." Defs.' SMF ¶ 17. The dispatcher did not inform Lockett about a weapon, imminent violence, or a history of domestic disputes at the address. Cf. Tierney, 133 F.3d at 197 (holding that a officer's warrantless entry was justified upon receiving a 911 dispatch describing a "bad" domestic dispute and a history of violent domestic disputes at the address). Moreover, Plaintiffs told Lockett that they no longer needed the SPD's assistance,

Defs.' SMF ¶ 19, but Lockett made no attempt to discuss the basis for this statement with Plaintiffs before entering their home, cf. Fernandez, 2012 WL 6102136, at *6 ("[T]he appearance of the Fernandezes and Fonsecas at the door to the Fernandez home and the alleged insistence of all four that nothing was amiss arguably suggests an inference that there was no immediate need for an exigent-circumstances entry.").

While SPD may instruct its officers to investigate every domestic call, Amended Reply at 7, the Second Circuit has recently reiterated that an alleged domestic dispute does not provide an open invitation to police officers to enter the victim's location without a warrant. "It is possible—indeed, an officer is, absent exigent circumstances, required—to secure the substantive due process rights of domestic violence victims through legal means such as by obtaining consent or a warrant to enter a home." Penree v. City of Utica, 694 F. App'x 30, 32 (2d Cir. 2017). Because a reasonable jury could find that exigent circumstances did not exist when Lockett's arrived at the Grant Home, Defendants' motion for summary judgment on this claim is denied. [6]

### 5.  Both Plaintiffs' § 1983 Claim Pursuant To *Monell V. Department Of Social Services Of City Of New York,* 436 U.S. 658 (1978) Against The City Of Syracuse For Failure To Train, Supervise, Or Discipline Police Officers.

*Section 1983 Claim*

To establish municipal liability under § 1983, a plaintiff must plead and prove that the deprivation of his constitutional rights was "caused by a governmental custom, policy, or usage

---

[6]  Defendants raised Lockett's entitlement to qualified immunity with respect to unlawful entry for the first time in one sentence in their reply. Amended Reply at 7. It is well established "that a district court is free to disregard argument[s] raised for the first time in a reply papers, especially on a motion for summary judgment." Am. Hotel Int'l Grp., Inc., v. OneBeacon Ins. Co., 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009). Therefore, the Court will not address this argument, which is also completely undeveloped. See Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 298 (D.D.C. 2012) ("[T]he [defendant] has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here.").

of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 690–91 (1978)). First, a plaintiff may establish the existence of a municipal policy or custom by showing

> (1) a formal policy officially endorsed by the municipality;
> (2) actions or decisions made by municipal officials with
> decision-making authority; (3) a practice so persistent and
> widespread that it constitutes a custom of which policymakers
>
> must have been aware; or (4) a failure by policymakers to properly train or
> supervise their subordinates, such that the policymakers exercised
> "deliberate indifference" to the rights of the plaintiff and others
> encountering those subordinates.

*McLennan v. City of New York*, 171 F. Supp. 3d 69, 94 (S.D.N.Y. 2016). "Second, the plaintiff must establish a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).

"*Monell's* policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Hulett,* 2017 WL 2333712, at *23 (quoting *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 534 (S.D.N.Y. 2012)). To prove that this inaction constituted deliberate indifference,

> [T]he plaintiff must show that the need for more or better
> supervision to protect against constitutional violations was
> obvious. An obvious need may be demonstrated through
> proof of repeated complaints of civil rights violations;
> deliberate indifference may be inferred if the complaints
> are followed by no meaningful attempt on the part of the
> municipality to investigate or to forestall further incidents.

*Vann v. City of New York*, 72 F.3d 1040, 1049 (2d. Cir. 1995) (citations omitted).

Plaintiffs allege that the City's deliberate indifference to civil complaints of police brutality has resulted in the customary use of excessive force by its police officers, and, as a

proximate result of such policy, Plaintiffs suffered injuries from their interaction with the

Arresting Officers. Amended Compl. at 57–60. Defendants argue that Plaintiffs have failed to

highlight a specific deficiency in SPD's use-of-force policy and have failed to demonstrate a

pattern of verified and unpunished misconduct that shows a deliberate indifference to the

deprivation of constitutional rights. Mem. at 12–19.

 The evidence presented to the Court on this claim is very similar to the evidence recently

analyzed by Judge David N. Hurd in Hulett v. City of Syracuse, No. 14-CV-152, 2017

WL 2333712, at *22–25 (N.D.N.Y. May 30, 2017). The City operates a Citizen Review Board

("CRB") to conduct independent investigations of complaints against SPD officers. Pls.' SMF

¶ 174. In 2014, for example, CRB investigated 107 complaints against officers and

recommended discipline in twenty-one instances, eighteen of which involved excessive force. Id.

¶¶ 197–98. The Police Department imposed discipline only once in response to those instances.

Id. ¶ 199. The ratio is only slightly higher across 2012 and 2013, when CRB sustained thirty-five

complaints and SPD imposed discipline in response to approximately five. Id. ¶¶ 191–95. CRB

has also recommended multiple times that the Police Department review its use-of-force policy

and related training in light of these complaints and new recommendations from the United

States Department of Justice. Id. ¶¶ 178–79. SPD did not engage in the process, even though

"CRB saw an exponential rise in excessive force claims" from 2012 to 2016. Id. ¶ 177. CRB's

former administrator testified that Chief Fowler made a blanket refusal to adopt any changes to

SPD's use-of-force policy. Id. ¶ 180.

 While "the persuasive value of this evidence is not overwhelming . . . [Plaintiffs']

evidence is sufficient to create a jury question regarding whether, from the top down, the SPD

took an unduly permissive attitude toward its officers' use-of-force prior to, and in the wake of,

the [] incident . . . ." Hulett, 2017 WL 2333712, at *25 (citing Vann, 72 F.3d at 1049); see also

Fiacco v. City of Rensselaer, 783 F.2d 319, 328 (2d Cir. 1986) ("Whether or not the claims had

validity, the very assertion of a number of such claims put the City on notice that there was a

possibility that its police officers had used excessive force."); Galindez v. Miller, 285 F. Supp.

2d 190 (D. Conn. 2003) (holding that plaintiff's § 1983 claim against City of Hartford survived

motion for summary judgment based, inter alia, on evidence that no officer was disciplined

following forty-seven excessive force complaints over the course of two years). A reasonable

jury could conclude that SPD's "subordinate officers felt empowered to use force with relative

impunity and that, as a result, used excessive force on plaintiff in this case." Hulett, 2017

WL 2333712, at *25.

Accordingly, Defendants' motion for summary judgment on this claim is denied.13[7]

## VII. NEW YORK STATE LAW CLAIMS

### 6. Alonzo's State Law Claim For Assault And Battery

The Amended Complaint's fifth cause of action asserts a claim of assault and battery

against Lockett and Montalto. Amended Compl. at 61. Although Alonzo styles the cause of

action as falling under § 1983, the Court assumes that he intended to bring this cause of action

---

[7]  The Amended Complaint also names Chief Fowler as a defendant with respect to this claim. Plaintiffs do not clarify—and Defendants do not discuss—whether Fowler is sued in his individual or official capacity. Where doubt exists as to whether an official is sued in her official or personal capacity, "the course of proceedings ordinarily resolves the nature of the liability sought to be imposed." Rodriguez v. Phillips, 66 F.3d 470, 482 (2d Cir. 1995). However, since the parties have not addressed this issue, the Court will simply note that if Fowler is tried in his individual capacity, Plaintiffs must demonstrate "his direct, personal involvement in the [] incident or for plaintiff[s] to establish one of the Colon bases for supervisory liability." Hulett, 2017 WL 2333712, at *22 (citing Burwell v. Payton, 131 F. Supp. 3d 268, 302 (D. Vt. 2015)). If Fowler is tried in his official capacity, "district courts have [regularly] dismissed official capacity claims against individuals as redundant or unnecessary where Monell claims are asserted against an entity." Id. (quoting Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist., 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002)).

under New York state law, since his cause of action brought under § 1983 for excessive force already considers Lockett and Montalto's alleged assaults. Cf. Graham v. City of New York, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) ("Federal excessive force claims and state law assault and battery claims against police officers are nearly identical."). Since there are questions of fact regarding Alonzo's excessive force claims, there are also questions of fact regarding his state law assault and battery claims. Thus, the Court denies summary judgment on the assault and battery claims against Lockett and Montalto.

### 7. Both Plaintiffs' State Law Claim For Trespass Against Lockett

Under New York law, "[t]respass is an intentional entry into the land of another without justification or permission." Woodhull v. Town of Riverhead, 849 N.Y.S.2d 79, 81 (App. Div.2007). "However, 'law-enforcement officials have a privilege to enter private property to perform their legal duties.'" Frederique, 168 F. Supp. 3d at 489 (quoting Reynolds v. United States, 927 F. Supp. 91, 96 (W.D.N.Y. 1996)).

It is undisputed that Lockett and Montalto entered Plaintiffs' property in order to respond to Alonzo's 911 call. Defs.' SMF ¶ 18. Therefore, their entry was justified. Frederique, 168 F. Supp. 3d at 489. In addition, it is undisputed that Novitsky entered Plaintiffs' property in response to a dispatch. Defs.' SMF ¶ 38. Therefore, his entry also was justified. The relevant inquiry, then, is whether Lockett's entry into the Grant Home constituted trespass.

As discussed above, a reasonable jury could find that exigent circumstances did not exist to justify Lockett's entry into the Grant Home. Absent exigent circumstances or Plaintiffs' permission, which Defendants do not allege, Lockett's entry into the Grant Home would have

constituted trespass. See People v. Abruzzi, 385 N.Y.S.2d 94, 97 (App. Div. 1976) ("But having failed to obtain a warrant where no exigent circumstances were present, the investigator's position in the defendant's backyard was unlawful . . .").

Accordingly, Defendants' motion for summary judgment on this claim is denied with respect to Lockett, and it is granted with respect to Montalto and Novitsky.

### 8. Stephanie's State Law Claim For Loss Of Consortium

*b. Loss of Consortium*

Stephanie also asserts a loss of consortium claim under New York law. Amended Compl. at 71. Although Defendants are correct to note that consortium "is not an independent cause of action, but is derivative," Mem. at 32, multiple primary torts alleged under New York law survive the motion for the summary judgment. Therefore, Stephanie's loss of consortium claim also survives, and Defendants' Motion must be denied with respect to this claim. Wang v. Yum! Brands, Inc., No. 05-CV-1783, 2007 WL 1521496, at *5 (E.D.N.Y. May 22, 2007).

### 9. Alonzo's State Law Claim For False Imprisonment

See above Federal §1983 Claim #1, False Arrest, addressed together by the Court in New York State Claim #9, False Imprisonment .

Dated:  September 18, 2018          **RESPECTFULLY SUBMITTED,**

                                    **LAW OFFICES OF BONNER & BONNER**

                                    */ s/*Charles A. Bonner
                                    Charles A. Bonner Attorney for
                                    Alonzo Grant and Stephanie Grant
                                    *Pro Hac Vice*


September 18, 2018               **RYDER LAW FIRM**

/s/ Jesse P. Ryder

Jesse P. Ryder, Esq.
Attorney for
Alonzo Grant and Stephanie Grant

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am over the age of eighteen years, employed in Marin County California.  The business address is 475 Gate Five Road, Suite 212, Sausalito, California 94965.

**DOCUMENT(S) :    PLAINTIFF'S TRIAL BRIEF**

I caused to be served a true copy of the above-named document(s) per the addressee(s) listed below or per the attached list.

## (X) BY ELECTRONIC SERVICE

**KRISTEN SMITH, ESQ.**
**H. J. HUBERT, ESQ.**
**CITY OF SYRACUSE**
**300 CITY HALL**
**SYRACUSE, NY 13202**

**PAUL J. TUCK, ESQ.**
**HANCOCK ESTABROOK LLP**
**100 MADISON STREET, SUITE 1500**
**SYRACUSE, NY 13202**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Served and executed this  18th  day of  September , 2018.


*/s/Charles A. Bonner*
Charles A. Bonner