UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALONZO GRANT and STEPHANIE GRANT,<br><br>                                       Plaintiffs,<br><br>vs.<br><br>CITY OF SYRACUSE; SYRACUSE POLICE DEPARTMENT, POLICE OFFICERS DAMON LOCKETT and PAUL MONTALTO, POLICE OFFICER BRIAN NOVITSKY, CHIEF OF POLICE FRANK FOWLER and Does 1-100,<br><br>                                       Defendants. | Civil Action No.:<br>5:15-CV-445 (LEK/TWD) |

**TRIAL BRIEF**

This Trial Brief is submitted on behalf of defendants City of Syracuse ("the City"), Police Officer Damon Lockett ("Officer Lockett"), Police Officer Paul Montalto ("Officer Montalto"), Police Sergeant Brian Novitsky ("Sgt. Novitsky"), and Chief of Police Frank Fowler ("Chief Fowler") (collectively, "Defendants.").[1]  This litigation between plaintiffs Alonzo Grant ("Mr. Grant") and Stephanie Grant ("Mrs. Grant") (collectively, "Plaintiffs") and Defendants arises out of events that occurred at Plaintiff's home, located at 105 Hudson Street in the City of Syracuse, on June 28, 2014, and that led to Mr. Grant's arrest.

**STATEMENT OF THE CASE**

On June 28, 2014, at approximately 3:00 p.m., Mr. Grant returned to the home and consumed some quantity of beer while sitting outside.  At approximately 6:30 p.m., Mr. Grant entered the home and noticed items on the floor and dirty dishes in the kitchen, which caused him to become upset, as he "expected things to be a little neater" in the home.  Mr. Grant loudly

---

[1] By Memorandum-Decision and Order dated November 17, 2017, the Court dismissed the Syracuse Police Department and "Does 1-100" as defendants from this action. *See generally* Dkt. No. 89.

{H3424468.2}                                    1

told Mrs. Grant and Plaintiffs' daughter, Alyssa Grant, to "get off your asses and make sure the house get [sic] take care of." Mr. Grant's comment upset Alyssa, who told Mr. Grant not to talk to Mrs. Grant that way; Mr. Grant responded that he could "talk to [Mrs. Grant] any way I want." This led to an argument between Mr. Grant, Mrs. Grant, and Alyssa: Mr. Grant asked Alyssa to leave the home three times. Alyssa walked out onto Plaintiffs' front porch, where she began to argue with a neighbor.

Mr. Grant called 911, yelling to the 911 Dispatcher to "send the cops over here right now," because Alyssa was "acting like a fucking asshole and is just fucking with my house, okay." Mr. Grant provided no further information and hung up; the 911 call lasted less than 30 seconds. The Syracuse Police Department ("SPD") transmitted the following information: "M911 OPEN LINE W/ARGUMENT – MALE REQUESTING OFFICERS BE SENT TO ADDRESS RE: DAUGHTER ALYSSA GRHAM – COMPL UNCOOPERATIVE – DISC."

Less than five minutes later, SPD Officers Lockett and Montalto arrived to Plaintiffs' home. When the officers arrived, Mr. Grant approached the officers in front of the house and told them that their assistance was not needed. When Mr. Grant returned in the house, however, both Officers Lockett and Montalto heard loud arguing resume from within the home, and from the context of the yelling, Mr. Grant appeared to be extremely upset. Officer Lockett then entered Plaintiffs' home intending to de-escalate the situation and ensure that no violence was occurring or would occur. When he stepped in the doorway, Officer Lockett observed Mr. Grant yelling and gesturing aggressively with his arms. Officer Lockett asked Mr. Grant to come outside to speak with Officer Montalto in order to calm down the situation. Upset, Mr. Grant stormed by Lockett, punching the front door on his way out and causing it to slam loudly against the iron railing of the porch. Startled by this aggressive conduct, Officer Lockett turned and

followed Mr. Grant down the front steps. Officer Lockett asked Mr. Grant to place his arms behind his back so that he could handcuff him. Mr. Grant refused, turned to face Lockett, and began grappling with Officer Lockett locking him around the waist. Officer Lockett struggled to remove himself from Mr. Grant's grip, during which they went down the front steps and onto the lawn. When Mr. Grant, the larger man, temporarily gained the advantage on Officer Lockett, pinning him on his back, Officer Lockett utilized hand strikes to protect himself and recover control of Mr. Grant. At this point, Officer Montalto began assisting, and the two officers gained control of Mr. Grant and struggled with him, each maintaining a position over the top of him, until he allowed himself to be handcuffed. Once handcuffed, the incident ended and additional police officers arrived to the scene.

Paramedics were called to the scene, and, upon arrival to Plaintiffs' home, examined Mr. Grant. Sgt. Novitsky also arrived to the scene, where he spoke to Mr. Grant and some witnesses about what happened. Mr. Grant was transported to the Community Campus of Upstate University Hospital on Broad Road. Mr. Grant was thereafter transported to the Onondaga County Correctional Facility for lodging. Mr. Grant was arraigned and released the next day.

## CLAIMS TO BE TRIED

Nine claims remain for trial following the Court's Memorandum-Decision and Order, dated November 17, 2017. However, multiple claims are co-extensive with each other and based on the same facts.

False Arrest/False Imprisonment —Alonzo Grant

(against Officer Lockett, Officer Montalto, and Sgt. Novitsky)

Mr. Grant brings a claim under 42 U.S.C. § 1983 for *false arrest*, against Officer Lockett, Officer Montalto, and Sgt. Novitsky. Mr. Grant claims that those officers unlawfully confined

him at his home and at the hospital, in violation of his Fourth Amendment rights, and that Sgt. Novitsky had him handcuffed to a hospital bed.  *See* Amended Compl. at 61-63 (Sixth Cause of Action in complaint).  Mr. Grant *also* brings a claim under New York state law for false imprisonment, against Officer Lockett, Officer Montalto, and Sgt. Novitsky.  This claim is predicated on the same facts as Mr. Grant's § 1983 false arrest claim.  *See* Amended Compl. at 65 (Eighth Cause of Action).  This claim is co-extensive with the false arrest claim.

Since Mr. Grant was already under arrest at the time Sgt. Novitsky arrived at the scene it is unknown what Plaintiff's false arrest/false imprisonment claim is against Sgt. Novitsky.

<u>False Imprisonment – Stephanie Grant</u>

<u>(Against Officer Lockett)</u>

Mrs. Grant brings a claim under § 1983 for false imprisonment, against Officer Lockett.  She was neither arrested, imprisoned, detained, nor even searched.  Ms. Grant's false imprisonment claim is based solely on her allegation that, while placing Mr. Grant under arrest, Officer Lockett allegedly told her to get back in the house, or else he would use a Taser against her.  *See* Amended Compl. at 64-65 (Seventh Cause of Action).

<u>Excessive Force/Assault and Battery — Alonzo Grant</u>

<u>(against Officer Lockett and Officer Montalto)</u>

Mr. Grant brings a claim under § 1983 claim for excessive force, against Officers Lockett and Montalto.  Mr. Grant claims that Officers Lockett and Montalto used unreasonable, excessive force against him while effectuating his arrest on June 28, 2014.  *See* Amended Compl. at 48-52 (First Cause of Action in complaint).  Judge Kahn also found that that Complaint contained an *implied* claim for New York state law for assault and battery, against Officers Lockett and Montalto.  This claim is predicated on the same facts as Mr. Grant's § 1983

excessive force claim. *See* Amended Compl. at 61 (Fifth Cause of Action for "§ 1983 Assault and Battery"). This claim is co-extensive with the excessive force claim.

### Unlawful Entry/Trespass — Alonzo and Stephanie Grant

Plaintiffs bring a claim under § 1983 for unlawful entry against Officer Lockett. This claim is predicated on Officer Lockett's entry into Plaintiffs' home without a warrant or Plaintiffs' consent. *See* Amended Compl. at 66-67 (Tenth Cause of Action for "Invasion of Privacy 42 U.S.C. 1983"). This claim turns on the presence or absence of exigent circumstances. Plaintiffs also bring a claim under New York state law claim for trespass against Officer Lockett. This claim is predicated on the same facts as Plaintiffs' § 1983 unlawful entry claim. *See* Amended Compl. at 65-66 (Ninth Cause of Action). These two claims are coextensive.

### Municipal Liability *Monell* — Alonzo Grant
### (against the City of Syracuse and Chief of Police Frank Fowler)

Plaintiffs bring a derivative *Monell* claim seeking to hold the City liable for the § 1983 claims brought by against the individual police officers. Plaintiffs' *Monell* claim alleges a municipal custom, policy or practice of failing to train, supervise, or discipline police officers, which rises to the level of deliberate indifference to the constitutional rights of Plaintiffs and others who encounter SPD officers. *See* Amended Compl. at 57-60 (Fourth Cause of Action).

As *Monell* claims may only be brought against municipalities, the assertion of this claim against Chief of Police Frank Fowler appears to be in error.

### New York Common Law Loss of Consortium — Stephanie Grant
### (against "all defendants")

Mrs. Grant brings a claim for damages under New York state law for loss of consortium against "all Defendants." This claim is derivative of Mr. Grant's state law claims for false

imprisonment and assault and battery and is based on Mr. Grant's alleged "post-concussive syndrome, including headaches, memory loss, anxiety, fear, insomnia, and severe mental and emotional distress, all of which divert and steal his attention from" Mrs. Grant.  *See* Amended Compl. at 71 (Fifteenth Cause of Action).

## ANTICIPATED LEGAL ISSUES AT TRIAL

The following discussion constitutes the basic relevant legal standards for each of the claims to be tried, as well as the Defendants' discussion of what the relevant evidence will show at trial with respect those claims.  Defendants also set forth anticipated legal issues for trial.

### I. Mr. Grant's § 1983 False Arrest and State Law False Imprisonment Claims

"A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).  To establish a claim for false imprisonment, a plaintiff must prove the following: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Garenani v. County of Clinton*, 552 F. Supp. 2d 328, 333 (N.D.N.Y. 2008) (quoting (*Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

"The existence of probable cause to arrest is a complete defense to a claim of false arrest and imprisonment; in other words, it renders the confinement privileged." *Id.* (citing *Bernard*, 25 F.3d at 102).  "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  "When determining whether probable cause exists courts must consider those facts available to the officer at the time

of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)). "Courts should look to the 'totality of the circumstances' and 'must be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Id.* (quoting *Caldarola*, 298 F.3d at 162)). The evidence will show that the totality of the circumstances was sufficient for the arresting officers to believe that a crime occurred.

For those reasons, Mr. Grant's false arrest and false imprisonment claims must fail.

## II.     Mr. Grant's § 1983 Excessive Force and State Law Assault and Battery Claims

"[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims are] substantially identical." *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991). For either excessive force or assault and battery claims, "[p]olice officers' application of force is excessive . . . if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). A number of factors are relevant to this inquiry, including the following: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham*, 490 U.S. at 396). The Court must evaluate a police officer's use of force from the understanding of a reasonable police officer at the incident—not from hindsight. *Graham*, 490 U.S. at 396.

The evidence at trial will show that the arresting officers' use of force was objectively reasonable, defeating Mr. Grant's excessive force and assault and battery claims against Officers Lockett and Montalto. The evidence will show that, at the time of the arrest, Mr. Grant posed an immediate threat to the safety of the arresting officers and others in the vicinity and that Mr. Grant resisted arrest. Under these circumstances, the arresting officers were justified in using force to arrest Mr. Grant.

### III. Mrs. Grant's § 1983 False Imprisonment Claim

As stated above, to establish a claim for false imprisonment, a plaintiff must prove the following: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Garenani*, 552 F. Supp. 2d at 333 (N.D.N.Y. 2008) (quoting (*Bernard*, 25 F.3d at 102). As to the intent element, a "subjective feeling of being trapped is insufficient." *Golodner v. Quessant Inc.*, No. 05 CIV. 7895 (RLE), 2007 WL 2844944, at *6 (S.D.N.Y. Sept. 27, 2007). The evidence will establish that Officer Lockett did not intend to confine Mrs. Grant in her home when he spoke to her while attempting to arrest Mr. Grant, nor that she was confined at all.

### IV. Plaintiffs' § 1983 Unlawful Entry Claim

"The Fourth Amendment protects against warrantless searches of a person's home, subject to certain exceptions." *Strong v. Perrone*, No. 17-CV-6183-FPG, 2018 WL 324421, at *4 (W.D.N.Y. Jan. 8, 2018). "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980). "However, police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that

assistance." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (internal quotation marks and alteration omitted). "'Courts must apply an objective standard to determine the reasonableness of the officer's belief,' taking into account 'the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences.'" *Montanez v. Sharoh*, 444 F. App'x 484, 486 (2d Cir. 2011) (quoting *Tierney*, 133 F.3d at 196, 197)). To determine if exigent circumstances justify warrantless entry, the Court considers:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*Id.* (quoting *United States v. Fields*, 113 F.3d 313, 323 (2d Cir. 1997)).

The evidence at trial will show that exigent circumstances justified Officer Lockett's brief entry into Plaintiffs' home, due to the fact that the officers were responding to a 911 call on a domestic disturbance and heard yelling from within the house. A reasonable officer in Officer Lockett's position could believe that, based on the limited information, a domestic disturbance was in progress, requiring entry in order to ensure the safety of any involved individuals. Thus, Plaintiffs' unlawful entry claim must fail.

### V. Plaintiffs' State Law Claim of Trespass

"To prevail on a claim for trespass under New York law, a plaintiff must establish 'an intrusion upon the property of another without permission.'" *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 489 (E.D.N.Y. 2016) (quoting *Christian v. Town of Riga*, 649 F.Supp.2d 84, 93 (W.D.N.Y. 2009)). "However, 'law-enforcement officials have a privilege to enter private property to perform their legal duties.'" *Id.* (quoting *Reynolds v. United States*, 927 F.

{H3424468.2}    9

Supp. 91, 96 (W.D.N.Y. 1996)).  Exigent circumstances may justify a police officer's entry onto private property.  *See Hicks v. City of Buffalo*, 124 F. App'x 20, 25 (2d Cir. 2004) (finding exigent circumstances defeated New York state trespass claim against police officer); *Pari v. City of Binghamton*, 57 A.D.2d 674, 675, 393 N.Y.S.2d 815 (3d Dep't 1997) ("[I]t is . . . well settled that the police have a general obligation to assist those whom they reasonably believe to be in distress and that exigent circumstances can result in a situation wherein a warrantless intrusion is justified.").

The evidence at trial will show that Officer Lockett's entry into Plaintiffs' home was justified and did not constitute a trespass due to the fact that the officers were responding to a 911 call on a domestic disturbance and heard yelling from within the house.  A reasonable officer in Officer Lockett's position could believe that, based on the limited information, a domestic disturbance was in progress, requiring entry in order to provide emergency aid.  Thus, Plaintiffs' trespass claim must fail.

## VI. Mrs. Grant's Loss of Consortium Claim

Loss of consortium is not an independent cause of action, but is derivative.  *See Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998) ("Loss of consortium is not an independent cause of action, but is derivative.").  Because, for the reasons stated herein, none of Mr. Grant's state tort claims are viable, Mrs. Grant's loss of consortium claim must also fail.

## VII. Plaintiffs' *Monell* Claim

Plaintiffs seek to hold the City and Chief Fowler vicariously liable for the conduct of Officers Lockett and Montalto and Sgt. Novitsky under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Under *Monell*, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom,

policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).  A plaintiff can establish an official policy by showing, as alleged here, "a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff and others encountering those subordinates." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016).  But the failure to act, train, or supervise "can constitute a municipal custom "only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 534 (S.D.N.Y. 2012) (quoting *Reynolds*, 506 F.3d at 192)).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Jones*, 691 F.3d at 81.  "The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  To establish deliberate indifference, a plaintiff must show the following: "[i] a policymaker knows to a moral certainty that city employees will confront a particular situation; [ii] the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and [iii] the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* (internal quotation marks omitted).  Where a training program exists, "a plaintiff must—in addition— identify a specific deficiency in the city's training program and establish that that deficiency is

closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Id.* at 196 (internal quotation marks omitted).

There will be no credible evidence at trial to demonstrate that the City's failure to train or supervise its employees constituted deliberate indifference by the City. Nor will there be credible evidence that the City's use-of-force policy is deficient for, as Plaintiffs allege, not covering the "use of weighted gloves" or "knees in the back of a suspect," or that those purported deficiencies were closely related to their alleged constitutional deprivations. The evidence will show, instead, that use of force is covered in detail during Syracuse Police Department training. Although Plaintiffs may rely on other complaints against Syracuse police officers, that evidence is insufficient and not probative of an underlying policy. *See, e.g.*, *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 409 (E.D.N.Y. 2011) ("Plaintiffs seem to proceed on the assumption that if a complaint, whether administrative or by way of a civil action, is filed against an officer, it follows ipso facto that he is guilty of a constitutional violation, a proposition I cannot accept.").

## VIII. Qualified Immunity

Defendants have asserted an affirmative defense of qualified immunity. "Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). "Whether a defendant officer's conduct was objectively reasonable is a mixed question of law and fact." *Zellner v. Summerlin,* 494 F.3d 344, 367 (2d Cir. 2007); *see also Kerman v. City of New York,* 374 F.3d 93, 109 (2d Cir. 2004). "[A] reasonable officer is not required to foresee judicial decisions that do not yet exist in instances where the requirements of the Fourth Amendment are far from obvious." *Kisela*, 138 S. Ct. at 1154. "The ultimate question of whether

it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.,* whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court." *Zellner,* 494 F.3d at 367.  To be clearly established, "a legal principle must have a sufficiently clear foundation in then-existing precedent," *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018), and "the legal principle [must] clearly prohibit the officer's conduct in the particular circumstances before him," *id.* at 590.  "If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court." *Zellner,* 494 F.3d at 368. "[I]f there is such a dispute," however, "the factual questions must be resolved by the factfinder." *Id*. (citing *Kerman,* 374 F.3d at 109).

      Mr. Grant's right to be free from arrest without probable cause was clearly established at the time of his arrest.  *See Jenkins*, 478 F.3d at 87.  Thus, the key issue is whether the arresting officers' determination of probable cause was objectively reasonable.  *See id.*  "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 87 (quoting *Lennon v. Miller*, 66 F.3d 416, 423-24 (2d Cir. 1995)).  Arguable probable cause exists when (1) "'it was objectively reasonable for the officer to believe that probable cause existed,'" or (2) "'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Crenshaw v. City of Mount Vernon*, 372 F. App'x 202, 205 (2d Cir. 2010).

      Mr. Grant's right to be free from excessive force was also clearly established at the time of his arrest.  *See Lennon*, 66 F.3d at 423 ("There is no question that the rights at issue in this case—to be free from false arrest, malicious prosecution, and excessive force—were clearly

established at the time of the incident."). Thus, the key question is whether it was objectively reasonable for the arresting officers to believe that their actions did not violate Mr. Grant's right to be free from excessive force. "[T]he question for the purposes of qualified immunity is 'whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances.'" *Id.* at 425.

The evidence at trial will show that the arresting officers had actual probable cause, based on the circumstances, to arrest Mr. Grant. The evidence will also establish that, under the circumstances—including Mr. Grant's refusal to submit to handcuffing and aggressive conduct toward Officer Lockett—it was objectively reasonable for the arresting officers to use the amount of force that they did when arresting Mr. Grant, without infringing on his Fourth Amendment rights.

Defendants request that, in the event that the jury finds in favor of Plaintiffs on any claim for which qualified immunity may attach, the Court submit to the jury special interrogatories related to key factual disputes that will permit the Court to resolve the question of qualified immunity. The Second Circuit has stated that "the ultimate legal determination of whether qualified immunity attaches to a law enforcement agent's actions is 'a question of law better left for the court to decide.'" *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quoting *Warren v. Dwuer*, 906 F.2d 70, 76 (2d Cir. 1990)). The *Stephenson* court reasoned as follows:

> We have recognized that qualified immunity is in essence a legal decision whether on the basis of the law as it existed at the time of the particular incident, the lawfulness of the officer's conduct was reasonably clear or was a matter of doubt. Juries are hardly suited to make decisions that require an analysis of legal concepts and an understanding of the inevitable variability in the application of highly generalized legal principles. Moreover, such an analysis would seem to invite each jury to speculate on the predictability of its own verdict.

*Id.* (internal quotation marks omitted). However, the jury still must resolve the factual disputes that are overlapping between the substantive claims against a police officer—in *Stephenson*, the claim at issue was excessive force—and qualified immunity issues. *See id.* Accordingly, in *Stephenson*, the Second Circuit has approved the following procedure with respect to qualified immunity. First, "[t]he court should charge the jury on excessive force, but not on qualified immunity. If the jury returns a verdict of excessive force against [the police officer], the court should then decide the issue of qualified immunity." *Id.* at 80. In that case, the Second Circuit suggested that the special interrogatories on key factual disputes that may affect the resolution of the qualified immunity issue included, for example, "whether [the police officer] gave warnings to Stephenson, whether Stephenson was armed with a weapon, and whether [the police officer] actually believed Stephenson was armed." *Id.* at 81. Based on the procedure set forth in *Stephenson*, Defendants request that the Court submit to the jury such special interrogatories related to key factual disputes that will permit the Court to resolve the question of qualified immunity.

## IX.  Chief Fowler should be dismissed as a defendant in this case.

The Amended Complaint names Chief Fowler as a defendant in two claims. The first is Mrs. Grant's state law claim for loss of consortium, which is asserted against "all Defendants." *See* Amended Compl. at 71 (Fifteenth Cause of Action). The second is Plaintiffs' § 1983 claim pursuant to *Monell* for failure to train, supervise, or discipline police officers, which is asserted against the City and Chief Fowler. *See* Amended Compl. at 57-60 (Fourth Cause of Action).

Mrs. Grant's loss of consortium claim cannot be sustained against Chief Fowler. Plaintiffs have not named Chief Fowler as a defendant in any state law tort claim. *See* Amended Compl. Because loss of consortium is not an independent cause of action, but is derivative, *see*

*Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998) ("Loss of consortium is not an independent cause of action, but is derivative."), Mrs. Grant's loss of consortium claim against Chief Fowler would depend on the § 1983 claim pursuant to *Monell* in which he is named.  This, too, fails because § 1983 does not support a derivative claim for loss of consortium.  *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 292 (S.D.N.Y. 2005) ("[Section] 1983 does not support derivative claims for loss of consortium."); *Juncewicz v. Patton*, No. 01-CV-0519, 2002 WL 31654957, at *2 (W.D.N.Y. Oct. 8, 2002); *Pritzker*, 26 F. Supp. 2d at 445 ("[S]ection 1983 does not support a derivative claim for loss of consortium."); *Kirton v. Hassel*, No.96-CV-1371, 1998 WL 146701, at *9 (E.D.N.Y. March 25, 1998).

Nor is Plaintiffs' *Monell* claim against Chief Fowler viable.  As the Court noted in its Memorandum-Decision and Order, Plaintiffs named Chief Fowler in their *Monell* claim but have failed to clarify whether he is sued in his individual or official capacity. "[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005); *see also Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 498 (N.D.N.Y. 2017).  Accordingly, "district courts have [regularly] dismissed official capacity claims against individuals as redundant or unnecessary where *Monell* claims are asserted against an entity." *Hulett*, 253 F. Supp. 3d at 498-99 (quoting *Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002)).  Failure to specify whether an official is sued in an individual or official capacity "generally does not warrant an outright dismissal at the pleading stage" because "the course of proceedings will indicate the nature of the liability to be imposed." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) (alterations and quotation marks omitted). *Monell* claims

are, by definition, against municipalities, not individuals.  Thus, Chief Fowler cannot be held liable under *Monell* as a matter of law.

## X.   The Court should preclude Plaintiffs from supporting their *Monell* claim with statistical evidence.

To the extent that Plaintiffs seek to support their *Monell* claim with statistical evidence, purporting to show, for example, the frequency of excessive force complaints against the Syracuse Police Department and how often they are sustained, they should be precluded from doing so.  First, such statistical evidence must be presented by an expert witness qualified in the field of statistics.  *Cf. Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 3903673, at *1 (N.D. Ill. Sept. 7, 2012) (considering whether an expert statistician may testify in support of the plaintiff's *Monell* claim pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).  However, Plaintiff's Expert Disclosure includes only one retained expert, Lieutenant John R. "Rick" Brown, of Transparency Matters, LLC, who Plaintiffs claim is qualified to testify as an expert on use of force.  *See* Expert Disclosure.  "[W]ithout expert analysis of the standard deviation, plaintiff's statistical evidence . . . is meaningless, confusing, and irrelevant."  *Wingfield v. United Techs. Corp.*, 678 F. Supp. 973, 983 (D. Conn. 1988) (excluding statistical evidence concerning prior acts of age discrimination on Rule 403 grounds).  Moreover, "statistical evidence standing alone, isolated and without further context, is generally not enough to justify a finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officer."  *Groark v. Timek*, 989 F. Supp. 2d 378, 387 (D.N.J. 2013) (internal quotation marks omitted).  More is required: "If a plaintiff relies mainly on statistics showing the frequency of excessive force complaints and how frequently they are sustained, the plaintiff must show why the prior incidents were wrongly decided and how the misconduct in the case is similar to that involved in the present action."  *Id.*  Accordingly, to the

extent that Plaintiffs intend to support their *Monell* claim with statistical evidence, the Court should preclude them from doing so.

## CONCLUSION

This Trial Brief is submitted for the limited purpose of highlighting key legal issues expected at trial. It is not the intent of this Trial Brief to anticipate every legal issue that may arise at trial or capture every aspect or nuance of the applicable legal standards, or to otherwise describe or summarize the evidence that will come in at trial.

Dated: September 18, 2018

Respectfully submitted,

HANCOCK ESTABROOK LLP

By: s/  John G. Powers

John G. Powers (508934)
100 Madison Street, Suite 1500
Syracuse, New York 13202
Tel: (315) 565-4500
jpowers@hancocklaw.com

{H3424468.2}    18

## **CERTIFICATE OF SERVICE**

I, hereby certify that on September 18, 2018, I caused the foregoing to be electronically filed with the Clerk of the District Court, Northern District of New York using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| Jesse P. Ryder, Esq. | ryderlawfirm@gmail.com |
| A. Cabral Bonner, Esq. | cabral@bonnerlaw.com |
| Charles A. Bonner, Esq. | cbonner799@aol.com |
| Christina F. DeJoseph, Esq. | cdejoseph@syrgov.net |
| Todd M. Long, Esq. | tlong@syrgov.net |

Dated:   September 18, 2018                     s/ John G. Powers
                                                John G. Powers (508934)