**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALONZO GRANT and STEPHANIE GRANT, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SYRACUSE; POLICE OFFICERS DAMON LOCKETT and PAUL MONTALTO, POLICE OFFICER BRIAN NOVITSKY, CHIEF OF POLICE FRANK FOWLER, <br><br> Defendants. | Civil Action No.: <br> 5:15-CV-445 (DNH/TWD) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS *IN LIMINE* AND SUPPLEMENTAL MOTIONS *IN LIMINE***

Defendants, the City of Syracuse ("the City"), Frank Fowler ("Fowler"), Damon Lockett ("Lockett"), Paul Montalto ("Montalto"), and Brian Novitsky ("Novitsky") (collectively, "Defendants")[1] hereby submit this response in opposition to Plaintiffs Alonzo Grant ("Mr. Grant") and Stephanie Grant's ("Mrs. Grant") (collectively, "Plaintiffs") First Motion *in Limine*, Dkt. 122, and supplement Defendants' Omnibus Motions *in Limine*, as follows.

**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE***

**I.    The Court should not preclude Defendants from introducing the audio recording or transcript of Alonzo Grant's 911 call on June 28, 2014.**

The audio recording or transcript of Alonzo Grant's 911 call is admissible because it is relevant evidence of Mr. Grant's state of mind, conduct, and demeanor at, and/or near, the time of the events in question.  Moreover, his statements qualify as a party admission under Fed. R. Evid. 801(d)(2)(A).  Alternatively, it is not hearsay because it is not being offered for the truth of

---

[1]    By Memorandum-Decision and Order dated November 17, 2017, the Court dismissed the Syracuse Police Department and "Does 1-100" as defendants from this action.  *See generally* Dkt. No. 89.

the matter asserted.  And, even if it were hearsay, it also falls under one of the exceptions to the hearsay rule under Fed. R. Evid. 803, including Fed. R. Evid. 803(1) and (2).  In addition, it is relevant background evidence as to why police were dispatched to Mr. Grant's home and why the dispatcher described the call the way he did.  Finally, its probative value is not substantially outweighed by the danger of unfair prejudice.

The 911 call is relevant evidence of Mr. Grant's state of mind, conduct, and demeanor at the time of the events in question, all of which bear on critical questions in this case pertaining to whether the conduct of Officers Lockett and Montalto and Sgt. Novitsky was reasonable.  For example, the fact that Mr. Grant had called 911 to report a domestic disturbance tends to make it more probable that Officer Lockett reasonably believed that exigent circumstances warranted his entry into Plaintiffs' home.  *See Hicks v. City of Buffalo*, 124 F. App'x 20, 25 (2d Cir. 2004) (finding exigent circumstances defeated New York state trespass claim against police officer). Whether exigent circumstances justified warrantless entry into Plaintiffs' home sufficient to defeat Plaintiffs' unlawful entry and trespass claims is therefore a "fact . . . of consequence in determining the action."  Fed. R. Evid. 401 (defining relevance).  Not only does the 911 call bear on the reasonableness of the officers' conduct, but it also provides context for the events in question, telling the story of why Officers Lockett and Montalto responded to Plaintiffs' home on June 28, 2014.  In that way, it is relevant not for the truth of the matters asserted during the 911 call—i.e., that Alyssa Grant was actually causing a domestic disturbance—but for its effect on the arresting officers.  For these reasons, the 911 call is relevant.

The 911 call made by Mr. Grant to report the domestic disturbance at his home is an admission under Fed. R. Evid. 801(d)(2)(A), which defines as non-hearsay a statement that "is offered against an opposing party" and "was made by the party in an individual or representative

capacity." Fed. R. Evid. 801(d)(2)(A).  Both foundational requirements of Rule 801(d)(2)(A) are met.  First, Defendants intend to offer it against Mr. Grant, the opposing party.  Second, the statement was made by the party, Mr. Grant.  Courts have admitted 911 recordings under this rule.  *See, e.g.*, *McKean v. Nationwide Ins. Co.*, 600 F. App'x 55, 59 (3d Cir. 2015) ("The District Court ruled that the 911 call was an admission of a party under Federal Rule of Evidence 801. This decision was not erroneous." (internal quotation marks and citation omitted)).

Even if the 911 call is deemed hearsay, it is nevertheless admissible under two exceptions to the hearsay rule set forth in Fed. R. Evid. 803.  First, it is admissible under Fed. R. Evid. 803(1) as a present sense impression, which is defined as a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). During the 911 call, Mr. Grant provides statements describing or explaining the domestic disturbance at his home, immediately after he perceived that event.  The 911 call therefore falls squarely within the hearsay exception of Rule 803(1).  Moreover, the 911 call is also admissible as Mr. Grant's excited utterance, made while Mr. Grant was under the stress of the domestic disturbance that was the subject of the 911 call.  *See* Fed. R. Evid. 803(2) ("A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.").  Accordingly, even assuming, *arguendo*, that Rule 801(d)(2)(A) does not apply, the Court should find that the 911 call is admissible under one or more exceptions to the hearsay rule set forth in Rule 803.

Finally, the 911 call is not unfairly prejudicial.  Plaintiffs argue that the 911 call is unfairly prejudicial under Fed. R. Evid. 403 because Mr. Grant can be heard using profanities, giving rise to the purported danger that the jury's decision-making will be influenced by his use of coarse language rather than the evidence in the case.  *See* Dkt. 122 at 4.  But Mr. Grant's use

of profanities together with the volume and tone of his voice provide relevant evidence that he
was angry and agitated—highly relevant to his state of mind—when the police arrived minutes
later.  Plaintiff also fails to explain how the probative value of the 911 calls—which, as discussed
above, is significant—is "substantially outweighed" by the danger that the jury will find against
him because of his use of profanities.  *See* Fed. R. Evid. 403 (providing that relevant evidence
may be excluded "if its probative value is substantially outweighed by a danger of one or more
of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,
wasting time, or needlessly presenting cumulative evidence").  Courts routinely admit recordings
during which a party uses use profanities, over that party's Rule 403 objection.  *See United
States v. Cross*, 888 F.3d 985, 990 (8th Cir. 2018) ("That Cross used profanity and sounded
'frantic' in the call was not *unfair* prejudice."); *United States v. Trejo*, 632 F. App'x 877, 880
(8th Cir. 2015) (concluding that use of "profanity and pejorative terms" did not present a danger
of unfair prejudice that outweighed probative value of a telephone conversation); *Hubbard v.
Gross*, 199 F. App'x 433, 443 (6th Cir. 2006) (allowing, in § 1983 case, a video taken of the
plaintiff after his arrest where he is seen "cursing and being abusive" because "[t]he unfair
prejudicial effects were slight"); *United States v. Pirani*, 406 F.3d 543, 555 (8th Cir. 2005) ("We
doubt [the defendant's] profane bravado came as a surprise to the jury, much less colored its
view of whether he had committed the offenses charged.  In any event, the profanities did not
create a risk of unfair prejudice that substantially outweighed the tape's probative value.");
*United States v. Gambone*, 167 F. Supp. 2d 803, 830 (E.D. Pa. 2001) (admitting a tape recording
where the probative value was significant, and the use of profanities presented a "rather minimal
danger of prejudice").  The same result is warranted here: Mr. Grant's use of profanities presents

only a minimal danger of prejudice that does not substantially outweigh the significant probative value of the 911 call, as described above.

## II.     The Court should permit Defendants to use the "shovel incident" as impeachment material, if necessary.

According to Sgt. Novitsky's deposition testimony, on an occasion before June 28, 2014, police officers responded to Mr. Grant's 911 call and, once they arrived at Plaintiffs' home, the officers were met by Mr. Grant wielding a shovel in the front yard. *See* Dkt. 63-34 (Novitsky Dep.) at 53. Defendants only intend to introduce this evidence in rebuttal to any attempt by Mr. Grant to introduce evidence that he is a peaceful person.

Plaintiffs argue that the evidence is impermissible under Fed. R. Evid. 404.  Rule 404(a) prohibits admitting evidence of a person's character or character trait "to prove that on a particular occasion the person acted in accordance with the character or trait."  We agree that character evidence should not be admitted in this trial—but Plaintiff himself has identified approximately 20 character witnesses.  Evidence of Mr. Grant's temper may be admissible to impeach if he interjects the issue of his character into the proceedings by adducing evidence that he is a peaceful person.  "[G]enerally . . . if a party 'opens the door' to a particular line of inquiry by making certain statements in its case in chief, then the other party may be allowed to offer rebuttal evidence to contradict those statements." *Phillips v. Irvin*, No. CIV.A.05 0131 WS M, 2007 WL 2310038, at *5 (S.D. Ala. July 27, 2007) (declining to resolve, before trial, the issue of whether plaintiff may rebut a defendant's evidence of being an upstanding officer with evidence from his personnel file); *cf. Carson v. Polley*, 689 F.2d 562, 574-75 (5th Cir. 1982) (affirming district court's holding that other crimes evidence was inadmissible as substantive evidence but admissible to impeach officer's testimony after he testified "[i]t's impossible that I lost my temper").  Under these principles, if Mr. Grant testifies that he is a peaceful person, evidence of

an incident during which he was wielding a shovel at police officers responding to a 911 call is relevant to contradict that assertion.

**III.     Defendants do not intend to use evidence of an "open container arrest" from 1970.**

Defendants do not intend to introduce evidence of an "open container arrest" from 1970, as described in Plaintiffs' First Motion in Limine, *see* Dkt. 122 at 3.  Accordingly, Defendants do not oppose Plaintiffs' First Motion in Limine to the extent that it seeks to preclude admission of an open container arrest from 1970.

<u>**DEFENDANTS' SUPPLEMENTAL MOTIONS IN LIMINE**</u>

These motions are based on Plaintiff's pre-trial submissions and thus could not have been made prior to that date.

*WITNESSES*

**I.     Supplemental Motion *in Limine* #1: Plaintiffs' Character Witnesses should be precluded.**

The Court should preclude Plaintiffs' character witnesses from testifying at trial.  *See* Dkt. 21 ¶¶ 16-17, 19-34.  Plaintiffs' witness list contains 18 individuals—Danny Philpot, Arthur L. DeGirolam, Robert Newman, Zoe Gonza, Marie Peticco, Priscilla Evans, Beverly Grant, Elmore Davis, Diane Lupo, Denise Willis, Bertha Davis, Chris Croft, Sabrina Croft, Patty Johnson, Sis. Rose Ann Renna, and Sis. Mary O'Brist—whose testimony should be precluded at trial for the reasons articulated in Defendants' Motion *in Limine* #8, set forth in Defendants' Omnibus Motion *in Limine*.  *See* Dkt. 124 (Defendants' Omnibus Motion *in Limine*) at 16 (Motion *in Limine* #8).  As stated in Motion *in Limine* #8, Fed. R. Evid. 404 generally prohibits the use of character evidence, subject to exceptions that are not relevant in this case.  *See* Fed. R. Evid. 607, 608, and 609.

Moreover, Plaintiffs' Witness List is misleading and deceptive as to the nature of the testimony that these character witnesses will provide.[2]  Plaintiffs' Witness List states that these character witnesses will testify as to the "facts and circumstances of the events that transpired on June 28, 2014, including, but not limited to, all issues of liability, causation, and damages."  Dkt. 121 (Plaintiffs' Witness List) ¶¶ 16, 21, 22-34.  As character witnesses, those individuals are incompetent to testify about the facts and circumstances of the events on June 28, 2014.  *See Hayes v. United States*, 227 F.2d 540, 545 (10th Cir. 1955) ("[T]hese character witnesses did not tell a thing about the facts of the case or what happened and under what circumstances it happened. They were not supposed to and would not have been permitted as character witnesses to testify as to the facts of the transaction.").  A witness may only testify to matters within his or her personal knowledge.  *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  Nothing in the record suggests that any of these individuals—as character witnesses—has personal knowledge of the events of June 28, 2014, sufficient to allow them to testify as to the "facts and circumstances" of that day or any issues of "liability, causation and damages."

For these reasons, and the reasons set forth in Defendants' Motion *in Limine* #8, set forth in the omnibus Motion *in Limine*, the Court should preclude Plaintiffs' character witnesses from testifying.

---

[2]      Plaintiffs failed to summarize in any way the testimony of two of the purported character witnesses—Arthur L. DeGirolam and Robert Newman.  *Id.* ¶¶ 19-20.

II.     **Supplemental Motion *in Limine* #2:  Dr. Great A. Sangani and Dr. Mark Charlamb should be precluded from testifying.**

The Court should preclude Dr. Sangani and Dr. Charlamb from testifying due to Plaintiffs' failure to comply with its discovery obligations.

Fed. R. Civ. P. 26(a) requires a party to disclose "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(ii).  That rule encompasses the medical records that were the subject of Defendants' rule 34 request.  Fed. R. Civ. P. 37(c)(1) provides that a party's failure to disclose information required by Rule 26(a) prevents that party from using that information at trial, unless the failure was "substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Moreover, on July 28, 2015, Defendants requested that Plaintiffs produce certain documents in accordance with Rule 34, including the following:

1.  Any and all hospital, medical, physician and/or psychiatric records or reports pertaining to any injury, illness, disorder or disability alleged in the complaint, including Plaintiffs' pre-existing injuries.

2.  A medical authorization permitting the undersigned to obtain Plaintiffs' medical and psychiatric records (HIPPA authorizations are attached as **Exhibit"A")**.

*See* Defendants' Notice to Produce at 1.  On October 7, 2015, Plaintiffs responded to Defendants' requests for production of documents, attaching responses to Requests #1 and #2, quoted above.  *See* Dkt. 63-37 (Plaintiffs' Response to Defendants' Request for Production) at 2-3.  The attached medical records that Plaintiffs disclosed pursuant to Defendants' Request #1 contain no records from Dr. Sangani or Dr. Charlamb.   Likewise, the attached authorizations

provided pursuant to Defendants' Request #2 do not contain HIPPA authorizations by Plaintiffs authorizing release of medical records from Dr. Sangani or Dr. Charlamb.  Plaintiff has not updated the medical records or provided additional HIPPA releases since its disclosure on October 7, 2015, until Defendants requested those authorizations after the filing of the witness list.  In this way, Plaintiffs failed to comply with Defendants' Rule 34 discovery request.

Fed. R. Civ. P. 37(d) provides the consequences for failing to comply with discovery requests, including those governed by Rule 34: "The court where the action is pending may, on motion, order sanctions if . . . a party, after being properly served with . . . a request for inspection under Rule 34, fails to serve its answers, objections, or written response."  Fed. R. Civ. P. 37(d)(1)(A)(ii).  Rule 37(d)(3) provides that permissible types of sanctions include "any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."  Fed. R. Civ. P. 37(d)(3).  Rule 37(b)(2)(A)(ii), in turn, provides a sanction of "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(A)(ii).

Taken together, the rules cited above authorize the Court to prohibit Plaintiffs from introducing the testimony of Dr. Sangani and Dr. Charlamb into evidence, because Plaintiffs failed to produce the doctors' medical reports that will form the basis for the doctors' in-court testimony, as well as the appropriate HIPPA authorizations that would have permitted Defendants to obtain those records.  Plaintiffs' failure to comply with their discovery obligations prevented Defendants from having access to the medical reports or records that will form the basis of Dr. Sangani's and Dr. Charlamb's testimony and from being able to secure those reports or records themselves through the use of a HIPPA authorization.  As a result, Defendants are prejudiced in their ability to prepare for trial and cross-examine these witnesses.  Due to the

prejudice to Defendants, the Court should preclude Dr. Sangani and Dr. Charlamb from testifying at trial. *See King v. Nacogdoches Indep. Sch. Dist.*, No. 9:07-CV-179, 2008 WL 8780444, at *2 (E.D. Tex. May 16, 2008) (precluding a treating physician from testifying where, *inter alia*, the plaintiff disclosed none of the relevant medical records); *Bell v. City of Topeka, Kans.*, No. 06-4026-JAR, 2007 WL 628188, at *2 (D. Kan. Feb. 26, 2007) (prohibiting the plaintiff from calling a dentist as a witness where the plaintiff failed to produce medical records from that dentist); *cf. Wells v. Yale Univ.*, No. 3:10CV2000 HBF, 2013 WL 5563750, at *1 (D. Conn. Oct. 8, 2013) (precluding plaintiff from testifying about treatment received from her doctor and introducing medical records into evidence where plaintiff failed to disclose any of those medical records).

Dr. Sargani's testimony should be precluded for an additional reason. Upon information and belief, Dr. Sangani's medical practice has not been located at the address listed in Plaintiffs' Witness List for the past two years. Fed. R. Civ. P. 26(a)(3) governs pretrial disclosures, and in subparagraph (A)(i), requires each party to identify "the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises." Fed. R. Civ. P. 26(a)(3)(A)(i). Plaintiffs have failed to provide Dr. Sangani's address, in violation of Rule 26(a)(3). Fed. R. Civ. P. 37(c)(1) provides, in turn, the following consequence for a violation of that rule: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). No such justification has been or could be offered in this case. Therefore, under Rule 37(c)(1), Plaintiffs should not be permitted to offer Dr. Sangani as witnesses at trial. *See Double Zero Inc.*

*v. Harvest Textile Corp.*, No. CV 14-00470-AB (RZX), 2015 WL 12781048, at *2 (C.D. Cal. June 25, 2015) (precluding witnesses not adequately identified in witness list).

**III.      Supplemental Motion *in Limine* #3:  Dr. Joseph DiTota should be precluded from testifying.**

Plaintiffs' witness list indicates that they intend to call "Dr. Joseph DiTota Eye Specialist."  Dkt. 121 ¶ 42.  Plaintiffs list his address as follows:  "2100 Court St., Syracuse, NY 13208."  *Id.*  Dr. DiTota should be precluded from testifying for two reasons: (1) he is not a treating physician, per Mr. Grant's medical records from Dr. DiTota's practice, Eyecare of CNY; and (2) Plaintiffs failed to accurately identify Dr. DiTota's contact information on their witness list.

Plaintiffs propose to call Dr. DiTota as an expert witness.  But the medical records from Eyecare of CNY, dated September 20, 2018, suggest that Dr. DiTota is not Mr. Grant's treating physician.  Instead, the report contained in those records is signed by Dr. Robert Becker; in it, he states that "[t]his report will provide you with a summary of pertinent clinical findings and observations from *my examination*."  (emphasis added).  Accordingly, that record suggests Dr. DiTota is not the doctor who examined Mr. Grant.  As a result, Dr. DiTota's proposed expert testimony fails to meet the foundational requirements of Fed. R. Evid. 702, which governs testimony by expert witnesses.  Rule 702 requires that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if certain conditions are met.  Fed R. Evid .702.  Because Dr. Becker examined Mr. Grant—not Dr. DiTota—Dr. DiTota is not qualified by his knowledge, skill, or experience to give expert opinion testimony as to the "treatment, assessment, diagnoses, and prognosis pertaining to Mr. Grant's injuries, including all opinions regarding causation of Mr. Grant's current injuries and/or medical condition," Dkt. 121 ¶ 42.  *See Mulholland v. City of New York*,

No. 09 CIV. 6329 (AKH), 2013 WL 12085087, at *2 (S.D.N.Y. Aug. 27, 2013) (precluding

testimony of a biomechanical expert where, *inter alia*, the doctor "did not examine [the plaintiff]

or his medical records" and was "not qualified to offer testimony on the cause, extent, or

character of [the plaintiff's] injury" as a result), *aff'd*, 565 F. App'x 35 (2d Cir. 2014); *United*

*States v. Abu Ghayth*, 945 F. Supp. 2d 511, 518 (S.D.N.Y. 2013) (affording only "minimal

weight" to the testimony of a doctor who "never examined or met [the defendant], relying

instead on hearsay . . . in reaching his conclusions").

Nor is Dr. DiTota qualified to give, in the alternative, lay opinion testimony under Fed.

R. Evid. 701.  That rule requires, *inter alia*, that a lay witness's opinion testimony be "rationally

based on the witness's perception."  Fed. R. Evid. 701(a).  If Dr. DiTota never examined Mr.

Grant, then his opinions regarding "treatment, assessment, diagnoses, and prognosis pertaining to

Mr. Grant's injuries, including all opinions regarding causation of Mr. Grant's current injuries

and/or medical condition," Dkt. 121 ¶ 42, would not be based on his own perceptions, as Rule

701(a) requires.

Separate and apart from Dr. DiTota's qualifications to testify as an expert witness or

provide lay opinion testimony, the Court should exclude his testimony as unfairly prejudicial

under Fed. R. Evid. 403.  Because Dr. DiTota never examined Plaintiff, the probative value of

his testimony would be slight at best, and would be substantially outweighed by the danger of

confusing the jury, who might give undue weight to Dr. DiTota's testimony by virtue of the fact

that he is an eye doctor from the same practice as Mr. Grant's actual treating physician, Dr.

Becker.

Dr. DiTota's opinion should also be precluded because Plaintiffs failed to accurately

identify Dr. DiTota's contact information on their witness list.  Fed. R. Civ. P. 26(a)(3) governs

pretrial disclosures, and in subparagraph (A)(i), requires each party to identify "the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises."  Fed. R. Civ. P. 26(a)(3)(A)(i).  Plaintiffs have failed to provide Dr. DiTota's accurate address, either on their Expert Disclosure or Witness List, in violation of Rule 26(a)(3).  Fed. R. Civ. P. 37(c)(1) provides, in turn, sets forth the following consequence for a violation of that rule:  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  No such justification has been or could be offered in this case.  Therefore, under Rule 37(c)(1), Plaintiffs should not be permitted to offer Dr. DiTota as witnesses at trial.  *See Double Zero Inc. v. Harvest Textile Corp.*, No. CV 14-00470-AB (RZX), 2015 WL 12781048, at *2 (C.D. Cal. June 25, 2015) (precluding witnesses not adequately identified in witness list); *Coleman v. Tinsley*, No. 1:10-CV-327, 2012 WL 685499, at *2 (N.D. Ind. Mar. 2, 2012) (precluding a witness from testifying where the plaintiff provided incorrect addresses for the witness during discovery and in pretrial disclosures, and revealed the correct address only 12 days before the start of trial).

**IV.     Supplemental Motion *in Limine* #4:  William Fitzpatrick should be precluded from testifying.**

The Court should preclude District Attorney William Fitzpatrick from testifying as to "why the charges against Alonzo Grant were dismissed," as Plaintiffs indicate in their Witness List.  Dkt. 121 (Plaintiffs' Exhibit List) ¶ 18.

As an initial matter, Fitzpatrick was not identified in Plaintiffs' Initial Disclosures.  *See* Plaintiffs' Initial Disclosures; Exhibit A to Initial Disclosures.  Fed. R. Civ. P. 26(a)(1)(A)(i)

requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Failure to comply with the disclosure requirements of Rule 26(a) results in the following consequence: "the party is not allowed to use that . . . witness . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Because no such justification exists with respect to Plaintiffs' failure to disclose Fitzpatrick as a witness, Plaintiffs should be prohibited from calling him at trial.

Even if Rule 37(c) did not bar Plaintiffs from offering Fitzpatrick's testimony at trial, his testimony about the dismissal of Mr. Grant's criminal charges should be precluded for the same reasons that Plaintiff should not be permitted to introduce (1) any evidence of the dismissal of the criminal charges against Mr. Grant; (2) Fitzpatrick's November 20, 2014, letter to Charles A. Bonner regarding a petition for factual innocence for Mr. Grant; and (3) a draft press release from the District Attorney's Office, as described in Motions *in Limine* #1, #2, and #3.[3] *See* Dkt. 124 (Defendants' Omnibus Motions *in Limine*) at 2-7. In brief, Fitzpatrick's testimony would be irrelevant to the critical issues in this case, such as probable cause, which is measured at the time of arrest. *See, e.g.*, *Howard v. Town of Dewitt*, No. 5:12-CV-870, 2014 WL 12591690, at *5 (N.D.N.Y. Dec. 15, 2014) (precluding evidence that criminal charges against the plaintiff were dismissed because "[p]roof of probable cause will be found in the knowledge that the officers had at the time of the arrest, not in a decision made by a judicial officer at a later date," and

---

[3]     Defendants' Motion *in Limine* #2, set forth in Defendants' Omnibus Motions *in Limine*, specifically moved to preclude the letter from District Attorney William J. Fitzpatrick, dated November 20, 2014, to Charles A. Bonner, counsel for Plaintiffs, that Plaintiffs have now identified as Exhibit P-11. *See* Dkt. 124 (Defendants' Omnibus Motions *in Limine*) at 4-5 (Motion *in Limine* #2).

"[i]nformation on the outcome of the charges will not answer these questions, is irrelevant, and would serve only to distract the jury").  Fitzpatrick's testimony therefore has no probative value, and could mislead a jury into thinking that a dismissal of the charges means that the arresting officers lacked probable cause.  *See* Fed. R. Evid. 403.  Accordingly, Fitzpatrick should not be permitted to testify.

**V.     Supplemental Motion *in Limine* #5:  Any witnesses who have not been sufficiently identified in Plaintiffs' Witness List should be precluded from testifying.**

Plaintiffs should be precluded from calling as witnesses any individuals who have not been sufficiently identified in Plaintiffs' Witness List, specifically, the "Attending Emergency Room Physicians and Nurses as reflected in the medical reports of Community General Hospital @ Upstate.  Address: 750 E Adams St, Syracuse NY 13202."  Dkt. 121 (Plaintiffs' Witness List) ¶ 45.  Because their failure to adequately identify those witnesses violates Fed. R. Civ. P. 26(a)(3), Plaintiffs have not provided Defendants an adequate opportunity to prepare for trial. As a result, Plaintiffs should not be permitted to call those witnesses.

As discussed above, Fed. R. Civ. P. 26(a)(3) governs pretrial disclosures, and in subparagraph (A)(i), requires each party to identify "the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises."  Fed. R. Civ. P. 26(a)(3)(A)(i). Plaintiffs have failed to provide the witness's name, address, and telephone number, in violation of Rule 26(a)(3).  Fed. R. Civ. P. 37(c)(1) sets forth the following consequence for a violation of that rule:  "If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  No such justification has been or could be offered in this case.  Therefore, under Rule 37(c)(1), Plaintiffs should not be permitted to offer those

unidentified individuals as witnesses at trial.  *See Double Zero Inc.*, 2015 WL 12781048, at *2

(precluding witnesses not adequately identified in witness list).

**VI.     Supplemental Motion *in Limine* #6:  John R. "Rick" Brown should be precluded from testifying.**

Plaintiffs' Witness List includes purported expert witness John R. "Rick" Brown of

Transparency Matters, LLC.  Dkt. 121 ¶ 35.  Defendants have moved to preclude Brown's

testimony based on Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmeceuticals, Inc.*, 509

U.S. 579 (1993).  *See* Dkt. 111.  That motion remains pending, and, for the reasons stated

therein, Plaintiffs should not be permitted to call Brown as an expert witness.

*EXHIBITS*

**VII.    Supplemental Motion *in Limine* #7: Plaintiffs should be precluded from introducing a video of CNY Central news coverage of the events in question.**

The Court should not permit Plaintiffs to introduce video of CNY Central news coverage

of the events in question.  *See* Dkt. 117 at P-80.  The video describes the nature of Plaintiffs'

claims and states that charges against Mr. Grant had been dismissed by the District Attorney's

Office.  The video also contains an interview with Jesse Ryder in which he claims Mr. Grant is a

"great guy" and describes other incidents of alleged misconduct by police officers within the

Syracuse Police Department.

Much like newspaper articles, as described in Defendants' Motion *in Limine* #12 set forth

in their Omnibus Motion *in Limine*, *see* Dkt. 214 (Defedants' Omnibus Motions *in Limine*) at 22,

the video of CNY Central news coverage is hearsay, and therefore inadmissible.  *See, e.g.*,

*Delrosario v. City of New York*, 2010 WL 882990, at *7 (S.D.N.Y. 2010) (precluding use of

newspapers as evidence of deliberate indifference to a widespread practice).  The video is also

unfairly prejudicial under Fed. R. Evid. 403 because it would provide a backdoor for Plaintiffs to admit other evidence that is inadmissible, including the following:

- evidence that Mr. Grant's criminal charges were dismissed, *see* Dkt. 124 (Omnibus Motions *in Limine*) at 1-3 (Motion *in Limine* #1);

- statements of counsel, which are not evidence, *see, e.g.*, *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) (stating that unsworn statements of an attorney are not evidence); and

- evidence of cases against the City that did not result in a final adjudicative determination against the City, *see* Dkt. 124 (Omnibus Motions *in Limine*) at 25-26 (Motion *in Limine* #15).

Moreover, admission of the video would give rise to the danger that the jury may presume that, because a news anchor repeated Plaintiffs' allegations on television, those allegations should be credited over the facts Defendants will introduce at trial.  *See* Fed. R. Evid. 403.  For these reasons, the video of CNY Central news coverage should be excluded.

**VIII.   Supplemental Motion *in Limine* #8: Plaintiffs should not be permitted to introduce hearsay evidence in the form of newspaper articles.**

Plaintiffs' Exhibit List identifies two newspaper articles that they seek to introduce into evidence.  *See* Dkt. 117 at P-16, P-17.  As stated in Defendants' Motion *in Limine* #12, set forth in its Omnibus Motions *in Limine*, the Court should preclude Plaintiffs from introducing newspaper evidence to support their *Monell* claim, given that such evidence is hearsay.  As stated in Motion *in Limine* #12, "[n]ewspaper articles are hearsay when introduced to prove the truth of the matter asserted, and must not be admitted."  *Delrosario v. City of New York*, 2010 WL 882990, at *7 (S.D.N.Y. 2010) (precluding use of newspapers as evidence of deliberate indifference to a widespread practice); *see also Media All., Inc. v. Mirch*, No. 09-CV-0659 MAD, 2012 WL 162375, at *1 (N.D.N.Y. Jan. 19, 2012) (precluding newspapers as evidence of a *Monell* claim and collecting cases); *Dockery v. Tucker*, No. 97-CV-3584 (ARR), 2006 WL

5893295, at *23 (E.D.N.Y. Sept. 6, 2006) (concluding the plaintiff may not rely upon newspaper articles and judicial decisions discussing general police misconduct that in support of a *Monell* claim); *Griffin v. City of New York*, 287 F. Supp. 2d 392, 395 n.8 (S.D.N.Y. 2003) (noting that newspaper articles are not admissible to support a *Monell* claim). Accordingly, Plaintiffs' Exhibits P-16 and P-17 should be precluded.

## IX.   Supplemental Motion *in Limine* #9:  Plaintiffs should not be permitted to introduce medical records and correspondence to the extent that they contain double hearsay.

Plaintiffs' Exhibit List identifies several different medical records and correspondence that they intend to introduce into evidence.  *See* Dkt. 117 at P-14, P-15, P-51 through P-54, P-83, P-84, P-87 through P-99.  For example, one such exhibit, designated as P-52, is a letter, dated July 31, 2014, from Dr. Charles to Dr. Todd, in which Dr. Charles states the following:

> Thanks very much for seeing Alonzo, a 52 YO African-American male for evaluation of neurologic status subsequent to multiple head trauma.  The patient recently had an altercation with police and suffered multiple contusions about the face.  He was evaluated at the Upstate E.R. as well as by ENT for his injuries.  Concern is whether or not there is any neurologic or cognitive damage as a result of the blows that he suffered.  He has asked for Neurology evaluation.

To the extent that those medical records do not contain a statement made for medical diagnosis or treatment under Fed. R. Evid. 803(4), they would be inadmissible hearsay.  Rule 803(4) provides a hearsay exception for statements made for medical diagnosis or treatment, where such statements meet the following conditions: the statement "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."  Fed. R. Evid. 803(4).  According to the Advisory Committee Notes, "[s]tatements as to fault would not ordinarily qualify under this latter language.  Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light."

Advisory Committee Notes to 1972 Proposed Rules.  Accordingly, "[b]y its own terms, Rule 803(4) does not exclude from the hearsay rule statements relating to fault which are not relevant to diagnosis or treatment."  *Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir. 1986) (statements from unknown declarant relating to an alleged "wrestling match" in medical records were not admissible under Rule 803(4) because they "were not of the type medical personnel generally rely on in making a diagnosis and providing treatment"); *see also Lovelace v. McKenna*, 894 F.3d 845, 850 (redacting portion of a doctor's treatment notes to preclude admission of plaintiff's statement that the corrections officers "kicked his ass" because that was not a statement made for diagnosis or treatment); *Bucci v. Essex Ins. Co.*, 393 F.3d 285, 298 (1st Cir. 2005) (excluding portions of medical records that characterized an incident as an "assault," but admitting descriptions of the specific contacts—i.e., being struck by a fist—that caused injuries). Therefore, under this rule, self-serving accounts from Mr. Grant, as well as accounts from any other individual, as to the cause of his injuries would not be admissible under Fed. R. Evid. 803(4) because they are not reasonably pertinent to a physician when providing treatment.  That would include, for example, Dr. Charles' statement that Mr. Grant suffered injuries because of an "altercation with the police."  To the extent that the medical records and correspondence identified in Plaintiffs' Exhibit List contain such inadmissible hearsay, they should be excluded.

X.    **Supplemental Motion *in Limine* #10:  Plaintiffs should be precluded from introducing redacted letters from Joseph Lipari to Chief Fowler concerning the reports and findings of the CRB against various unnamed officers.**

Plaintiffs seek to introduce several redacted letters from Lipari to Chief Fowler concerning the reports and findings of the CRB against various unnamed officers.  *See* Dkt. 117 (Plaintiffs' Exhibit List) at P-33 through P-39, P-44, P-46, P-48.  First, Plaintiffs seek to introduce a redacted letter from Lipari to Chief Fowler, dated October 26, 2012, in which Lipari sets forth the findings

of a CRB panel that sustained allegations of excessive force and untruthfulness in a police statement against two unnamed officers.  Second, Plaintiffs seek to introduce a redacted letter from Lipari to Chief Fowler, dated December 19, 2012, in which Lipari sets forth the findings of a CRB panel that sustained allegations of violating Department Policy on communication with dispatch and failure to provide officer name and badge number against one officer, and excessive force and untruthfulness in a police statement against another officer.  *See* Dkt. 68-37.  Third, Plaintiffs seek to introduce a redacted letter from Lipari to Chief Fowler, dated January 17, 2013, stating that the CRB panel sustained allegations of excessive force, "demeanor," and "conduct unbecoming" against an unnamed police officer.  *See* Dkt. 68-38.  Fourth, Plaintiffs seek to introduce a redacted letter from Lipari to Chief Fowler, dated July 10, 2013,[4] stating that the CRB panel sustained allegations of excessive force and untruthfulness in a police statement against certain unnamed officers.  Fifth, Plaintiffs seek to introduce a redacted letter from Lipari to Chief Fowler, dated May 24, 2013, stating that the CRB panel sustained allegations of "demeanor," excessive force, and improper offer to remove charges against an unnamed police officer.  *See* Dkt. 68-40.  Sixth, Plaintiffs seek to introduce a redacted letter from Lipari to Chief Fowler, dated May 24, 2013, stating that the CRB panel sustained allegations of "demeanor," excessive force, destruction of property, and racial bias against two unnamed police officers.  *See* Dkt. 68-41.  Seventh, Plaintiffs seek to introduce a redacted letter from Lipari to Chief Fowler, dated October 17, 2013, stating that the CRB panel sustained allegations of "demeanor" and excessive force against three unnamed police officers.  *See* Dkt. 68-42. Eighth, Plaintiffs seek to introduce a redacted letter from Lipari to Chief Fowler, dated December 30, 2013, stating that the CRB panel sustained allegations of

---

[4]      Plaintiffs' Exhibit List states that they intend to introduce a letter dated July 17, 2013, *see* Dkt. 117 at P-36, but in the absence of any disclosed letter of that date, Defendants presume the listed date contains a typographical error.

excessive force against certain unnamed officers.  Ninth, Plaintiffs seek to introduce a redacted letter from Lipari to Chief Fowler, dated June 27, 2014, stating that the CRB panel sustained allegations of excessive force against certain unnamed officers.  Tenth, Plaintiffs seek to introduce a redacted letter from Lipari to Chief Fowler, dated June 20, 2014, stating that the CRB panel sustained allegations of excessive force and untruthfulness against certain unnamed officers.

Each of those letters, summarized above, is objectionable for the same reasons that Defendants argued that the CRB reports and findings against the arresting officers are inadmissible and should be excluded.  *See* Dkt. 124 (Omnibus Motions *in Limine*) at 7-12 (Motion *in Limine* #4).  In brief, the letters contain hearsay; in each, Lipari summarizes the CRB's investigation, including the statements of complainants and witnesses.  *See* Fed. R. Evid. 801(c).  Further, the letters contain Lipari's impermissible lay opinion that officers who were the subjects of the letters committed the listed violations and should be disciplined.  Much like the CRB reports that Defendants moved to preclude in its prior filing, this fails to meet the foundational requirements of Rule 701, requiring that Lipari's opinions be based on his own perception and that the opinions be helpful to the jury.  *See* Fed. R. Evid. 701.  The letters also present a danger of unfair prejudice under Fed. R. Evid. 403, to the extent that the jury would give undue weight to the unreliable findings of the CRB.  A danger of unfair prejudice also arises out of the possibility that the jury may confuse the issues for trial and find in favor of Plaintiffs on grounds other than those set forth in the Amended Complaint, given that some of the letters concern allegations of, for example, racial bias, which is not at issue in this case.[5]  *See* Fed. R.

---

[5]     Additionally, in an Order dated June 28, 2016, Magistrate Judge Dancks ordered the disclosure of certain redacted complaints to the CRB involving "sustained/substantiated claims of excessive force, false arrest, and false imprisonment by any officer supervised by Defendants Novitsky and/or Fowler."  Dkt. 42 at 1-2.  However, Magistrate Judge Dancks specifically stated that "[c]omplaints that may be addressed in the redacted documents concerning any other behavior shall not be permitted."  *Id.* at 4.

Evid. 403.  The letters also represent impermissible evidence of subsequent remedial measures under Fed. R. Evid. 407.  For those reasons, and the reasons set forth in Defendants' Motion *in Limine* #4, set forth in their Omnibus Motion *in Limine*, *see* Dkt. 124 (Defendants' Omnibus Motions in Limine) at 7-12 (Motion *in Limine* #4), the Court should preclude the above-listed letters from Lipari to Chief Fowler.[6]  *See* Dkt. 117 (Plainitffs' Exhibit List) at P-33 through P-39, P-44, P-46, P-48.

## XI.   Supplemental Motion *in Limine* #11:  Plaintiffs should be precluded from introducing CRB Reports involving unnamed officers.

Plaintiffs seek to introduce into evidence six CRB Case Reports concerning complaints of excessive force and other allegations against certain officers whose names have been redacted. *See* Dkt. 117 (Plaintiffs' Exhibit List) at P-40, P41, P-42, P-43, P-45, P-47.  For the same reasons summarized above in Supplemental Motion *in Limine* # 10 and in Defendants' Motion *in Limine* #4, set forth in its Omnibus Motion *in Limine*, *see* Dkt. 124 (Defendants' Omnibus Motions *in Limine*) at 7-12 (Motion *in Limine* #4), the Court should not permit Plaintiffs to introduce the reports and findings of the CRB with respect to other unidentified officers, as they (1) contain hearsay; (2) contain impermissible lay opinion testimony; (3) present a danger of unfair prejudice under Rule 403; and (4) contain impermissible evidence of subsequent remedial measure under Rule 407.  *See* Dkt. 117 (Plaintiffs' Exhibit List) at P-40, P41, P-42, P-43, P-45, P-47.

## XII.   Supplemental Motion *in Limine* #12: Plaintiffs should be precluded from introducing CRB Annual Reports.

Plaintiffs seek to introduce the CRB's Annual Reports for 2012, 2013, 2014, and 2015. *See* Dkt. 117 (Plaintiffs' Exhibit List) at P-18 through P-20, P-81.  Those reports contain statistics

---

[6]     Defendants' Motion in Limine #4, set forth in their Omnibus Motion *in Limine*, *see* Dkt. 124 (Defendants' Omnibus Motions in Limine) at 7-12 (Motion *in Limine* #4), specifically moved to preclude the documents that Plaintiffs seek to introduce as P-12.

such as the rate at which the CRB sustained a complainant's allegations against an officer.  *See, e.g.*, Dkt. 68-21; Dkt. 68-22; Dkt. 68-23. To the extent that Plaintiffs intend to use those annual reports to offer statistical evidence in support of their *Monell* claim, they should be precluded from doing so for the reasons stated in Defendants' Trial Brief.  *See* Dkt. 123 at 17-18.   In the main, Plaintiffs have failed to identify an expert witness who would be qualified in the field of statistics, and without such expert analysis, any statistical evidence purporting to show the frequency of certain complaints against the SPD and how often they are sustained would be meaningless, confusing, and irrelevant.  *See, e.g.*, *Groark v. Timek*, 989 F. Supp. 2d 378, 387 (D.N.J. 2013) ("[S]tatistical evidence standing alone, isolated and without further context, is generally not enough to justify a finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officer." (internal quotation marks omitted)); *Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 3903673, at *1 (N.D. Ill. Sept. 7, 2012) (considering whether an expert statistician may testify in support of the plaintiff's *Monell* claim pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)); *Wingfield v. United Techs. Corp.*, 678 F. Supp. 973, 983 (D. Conn. 1988) (excluding statistical evidence concerning prior acts of age discrimination on Rule 403 grounds).

## XIII.  Supplemental Motion *in Limine* #13: Plaintiffs should not be permitted to introduce video interviews of Plaintiffs and their non-party witnesses.

Plaintiffs' proposed exhibits include several informal, unsworn interviews of Plaintiffs and other non-party witnesses, recorded without opposing counsel's presence.  *See* Dkt. 117 (Plaintiffs' Exhibit List) at P-30, P-31, P-69 through P-79.  These videos should not be permitted into evidence for the reasons stated in Motion *in Limine* #6, set forth in Defendants' Omnibus Motions *in Limine*.  *See* Dkt. 124 (Defendants' Omnibus Motions *in Limine*) at 14-15.  As stated in Motion *in Limine* #6, those videos are hearsay, *see* Fed. R. Evid. 801(c), and would violate the

requirement of Fed. R. Evid. 603 that witnesses testify under oath, *see* Fed. R. Evid. 603. For the reasons set forth in Motion *in Limine* #6, the videos should be precluded.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' motions *in limine*, *see* Dkt. 122, and grant Defendants' supplemental motions *in limine*, as well as the motions in *limine* set forth in their previously filed Omnibus Motions *in Limine, see* Dkt. 124.


Dated:   September 24, 2018                               Respectfully submitted,

                                                         HANCOCK ESTABROOK LLP

                                                         By: <u>s/   John G. Powers</u>

                                                         John G. Powers (508934)
                                                         100 Madison Street, Suite 1500
                                                         Syracuse, New York 13202
                                                         Tel: (315) 565-4500
                                                         jpowers@hancocklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on September 24, 2018, I caused the foregoing to be electronically

filed with the Clerk of the District Court, Northern District of New York using the CM/ECF

system, which sent notification of such filing to the following:

Jesse P. Ryder, Esq.         ryderlawfirm@gmail.com
A. Cabral Bonner, Esq.       cabral@bonnerlaw.com
Charles A. Bonner, Esq.     cbonner799@aol.com
Christina F. DeJoseph, Esq.   cdejoseph@syrgov.net
Todd M. Long, Esq.         tlong@syrgov.net

Dated:   September 24, 2018           <u>s/ John G. Powers</u>
                                   John G. Powers (508934)