UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALONZO and STEPHANIE GRANT,

        Plaintiffs,


   v.          5:15-CV-445


CITY OF SYRACUSE; DAMON LOCKETT,
Police Officer; PAUL MONTALTO, Police
Officer; BRIAN NOVITSKY, Police Officer;
and FRANK FOWLER, Chief of Police,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:       OF COUNSEL:

LAW OFFICES OF BONNER & BONNER  A. CABRAL BONNER, ESQ.
Attorneys for Plaintiffs      CHARLES A. BONNER, ESQ.
475 Gate 5 Road, Suite 212
Sausalito, CA 94965

RYDER LAW FIRM       JESSE P. RYDER, ESQ.
Attorneys for Plaintiffs
121 E. Water Street
Syracuse, NY 13202

CITY OF SYRACUSE CORPORATION  TODD M. LONG, ESQ.
  COUNSEL        Ass't Corporation Counsel
Attorneys for Defendants
233 East Washington Street
Room 300 City Hall
Syracuse, NY 13202

HANCOCK ESTABROOK, LLP    JOHN G. POWERS, ESQ.
Attorneys for Defendants
1500 AXA Tower I
100 Madison Street
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiffs Alonzo and Stephanie Grant ("plaintiffs") filed this civil rights action against the City of Syracuse, New York (the "City"), Police Officers Damon Lockett, Paul Montalto, and Brian Novitsky, and Chief of Police Frank Fowler (collectively "defendants"). Plaintiffs seek compensatory damages, punitive damages, and declaratory relief for injuries arising out of an incident at their home in the City of Syracuse on the evening of June 28, 2014, which led to Alonzo's arrest. Plaintiffs later filed an amended complaint.[1]

Following discovery, defendants collectively moved for summary judgment. In an opinion dated November 17, 2017, Judge Kahn granted in part and denied in part defendants' motion. Grant v. City of Syracuse, 5:15-CV-445, 2017 WL 5564605 (N.D.N.Y. Nov. 17, 2017) (Kahn, S.J.). Following summary judgment, the following claims remained: Alonzo's § 1983 claim for false arrest; Alonzo's § 1983 claim for excessive force; Alonzo's state law claim for assault and battery; Alonzo's state law claim for false imprisonment; Stephanie's § 1983 claim for false imprisonment; Stephanie's state law claim for loss of consortium; both plaintiffs' 1983 claim of unlawful entry against Lockett; both plaintiffs' state law claim for trespass against Lockett; and both plaintiffs' § 1983 claim pursuant to Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978) against the City.

---

[1] This case was initially assigned to Senior United States District Judge Lawrence E. Kahn but was recently transferred to the undersigned.

After the case was transferred, the undersigned issued a decision on defendants' then-pending motion to bifurcate liability, the <u>Monell</u> claim, and damages. That motion was denied. ECF No. 115. Trial remained scheduled for October 2, 2018, in Utica, New York.

In anticipation of trial, the parties filed various motions in limine. Defendants first moved for an order striking plaintiffs' expert report and precluding any testimony at trial related to the same. ECF No. 111. Plaintiffs opposed. Plaintiffs later moved in limine for three specific rulings. ECF No. 122. Defendants responded. Defendants filed their own omnibus motion in limine on fifteen specific issues. ECF No. 124. Plaintiffs responded. Defendants also later filed a supplemental motion in limine on thirteen specific issues. ECF No. 135. Plaintiffs again responded. The motions have been fully briefed and considered on their submissions and without oral argument.

In light of the voluminous pre-trial filings and motions and due to other scheduling issues, trial was adjourned from October 2, 2018 to October 9, 2018.

## II. <u>BACKGROUND</u>

The salient facts are contained in the previous decisions and in the interest of brevity, will not be recited here.

## III. <u>DISCUSSION</u>

### A. <u>Standard</u>

The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. <u>See</u> <u>Luce v. United States</u>, 469 U.S. 38, 40 n.2 (1984); <u>see also</u> <u>Palmieri v. Defaria</u>, 88 F.3d 136, 141 (2d Cir. 1996). A court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds. <u>See</u> <u>Baxter Diagnostics, Inc. v. Novatek Med., Inc.</u>, No. 94-cv-5220, 1998

WL 665138, *3 (S.D.N.Y. Sept. 25, 1998).  Courts considering a motion in limine may reserve decision until trial so that the motion is placed in the appropriate factual context.  See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Alternatively, courts are "free, in the exercise of sound judicial discretion, to alter a previous in limine ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer."  Luce, 469 U.S. at 41-42.

**B.  Defendants' motion to preclude**, ECF No. 111

Defendants have moved to strike the expert report of John R. (Rick) Brown ("Brown") and preclude any testimony at trial related to the same pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Federal Rules of Evidence ("Rule __") 104(a), 402, and 702.  Defendants argue Brown is not qualified to testify as an expert witness on the use of force by police; Brown's report and proffered testimony do not meet the well-settled reliability standards that are set forth in Rule 702; Brown's report and proffered testimony will not assist the trier of fact and improperly usurps the role of the jury; and that portion of Brown's report and testimony relating to the Syracuse Police Department investigation are wholly irrelevant to the claims at trial.

While indeed a court must serve as a gate keeper for expert testimony, plaintiffs have more than established Brown's qualifications to testify and he will be permitted to do so upon the laying of a proper foundation at trial.  Rule 702 recognizes that it is the actual qualifications that matter, rather than mere titles.  Experts can be qualified by knowledge, skill, experience, training, or education.  Defendants' arguments regarding Brown's qualifications, experience or lack thereof, methodology, opinions, and conclusions go to his credibility and the weight of his testimony, not his admissibility as an expert witness.

Defendants will have an opportunity during cross-examination as well as through objections to address Brown's alleged deficiencies.

Accordingly, defendants' motion to preclude plaintiffs' expert Rick Brown will be denied.

### C. **Plaintiffs' motion in limine**, ECF No. 122

Plaintiffs have filed a pre-trial motion seeking advance rulings on three particular issues.

### 1. **9-1-1 call**

On June 28, 2014, the day of the incident in question, plaintiff Alonzo called 9-1-1 and asked police to come to his home in the City of Syracuse to help him deal with his daughter Alyssa Grant. Plaintiffs move to preclude the introduction of the 9-1-1 call on the basis that the defendant officers did not hear this call prior to arriving on scene, instead they only received the substance of the call, relayed by the dispatcher. Plaintiffs argue the content of the actual call is irrelevant because what matters is only what was known to the defendant officers at the time they arrived on the scene. Moreover, plaintiffs argue that the profanity used by Alonzo during the call creates a risk of unfair prejudice. Defendants oppose and argue the audio recording or transcript of Alonzo's 9-1-1 call is admissible because it is relevant evidence of his state of mind, conduct, and demeanor at, and/or near, the time of the events in question.

The 9-1-1 call immediately preceding the officers' arrival and which precipitated the officers being dispatched to the scene in the first place *is* relevant. To the extent defendants intend to offer the audio or transcript of the call into evidence upon the laying of a proper

foundation, and that it is not being offered for the truth of the matter or can establish that a specific hearsay exception applies, plaintiffs' request to exclude the call will be denied.

**2.** **Shovel incident**

On some date before the incident at issue, Alonzo called 9-1-1 seeking police assistance on an unrelated matter. According to defendant Novitsky during his deposition, Alonzo was wielding a shovel in his front yard during this previous incident. Plaintiffs argue this incident should be precluded from evidence because it was not known to the officers at the time they responded to plaintiffs' home on June 28, 2014. Defendants oppose and assert they only intend to introduce this evidence in rebuttal to any attempt by Alonzo to introduce evidence that he is a peaceful person.

Defendant Novitsky was not present during this alleged prior incident and had no memory of any details. Because it would not be based on personal knowledge and would moreover prejudice the jury, testimony relating to Alonzo's alleged prior wielding of a shovel in his yard in police presence will be excluded. Thus, plaintiffs' request will be granted.

**3.** **Open container ticket**

Defendant Novitsky also testified during his deposition that a criminal history search for Alonzo produced an "open container arrest" from 1970. Defendants have responded that they do not intend to introduce evidence of this arrest and thus plaintiffs' request will be denied as moot.

**D. Defendants' omnibus motion**, ECF No. 124

Defendants have filed a pre-trial omnibus motion seeking advance rulings on fifteen specific issues.

### 1. Dismissal of criminal charges

The parties do not dispute that the Syracuse Criminal Court ultimately dismissed the criminal charges against Alonzo that stemmed from his arrest on June 28, 2014, yet defendants move to preclude plaintiffs from introducing evidence of same. Defendants argue that dismissal of the charges is irrelevant to the critical issue of whether the arresting officers had probable cause to arrest Alonzo. Plaintiffs oppose and argue the dismissal of the criminal charges is relevant to several issues in this case including the credibility of the officers, damages, and Alonzo's excessive force claim.

While judicial decisions are often regarded as hearsay, the *outcome* of Alonzo's arrest on June 28, 2014 is certainly relevant to plaintiffs' case. As Alonzo's arrest is a key part of plaintiffs' story, the jury is permitted to know the outcome of that arrest. Therefore, defendants' request to preclude the dismissal of all criminal charges against Alonzo stemming from the June 28, 2014 incident will be denied.

### 2. District Attorney's letter

Onondaga County District Attorney William J. Fitzpatrick ("DA Fitzpatrick") authored a letter dated November 20, 2014 to Charles A. Bonner, counsel for plaintiffs. In the letter, DA Fitzpatrick responded to Attorney Bonner's request for a signature on a petition for factual innocence for Alonzo, and indicated that the DA does not usually "insert ourselves in the civil proceedings that may arise from a criminal case." DA Fitzpatrick also wrote that he found that the exculpatory information Attorney Bonner provided was "reliable, credible and consistent." Defendants argue the letter is irrelevant, unfairly prejudicial under Rule 403, and hearsay, and should be excluded. Plaintiffs oppose and argue the letter is relevant to Alonzo's "pain of having a criminal record after 53 years of his life without any conviction of

even a misdemeanor."  They further contend that "[h]e is entitled to a finding of factual innocence, representing total exoneration, but such a procedure of factual innocence is unavailable to him."  Plaintiffs argue that the letter is not hearsay since DA Fitzpatrick wrote the letter in the ordinary course of business and will be at court to testify to the facts contained in the letter.

DA Fitzpatrick's letter is relevant and will be admissible upon the laying of a proper foundation.  Defendants' request to preclude DA Fitzpatrick's letter will be denied.

### 3.    Draft of press release

Defendants move to preclude a draft of DA Fitzpatrick's press release which describes the outcome of Alonzo's criminal charges, the nature of the investigation conducted by the DA's Office, and the incident at plaintiffs' home on the night in question.  The draft also states that "Mr. Grant has an unblemished record and is well-established in the community." Defendants argue that like DA Fitzpatrick's letter to Attorney Bonner, the press release is irrelevant and prejudicial.  Moreover, defendants contend the draft also lacks any reliable foundation because its author and the circumstances under which it was created are unknown.  In response, plaintiffs contend that they do not plan to introduce into evidence the draft of the press release; however, they urge that the *fact* that the DA issued a press release is proper testimony from the DA himself, including his statement that "Mr. Grant has an unblemished record and is well-established in the community."  Plaintiffs further note that the press release is admissible under Rule 801(d)(2)(D).

The press release is relevant for the purposes for which plaintiffs intend to offer it and will be admissible upon the laying of a proper foundation.  Defendants' request to preclude the draft of DA Fitzpatrick's press release will be denied.

**4.** **Syracuse Citizen Review Board ("CRB") reports and findings against arresting officers**

Defendants argue plaintiffs should be precluded from introducing into evidence any of the reports and findings of the CRB because the documents contain multiple layers of hearsay, constitute impermissible lay opinion testimony under Rule 701, are irrelevant, are unduly prejudicial under Rule 403, and constitute impermissible evidence of subsequent remedial measures under Rule 407. Plaintiffs oppose and contend the CRB reports and findings against the arresting officers are directly relevant to their Monell claim.

The CRB reports and findings *are* directly relevant to plaintiffs' Monell claim. Plaintiffs will still face the evidentiary hurdle of overcoming the documents' hearsay, but the CRB reports and findings against the arresting officers will not be *per se* excluded. Accordingly, defendants' request will be denied.

**5.** **Joseph Lipari deposition transcript**

CRB Administrator Joseph Lipari was deposed during discovery. Defendants now seek to preclude his deposition transcript from being entered into evidence on the basis that it is irrelevant and the statements in his deposition constitute impermissible lay opinion testimony under Rule 701. Much of his deposition testimony concerned the administration and operation of the CRB. Plaintiffs respond that they do not intend to introduce the deposition transcript into evidence but plan to elicit all of the testimony from Lipari himself. Accordingly, defendants' motion on this basis will be denied as moot.

**6.** **Video interviews and corresponding transcripts of plaintiffs and non-party witnesses**

According to defendants, plaintiffs' counsel has videoed informal, unsworn interviews with plaintiffs and other non-party witnesses (including Sherrell Grant and Corey McMullin),

without opposing counsel's presence, and posted them on YouTube.  Defendants argue the videos or transcripts of the videos must be excluded because the statements contained in the interviews are hearsay.  Plaintiffs respond that they do not intend to introduce into evidence the video interviews but *do* intend to use the video interviews without sound as demonstrative aids to plaintiffs and non-party witnesses as plaintiffs and non-party witnesses narrate the videos as a part of their testimony to show locations, positions, conduct and actions of the events which would be best shown in pictures than just verbal narrative.

Rule 801(c) defines hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statement."  To the extent that plaintiffs seek to introduce these statements for the truth of the matter asserted therein, they will be precluded.  Plaintiffs themselves along with other witnesses may testify at trial regarding the facts, their experiences, opinions, and so on, subject to oath and cross-examination like any other witness.  Defendants' request to preclude these videos and corresponding transcripts will be granted and the videos excluded.

### 7.  Audio of the June 28, 2014 incident

In the event plaintiffs seek to admit the video of Alonzo's arrest on June 28, 2014, defendants request that the video be muted as to the narration because the narration is hearsay, irrelevant, and unduly prejudicial.  Plaintiffs oppose and argue the audio and visual of the video should be admitted because there is a dispute of facts between the parties.

Defendants' motion on this basis will be denied.  The commentary and Stephanie's remarks are admissible hearsay under Rule 803(1) as a present sense impression and Rule

803(2) as an excited utterance, respectively.  The video, in its full, original form, will be admitted upon the laying of a proper foundation.

### 8.    **Character evidence**

Defendants seek an in limine ruling prohibiting plaintiffs from introducing character evidence or calling character witnesses at trial.  Defendants point to the character witnesses set forth in plaintiffs' Exhibit A to their Initial Disclosures, as well as character letters from Theresa Faircloth and Sister Rose Anne Renna regarding Alonzo, both dated July 9, 2015.  Plaintiffs contend they do not intend to introduce impermissible character evidence but do plan to introduce several witnesses who knew Alonzo before and after the incident, to prove his non-economic damages, including his pain, anxiety, inconvenience, mental and emotional distress, fear, loss of enjoyment of life, physical disfigurement, permanent injuries and damage to his self-image and humiliation.

Rule 404 governs the use of character evidence.  The rule provides:  "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(a)(1).  Rule 404 also provides exceptions.  The rule allows character evidence of a defendant or victim in a criminal case.  Id. 404(a)(2).  As this matter is a civil case, that exception is inapplicable.  The rule also allows character evidence of a witness if admissible under Rules 607, 608, or 609 relating to impeachment, character for truthfulness, or impeachment by evidence of a criminal conviction, respectively.  See Fed. R. Evid. 404(a)(3).  Barring the applicability of any of these exceptions, plaintiffs will be prohibited from calling character witnesses to show that on a particular occasion plaintiffs acted in accordance with the character or trait.  However, to the extent that plaintiffs intend to offer them for their above articulated reasons, they will be

permitted but limited to four such witnesses.  Accordingly, defendants' motion will be granted in part.

**9.    <u>Non-disclosed economic damages</u>**

Defendants point out that in response to interrogatories, Alonzo claimed that he incurred medical expenses totaling $4,171.83; "medications $5 co-pay for each"; and lost earnings totaling $2,217.77.  Defendants argue that his responses lacked any information about economic damages as required under Federal Rule of Civil Procedure 26(a)(1)(A)(iii) and as a result, Rule 37 of the Federal Rules of Civil Procedure bars the introduction of such evidence at trial.  Plaintiffs oppose.  They assert that their economic loss will be limited to medical bills that were not paid by insurance.

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) provides that a party's initial disclosure must provide "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  Federal Rule of Civil Procedure 37(c)(1) dictates the consequences for such failure:  "[T]he party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Decision on this request will be reserved for trial.  Plaintiffs will have an opportunity to prove a substantial justification or harmlessness for any failure to comply with the discovery rules regarding economic damages.

**10.** **Limitation of emotional distress damages**

Defendants argue that plaintiffs' recovery of emotional distress damages must be limited to the garden variety type due to a lack of a mental health diagnosis. Plaintiffs oppose and contend they seek all allowable non-economic damages, based on serious and severe mental and physical damages including, but not limited to: pain, anxiety, loss of enjoyment of life, mental suffering, emotional distress, humiliation, inconvenience, physical suffering, disfigurement, physical impairment, and damage to self-image.

"Emotional distress awards within the Second Circuit can generally be grouped into three categories of claims: garden-variety, significant, and egregious." Vera v. Alstom Power, Inc., 189 F. Supp. 3d 360, 376 (D. Conn. 2016). For the garden variety type, the evidence of mental anguish is generally limited to the plaintiff's own testimony. Id. By contrast, significant emotional distress claims "are based on more substantial harm or more offensive conduct, [and] are sometimes supported by medical testimony and evidence," while egregious claims generally involve "either outrageous or shocking discriminatory conduct or a significant impact on the physical health of the plaintiff." Id.

Plaintiffs will be permitted at trial to introduce their own testimony, as well as corroborating testimony, medical or otherwise, to substantiate their emotional distress damages. The type of evidence presented will guide the type of emotional distress damages available to plaintiffs. It would be premature to limit plaintiffs' damages in advance of hearing testimony on same. Defendants' motion on this basis will be denied.

**11.** **Personnel files, lawsuits, disciplinary history, or CRB findings involving individual defendants**

Defendants argue plaintiffs should be precluded from introducing the personnel files of defendants Lockett, Montalto, Novitsky, and Fowler into evidence, as well as any lawsuits,

disciplinary history, or CRB findings involving the individual defendants.  Plaintiffs oppose but point out they will seek to introduce only those incidents of excessive force, false arrest, or untruthfulness of which the Chief and City had notice or should have known regarding plaintiffs' Monell claim.  Plaintiffs do not intend to introduce the personnel files of the individual defendant officers.

Generally, Rule 404(b) prohibits prior bad acts.  Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," unless the evidence is being admitted for an another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(1), (2).

Decision on this request will be reserved for trial.  Plaintiffs will have an opportunity to establish a foundation and relevance for this evidence and defendants will have an opportunity to object.

### 12.    Newspaper articles

Defendants argue plaintiffs should be prohibited from introducing newspaper articles to support their Monell claim.  Plaintiffs do not intend to introduce newspaper articles to support their Monell claim and thus defendants' request will be denied as moot.

### 13.    Lieutenant David Brown

Defendants argue that plaintiffs should be precluded from calling Lieutenant David Brown to testify at trial on matters outside of his personal knowledge.  Lieutenant Brown testified in response to a subpoena directed to the "[p]erson [m]ost [k]nowledgeable for the City of Syracuse regarding the final authority and final decision maker for oversight,

management and supervision of policies, rules, and regulations of the Syracuse Police Department" regarding a number of different subject areas.  Plaintiffs oppose and contend defendants are estopped from objecting to Lieutenant Brown's testimony.

Federal Rule of Civil Procedure 30(b)(6) permits a party to name as a deponent a public or private corporation or other legal entity.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf.  Id.  The designated person "must testify about information known or reasonably available to the organization."  Id.  Lieutenant Brown will be permitted to testify to facts and information within his realm of knowledge and experience and pursuant to the parameters of the Federal Rules of Evidence.  Defendants' request to limit Lieutenant Brown's testimony will be denied.

### 14.  Treating physician's testimony

Defendants seek a ruling that plaintiffs' treating physicians' testimony be limited to their observations and opinions derived from their examination and treatment of plaintiffs and that they be precluded from opining on anything not based on their own perceptions because they have been listed as non-retained experts.  Plaintiffs oppose and argue they should be permitted to introduce a treating physician's testimony to the extent that it is not based on his or her own perceptions because physicians rely on hearsay in rendering diagnosis, treatment, and prognosis.

Plaintiffs' treating physicians will be subjected to the usual treating physician rules and guidelines for expert testimony.  A more specific ruling on their testimony would be premature at this time and thus decision will be reserved for trial.

### 15.    Cases not having a final determination against the City

Defendants argue that plaintiffs should be precluded from introducing into evidence any case that did not result in a final adjudicative determination against the City, including: (1) an alleged incident in August of 2014, in which Louise Thompson reported that City police handcuffed her, charged her with resisting arrest, and "manhandled" her; (2) an incident in January of 2014, in which Rev. L. Micah O. Dexter II and his wife were allegedly roughed up by City police after they called to report two suspicious people on their property; and (3) an incident in which City police officers tasered Brad Hulett.  Plaintiffs oppose and argue they should be permitted to introduce evidence of any case involving the issues of excessive force, false arrest, untruthfulness, and all issues relating to notice to the City, pertaining to the Monell claim.  Plaintiffs further argue that final adjudicative determination against the City is irrelevant to the City's obligation under the law to refrain from implementing and establishing policies, practices, and patterns of conduct that result in the deprivation of civil rights.

Defendants are correct that the mere fact that these individuals made formal or informal complaints against City police officers is insufficient alone to support plaintiffs' Monell claim against the City.  However, plaintiffs will have an opportunity to make an argument for the admissibility of this evidence and defendants will have an opportunity to advance their objections.  Decision on this issue will be reserved for trial.

### E.    Defendants' supplemental motion, ECF No. 135

### 1.    Plaintiffs' character witnesses

Defendants reiterate their prior request to limit plaintiffs' character witnesses and point out that plaintiffs' witness list contains 18 individuals whose testimony should be precluded at

trial for the reasons previously set forth.  Plaintiffs again oppose but point out that these are pain and suffering witnesses, not credibility or character witnesses.

For the reasons explained above, plaintiffs will be prohibited from calling character witnesses to show that on a particular occasion plaintiffs acted in accordance with the character or trait.  However, to the extent that plaintiffs intend to offer them for their above articulated reasons regarding damages, they will be permitted but limited to four such witnesses.  Accordingly, defendants' motion will be granted in part.

**2.    Dr. Great A. Sangani and Dr. Mark Charlamb**

Defendants move to preclude Dr. Sangani and Dr. Charlamb from testifying due to plaintiffs' failure to comply with discovery obligations.  Plaintiffs have responded that they do not intend to call these witnesses so defendants' request will be denied as moot.

**3.    Dr. Joseph DiTota**

Defendants move to preclude Dr. DiTota from testifying on the basis that he is not a treating physician and that plaintiffs have failed to accurately identify his contact information. In response, plaintiffs assert that they do not intend to call Dr. DiTota and thus defendants' request will be denied as moot.

**4.    DA Fitzpatrick**

Defendants argue that DA Fitzpatrick should be precluded from testifying as to "why the charges against Alonzo Grant were dismissed."  Plaintiffs oppose and reiterate their position regarding the relevance and admissibility of the dismissal of Alonzo's criminal charges.

Defendants' motion on this basis will be denied for the reasons explained above regarding the dismissal of the criminal charges.

### 5. Undisclosed witnesses

Defendants move to preclude plaintiffs from calling as witnesses any individuals who have not been sufficiently identified in plaintiffs' witness list, specifically, the "Attending Emergency Room Physicians and Nurses as reflected in the medical reports of Community General Hospital @ Upstate. Address: 750 E Adams St, Syracuse NY 13202." In response, plaintiffs assert that they do not intend to call any witnesses who have not been sufficiently identified in their witness list. Therefore, defendants' request will be denied as moot.

### 6. John R. "Rick" Brown

Defendants reiterate their prior request to preclude Brown's testimony based on Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Plaintiffs reiterate their opposition arguments as articulated in the previous, fully briefed motion on this issue.

Defendants' motion on this basis will be denied for the reasons explained above and Brown will be permitted to testify.

### 7. Video of CNY Central news coverage

Defendants argue plaintiffs should be precluded from introducing a video of CNY Central news coverage of the events in question. Plaintiffs respond that they do not intend to introduce said video. Accordingly, defendants' request will be denied as moot

### 8. Newspaper articles

Defendants move to exclude two newspaper articles which plaintiffs have identified on their exhibit list. In response, plaintiffs assert that they do not intend to introduce hearsay evidence in the form of newspaper articles. Therefore defendants' request will be denied as moot.

### 9. **Medical records**

Defendants argue plaintiffs should be precluded from introducing medical records and correspondence to the extent that they contain double hearsay. Plaintiffs oppose and contend the records at issue are admissible hearsay because they will be offered for the foundational facts for assessment, diagnosis, and treatment pertaining to the continuity of care, and to explain Alonzo's injuries, harm, and damages.

Assuming plaintiffs establish that such records are business records made in the ordinary course of business, contemporaneously with the events giving rise to this action, the records would be admissible under Rule 803(6). Defendants' request on this basis will therefore be denied.

### 10. **Letters from Joseph Lipari to Chief Fowler**

Defendants move to preclude redacted letters from Lipari to the Chief concerning the reports and findings of the CRB against various unnamed officers. Defendants argue that each of plaintiffs' offered letters is objectionable for the same reasons they argue that the CRB reports and findings against the arresting officers are inadmissible and should be excluded. Plaintiffs oppose and contend they should be permitted to introduce the redacted letters because the letters provide relevant evidence as to their Monell claim.

The letters are relevant to the Monell claim for the purpose of the City's notice and the alleged pattern and practice of violations of citizens' rights and the defendants' alleged deliberate indifference to those violations by failing to provide any corrective or remedial action by the Chief or the City. Accordingly, defendants' motion will be denied and the redacted letters will be permitted to be introduced.

### 11. CRB Reports involving unnamed officers

Defendants argue plaintiffs should be precluded from introducing six CRB Case Reports concerning complaints of excessive force and other allegations against certain officers whose names have been redacted. Plaintiffs oppose and again reiterate that such exhibits are relevant to their Monell claim.

Defendants' request will be denied for the same reasons explained above, that is, the documents are relevant to the Monell claim.

### 12. CRB Annual Reports

Defendants move to preclude the admission of CRB Annual Reports, particularly as they demonstrate statistics such as the rate at which the CRB sustained a complainant's allegations against an officer. Plaintiffs oppose and reference their previous position regarding the relevance and admissibility of this evidence as to their Monell claim.

Defendants' request will be denied for the same reasons explained above, that is, the CRB Annual Reports are relevant to the Monell claim.

### 13. Plaintiffs' video interviews

Defendants reiterate their prior request to preclude several informal, unsworn interviews of plaintiffs and other non-party witnesses, recorded without opposing counsel's presence. Plaintiffs oppose and contend they should be permitted to introduce the video interviews without sound to the extent that the videos show locations, juxtaposition of parties, witnesses, and, like a photograph, show events that would not be adequately described in words. They argue the videos would be extremely helpful to the jury.

Defendants' motion on this issue will be granted for the same reasons explained above, and the videos and/or corresponding transcripts will be precluded.

## IV.  CONCLUSION

Accordingly, defendants' motion to preclude plaintiffs' expert will be denied.  Plaintiffs' motion in limine will be granted in part and denied in part.  Defendants' omnibus motion in limine will be granted in part and denied in part.  Defendants' supplemental motion in limine will be granted in part and denied in part.  Trial is scheduled for October 9, 2018, in Utica, New York.

Therefore, it is

ORDERED that

1.  Defendants' motion to preclude, ECF No. 111, is DENIED;

2.  Plaintiff's motion in limine, ECF No. 122, is GRANTED in part and DENIED in part;

3.  Defendants' omnibus motion in limine, ECF No. 124, is GRANTED in part and DENIED in part;

4.  Defendants' supplemental motion in limine, ECF No. 135, is GRANTED in part and DENIED in part; and

5.  Trial remains scheduled for October 9, 2018, in Utica, New York at 9:30 a.m.

IT IS SO ORDERED.

_____
United States District Judge

Dated: October 3, 2018
      Utica, New York.