**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALONZO GRANT AND STEPHANIE GRANT, <br><br> Plaintiffs, <br><br> vs. <br><br> POLICE OFFICERS DAMON LOCKETT AND PAUL MONTALTO, and Does 1-100, <br><br> Defendants | **CASE NO. 5:15-CV-00445 (DNH-TWD)** <br><br> **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiffs Alonzo Grant and Stephanie Grant submit this Memorandum of Points and Authorities in support of their motion for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d) and Title 42 U.S.C. § 1988.

### INTRODUCTION

On October 23, 2018, after a nine-day trial featuring 28 witnesses and two days of deliberation, the jury returned a verdict in favor of Plaintiffs Alonzo and Stephanie Grant and awarded damages to each of them in the amount of $1,130,000 and $450,000, respectively. The jury found that Mr. Grant and Mrs. Grant sufficiently presented evidence to support the entirety of their claims against Defendant Police Officers Lockett and Montalto, and wholly vindicated Mr. Grant for the savage beating he sustained by the hands of Defendant Officers who blatantly and contemptuously disregarded his Fourth Amendment rights

The trial was the culmination of over four-years of legal services dating back to June 29, 2014, when Mr. Grant retained Attorney Jesse Ryder, and thereafter Charles Bonner, to defend him against the fallacious criminal complaint brought by the Defendant officers. After fully

investigating and documenting the events of June 28, 2014, Attorneys Bonner and Ryder provided the Syracuse District Attorney, Mr. William Fitzpatrick, with reasonable grounds for conducting his own investigation into Mr. Grant's case. The District Attorney's investigation resulted in the termination of all criminal charges against Mr. Grant, permitting Mr. Grant to seek civil justice, which he successfully achieved as affirmatively reflected by the jury's verdict.

This motion sets out the legal basis for awarding attorneys' fees, including the factual and legal basis for awarding the requested and reasonably justified lodestar multiplier.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arose out of an incident that occurred on Saturday, June 28, 2014 at Mr. and Mrs. Grant's home at 105 Hudson Street in the City of Syracuse ("Grant Home").  (ECF 89 at 3) After returning home from work around 3:00 PM and a barbeque, Mr. Grant got into an argument with his adult daughter Alyssa Grant. *Id.*  After asking Alyssa to leave three times, Alyssa finally left, and once outside began to argue with the Grant's neighbor. *Id.*  Mr. Grant called 911 in response to the heated argument between his daughter and the neighbor. *Id.* Officers Lockett and Montalto responded to the dispatcher's bulletin regarding the 911 call. *Id.*

When Officer Lockett arrived at the Grant's home, both Mr. Grant and Mrs. Grant informed him that assistance was no longer needed as their daughter had left the premises.  *Id* Officers Lockett and Montalto alleged that Mr. Grant and Mrs. Grant were arguing loudly inside their home and that Mr. Grant appeared to be extremely upset. *Id.*  Lockett entered the Grant Home and claimed that he saw Mr. Grant flailing his arms violently. *Id.* Lockett ordered Mr. Grant to go outside and talk with Lockett's partner, Montalto. *Id.*  On exiting, Mr. Grant pushed open the storm door, causing it to slam against the iron railing.  *Id.*  Lockett then grabbed Mr. Grant by his arms. *Id.*  At trial, the preponderance of the evidence established that Lockett then

flung Mr. Grant over the railing, approximately nine feet down to the ground, and Officer's Lockett and Montalto then used excessive force against Mr. Grant in effectuating an unnecessary, unwarranted, unlawful and false arrest.

During the trial the officers admitted to hitting Mr. Grant in the face at least 12 times. Following the incident, Mr. Grant received medical attention from paramedics and was transported to the hospital. *Id.* at 5. At trial, Plaintiff provided medical evidence that he suffered from concussion, broken nose, and a laceration above his left eye that required stitches and permanent injuries to his left arm, rendering his arm incapable of full extension parallel to his body.

The officers charged Mr. Grant with violating New York Penal Law § 240.26(1) ("Harassment in the Second Degree"), Penal Law § 240.20(1) and Criminal Procedure Law § 530.11 ("Domestic Disorderly Conduct"), and Penal Law § 205.30 ("Resisting Arrest"). *Id.* On September 10, 2014, the Syracuse Criminal Court dismissed these charges in the interest of justice pursuant to Penal Law § 170.30, and sealed the record of his arrest. *Id.*

After filing a claim pursuant to New York Law, General Municipal Law Section 50-e, on April 14, 2015, Mr. and Mrs. Grant commenced this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, and New York law, against the City of Syracuse, Officers Lockett and Montalto, Sergeant Novitsky and Chief Fowler.

On November 11, 2017, this Court issued a Memorandum and Order granting in part and denying in part Defendants Motion for Summary Judgment. (EFC 89) The court dismissed several causes of action but denied Defendants' motion for summary judgment as to the core allegations of excessive force and false arrest.

On October 9, 2018 a jury trial commenced. On October 23, 2018, after a nine-day trial

featuring 28 witnesses and two days of deliberation, the jury returned a verdict in favor of Plaintiffs Alonzo and Stephanie Grant and awarding damages to each of them in the amount of $1,130,000 and $450,000 respectively, for a total verdict of $1,580,000.

## **ARGUMENT**

**1.     As A Prevailing Party, Plaintiffs Are Entitled to a Fully Compensatory Award of Attorneys' Fees and Expenses.**

Pursuant to § 1988, in any action or proceeding to enforce a provision of 42 U.S.C. § 1983, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. *See* 42 U.S.C. § 1988(b). Section 1988 represents a limited exception to the "American Rule," under which each party to an action underwrites its own litigation expenses, including attorney's fees regardless of the outcome. *Disability Rights N.Y. v. N. Colonie Bd. of Educ.*, No. 1:14-CV-0744 (DNH/DJS), 2017 U.S. Dist. LEXIS 69593, at *4 (N.D.N.Y. May 8, 2017).   While such equal allotment of litigation expenses makes sense when considering commercial matters, our civil rights laws "depend heavily on private enforcement . . . [therefore] citizens must recover what it costs them to vindicate these rights in court." *Hensley v. Eckerhart*, 461 U.S. 424, 445 (Brennan, J., concurring in part and dissenting in part).

Section 1988 authorizes a district court to award a "reasonable attorney's fee" to a prevailing civil rights litigant. 42 USC §1988. "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kennv A.*, 559 U.S. 542, 552 (2010).  It is without question that the entirety of Mr. Grant's claims invoked his civil rights as protected and enumerated in the U.S. Constitution.

A party is considered a prevailing party for purposes of awarding attorney's fees under § 1988 if the party "succeed[ed] on any significant issue in litigation which achieves some of the

benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). "In short, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111-12; *Kirk v. N.Y. State Dep't of Educ.*, 644 F.3d 134, 137 (2d Cir. 2011)("To qualify for attorney's fees, there must be a 'judicially sanctioned change in the legal relationship of the parties.")

The jury's award of $1,130,000 in Mr. Grant's favor unequivocally designates Mr. Grant as the prevailing party. Section 1988 "has been interpreted to create a strong preference in favor of the prevailing party's right to fee shifting," and therefore, a prevailing party "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Wilder v. Bernstein*, 965 F.2d 1196, 1201-02 (2d Cir.1992). Here, in addition to the 'justness' of jury's award at bar, there exists no such special circumstance to warrant a departure from Section 1988's strong preference of awarding attorney's fees.

## 2.    THE AWARD OF ATTORNEYS' FEES IS PROPERLY DETERMINED BY A LODESTAR METHOD

The starting point for determining a reasonable fee is the "lodestar method," which "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 US. 424, 433, (1983) . "[T]he lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case[.]" *Perdue*, 559 U.S. at 542. There is a "strong presumption" that the lodestar figure represents a reasonable attorney's fee because "'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee,'" *id.* at 553 (*quoting Pennsylvania v. Delaware Valley*

*Citizens' Council for Clean Air*, 478 US. 546, 566 (1986))

**A. Reasonable Fee Rate**

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008), the Second Circuit provided instruction regarding fee awards. Under the protocol announced in *Arbor Hill*, a court must first consider whether the rates at which compensation is sought are those that a "reasonable, paying client would be willing to pay" before multiplying that figure by the number of hours expended. *Arbor Hill*, 522 F.3d at 190-91. Determination of the rate at which a reasonable client would be willing to compensate for the services rendered is informed by several factors of varying degrees of relevance including:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively ... the timing demands of the case, [and] whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation ....

*Arbor Hill*, 522 F.3d at 184. *Arbor Hill* also reinforced the appropriateness of considering the so-called "Johnson factors" when establishing a reasonable rate, including:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n. 3, 190 (discussing *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)).

Primarily, Mr. Grant commences his analysis of assigning the appropriate and justified lodestar rate by informing the Court of the relevant credentials of his legal counsel.

Charles A. Bonner has practiced law since 1979.  His practice consists of a wide range of litigation matters, including civil rights, employment, and personal injury. He has been lead counsel in more than 100 jury trials in both Federal and State courts throughout the United States. Over the last five years he has litigated and settled over 100 cases, primarily involving personal injury and civil rights claims against municipal entities. Recently, as lead attorney, Mr. Bonner successfully argued before the Ninth Circuit jurisdictional claims on behalf of a putative Class of approximately 70,000 injured U.S. Service Members in *Cooper v. Tokyo Elec. Power Co*. 860 F.3d 1193 (9th Cir. 2017), which resulted in a published opinion. Bonner Dec. ¶ 5.[1]

Mr. Bonner was elected and served for 10 years on the Board of Directors of the California Trial Lawyers Association, (currently Consumers Attorneys California) and served on the legislative committee for civil rights and employment law. Mr. Bonner is a graduate of the Gerry Spence Trial Lawyers College located in Dubois, Wyoming.

Cabral Bonner received his J.D. from Stanford Law School in 2006. He received his Bachelor of Arts degree from Stanford University with Honors in 1997. Cabral Bonner is admitted to practice before the bar of the State of California and is also admitted in all the Federal District Courts in California, including the United States Court of Appeals for the Ninth

---

[1] In addtion to being co-counsel with former Senator John Edwards on the *Cooper v. Tokyo Elec. Power Co* and related cases, in United States District Court for the Southern District of California, Mr. Bonner's office is currently involved in many complex federal cases in district courts throughout the country including but not limited to the following: United States Federal District Court for the District of Columbia (*Lewis v. DC*, Case No. 1:15-cv-00521-JEB (Fourth Amendment Violation)); United States District Court Eastern District Of North Carolina, Western Division, (*Oates v. North Caroline State Auditor, et al,* Case No. 5:16-CV-623-FL (42 U.S.C. 1983 Fourth Amendment Violation)); Federal District Court of New York, Northern District (*Crawley, et al  v. City of Syracuse, et al*. Case No.: 5:15-CV-445 (42 U.S.C. 1983, police excessive force)); Federal District Court of California Northern District, (*Soublet v. County of Alameda et al* Amended, Case No. 18-cv-03738-JCS (42 U.S.C 1983, First Amendment)), and (*Pham v. Board of Regents UCSF*, Case No. 17-cv-04194-WHO (42 U.S.C 1983, First Amendment)). Bonner Dec. ¶ 6.

Circuit.  He is a member in good standing of each bar to which he has been admitted. During his 12 years in practice he has been co-counsel or lead counsel in at least 15 jury trials and has argued before the Ninth Circuit on three occasions, including in *Cooper v. Tokyo Elec. Power Co.* (9th Cir. 2017) 860 F.3d 1193. Bonner Dec. ¶ 7.

Charles and Cabral Bonner have a track record of success in representing clients in cases against municipal Defendants, including but not limited to the following: $800,000 verdict against the District of Columbia for Fourth Amendment violations; $4.3 million jury verdict against City of Oakland for elder abuse ($3.75 million compensatory, $550,000 punitive, plus approximately $1 million in attorneys' fees, including a 10% multiplier); $1 million settlement against Oakland Police Department for Fourth Amendment violations (Child Sex Traffing); $800,000 settlement against County of Marin Sheriff's Department for jail in-custody-death; $500,000 settlement against County of Marin Sheriff's Department for excessive force; $4 million dollar settlement against Santa Clara County for three county hospital whistleblowers; $1.6 million jury verdict against Marin County for hostile work environment and retaliation.

Jesse Ryder graduated from Syracuse University in 2000. He has been practicing law for eighteen years. He is a sole practitioner and his practice is focused on general civil litigation. Fifteen years ago he handled a case in Syracuse that gained national attention: the John Jamelske case. John Jamelske, a millionaire, had built a dungeon under his home and had kidnapped five different women whom he enslaved there. Charles Bonner is one of the attorneys Mr. Ryder worked with in that case. The Jamelske case brought national attention to the issue of sex trafficking in this country. Ryder Dec ¶ 2.

Although Mr. Ryder primarily practices in State Court, he also handles complex constitutional cases, such as Mr. Grant's case in the Northern District. Mr. Ryder is admitted to

the Northern District of New York and in the Southern District of Alabama. Mr. Ryder is co-counsel with Charles Bonner and Cabral Bonner in Alabama in a case involving four student plaintiffs who are charging their school district with violating their rights under the Fourteenth Amendment and Title Nine. In eighteen years of practice Mr. Ryder has handled hundreds of cases and has tried a number of cases in State and Local Court.

Mr. Grant seeks the following rates for the out-of-district counsel who litigated the case on his behalf: Charles A. Bonner (39 years of experience in litigating civil rights actions) $750 per hour; A. Cabral Bonner (12 years of experience in litigating civil rights actions) $550 per hour. Attorney Jesse Ryder practices in this judicial district and charges his clients $450 per hour. See Ryder Dec.  See also, Rome Dec ¶3; Sullivan Dec ¶3; Westlake ¶3; Shafer ¶3.

In support of the requested rates, Mr. Grant provides declarations from four area attorneys: Robert Michael Shafer, legal counsel practicing since 1979; William Sullivan, legal counsel practicing since 1995; Rome Canzano, legal counsel practicing since 2001; and Jean Marie Westlake, legal counsel practicing since 2002.  Each attorney represents that the outcome of this case was exceptional. See Rome Dec ¶¶ 4-6. Sullivan Dec ¶¶ 4-6, Westlake ¶¶ 6-10, Shafer ¶¶6-20. Further, the declarations support a finding that the area rate for complex federal litigation is between $350-$500 per hour. See Rome Dec ¶3. Sullivan Dec ¶3, Westlake ¶3, Shafer ¶3.

Plaintiffs well acknowledge that that the rates requested are higher than rates approved by this Court in other cases.  *See e.g. Disability Rights N.Y. v. N. Colonie Bd. of Educ.,* No. 1:14-CV-0744 (DNH/DJS), 2017 U.S. Dist. LEXIS 69593, at *15 (N.D.N.Y. May 8, 2017) and *Curtis v. City of Kingston*, No. 1:14-CV-0951 (DNH/DEP), 2016 U.S. Dist. LEXIS 44643 (N.D.N.Y. Mar. 28, 2016) (compensating attorneys with over thirty years of experience in civil rights law at

the rate of $300 per hour). Nevertheless, Plaintiffs support their reasonably requested departure based on the attached declarations and supporting arguments below.

The Second Circuit applies the "forum rule," i.e., "the hourly rates employed in the district in which the reviewing court sits" as the benchmark relied upon in calculating a presumptively reasonable fee. *Pope v. Cty. of Albany*, No. 1:11-cv-0736 (LEK/CFH), 2015 U.S. Dist. LEXIS 123379, at *14 (N.D.N.Y. Sep. 16, 2015). In special cases, however, it may be appropriate to deviate from the forum rule. *See Simmons v. N.Y.C. Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009)) ([t]he Second Circuit has repeatedly held that "deviation from the forum rule is only appropriate 'in the unusual case.) In order to overcome the presumption that the forum district's rates should apply, "[t]he party seeking the award . . . [must] make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id*. at 176.

In *Trudeau v. Bockstein*, 2008 U.S. Dist. LEXIS 61758, 2008 WL 3413903 (N.D.N.Y. April 7, 2009) (pre-*Simmons*) the court stated that "the facts and circumstances of each case are different and the court is not compelled to award the same hourly rates in every case. *Id* at *18. In 2009, the *Trudeau* court approved a billing rate for the Chicago, Washington DC-based partners at $585, $450 and $425. *Id* at 15-16. The court approved rates for associates as high as $340. *Id.* The court in *Harvey v. Home Savers Consulting Corp*., No. 07-CV-2645 (JG), 2011 U.S. Dist. LEXIS 109083 (E.D.N.Y. Aug. 12, 2011) held that Plaintiffs met their burden under *Simmons* to make a particularized showing that out-of-district rates were appropriate. *Id* at 12-13. The court based its decision on the affidavits from local counsel regarding the availability (or lack thereof) of local firms who could (or would) take on representation. *Id* at 12.

As discussed more fully below, Plaintiffs have provided this Court with attorney declarations and evidence of prior cases that thereby provide experience-based, objective factors to support the application of out-of-area rates in this case.

> i. Charles A. Bonner's Particular Skill and Experience Made Him Uniquely Qualified to Handle the Grant's Case

Following the June 28, 2014 beating of Mr. Grant, Defendants Lockett and Montalto filed false criminal charges against him. Prior to having the opportunity of filing civil rights claims for Defendant police officers' egregious and savage conduct, Mr. Grant had to arduously defend his liberty in the face of criminal prosecution. Although numerous qualified local criminal attorneys, including Mr. Ryder, were available to defend Mr. Grant, there existed no local counsel who could handle both the overlap between the criminal and civil aspects of Mr. Grant's case, while having a proven track record of integrity[2] that warranted District Attorney Fitzpatrick to undertake further investigation into Mr. Grant's case. Such investigation resulted in the District Attorney's Office dropping all of the charges and drafting a letter and press release regarding Mr. Grant's innocence. Although there was no New York equivalent to the law in California which provided a criminal defendant the opportunity to receive a finding of factual innocence, District Attorney Fitzpatrick, based upon the results of his offices investigation, drafted a letter affirming Mr. Grant's innocence. Thus, Mr. Bonner's specific prior experience with DA Fitzpatrick and his California-based practice made him uniquely qualified to provide legal counsel to Mr. Grant that resulted in an outcome that was substantially superior to any result he otherwise could have achieved with local counsel.

---

[2]  In representing the sexually trafficked victims against  Jamelske on their civl case, Mr. Bonner had professional interaction with District Attorney Fitzpatrick during Mr. Fitzpatrick's criminal prosecution of Mr. Jamelske.

As discussed in Mr. Ryder's declaration, the District Attorney's Office initially offered Mr. Grant an Adjournment in Contemplation of Dismissal ("ACD"). See Ryder Dec. Had Mr. Grant accepted an ACD, the criminal action might still have been dismissed, but there would have been no letter from the District Attorney Fitzpatrick, no press release, and Mr. Fitzpatrick would not have been called to testify at Mr. Grant's civil trial. Further, an ACD would have left an underlying impression that Mr. Grant had done something wrong but was given a 'second chance' by the District Attorney's Office. Nevertheless, in contrast to Mr. Bonner's well experienced understanding of the overlap and influence that underlying criminal cases have on subsequent civil claims, local attorneys would have merely viewed the acceptance of an ACD as a victory. See Rome Dec ¶5. Sullivan Dec, Westlake ¶5, Shafer ¶5. As attested to herein, local attorneys had never witnessed any lawyer refuse an ACD and push for a public dismissal. *Id.*

Mr. Bonner's strategy of seeking to document factual innocence as opposed to the dropping of charges exclusively derived from his extensive experience in bringing civil rights actions against municipal entities and the implicit heightened burden faced when suing municipalities and government. See Bonner Dec. Due to his ample experience handling civil rights actions for clients charged with criminal conduct related to the same events constituting their civil actions, Mr. Bonner understood such burden as the prejudice created by simply being charged with a crime. See Bonner Dec. Mr. Bonner's strategy is thus significantly stronger than that of local attorneys who would have been sufficiently satisfied with obtaining an ACD for their clients. See Rome Dec ¶5. Sullivan Dec ¶5, Westlake ¶5, Shafer ¶5.

By documenting percipient witness testimony within days of the event, Mr. Bonner was able to provide the District Attorney's Office with ample exculpatory evidence which served to compel the District Attorney to not only drop the charges against Mr. Grant, but to declare that

the charges should never have been brought in the first instance. This strategy clearly speaks to Mr. Bonner's specialized understanding and expertise in criminal and civil matters, and thus, stands out as an experience that no in-district counsel possessed. *Simmons* 575 F.3d at 176; See Rome Dec ¶5. Sullivan Dec ¶5, Westlake ¶5, Shafer ¶5. This Court affirmed such a novel approach by recognizing and noting that it was highly unusual to have a District Attorney testify on behalf of a plaintiff in a civil litigation.

Thus, given Mr. Bonner's experience and his refusal to accept anything less than factual innocence as a means for greatly enhancing success during civil litigation, a reasonable client apprised of the totality of Mr. Bonner's experience, skill and acumen would have selected Mr. Bonner, an out-of-district counsel because by doing so, he or she would likely (not just possibly) achieve a substantially better net result than local counsel. *Id* at 175.

> ii.     Given Recent Jury Verdicts On Excessive Force Cases In The Northern District, There Is A High Likelihood That Use Of In-District Counsel Would Produce A Substantially Inferior Result

Recent excessive force jury verdicts further support a finding that relying on local counsel alone would have likely resulted in a substantially inferior result. *Simmons*, 575 F.3d 176. An attorney seeking out-of-district rates may make a reasonable showing by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, and/or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise. *Id* (citations omitted).  Here, Mr. Grant contacted attorney Jesse Ryder within days of the event, who in turn, acknowledging his lack of experience with civil rights matters, immediately contacted Charles Bonner. See Ryder Dec. Mr. Ryder did not attempt to find a qualified local attorney because, based on his experience, there was a paucity of local counsel who held the experience necessary to prevail on Mr. Grant's case. See Ryder Dec. As discussed

below, given the historical success of local attorneys in excessive force cases, Mr. Ryder's assumption regarding local counsel was objectively reasonable.

Prior to mediation, Defendants provided a search of excessive force jury verdict results from the Northern District of New York.  See Bonner Exhibit 1[3].

|    | Case | Attorney City | Outcome |
|----|------|---------------|---------|
| 1. | Campbell v. Lynch<br>1:98-cv-01209 | Albany | Defense Verdict |
| 2. | Tretter v. Town of New Hartford<br>6:08-cv-00837-DNH-DEP | Utica | Defense Verdict |
| 3. | McMahon v. Fura, City Of Syracuse<br>5:10-cv-01063 | Syracuse | Defense Verdict |
| 4. | Rivers v. City Of Rochester<br>6:06-cv-06391 | Rochester | Defense Verdict |
| 5. | Wallace   v.   Deputy   Whitman   and<br>Ellwood<br>6:08-cv-01372 | Amsterdam | Defense Verdict |
| 6. | Butler v. Officer Bosclair<br>1: 10-cv-00679 | Kingston | Defense Verdict |
| 7. | Jackson v. City Of Utica<br>6:11-cv-00496 | Utica | Defense Verdict |
| 8. | Lee v. City Of Utica<br>6:10-cv-01446 | Clinton | $3,903     Plaintiff Verdict |

Plaintiff conducted his own research into jury verdicts on excessive force cases in the Northern District of New York.  Below are several additional verdicts in excessive force cases.[4] See Bonner Exhibit 2.

---

[3] Pro Se plaintiffs and cases resulting in settlements were not included in the table.
[4] These results were generated by searching in Lexis Advance under Jury Verdicts and Settlements for civil rights cases with the terms "excessive and force."  The results were narrowed to those in the District Court for the Northern District of New York.  This search returned 50 cases. All 50 cases were cross-referenced through Pacer to determine the results. Many of the cases involved prisoners who whose claims involved the 8th rather than the 4th Amendment.  These cases were not included in the results.  Cases included in the Defendant's list were not repeated. Finally, any cases that resolved through settlements were not included in the results.

|   | **Case** | **Attorney City** | **Outcome** |
|---|---|---|---|
| 9. | Ferreira v. City of Binghamton 3:13-cv-00107-TJM-ATB | Bronx, NY[5] | Plaintiff Verdict against City for Negligence (respondeat superior) $3,000,000 Defense Verdict against individual officers for Excessive Force and Negligence JNOV in favor of Defendant City. Judgment in favor of Defendant City |
| 10. | Derek Demeo v. Joshua Kean 1:07-cv-01275- DNH-DRH | Albany | Defense Verdict as to Unlawful Seizure and Excessive Force Plaintiffs Verdict on destruction of Evidence claim $10,000 compensatory on due process claim |
| 11. | Craig L. Johnson v. Gerald Jennings 9:01-cv-01907-MAD | Albany | Defense Verdict |
| 12. | Paulk v. Lester et al 5:06- cv-01343-CBK | Syracuse | Defense Verdict |
| 13. | Dewitt et al v. City of Troy et al 1:09-cv-00016-TJM-RFT | Albany | Defense Verdict |
| 14. | Mitchell v. The City of Albany 1:08-CV-871 | Albany | Defense Verdict |
| 15. | Berard et al v. The Town of Rotterdam 1:06-CV-891 | Albany | Defense Verdict |
| 16. | Sutton v. City of Syracuse et al 5:08-cv-00410-DNH-GHL | East Syracuse | Defense Verdict |
| 17. | Payne v. Jones et al 6:08-cv-00143-DNH-DEP | Utica | Plaintiff Verdict $120,000 compensatory $300,000 punitive |
| 18. | Chen v. The City of Syracuse et al 6:06-cv-01143-NPM-GHL | Syracuse | Defense Verdict |
| 19. | Lewis v. City of Albany Police Department 1:04-cv-00152 | Utica | Plaintiff Verdict $65,000 Compensatory $200,000 punitive |
| 20. | Perry v. Mosher et al 1:06-cv-00077-NPM-DRH | Albany | Defense Verdict |

---

[5] Through this search, Plaintiff found only three cases that resulted in seven-figure jury verdict awards. *DiSorbo*, *Ferreira* and an 8th Amendment case *Angel L. Martinez, #02A5281 v. M. Hollins, Superintendent, et. al. Oneida Correctional Facility,* 04-CV-0440. The jury awarded $1,400,006, $900,000 of which was for punitive damages. Both Angel Martinez and Jesus Ferreira were represented by out-of-district lawyers.

| 21. | Craig v. Gomula<br>6:04-CV-888 | Latham | Plaintiff Verdict<br>$50,000 (plus punitive damages, settled prior to second phase) |
|---|---|---|---|
| 22. | Ahern v. City of Syracuse, et al<br>5:01-cv-00577-GHL | Manlius | Defense Verdict |
| 23. | LaCorte v. Becker et al<br>1:04-cv-00306-DRH | Albany/Latham | Defense Verdict |
| 24. | Wilson v. City of Syracuse<br>5:01-cv-01597 | Brooklyn | Defense Verdict (false arrest and excessive Force)<br>Strip Search Unconstitutional as a matter of law<br>$4.00 compensatory<br>$25,000 punitive |
| 25. | DiSorbo, et al v. City of Schenectady<br>1:99-cv-01131 | Latham | Plaintiff Verdict<br>$400,000 compensatory<br>$1,275,000 Punitive |
| 26. | Files, et al v. Phinney<br>5:97-cv-00213 | Utica | Plaintiff Verdict as to one claim against 1 defendant<br>$1.00 compensatory damages<br>Defense Verdict as to all other claims |
| 27. | Jordan v. City of Saratoga, et al<br>1:99-cv-00990-RWS | Albany | Defense Verdict |
| 28. | Rivera v. Luchese<br>1:96-cv-01537 | Kingston | Defense Verdict |
| 29. | Hinton v. Patnaude<br>6:92-cv-00405 | Brooklyn | Defense Verdict |
| 30. | Grier v. City of Albany<br>3:89-cv-01213 | Albany | Plaintiff Verdict<br>$1.00 compensatory damages |
| 31. | Blot et al v. The Town of Colonie | Mineola | Defense Verdict |

Out of the 31 cases detailed above, 21 resulted in total defense verdicts. Of the 10 that did not result in total defense verdicts, two resulted in defense verdicts as to the false arrest and excessive force claims , one of which resulted in a defense judgment after a JNOV. Of the 31 cases detailed above only three resulted in jury verdicts over $100,000.  Only one case, *Ferreira v. City of Binghamton* resulted in compensatory damages over one million dollars, which ultimately resulted in a judgment in favor of defendants on account of plaintiff's inability to prove his case against any individual defendant.

These results illustrate the challenge facing any plaintiff who brings an excessive force case against the police in the Northern District of New York. The vast majority of cases resulted in Defense verdicts. Of the cases that resulted in Plaintiff verdicts, most were for nominal or minimal damages. This argument should not suggest to the Court that the verdict in Mr. Grant's case was so high that it warrants remittitur. The verdict is in line with the $2 million dollar voluntary settlement the City of Syracuse reached with Brad Hulett who also brought an action for excessive force.[6]

Given the historical lack of success of plaintiffs represented by in-district civil rights attorneys, it is reasonable that Mr. Grant would conclude that it was highly likely that use of in-district counsel would produce a substantially inferior result. *Simmons* 575 F.3d at 176. In contrast to the lack of success of in-district attorneys, Charles and Cabral Bonner have had substantial success in bringing civil rights actions against municipal entities, including an $800,000 verdict in a Fourth Amendment action against the District of Columbia in March 2018 and a $3.75 million verdict against the City of Oakland in December 2017. The Northern District of New York results above suggest that the services provide by Charles and Cabral Bonner could not have been performed as satisfactorily by local attorneys and therefore, the out-of-area rates requested by Charles and Cabral Bonner are appropriate.

      iii.    The Hourly Rates Requested Are Consistent With Rates Awarded in Second Circuit Cases

The rates requested by the Bonner firm are consistent with rates they have been awarded in other fee-shifting cases. In 2018, Charles Bonner requested and was awarded a rate of $700 per hour *Brown v. City of Oakland,* a non-federal, non-complex, single plaintiff elder abuse case.

---

[6] City of Syracuse awards $2M to disabled man tasered by cops on Centro bus
https://www.syracuse.com/news/index.ssf/2017/09/city_of_syracuse_offers_2m_to_disabled_man_tasered_by_cop_on_centro_bus.html

See Declaration of Charles A. Bonner ¶36.  The same court approved a $550 rate for Cabral Bonner and awarded a 10% multiplier based on the skill the attorneys exhibited during the trial and in obtaining at $4,300,000 verdict for their client.  See Declaration of Charles A. Bonner ¶36;  Exhibit 3 Order on Attorneys' Fees and Costs in *Brown* case.

When adjusted for inflation, the rates requested by the Bonners are within the range found reasonable by courts in the Southern District for attorneys with similar backgrounds and experience. See *Germain v. County of Suffolk*, 672 F. Supp. 2d 319, 325 (E.D.N.Y. 2009) (finding that courts in the Southern District have awarded fees for experienced partners at rates ranging from $425 to $600[7]); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 545-46 (S.D.N.Y 2008) (in a Title VII case, awarding partners with over thirty years of experience an hourly rate of $600).

### iii.   Mr. Grant Has Provided Evidence Of Rates Received By Local Counsel That Exceed Rates Awarded by this Court.

Notwithstanding the argument above, Mr. Grant has provided evidence from local attorneys that the local rate for federal litigation is between $350 and $500 per hour. See Rome Dec ¶3. Sullivan Dec ¶3, Westlake ¶3, Shafer ¶3. The evidence provided with this motion supports a range of rates that exceed the rates awarded by this Court.  *See e.g. Disability Rights N.Y. v. N. Colonie Bd. of Educ.,* No. 1:14-CV-0744 (DNH/DJS), 2017 U.S. Dist. LEXIS 69593, at *15 (N.D.N.Y. May 8, 2017) and *Curtis v. City of Kingston*, No. 1:14-CV-0951 (DNH/DEP), 2016 U.S. Dist. LEXIS 44643 (N.D.N.Y. Mar. 28, 2016) (compensating attorneys with over thirty years of experience in civil rights law at the rate of $300 per hour). However, neither *Disability Rights* nor *Curtis* were excessive force cases against the police. And neither of these

---

[7]   Adjusting $600 per hour in 2009 based on inflation in legal services, equates to a rate of $775 in 2018 dollars.  See https://www.officialdata.org/Legal-services/price-inflation/2009-to-2018?amount=600 , Declaration of Charles Bonner

cases involved a jury trial. Based on these factors, it is appropriate to increase the rates awarded the attorneys in Mr. Grant's case because of the skill required and risk involved in an excessive force jury trial.

### B. The Hours Expended Were Reasonable

42 U.S.C. § 1988, mandates the award of reasonable attorneys' fees to prevailing plaintiffs as a means of vindicating a policy that Congress considered of the "highest priority." *Fox v. Vice*, 131 S.Ct. 2205, 2213 (2011) (quoting *Newman v. Piggie Park Enterprises*, Inc, 390 U.S. 400, 402 (1968)). The successful plaintiff should recover what it cost to vindicate his civil rights. *Id.* Legal services are expensive, and Congress has shifted that cost to the losing defendant. *Hensley* 461 U.S. at 445 (Brennan, J., concurring in part and dissenting in part). Fee and cost awards must be fair and must fully compensate prevailing attorneys.

Plaintiffs anticipate that Defendants will argue that the number of hours requested by Mr. Grant's counsel should be reduced based on the failure of several causes of action including *Monell* claim and the Rule 50 motion which dismissed Sgt. Novitsky. However, the Supreme Court has held that "[l]itigation is . . . complex, involving multiple claims for relief that implicate a mix of legal theories and have different merits. Some claims succeed; others fail." *Fox*, 131 S.Ct. at 2213. Losing on some claims does not defeat a fully compensatory fee. Plaintiffs "may receive fees under § 1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress' statutory purposes. 'That result is what matters.'" *Id.* at 2214.  In fact the Supreme Court has held that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley*, 461 U.S. at 436. The total jury verdict of

$1.580 million for an egregious violation of the Fourth Amendment to the Constitution is evidence of the highest degree of success.

Moreover, all of Mr. Grant's claims were based on a common core of facts. In *Hensley* the Supreme Court set forth an analytic framework for determining whether a plaintiff's partial success requires a reduction in the lodestar. *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992). The first step of the analysis is determining whether the plaintiff failed to succeed on any claim wholly unrelated to the claims upon which the plaintiff succeeded. *Id.* While Plaintiff did not succeed on several claims including *Monell,* none of the unsuccessful claims were "wholly unrelated" to the successful excessive force and false arrest claims. For example, the *Monell* claims were derivative of the excessive force and false arrest claims. See ECF Doc. No 155 Verdict Form at page 4. Similarly, the claims dismissed on summary judgment including malicious prosecution, section 1985 and 1986 violations, defamation, unlawful entry, trespass, IIED, NIED and negligent hiring and supervision are all based on the same conduct that formed the basis of the excessive force and false arrest claims.

The second step in the *Hensley* analysis requires the district court to consider whether any unsuccessful interrelated claims warrant a reduction in the fee award. *Id.* The Supreme Court has held, "[i]f a plaintiff has obtained excellent results, however, the attorneys should be fully compensated. *Hensley*, 461 U.S. at 435.  Given the historical results of excessive force cases in Northern District of New York, the total jury verdict of $1.583 million is beyond an "excellent" result. Accordingly, Mr. and Mrs. Grant's attorneys should be fully compensated for all the hours reasonably expended in prosecuting this case on behalf of Alonzo and Stephanie Grant.

Plaintiffs' attorneys Charles A. Bonner, A. Cabral Bonner and Jesse Ryder have each provided declarations and have included detailed billing logs for the time spent litigating this

case.  For Charles Bonner and Jesse Ryder, the hours go back to the days following the event and include the many hours of investigation that lead to the DA's decision to drop the criminal charges. Additionally, Charles A. Bonner has included with his declaration hours billed by his office staff on tasks related to this litigation.

The declarations and supporting evidence establish that Attorney Charles A. Bonner spent 1278.9 hours in furtherance of this litigation, including significant number of hours prior to commencing the civil action, during the litigation, pretrial, trial and post-trial matters.  Total fees requested are: $959,182.50

Attorney A. Cabral Bonner spent 454.4 hours in furtherance of this litigation including 0 hours prior to commencing the civil action; 151.8 hours during the litigation; and 302.6 hours on pretrial, trial and post-trial matters.  Total fees requested for A. Cabral Bonner are $249,920.

Attorney Jesse Ryder spent 780.6 hours in furtherance of this litigation, including 90 hours prior to the commencing of the civil action; 307.2 hours during the litigation; and 385.2 hours on pretrial, trial and post-trial matters. Total fees requested for Jesse Ryder are $351,270.

The detailed records establish that the attorneys did not engage in duplicative or unnecessary billing. Plaintiffs' counsel has made a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart* (1983) 461 U.S. 424, 434.

### 3.      PLAINTIFFS ARE ENTITLED TO RECOVER COSTS AND EXPENSES

Plaintiffs are entitled to recover their costs and litigation expenses pursuant to Federal Rule of Civil Procedure Rule 54 and 42 U.S.C. § 1988. Fed. R. Civ. P. 54(d) grants costs to a prevailing party as a matter of course in the absence of a countervailing statute or rule, unless the trial judge directs otherwise. *Cosgrove v. Sears, Roebuck, & Co.*, 191 F.3d 98, 101 (2d Cir. 1999).  "The award of costs against the losing party is a normal incident of civil litigation and is the rule rather than the exception." *Mercy v. County of Suffolk*, 748 F.2d 52, 54 (2d Cir. 1984).

There is a presumption that the prevailing party will be awarded costs and that presumption cannot be overcome unless the unsuccessful party shows good cause for doing so. *McGuigan v. CAE Link Corp*., 155 F.R.D. 31, 34 (N.D.N.Y. 1994)

It is well recognized and accepted that awards of attorney's fees in civil rights suits under fee-shifting statutes "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987); *United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir. 1989). The rationale for this rule is that attorney's fees include expenses that are "incidental and necessary" to the representation, provided they are "reasonable." *Reichman*, 818 F.2d at 283. Thus, an award of costs against the losing party is the normal rule obtaining in civil litigation, not an exception." *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001).

Courts in this District have long held that for example, costs associated with lodging, meals, transportation, photocopying, postage, long distance telephone charges, facsimiles, and computerized research are reasonable out-of-pocket expenses and thus recoverable. *Trs. of the Plumbers & Steamfitters Local 267 Pension, Annuity, & Ins. Funds v. Buchanan, Inc.,* 2006 U.S. Dist. LEXIS 7166, at *20-21 (N.D.N.Y. Feb. 14, 2006); *see, e.g., Kuzma v. Internal Revenue Service,* 821 F.2d 930, 933-34 (2d Cir. 1987) (identifiable, out-of-pocket disbursements for items such as photocopying, travel, transportation and telephone costs are generally taxable under § 1988 and are often distinguished from non-recoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate.")

As presented in the Declaration of Charles A. Bonner, the costs summarized below were reasonable and necessary for the furtherance of the litigation.

| | |
|---|---|
| Deposition | $8,667.45 |
| Expert Witness | $28,655.97 |
| Filing Fee | $418.00 |
| Focus Group | $1,690.88 |
| Mediation | $700.00 |
| Service of Process | $50.00 |
| Supplies/Mailing | $101.15 |
| Supplies/Mailing/Copies | $1,879.38 |
| Teleconference | $112.52 |
| Travel: Flight | $14,511.95 |
| Travel: Ground Transportation | $5,189.35 |

Memorandum of Points and Authorities in Support of Motion for Attorney Fees
Civil Action No. 5:15-CV-00445 (DNH-TWD)

| Travel: Lodging | $25,475.98 |
|---|---|
| Travel: Meal | $5,812.41 |
| Witness fee | $3,200.00 |
| **Grand Total** | **$96,465.04** |

As presented in the declaration of Jesse Ryder, the costs summarized below were reasonable and necessary for the furtherance of the litigation.

| COSTS: | | | |
|---|---|---|---|
| | HOTELS | | 786.50 |
| | FOOD & DRINK | | 2,792.31 |
| | AIR TRAVEL | | 564.89 |
| | SOFTWARE | | 100.40 |
| | COPIES- 1,750 @ .20 | | 350 |
| | POSTAGE | | 58.16 |
| | Total | | 4,652.26 |

## <u>CONCLUSION</u>

In reliance on the foregoing reasons, Plaintiffs Alonzo Grant and Stephanie Grant request that attorneys' fees and costs as set out above are awarded to their attorneys.

DATED: November 20, 2018       RESPECTFULLY SUBMITTED
                                  LAW OFFICES OF BONNER AND BONNER

                                  By:*/s/ CHARLES A. BONNER*
                                  CHARLES A. BONNER
                                  ATTORNEY FOR PLAINTIFFS