UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
ALONZO and STEPHANIE GRANT;

      Plaintiffs,

      -v-

                       5:15-CV-0445
                       (DNH/TWD)

CITY OF SYRACUSE; DAMON LOCKETT,
Police Officer; PAUL MONTALTO, Police Officer;

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                       OF COUNSEL:

LAW OFFICES OF BONNER & BONNER     CHARLES A. BONNER, ESQ.
Attorney for Plaintiffs                  A. CABRAL BONNER, ESQ.
475 Gate 5 Road, Suite 212
Sausalito, California 94965

RYDER LAW FIRM                     JESSE P. RYDER, ESQ.
Attorneys for Plaintiffs
121 E. Water Street
Syracuse, New York 13202

CITY OF SYRACUSE CORPORATION      CHRISTINA F. DEJOSEPH, ESQ.
Attorney for Defendants                TODD M. LONG, ESQ.
233 East Washington Street
Room 300 City Hall
Syracuse, New York 13202

HANCOCK ESTABROOK, LLP           JOHN G. POWERS, ESQ.
Attorneys for Defendants             PAUL J. TUCK, ESQ.
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
II. FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
III. LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. Judgment as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    B. Motion for New Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    C. Awarding Attorneys' Fees and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A. Motion for Judgment as a Matter of Law - Rule 50 . . . . . . . . . . . . . . . . . . . . . . . . 8
    B. Motion for a New Trial - Rule 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        (i) The Award to Mr. Grant was not excessive . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        (ii) The Loss of Consortium Award to Mrs. Grant was not excessive . . . . . . . . . . . 12
        (iii) Purported Trial Errors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            a. Admission of Citizen Review Board Findings . . . . . . . . . . . . . . . . . . . . . . 14
            b. Jury Instruction With Regards to Handcuffing . . . . . . . . . . . . . . . . . . . . . . 16
            c. Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    C. Motion for Attorney's Fees and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        (i) Reasonable Fee Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            a. Charles A. Bonner. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23
            b. A. Cabral Bonner. . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . . 25
            c. Jesse Ryder. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26
            d. Legal Assistants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . .26

        (ii) Reasonable Hours. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

            a. Degree of Success . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . 28
            b. Criminal Proceedings. . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . .30
            c. Mrs. Grant was Not a Prevailing Party. . . . . . . . . . . . . . . . . . . . . . . . . .31
            d. Overstaffing. . . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . . .31
            e. Vague Entries. . . . . . . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . . .33
            f. Lodestar Calculation.. . . . . . . . . . . . . . . . . . . . . . ... . . . . . . . . . . . .34

        (iii) Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

## MEMORANDUM, DECISION and ORDER

## I.    INTRODUCTION.

Plaintiffs Alonzo Grant ("Mr. Grant") and Stephanie Grant ("Mrs. Grant") brought this action pursuant to 42 U.S.C. § 1983 and New York state law against defendants the City of Syracuse ("the City"), Syracuse Police Officer Damon Lockett ("Officer Lockett") and Police Officer Paul Montalto ("Officer Montalto"), among others.   On October 23, 2018, following a jury trial that lasted nine days and featured twenty eight witnesses, the jury found in favor of the plaintiffs against Officers Lockett and Montalto and awarded compensatory damages to Mr. Grant in the amount of $1,130,000.00 and damages for loss of consortium to Mrs. Grant in the amount of $450,000.00.

Presently under consideration are: (a) defendants' motion pursuant to Federal Rules of Civil Procedure 50(b) for judgment as a matter of law and Rule 59 for a new trial or remittitur (ECF No.[1] 164) and (b) plaintiffs' motion for attorneys' fees and expenses (ECF No. 166).   Both motions have been fully briefed.   For the following reasons, defendants' motion is denied and plaintiffs' motion is granted in part.

## II.    FACTUAL BACKGROUND.

The underlying facts and procedural history of this case are set forth in earlier decisions. The following is a brief summary of the testimony and evidence presented at trial.

On June 28, 2014, plaintiffs resided at 105 Hudson Street in the City of Syracuse with their youngest son, Alonzo Grant, Jr.   In the early evening while a family barbeque was occurring, Mr.

---

[1] Citations to the "ECF No." refer to the docket number assigned by the court's electronic filing system, CM/ECF.

Grant got in an argument with his daughter Alyssa and requested she leave the home. After she left, she proceeded to get in an argument with a neighbor prompting Mr. Grant to call 911 and request police assistance. Officers Lockett and Montalto arrived at the Grant home soon thereafter and were advised by plaintiffs that their assistance was not needed as Alyssa had left.

However, Officers Lockett and Montalto testified that Mr. Grant was yelling at an unidentified person in the residence and they were concerned about a domestic situation. Officer Lockett entered the residence and testified that Mr. Grant was flailing his arms violently and was still upset with the female occupant of the home. Officer Lockett then asked Mr. Grant to exit his house and speak with Officer Montalto. While exiting the home, Mr. Grant shoved the front door, causing it to hit against an iron rail on the front porch. Officer Lockett testified that he decided to place handcuffs on Mr. Grant to permit him to calm down and for the safety of Mr. Grant and those around him. He testified that he attempted to do this while on the front stairs to the home and that Mr. Grant turned around and bear hugged him, necessitating Officer Lockett to grab Mr. Grant and strike him at least ten times in the head and torso.

In contrast, plaintiffs testified that their argument had ceased by the time Officers Lockett and Montalto arrived. Plaintiffs testified that Mr. Grant spoke loudly while inside the home but did not act violently. Mr. Grant testified that after exiting the home, Officer Lockett grabbed him from behind, throwing him over the railing on the front porch. Plaintiffs testified that while on the ground, both Officers Lockett and Montalto repeatedly kicked and punched Mr. Grant. Eventually,

the officers handcuffed Mr. Grant.[2] Following the incident, Mr. Grant received medical attention from paramedics and was transported to the hospital.

Mr. Grant was subsequently charged with violating New York Penal Law § 240.26(1) ("Harassment in the Second Degree"), Penal Law § 240.20(1) and Criminal Procedure Law § 530.11 ("Domestic Disorderly Conduct"), and Penal Law § 205.30 ("Resisting Arrest"). On September 10, 2014, the Syracuse Criminal Court dismissed all the charges against Mr. Grant in the interest of justice pursuant to Penal Law § 170.30.[3]

The jury found that Mr. Grant proved by a preponderance of the evidence that Officers Lockett and Montalto falsely arrested him on June 28, 2014 in violation of 42 U.S.C. § 1983 and New York state law. See Jury Verdict, ECF No. 155. Additionally, the jury found for Mr. Grant with respect to his excessive force and assault and battery claims against Officers Lockett and Montalto. The jury did not find in favor of Mr. Grant with respect to his claim pursuant to Monell v. Depart. of Social Services of City of New York, 436 U.S. 658 (1978) against the City of Syracuse. Further, the jury declined to award Mr. Grant punitive damages against Officers Lockett or Montalto. Lastly, the jury found that Mrs. Grant proved by a preponderance of the evidence that the actions of Officers Lockett and Montalto deprived her of the comfort, companionship and services of her husband.

---

[2] A video of part of the incident on the ground was received into evidence. See Pl.'s Trial Exhibit 68.

[3] The Onondaga County District Attorney Williams Fitzpatrick wrote a letter to Charles Bonner stating that the facts of Mr. Grant's case did not support the charges brought against him and that Mr. Grant had an unblemished record and was well-established in the community. See Pl's Trial Exhibit 11. Further, District Attorney Fitzpatrick testified at the trial.

## III. LEGAL STANDARDS.

### A. *Judgment as a Matter of Law*.

"A Rule 50 motion may be granted only when, considering the evidence in the light most favorable to the non-moving party and drawing all reasonable evidentiary inferences in that party's favor, there was no legally sufficient evidentiary basis for a reasonable jury to find in favor of the non-moving party." Nimely v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005). A jury verdict should not be set aside lightly, and only where there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 456 (2d Cir. 2009) (internal quotation omitted). In reviewing such a motion, a court must give "deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." Brady v. Wal-Mart Stores, 531 F.3d 127, 133 (2d Cir. 2008) (internal quotation omitted).

### B. *Motion for New Trial*.

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, a district court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." In this Circuit, in order to grant a motion for a new trial under Rule 59(a), a court "must conclude that the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence." Manley v. AmBase Corp., 337 F.3d 237, 245 (2d Cir. 2003). "[A] new trial under

Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and ... a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." Id. at 244–45. The task before the court is to balance "respect [for] the jury's findings ... with avoidance of miscarriage of justice and" the court may only grant a new trial if, after viewing all the evidence, it has "a definite and firm conviction that a mistake has been committed." Cunningham v. Town of Ellicott, 2007 WL 1756502, at *4 (W.D.N.Y. June 18, 2007).

A district court may also condition a new trial on the verdict winner's refusal to agree to a reduction, or remittitur. See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433 (1996). A conditional order of remittitur, requiring a plaintiff to choose either a new trial or a reduced verdict, may be granted where "the award is intrinsically excessive in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error." Shu–Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 49 (2d Cir.1984); see also Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 165 (2d Cir. 1998). "Where there is no particular discernable error, we have generally held that a jury's damage award may not be set aside as excessive unless 'the award is so high as to shock the judicial conscience and constitute a denial of justice.'" Kirsch, 148 F.3d at 165 (quoting O'Neill v. Krzeminski, 839 F.2d 9, 13 (2d Cir.1988)).

Under New York law, which is pertinent to the extent that Mrs. Grant was found entitled to recover under her loss of consortium claim and Mr. Grant was found entitled to recover under his assault and battery and false imprisonment claims, an award is deemed excessive "if it deviates materially from what would be reasonable compensation." N.Y. C.P.L.R. § 5501(c).

C. *Awarding Attorneys' Fees and Expenses*.

Pursuant to 42 U.S.C. § 1988, in any action or proceeding to enforce a provision of 42 U.S.C. § 1983, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. See 42 U.S.C. § 1988(b). Section 1988 represents a limited exception to the "American Rule," under which each party to an action underwrites its own litigation expenses, including attorney's fees regardless of the outcome. See Neroni v. Coccoma, 2014 WL 3866307, at *1 (N.D.N.Y. Aug. 6, 2014) (Sharpe, D.J.). "Determining whether an award of attorney's fees is appropriate requires a two-step inquiry. First, the party must be a 'prevailing party' in order to recover. If [it] is, then the requested fee must also be reasonable." Pino v. Locascio, 101 F.3d 235, 237 (2d Cir.1996) (citations omitted). The purpose of allowing attorneys' fees in a civil rights action "is to ensure effective access to the judicial process for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). "[A]ccordingly, a prevailing plaintiff should ordinarily recover an attorney fee unless special circumstances would render such an award unjust." Id. (internal quotation marks and citation omitted).

## IV. DISCUSSION.

A. *Motion for Judgment as a Matter of Law - Rule 50*.

Defendants argue that a reasonable jury could not have found in favor of Mr. Grant concerning his false arrest claim pursuant to 42 U.S.C. § 1983 and false imprisonment claim under New York state law because there was probable cause to arrest Mr. Grant for Domestic Disorderly Conduct prior to the excessive force incident.

In assessing Fourth Amendment claims of false arrest brought under Section 1983, courts generally look to the law of the state in which the arrest is alleged to have occurred. See Russo

v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007). "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)); see also Thompson v. City of New York, 592 Fed. Appx. 36, 37 (2d Cir. 2015) (noting that probable cause is a complete defense to a false arrest claim, whether it is asserted under New York state law or Section 1983); Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (noting that, under New York law, probable cause is a complete defense to a claim of false arrest). "An arresting officer has probable cause [for an arrest] when the officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime[.]'" Simpson, 793 F.3d at 265 (quoting Weyant, 101 F.3d at 852); see also Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013).

Under New York Penal Law section 240.20, a person is guilty of Disorderly Conduct when, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: (1) he engages in fighting or in violent, tumultuous or threatening behavior; or (2) he makes unreasonable noise; or (3) in a public place, he uses abusive or obscene language, or makes an obscene gesture; or (4) without lawful authority, he disturbs any lawful assembly or meeting of persons; or (5) he obstructs vehicular or pedestrian traffic; or (6) he congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or (7) he creates a hazardous or physically offensive condition by any act which serves

no legitimate purpose.  Pursuant to New York Criminal Procedure Law section 530.11, a Domestic Disorderly Conduct includes disorderly conduct not in a public place.

Defendants argue that there is no legally sufficient basis to find Officers Lockett and Montalto liable for false arrest because they had probable cause to arrest Mr. Grant when they observed him upset, talking loudly to Mrs. Grant and shoving the front door open with his forearm, causing it to slam into the railing.

However, construing the evidence in the light most favorable to Mr. Grant as required, there was sufficient evidence to support the jury's finding that Officers Lockett and Montalto did not have probable cause to arrest Mr. Grant and therefore falsely arrested him.  In his testimony, Officer Lockett cited certain primary factors that he claimed gave him probable cause to arrest Mr. Grant for Domestic Disorderly Conduct - yelling at his wife, swearing, gesticulating with his hands and slamming the front door as he exited.  The Grants testified that while Mr. Grant was speaking loudly, he was not yelling or violently moving his arms, and while he opened the front door with force, it hit the handrail causing the loud noise.  See Testimony of Alonzo Grant, Exhibit A to the Declaration of John Powers ("Powers Decl."), ECF No. 164-2, at 25:12-23,  27:10-24, 51:4-16, Testimony of Stephanie Grant, Exhibit B to the Powers Decl., ECF No. 164-3, at 26:12-19, 29:2-30:7.   The jury was free to credit Mr. Grant and Mrs. Grant's testimony over the testimony of Officers Lockett and Montalto[4] and, on a Rule 50 motion, the jury's decision to do so should not be disturbed.  See Cash v. County of Erie, 654 F.3d 324,  333 (2d Cir. 2011); Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007).  Crediting the testimony of plaintiffs,

---

[4]  In fact, Officer Montalto's testimony drastically diverged from that of Officer Lockett and that of other witnesses.  For example, Officer Montalto testified that he entered the Grant's home prior the incident while other witnesses testified he did not.  See Testimony of Officer Montalto, Exhibit 2 to the Declaration of Cabral Bonner, ECF No. 178-3, at 18:17-24.

Officers Lockett and Montalto did not possess probable cause to arrest Mr. Grant for Domestic Disorderly Conduct or any other crime. As a result, defendants are not entitled to judgment as a matter of law regards the false arrest and false imprisonment

B. *Motion for a New Trial - Rule 59*.

Defendants argue that the jury's monetary verdict should be reduced based on a lack of evidence of the plaintiffs' damages or otherwise order a new trial based upon alleged errors which occurred during the trail.

(i) *The Award to Mr. Grant was not excessive*.

Defendants also argue that the $1,130,000 award to Mr. Grant was excessive and request a reduction in the award or a remittitur.

Mr. Grant and his health care providers testified regarding the medical conditions Mr. Grant suffered as a result of the beating. Dr. Hassan Shukuri, a neurologist, testified that Mr. Grant complained of headaches, insomnia and nightmares, anxiety and memory issues and experienced dizziness and sun and noise sensitivity and was taking medication for depression. See Powers Decl., ECF No. 164-4, at 9:9-10:3, 12:14-14:14, 24:8-12. Further, Dr. Shukuri found that Mr. Grant experienced compression of his cervical spine and weakness in his left arm. Id. at 30:4-46:11. Dr. John Charles, Mr. Grant's primary physician, observed and referred Mr. Grant based on his facial and head injuries, including a nasal fracture and a laceration by his left eye, diagnosed him with a concussion and his left arm injury. Id. at 87:24-89:16, 91:4-95:8, 101:23-103:25, 104:18-106:15. Additionally, Dr. Theresa Covington, a neuropsychologist, testified that Mr. Grant complained of problems with his cognitive memory, concentration, depression, anxiety and post-traumatic stress and that he had significant symptoms of depression, anxiety and acute traumatic stress. Id. at 143:7-149:10.

Further, the actions of Officers Lockett and Montalto were egregious as Mr. Grant endured at least twelve to fifteen punches to his head and torso . The excessive force and false arrest occurred on the front lawn of his home in front of his family and neighbors. In addition to his physical injuries, Mr. Grant suffered significant mental and emotional damages. Mr. Grant testified with regards to the difficulties he experienced at work, including dizziness and problems with lifting, sun sensitivity and memory. <u>See</u> Testimony of Alonzo Grant, Exhibit A to the Powers Decl., ECF No. 164-2, at 55:18-58:5. He also testified about the humiliation of being assaulted by two police officers on the front lawn of his home in front of his family and neighbors. <u>See</u> <u>id</u>. at 12:41:12. Mr. Grant testified that prior to being beaten by Officers Lockett and Montalto, he was in excellent health and did not suffer from headaches, arm, back, face or neck pain, insomnia, anxiety or depression. <u>Id</u>. at 10:6 - 11:23.

Given the testimony the jury heard, the award of damages to Mr. Grant was within damages which a reasonably jury could award as compensatory damages for pain and suffering, mental anguish and emotional distress caused by Officers Lockett and Montalto. Therefore, defendants' motion with respect to the compensatory award to Mr. Grant will be denied.

(ii) *The Loss of Consortium Award to Mrs. Grant was not excessive.*

Defendants contend that the $450,000 in damages for her New York state law claim for loss of consortium was excessive and request a reduction in the award or a remittitur.

"Under New York law, loss of consortium is not a claim for only lost household services, but is instead a more intangible yet more significant injury to the partner who suffers the loss of the relationship as it existed before the injury." <u>House v. Worldwide Machine Works, Inc.</u>, 2010 WL 10020, at *3 (2d Cir. Jan. 4, 2010) (internal citation omitted). "'A claim for loss of consortium includes such items as loss of support services, companionship, society, sexual relations, and

solace.'" Knox v. County of Putnam, 2014 WL 7330851, at *8 (S.D.N.Y. Dec. 23, 2014) (quoting

Kuruma v. Meyers, 823 F. Supp. 2d 253, 260 (S.D.N.Y. 2011)).  "Loss of consortium and pain

and suffering damages attempt to compensate a nonpecuniary loss, through an accepted fiction

that such damages will somehow provide solace to the injured."  House, 2010 WL 10020, at *3

(citing  McDougald v. Garber, 73 N.Y.2d 246, 254 (1989)).  "The amount for such damages 'does

not lend itself to neat mathematical calculation.'"  Id. (quoting Caprara v. Chrysler, 52 N.Y.2d

114, 127 (1981)).

A review of comparable awards shows that such awards often fall within a "low six-figure

Mrs. Grant testified about changes that resulted from the physical and emotional injuries

suffered by her husband, including that he had anxiety about going out in public, had difficulty

sleeping, exhibits excessive traits, cries, cannot relax and carry on a conversation and cannot

tolerate noise. See Powers Decl., ECF No. 164-3, at 55:4 - 64:3.  This resulted in hardship to her

up to the present date and will continue in the future.[5]

A review of comparable awards shows that such awards often fall within a "low six-figure

range".  Okranets v. Metropolitan Transp. Authority, 555 F. Supp. 2d 420, 440 (S.D.N.Y. 2008);

see also Walsh v. State of New York, 648 N.Y.S.2d 816 (App. Div. 1996) (upholding a $185,000

on a wife's derivative claim); DeLeonibus v. Scognamillo, 656 N.Y.S.2d 275 (App. Div. 1997)

(upholding a $275,000 loss of consortium claim); Kirby v. Turner Constr. Co., 730 N.Y.S.2d 314

(App. Div. 2001) (reducing a $700,000 jury award for loss of consortium to $300,000);

Kirschhoffer v. Van Dyke, 577 N.Y.S.2d 512 (App. Div. 1991) (reducing a $1.8 million jury award

for loss of consortium to $400,000).

---

[5]  Mrs. Grant also witnessed the beating of her husband.

After review of comparable awards, the award to Mrs. Grant does not materially deviate from what would be reasonable compensation. Therefore, defendants' motion with respect to the loss of consortium award to Mrs. Grant will be denied.

(iii) *Purported Trial Errors*.

Defendants requests a new trial be ordered pursuant to Federal Rule of Civil Procedure 59 as a result of several purported errors which took place during the trial.

(a) *Admission of Citizen Review Board Findings*.

Defendants argue the admission of the City of Syracuse Citizen Review Board ("CRB") findings regarding the incident involving Mr. Grant was a substantial error that prejudiced the jury. Defendants assert that the CRB proceedings: (1) did not take testimony under oath; (2) did not apply the rules of evidence; (3) did not take testimony from Officers Lockett or Montalto; (4) did not cross examine or subject the complaining witnesses to cross examination; (5) did not keep a transcript of the proceedings and (6) applied a different, lower, standard of proof to sustain a finding - one that allowed less than a preponderance of evidence. Defendants contend that the CRB findings were inadmissible pursuant to Federal Rules of Evidence and their admission constituted a miscarriage of justice.

A district court has broad discretion over the admission of evidence at trial. See Kogut v. Cty. of Nassau, 789 F.3d 36, 47 (2d Cir. 2015); Stampf v. Long Island R. Co., 761 F.3d 192, 203 (2d Cir. 2014). A new trial may be warranted if the district court made substantial errors in admitting or excluding evidence, provided that the errors caused the jury to reach a seriously erroneous result or its verdict is a miscarriage of justice. See Stampf, 761 F.3d at 203; Nimely v. City of New York, 414 F.3d 381, 399 (2d Cir. 2005); Leo v. Long Island R.R. Co., 307 F.R.D. 314, 321 (S.D.N.Y.2015) ("[S]uch relief is not to be granted unless the movant demonstrates that

the error was not harmless, that is, [that] it is likely that in some material respect the factfinder's judgment was swayed by the error."). In considering whether the error warrants a new trial, the court should consider it in light of the record as a whole. See Johnson v. Strive E. Harlem Emp't Grp., 990 F. Supp. 2d 435, 450 (S.D.N.Y.2014) ("Where there has been an objection, a new trial is warranted if the Court's evidentiary ruling was clearly prejudicial to the outcome of the trial, taking into account the record as a whole."). "It is well-settled, however, that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits or otherwise taking a second bite at the apple." Guzman v. Jay, 303 F.R.D. 186, 192 (S.D.N.Y. 2014) (internal quotation omitted).

The CRB was created by the City of Syracuse and acted pursuant to its enabling legislation in order to investigate complaints against the police department and issue findings regarding such complaints. As a result, the CRB reports and findings were directly relevant to plaintiffs' Monell claim against the City of Syracuse. At trial, defendants repeatedly, and effectively, highlighted the deficiencies in the CRB process and proceedings. Further, defendants offered into evidence a report by Captain Thomas Galvin, who conducted the police department's own use of force investigation which cleared Officers Lockett and Montalto of any wrong doing and explained the differences between their investigation and that of the CRB. See Declaration of Charles Bonner, ECF No. 178-6, Trial Exhibit 7. Further, the jury was able to make their own assessment of the credibility of the individuals who witnessed the incident on June 28, 2014, including Alonzo Grant, Stephanie Grant, Alonzo Grant, Jr., Sherrell Grant, Corey McMullin and Sharon Hayes. The defendants had an opportunity to cross-examine each witness and impeach their credibility. The jury had the opportunity to hear and consider the process, and the findings,

of both investigations and determine the ultimate issue in this case based upon their own assessment of the evidence and in conformity with the jury instructions.

Therefore, the admission and utilization of the CRB report and findings did not constitute a miscarriage of justice warranting a new trial.

(b) *Jury Instruction With Regards to Handcuffing*.

Defendants further argue that the jury instructions concerning handcuffing created prejudicial error warranting a new trial.

The jury's second note stated that following:

Is it true that in the course of a domestic "incident" investigation, before it is determined that a crime has been committed, it is within the rights of an officer, under New York state law or SPD policy, to place handcuffs on an individual?

See Juror Note No. 2, ECF No. 157 at 4. In response, the jury was instructed as follows:

The police may lawfully handcuff an individual if they have a reasonable basis to think that the person detained poses a present physical threat and that handcuffing is the least intrusive means to protect against that threat. To determine whether such act was more intrusive than necessary, you should look to several factors including, the amount of force used by the police, the need for such force, the number of police officers involved, whether the police suspected the suspect of being armed, the duration of the stop, the extent to which the freedom of movement was restrained and the physical treatment of the suspect.

See Supplemental Jury Instruction, id. at 6.

Erroneous or inadequate jury instructions may constitute grounds for a new trial, provided the errors are "prejudicial in light of the charge as a whole." Lore v. City of Syracuse, 670 F.3d 127, 156 (2d Cir. 2012). An erroneous jury instruction "misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Id. (citing Perry v. Ethan Allen, Inc., 115 F.3d 143, 153 (2d Cir. 1997)); see also Worytko v. Cty. of Suffolk, 285 Fed.Appx. 794, 795 (2d Cir. 2008). An error in a jury instruction is not prejudicial "when [the court is] persuaded it

did not influence the jury's verdict." <u>Townsend v. Benjamin Enters., Inc.</u>, 679 F.3d 41, 56 (2d Cir. 2012). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." <u>Lore</u>, 670 F.3d at 156 (quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977)). A new trial is not warranted if the instructions "'read as a whole, presented the issues to the jury in a fair and evenhanded manner.'" <u>Turley v. ISG Lackawanna, Inc.</u>, 774 F.3d 140, 152 (2d Cir. 2014) (quoting <u>Lore</u>, 670 F.3d at 156).

Defendants allege that the instruction failed to make clear that probable cause is not necessary for a police officer to handcuff an individual. In his testimony, Officer Lockett stated that he attempted to put Mr. Grant in handcuffs because he viewed his as a threat to himself and others. The jury instruction provided is consistent with Second Circuit case law, as discussed in <u>United States v. Fiseku</u>, 906 F.3d 65, 75 (2d Cir. 2018), as it made clear to the jury that probable cause is irrelevant to jury's consideration in determining whether Officer Lockett could resort to handcuffing based upon a present physical threat.

As a result, the jury instruction was not erroneous and does not warrant a new trial.

*(c) Qualified Immunity.*

Lastly, defendants argue that a new trial is warranted because special interrogatories concerning their qualified immunity defense on behalf of Officers Lockett and Montalto were not submitted to the jury.

A police officer is entitled to qualified immunity from suit brought pursuant to Section 1983 if either "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." <u>Simpson v. City of New York</u>, 793 F.3d 259, 268 (2d Cir. 2015); <u>see also</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)

(noting that the qualified immunity doctrine entitles officers to immunity from suit and is not just a defense from liability). The second prong of the test thus requires that officers only have "arguable probable cause," meaning "'either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Simpson, 793 F.3d at 268 (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)). "'[A]rguable' probable cause should not be misunderstood to mean 'almost' probable cause. If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." Gonzalez v. City of Schenectady, 728 F.3d 149, 157 (2d Cir. 2013) (quoting Jenkins v. City of New York, 478 F.3d 76, 86–87 (2d Cir. 2007)).

"Whether a defendant officer's conduct was objectively reasonable is a mixed question of law and fact." Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007) (citing Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004)). "The ultimate question of whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, i.e., whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court." Zellner, 494 F3d at 367.

If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court. See Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995). "[I]f there is such a dispute," however, "the factual questions must be resolved by the factfinder." Kerman, 374 F.3d at 109. Although the Second Circuit recommends the use of special interrogatories to assist a court determine the disputed facts, there is no requirement that they be used. See Stephenson v. Doe, 332 F.3d 68, 81 n. 19

(2d Cir. 2003) ("We recognize that the use of interrogatories is a matter for the judge's discretion.")

In his testimony, Officer Lockett cited certain primary factors that he claimed gave him probable cause to arrest Mr. Grant for Domestic Disorderly Conduct - yelling at his wife, swearing, gesticulating with his hands and slamming the front door as he exited. The Grants testified that while Mr. Grant was speaking loudly, he was not yelling or violently moving his arms, and while he opened the front door with force, it hit the handrail causing the loud noise. See Powers Decl., Exhibit A, ECF No. 164-2, at 27:10-24, 51:4-16, Exhibit B, ECF No. 164-3 at 26:12-19, 29:2-30:7. In making its determination in finding liability against Officers Lockett and Montalto concerning Mr. Grant's false arrest § 1983 claim, the jury credited Mr. Grant's version of a fairly binary choice of presented facts. Given this determination of the disputed facts, the jury, and the Court, concluded that it was not objectively reasonable for Officers Lockett and Montalto to believe that their conduct did not violate Mr. Grant's clearly established rights, and therefore, they were not entitled to qualified immunity with regards to Mr. Grant's false arrest claims.

Similarly, Officer Lockett was the only witness to testify that while he attempted to place Mr. Grant in handcuffs while on the stairs of the residence, Mr. Grant turned around and grabbed Officer Lockett in a bear hug. A multitude of witnesses, including uninterested witnesses, testified consistently that Lockett grabbed Mr. Grant from behind on the stairs and continued to strike him while Mr. Grant was not resisting on the ground, including Stephanie Grant, Alonzo Grant Jr., Sherrell Grant, Corey McMullin and Sharon Hayes. Given the jury's credence to such testimony, the jury, and the Court, concluded that it was not objectively reasonable for defendants to believe that their conduct did not violate Mr. Grant's clearly established right to be

free of excessive force.[6]  Therefore, they were not entitled to qualified immunity with regards to Mr. Grant's excessive force claims and a new trial is not warranted.

Lastly, any argument made by the defendants in their motion not specifically addressed herein is without merit.  As defendants have failed to establish grounds for relief pursuant to either Federal Rule of Civil Procedure 50 or Rule 59, their motion will be denied in its entirety.

## C. *Motion for Attorneys' Fees and Expenses*.

On November 20, 2018, plaintiffs submitted the pending motion for attorneys' fees, seeking $1,560,365.00, based upon: (i) 1,278.9 hours of work completed by attorney Charles A. Bonner at an hourly rate of $750.00, (ii) 454.4 hours of work completed by attorney A. Cabral Bonner at an hourly rate of $550.00 and (iii) 780.6 hours of work completed by attorney Jesse Ryder at an hourly rate of $450.00.

Defendants object to the request for multiple reasons.

### *(i) Reasonable Fee Rate*.

As Alonzo Grant was a prevailing party pursuant to 42 U.S.C. § 1988, attorneys' fees and cost are available to him.  The inquiry must then turn to the reasonableness of the amounts sought by his counsel.  The fee application is supported by several documents including contemporaneous time records and documents outlining the qualifications of the attorneys involved in this action.  First, defendants object to the proposed hourly rates for the three attorneys who worked on behalf of Mr. Grant.

In this circuit, fee awards are governed by the Second Circuit's instructive decision in Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183–84 (2d Cir.

---

[6] Again, there was also a video admitted in evidence showing Officers Lockett and Montalto punching Mr. Grant while he was on the ground and not resisting.  See Pl.'s Trial Exhibit 68.

2008). Under the protocol announced in <u>Arbor Hill</u>, a court must first consider whether the rates at which compensation is sought are those that a "reasonable, paying client would be willing to pay" before multiplying that figure by the number of hours expended. <u>Arbor Hill</u>, 522 F.3d at 190–91; <u>see also</u> <u>Lewis v. City of Albany Police Dep't</u>, 2008 WL 2103565, at *1 (N.D.N.Y. May 20, 2008) ("Attorney's fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours."). Determination of the rate at which a reasonable client would be willing to compensate for the services rendered is informed by several factors of varying degrees of relevance,

> including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively ... the timing demands of the case, [and] whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation ....

<u>Arbor Hill</u>, 522 F.3d at 184. <u>Arbor Hill</u> also reinforced the appropriateness of considering the so-called "Johnson factors" when establishing a reasonable rate, including

> (1) the time and labor required; (2) the novelty and the difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Arbor Hill</u>, 522 F.3d at 186 n. 3, 190 (discussing <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714, 717–19 (5th Cir. 1974)). The Second Circuit cautioned that a court should also "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." <u>Arbor Hill</u>, 522 F.3d at 190.

Furthermore, the Second Circuit "'forum rule' generally requires use of 'the hourly rates

employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" <u>Bergerson v. N.Y. State Office of Mental Health</u>, 652 F.3d 277, 290 (quoting <u>Simmons v. N.Y. City Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009)). This Court has previously found that "[t]he prevailing hour rates . . ., which are what a reasonable paying client would be willing to pay, are $210 per hour for an experienced attorney, $150 per hour for an attorney with more than four years experience, $120 per hour for an attorney with less than four years experience, an $80 per hour for paralegals. <u>See</u> <u>Lewis v. City of Albany Police Dep't</u>, 554 F. Supp. 2d 297, 298-99 (N.D.N.Y. 2008) (citing <u>Picinich v. United Parcel Serv.</u>, 2008 WL 1766746, at *2 (N.D.N.Y. Apr. 14, 2008)); <u>see also</u> <u>Paramount Pictures Corp. v. Hopkins</u>, 2008 WL 314541, at *5 (N.D.N.Y. Feb. 4, 2008) (Scullin, D.J.) ; <u>New Paltz Cent. Sch. Dist. v. St. Pierre</u>, 2007 WL 655603, at *2 (N.D.N.Y. Feb. 26, 2007) (Scullin, D.J.). However, since that time, other courts in the Northern District of New York have awarded fees at higher rates. <u>See</u> <u>Legends are Forever, Inc. v. Nike, Inc.</u>, 2013 WL 6086461, at *3-4 (N.D.N.Y. Nov. 18, 2013) (Peebles, M.J.) (awarding attorney's fees based on an hourly rate of $350 for a partner and $275 for an associate); <u>Zalewski v. T.P. Builders, Inc.</u>, 2012 WL 5880327, at *3 (N.D.N.Y. Nov. 21, 2012) (Sharpe, D.J.) (awarding attorney's fees based on an hourly rate of $275 per hour for partners, $200 per hour for attorneys with more than four years experience and $170 per hour for attorneys with less than four years experience); <u>Luessenhop v. Clinton Cnty., N.Y.</u>, 558 F. Supp. 2d 247, 266 (N.D.N.Y. 2008) (Treece, M.J.) (awarding attorney's fees based on an hourly rate of $235 per hour).

(a) *Charles A. Bonner*.

Mr. Bonner requests to be compensated at a rate of $750.00 per hour based upon a departure from the Second Circuit's forum rule. <u>See</u> Pl. Mem. of Law, ECF No. 167, at 10.

Pursuant to his submitted declaration, Charles A. Bonner has practiced law since 1979. See Bonner Decl., ECF No. 166-1. He has been the lead attorney in more than 100 jury trials and over the last five years, has litigated and settled over 100 cases, many of which involved personal injury and civil rights claims against municipal entities. He was elected and served for ten years on the Board of Directors of the California Trial Lawyers Association.

A reasonable hourly rate must be in line with the rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Monsour v. New York State Off. for People with Dev. Disabilities, 2018 WL 3349233, at *17 (N.D.N.Y. July 9, 2018) (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994)). In order to overcome the presumption that the forum district's rates should apply, "[t]he party seeking the award [must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). "A litigant cannot overcome the presumption in favor of in-district rates "'by relying on the prestige or 'brand name' of [their] selected counsel.'" Osterweil v Bartlett, 92 F. Supp. 3d 14, 17 (N.D.N.Y. 2015) (D'Agostino, D.J.) (quoting Simmons, 575 F.3d at 176). Rather, the litigant can prevail by "establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." Simmons, 575 F.3d at 176.

First, the parties agree that soon after Alonzo Grant contacted Jesse Ryder for representation, Mr. Ryder reached out to Charles Bonner without contacting other local attorneys. See Declaration of Jesse Ryder, ECF No. 166-12. Defendants argue that in order

to invoke the exception to the forum rule, plaintiffs must show that plaintiffs engaged in a diligent and good faith effort to obtain local counsel but such counsel refused. <u>See</u> Def.'s Response, ECF No. 183-19, at 5 (citing <u>O'Grady v. Mohawk Finishing Products, Inc.</u>, 1999 WL 30988, at *3 (N.D.N.Y. 1999) (Scullin, D.J.)). As Mr. Ryder did not reach out to other local counsel with more experience, or simply keep the case himself, defendants assert that plaintiffs are precluded from obtaining out of forum hourly rates.

However, as plaintiffs contend, in <u>Simmons</u>, the Second Circuit held that the failure to establish that local counsel possessing requisite experience were unwilling or unable to take the case is not required if plaintiff can establish that it is "a case requiring special expertise, [and] that no in-district counsel possessed such expertise." <u>Simmons</u>, 575 F.3d at 175.

Mr. Bonner argues that his particular skill and experience made him uniquely qualified to handle this case in a way that local counsel would not have been able to, resulting in a substantially superior result for plaintiffs. He cites his advice to Mr. Grant not to accept an adjournment in contemplation of dismissal that was originally offered by the District Attorney's Office and pushing for further investigation, which he believes lead to the District Attorney William Fitzpatrick drafting a letter and press release regarding the charges against Mr. Grant. Further, Mr. Bonner asserts that in comparison to recent jury verdicts in the Northern District of New York, the success of the jury award obtained by plaintiffs supports a finding that relying on local counsel alone would have likely resulted in a substantially inferior result.

Further, plaintiffs cite the case of <u>Trudeau v. Bockstein</u>, 2008 WL 3413903 (N.D.N.Y. April 7, 2009), to support their claim for out-of-district rates. In <u>Trudeau</u>, the Northern District approved a hourly billing rate for plaintiff's counsel from Chicago and Washington, D.C. of $585, 450 and $425. <u>Id</u>. at 5. However, the Court highlighted the fact that the attorneys were plaintiff's

"longtime counsel" and that he was required to retain counsel on an expedited basis. Further, the Court noted that the client actually assented to the rates and was willing to pay them, rather than entering into a contingency fee relationship with his counsel, a situation not present here.

While the strategy deployed by Charles Bonner certainly benefitted plaintiffs and he is to be commended on his fine work on this case, plaintiffs have failed to justify an award of out-of-district rates as they have not shown that litigating this case required special expertise not available within this district. Plaintiffs appear to have assumed that local counsel could not have achieved a successful result in this action without inquiring into the competence and expertise of attorneys within this district.

Accordingly, as Charles A. Bonner has failed to make a particularized showing to rebut the presumptive forum rule, the prevailing rates in the Northern District of New York will be applied. However, Charles A. Bonner will be awarded an hourly rate on the high end of the reasonable rates within the Northern District of New York to reflect his fine work and will be compensated at the rate of $350.00 per hour.

(b) *A. Cabral Bonner*.

A. Cabral Bonner received his Juris Doctorate degree in 2006. See Bonner Decl., ECF No. 166-1, at ¶ 7. During his 12 years in practice, he has been co-counsel or lead counsel in at least 15 jury trials and has argued before the Ninth Circuit on three occasions. For senior attorneys with more than ten years of experience, the Northern District has found that an hourly rate within the range of $250 to $350 is appropriate. See Pope v. County of Albany, 2015 WL 5510944 at *10-11, 16 (N.D.N.Y. Mar. 28, 2016) (Kahn, D.J.). Upon review of the declarations and documents submitted, $250.00 per hour is the appropriate hourly rate for attorney A. Cabral Bonner.

(c) *Jesse Ryder*.

Jesse Ryder obtained his Juris Doctorate degree in 2000 and has been practicing law for eighteen years. See Ryder Decl., ECF No. 166-12. He is a sole practitioner and his practice is focused on general civil litigation. Upon review of the declarations and documents submitted, Jesse Ryder is considered a senior attorney and $250.00 per hour is the appropriate hourly rate for his work.

(d) *Legal Assistants*.

Within the attachments and exhibits to their motion, plaintiffs also appear to seek reimbursement for various individuals identified as legal assistants: Calvin A. Bonner, Ilse M. Wolf, Sandra Y. Beltran and Matt McCulley. See Bonner Decl., ECF No. 166-1, at 3-5; Exhibits 6-9. However, such reimbursement is not mentioned in their memorandum of law or in their reply when such reimbursements were questioned by defendants.

While courts generally hold that "clerical and secretarial services are part of overhead and are not generally charged to clients", tasks that are more akin to paralegal work will be permitted. Guardado v. Precision Fin., Inc., 2008 WL 822105, at *6 (E.D.N.Y. March 25, 2008). Clerical tasks such as organizing case files and preparing documents for mailing are not compensable. However, paralegal tasks such as the selection and redaction of trial exhibits and preparation of trial exhibits and witness binders are compensable. See Rozell v. Ross-Hoist, 576 F. Supp.2d 527, 541 (S.D.N.Y. 2008).

Plaintiffs have not established that the work completed by Calvin A. Bonner, Ilse Wolf and Matt McCulley rises to the level of that performed by a paralegal. However, Sandra Y. Beltran has completed two paralegal courses and the services performed by her are that of a paralegal - researching law, filing documents with the court, compiling trial exhibit binders, etc. See Bonner

Decl., ECF No. 166-1, at ¶¶ 15-16.  As a result, the work performed by Sandra Beltran will be awarded at an hourly rate consistent with that awarded for paralegal work in the Northern District of New York - $110.00  per hour.  See Shibata v. Swingle, 2018 WL 4522053, at *4 (N.D.N.Y. Oct. 10, 2018) (Peebles, M.J.).

(ii) *Reasonable Hours*.

The next step requires a determination of the number of hours reasonably expended by plaintiffs' attorneys.  Plaintiffs' attorneys and staff have submitted documentation evidencing that they expended over two thousand seven hundred (2,700) hours representing plaintiffs in this matter.  Defendants contend that such amount of time is excessive and redundant.

In considering the number of reasonably expended hours, the court should exclude "excessive, redundant or otherwise unnecessary" hours, and "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir.1998) (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)); see also;  Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir.1998). The court should also consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir.1992) (citing Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990)).  Courts can use significant discretion in making the determination of reasonableness of time spent based on the scope and complexity of a case.  See N.Y. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146-47 (2d Cir. 1983).

Defendants assert numerous objections to the proposed hours provided by plaintiffs' attorneys.

(a) _Degree of Success_.

Defendants argue that the time and related costs associated to the unsuccessful claims must be excluded from any fee award given to Mr. Grant.  On summary judgment, the following claims were dismissed: (I) Mr. Grant's malicious prosecution claim pursuant to 42 U.S.C. § 1983, (ii) Mr. Grant's claim pursuant to 42 U.S.C. § 1985, (iii) Mr. Grant's claim pursuant to 42 U.S.C. § 1986, (iv) Mr. Grant's New York state law claim for intentional infliction of emotional distress, (v) Mr. Grant's New York state law claim for defamation, (vi) Mrs. Grant's New York state law claim for trespass with respect to defendants Montalto and Novitsky and (vii) plaintiffs' New York state law claim for negligent hiring, retention and supervision.

Further, during the jury trial, defendants' motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 was granted and the following causes of action were dismissed: (I) plaintiffs' invasion of privacy claim pursuant to 42 U.S.C. § 1983 against Officer Lockett, (ii) plaintiffs' New York state law trespass claim against Officer Lockett, (iii) Mrs. Grant's false imprisonment claim pursuant to 42 U.S.C. § 1983 against Officer Lockett, (iv) plaintiffs' false arrest claim pursuant to 42 U.S.C. § 1983 against defendant City of Syracuse police officer Brian Novitsky and (v) plaintiffs' New York state law false imprisonment claim against Officer Novitsky. Lastly, the jury returned a verdict in favor of the defendant City of Syracuse with regards to Mr. Grant's Monell claim concerning the City's alleged failure to train, supervise and discipline its officers.  Plaintiffs were ultimately successful  in obtaining a jury verdict with respect to the following claims: (i) Mr. Grant's excessive force claim pursuant to 42 U.S.C. § 1983 against Officers Lockett and Montalto, (ii) Mr. Grant's New York state law assault and battery claim against Officers Lockett and Montalto, (iii) Mr. Grant's false arrest claim pursuant to 42 U.S.C. § 1983 against Officers Lockett and Montalto, (iv) Mr. Grant's New York state law false

imprisonment claim against Officers Lockett and Montalto and (v) Mrs. Grant's New York state law loss of consortium claim against Officers Lockett and Montalto.

"[W]hen a plaintiff has succeeded on only some of his claims for relief, two questions must be addressed: 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" DiSorbo v. City of Schenectady, 2004 WL 115009, at *4 (N.D.N.Y. Jan. 9, 2004) (Kahn, D.J.) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "The Court then distinguished cases in which 'counsel's work on one claim will be unrelated to his work on another claim' from cases in which 'the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.'" Id. at *4 (quoting Hensley, 461 U.S. at 435). In the latter category of cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," and, rather than viewing such cases as a series of discrete claims, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 at 435.

In this action, plaintiffs achieved a degree of success commensurate with the hours expended on the litigation by their attorneys. While certain federal claims were dismissed and the jury returned a verdict in favor of the defendant City of Syracuse with respect to plaintiff's Monell claim, this litigation falls into the latter category described above. These claims were all grounded in a common core of facts, and were based on related legal theories, such that it would have been difficult for plaintiffs' attorneys to divide the hours expended on the litigation on a claim-by-claim basis.

In this litigation, all claims arose from the same events, namely the interaction between Mr. Grant and Officers Lockett and Montalto at his residence on June 28, 2014. "So long as the plaintiff's unsuccessful claims are not 'wholly unrelated" to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount." Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994) (quoting Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992)). While plaintiffs were not successful in all their claims, including those claims against Officer Novitsky and the Monell claim against the City of Syracuse, such claims were not wholly unrelated to the claims that plaintiffs were successful on. The claims litigated in this action, then, and the work required by plaintiffs' attorneys with respect to each of those claims, were interrelated with one another, and one that cannot be viewed as a series of discrete claims. Furthermore, the efforts of plaintiffs' attorneys recovered a substantial award of $1,580,000 for their clients.

(b) *Criminal Proceedings*.

Mr. Grant seeks to recover attorney fees for work done by his attorneys in the underlying criminal matter against him. Defendants contend that Mr. Grant is barred from recovering these fees, because although 42 U.S.C. § 1988 provides for recovery of attorneys' fees in "any action or proceeding to enforce a provision" of section 1983, the term "proceeding" does not include recovery of fees spent to defend a defendant in a criminal court. In the Northern District, "no attorney's fees are awarded for plaintiff's defense in a prior criminal proceeding." McKever v. Vondollen, 681 F. Supp. 999, 1003 (N.D.N.Y. 1988). Plaintiff failed to respond to defendants' argument in their reply and does not cite any case law in support of his claim that he is entitled to them. Therefore, Mr. Grant is not entitled to an award of attorneys' fees for almost 140 hours related to the criminal defense work the attorneys performed for him.

(c) *Mrs. Grant Was Not a Prevailing Party*.

Federal courts have no power to award attorney fees to a prevailing party absent statutory authorization. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975). Section 1988 "serves the purposes of vindicating right under § 1983, not state laws of contribution." Rosado v. New York City Hous. Auth., 827 F. Supp. 179, 184 (S.D.N.Y. 1989). "All the district courts in this Circuit have found that a loss of consortium claim is a derivative claim that is not cognizable under § 1983." Hui Ping Wang v. United States, 2007 WL 9710550, at *7 (E.D.N.Y. 2007) (internal citations omitted); see also Pritzker v. City of Hudson, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998). Stephanie Grant was only successful in her loss of consortium claim, which is a New York state claim. Therefore, she is not a prevailing party entitled to an award of attorneys' fees. This fact will be considered when determining the appropriate attorney's fees award.

(d) *Overstaffing*.

Defendants further allege that it was typical for all three of plaintiffs' attorneys to attend court conferences and depositions, work on the same court submissions and conference together, resulting in excessive and duplicative billing.

"The district court is 'accorded ample discretion' in assessing whether the extent of staffing was appropriate in a given case in light of the complexity of the litigation." Osterweil v. Bartlett, 92 F. Supp. 3d 14, 32 (N.D.N.Y. 2015) (D'Agostino, D.J.) (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983)). "[A] trail judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but for the most part such decisions are best made by the district court on the

basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation." Carey, 711 F.2d at 1146. 25.

Reviewing the submissions of plaintiffs' attorneys, most of the use of multiple attorneys and consultation between attorneys was appropriate. However, review of plaintiffs' attorneys records reveals a duplication of efforts by multiple attorneys on some of the tasks performed.

First, plaintiffs' attorneys spent approximately one hundred and seventeen hours to oppose the defendants' motion for summary judgment. Given the proposed level of expertise of plaintiffs' attorneys, these amounts are outside the range of similar matters litigated by counsel of similar experience. See Dotson v. City of Syracuse, 2011 WL 817499, at *25 (N.D.N.Y. March 2, 2011) (Mordue, C.J.) (finding that 115.30 hours to oppose a motion for summary judgment was excessive and warranted a reduction); Cover v. Potter, 2008 WL 4093043, at *7 (S.D.N.Y. Aug. 29, 2008) (finding that 87.25 hours for a summary judgment motion).

Second, based upon the submissions, plaintiffs spent approximately one hundred forty four (144) hours on its motion for attorneys' fees. Courts in the Northern District have found that more than fifty (50) hours to prepare a motion for attorneys' fees is unreasonable. See Luessenhop v. Clinton County, N.Y., 558 F. Supp. 2d 247, 270 (N.D.N.Y. 2008) (Treece, M.J.); see also Murray v. Mills, 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005) (even in a complex case, a fee application should only take thirty (30) hours).

These incidents of duplicate of efforts by plaintiffs' attorneys will be considered when determining the reasonable number of hours plaintiffs' attorneys are entitled to.

(e) *Vague Entries*.

Defendants have meticulously reviewed the documents submitted by plaintiffs and argue that the descriptions of work done by plaintiffs' counsel are vague and ambiguous. <u>See</u> Declaration of Christine DeJoseph, ECF No. 183, Exhibits A - G.

A district court may, in its discretion, reduce any granted award of attorneys fees accordingly where the documentation of hours is inadequate. Defendants point to particular entries within the exhibits provided by plaintiffs' attorneys as illustrative of plaintiffs' failure to provide the necessary detail. For example, defendants point to the entries on pages 46-51 of Charles Bonner's time records which only list the date, the hours expended and a name as being vague and problematic. <u>See</u> Bonner Decl., ECF No. 166-4 at 46-51. However, given the short nature of the hours expended, usually 0.1 hours, it could be properly deduced that these represented quick phone calls to his clients and co-counsel. In examining the entirety of plaintiffs' materials, plaintiffs' attorneys have adequately documented both the number of hours spent on the case and the nature of the work performed during each of those hours.

The Second Circuit requires that any attorney who applies for court-ordered compensation in this Circuit should "specify, for each attorney, the date, the hours expended, and the nature of the work done." <u>New York State Association for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147 (2d Cir.1983). Plaintiffs' attorneys have met all of these criteria. Plaintiffs' attorneys have all submitted declarations and exhibits that break down their time spent on the case into tenths of an hour, and the hours are provided by attorney name and date. <u>See</u> Bonner Decl., Exhibits 4 (Charles A. Bonner) (ECF No. 166-5), Exhibit 5 (A. Cabral Bonner) (ECF No. 166-6), Exhibit 8 (Sandra Beltran) (ECF No. 166-9), Ryder Decl., Exhibit 1 (ECF No. 166-13). In addition, the exhibits sufficiently indicate the nature of the work performed during such time.

The "Second Circuit decisions generally reduce fee awards only when there are numerous entries ... [that are too vague]," Broome v. Biondi, 1997 WL 691427, at *3 (S.D.N.Y. Nov. 4, 1997), and a court will neither deny attorneys fees nor make an across-the-board reduction for lack of specificity when "[t]he time records overall ... afford sufficient opportunities to evaluate the reasonableness of time expended on each task." Id. In this case, any entries that might be considered vague are few in number and certainly do not detract from the ability to evaluate the reasonableness of time expended by plaintiffs' attorneys on each task. Therefore, plaintiffs' entries meet the Second Circuit's requirements and that plaintiffs' application is sufficiently detailed.

(f) *Lodestar Calculation*.

For the foregoing reasons set forth in sections (ii)(a-e) and the case law within the Second Circuit, the requested total hours expended by plaintiffs' attorneys will be reduced by one fourth (25%).

Accordingly, the reasonable attorneys' fees are calculated as follows:

| Attorney | Requested Hours | Rate | Total |
|----------|-----------------|------|-------|
| Charles A. Bonner | 1,278.9 | $350.00 | $ 447,615.00 |
| A. Cabral Bonner | 454.4 | $250.00 | $ 113,600.00 |
| Jesse Ryder | 780.2 | $250.00 | $ 195,050.00 |
| Sandra Beltran | 213.9 | $110.00 | $  23,529.00 |
| Total | 2,727.8 | Total | $ 779,894.00 |
| 25% Reduction | 681.9 | 25% Reduction | $ 194,973.50 |
| Reduced Hours | 2,045.9 | Fee Award | $ 584,920.50 |

(iii) *Costs*.

In addition to attorneys' fees, plaintiffs also request an award of costs and expenses in the amount of $101,117.30. See Bonner Decl., Ex. 10; Ryder Decl., Ex. 2.

"Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party." FED. R. CIV. P. 54. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." Deferio v. City of Syracuse, 2018 WL 3069200, at *9 (N.D.N.Y. June 21, 2018) (Kahn, S.J.).    Attorneys' expenditures on litigation that are unnecessary and non-compensable when "they exceed the minimum that a reasonable paying client would pay absent a fee-shifting arrangement." Amerisource Corp. v. Rx USA Intern Inc., 2010 WL 2160017, at *15 (E.D.N.Y. 2010).

Much of the supporting documentation supplied by plaintiffs' attorneys evidences reasonable out-of-pocket expenses recoverable pursuant to 42 U.S.C. § 1988 - including $14,511.95 in transportation, $25,475.98 in lodging and $8,667.45 related to deposition expenses.

However, pursuant to section 1988, courts only have the discretion to tax expert fees as costs in actions brought under 42 U.S.C. §§ 1981 and 1981a, not section 1983. See Walker v. City of New York, 2015 WL 4568305, *12 (E.D.N.Y. July 28, 2015) ("§ 1988 does not allow the shifting of expert witness fees in 1983 actions."); Davis v. City of New York, 2011 WL 4946243, at *6 (S.D.N.Y. Oct. 18, 2011); BD v. DeBuono, 177 F. Supp. 2d 201, 206 ("Unfortunately for . . . § 1983 plaintiffs generally, these new laws did not authorize recovery of prevailing plaintiffs' expert fees in all civil rights cases.").    In 1991, the Supreme Court held that section 1988 does not authorize courts to shift expert fees to the losing party as part of a "reasonable attorney's fee" in a section 1983 case. See West Virginia Univ. Hosps. v. Casey, 499 U.S. 83, 86 (1991). "After Casey, Congress enacted the Civil Rights Act of 1991, which amended 42 U.S.C. § 1988 to give courts discretion to shift expert fees to the losing party in cases arising under 42 U.S.C. §§ 1981

and 1981(a). As Congress explicitly limited the amendment to cases arising under § 1981, Casey still prohibits the award of expert fees in § 1983 cases." <u>Davis</u>, 2011 WL 4946243 at *6. Consequently, Mr. Grant cannot recover any amounts paid in expert witness fees and the $28,655.97 requested will be deducted from the costs requested.

Further, defendants have meticulously gone through the documentation and highlighted expenses that are unreasonable, including numerous $400 plus dinners including alcohol and items such as the purchase of an Entertainment Weekly magazine. <u>See</u> Declaration of Todd Long, Exhibit M, ECF No. 183-14, at 129, 135, 136, 139, 140, 143. It would be unreasonable to charge these items to a client and therefore a reduction is warranted.

After carefully considering the matter, instead of embarking on the tedious task of itemizing, and accepting or rejecting, each expense Mr. Grant's attorneys incurred, plaintiffs' request for costs will be also be reduced by one fourth (25%). <u>See</u> <u>Jimico Enterprises, Inc. v. Lehigh Gas Corp.</u>, 2011 WL 4594141, at *13 (N.D.N.Y. Sept. 30, 2011) (Suddaby, D.J.); <u>Dotson v. City of Syracuse</u>, 2011 WL 817499, at *33 (N.D.N.Y. March 2, 2011) (Mordue, C.J.); <u>Rotella v. Bd. of Educ. of City of New York</u>, 2002 WL 59106, at *5 (E.D.N.Y. Jan. 17, 2002) Accordingly, the reasonable costs can be calculated as follows:

| | |
|---|---|
| Requested Costs: | $101,117.30 |
| Minus Expert Fees: | $ <u>28,655.97</u> |
| | |
| Subtotal: | $ 72,461.33 |
| 25% Reduction: | $ <u>18,115.33</u> |
| Costs Award: | $ 54,346.00 |

## IV.    CONCLUSION.

Based upon the foregoing, defendants have not established entitlement to judgment as a matter of law or a new trial and their motion will be denied.  Mr. Grant has established his entitlement to attorneys' fees in the amount of $584,920.50 and costs in the amount of $54,346.00.

Therefore, it is ORDERED that

(1) Defendants' motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or a new trial or remittitur pursuant to Federal Rule of Civil Procedure 59  is **DENIED** in its entirety;

(2) Plaintiffs' motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 is **GRANTED** in part and **DENIED** in part;

(3) plaintiff Alonzo Grant is awarded attorneys' fees in the amount of **$584,920.50** and costs in the amount of **$54,346.00**, for a total award of **$639,266.50**; and

(4) The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: February 8, 2019
         Utica, New York