19-469 (L)
*Grant v. Lockett*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of December, two thousand twenty-one.

Present:
        DEBRA ANN LIVINGSTON,
            *Chief Judge,*
        AMALYA L. KEARSE,
        ROBERT D. SACK,
            *Circuit Judges*.

---

ALONZO GRANT, STEPHANIE GRANT,

    *Plaintiffs-Appellees-Cross-Appellants*,

v.                                                                              19-469
                                                                           19-738
                                                                           19-1558

DAMON LOCKETT, Police Officer, PAUL MONTALTO, Police Officer

    *Defendants-Appellants-Cross-Appellees*.[*]

---

| | |
|---|---|
| For Plaintiffs-Appellees-Cross-Appellants: | CHARLES BONNER (A. Cabral Bonner, *on the brief*), Law Offices of Bonner & Bonner, Sausalito, CA; |
| | Stephen Bergstein, Bergstein & Ullrich, LLP, New Paltz, NY; |

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

1

MANDATE ISSUED ON 03/17/2022

|  |  |
|---|---|
|  | Jesse P. Ryder, Ryder Law Firm, East Syracuse, NY. |
| For Defendants-Appellants-Cross-Appellees: | JOHN G. POWERS, Hancock Estabrook, Syracuse, NY; |
|  | Mary L. D'Agostino and Todd Michael Long, *for* Kristin E. Smith, Corporation Counsel, Syracuse, NY; |
|  | Shannon T. O'Connor, Goldberg Segalla LLP, Syracuse, NY, *for* International Municipal Lawyers Association and the New York Conference of Mayors, *as amici curiae in support of Defendants-Appellants-Cross-Appellees*; |
|  | William J. Johnson, Alexandria, VA, *for* National Association of Police Organizations, *as amicus curiae in support of Defendants-Appellants-Cross-Appellees*. |

Appeals from judgments and orders of the United States District Court for the Northern District of New York (Hurd, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the October 23, 2018 merits judgment and order, the February 8, 2019 judgment and order, and the April 26, 2019 judgment and order of the district court are **AFFIRMED**.

Plaintiffs-Appellees-Cross-Appellants Alonzo and Stephanie Grant (together, "Plaintiffs") sued Defendants-Appellants-Cross-Appellees Damon Lockett and Paul Montalto (together, "Defendants") under 42 U.S.C. § 1983 for excessive force and false arrest, and under New York state law for false imprisonment, assault and battery, and loss of consortium. Plaintiffs also pursued a municipal liability claim against the City of Syracuse (the "City") and the Syracuse Police Department (the "SPD") pursuant to 42 U.S.C. § 1983 for failure to train, supervise, and discipline their police officers. At trial, a jury found in favor of Alonzo on his claims for excessive force, false arrest, assault and battery, and false imprisonment, and it awarded him a

total of $1,130,000 in compensatory damages. The jury also found in favor of Stephanie on her state law claim for loss of consortium, and it awarded her a total of $450,000 in compensatory damages. However, it rejected Plaintiffs' municipal liability claim. On appeal, Defendants challenge various decisions by the trial court that they believe warrant a new trial. They also argue that the district court erred in denying their motion for remittitur and in awarding Plaintiffs attorneys' fees and costs. On cross-appeal, Plaintiffs argue that the court improperly reduced their award of attorneys' fees. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Bifurcation

Defendants first contend that the district court abused its discretion in declining to bifurcate Plaintiffs' individual and municipal liability claims on the theory that Plaintiffs' municipal liability evidence was unduly prejudicial. We are not persuaded.

To be sure, we have affirmed a district court's decision bifurcating a plaintiff's § 1983 individual and municipal liability claims where it determined both that a trial against municipal defendants "would prove unnecessary if the jury found no liability against" the individual defendants and that evidence concerning the municipal liability claims would be "inadmissible as against . . . or prejudicial to [them]." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999). We have not, however, mechanically *required* bifurcation in cases featuring claims of both municipal and individual liability. On the contrary, we have recognized that the decision whether to bifurcate a trial is committed to the "sound discretion" of the district court. *See Getty Petrol. Corp. v. Island Transp. Corp.*, 862 F.2d 10, 15 (2d Cir. 1988).

Here, the district court permissibly rejected Defendants' contention that bifurcation would promote convenience and efficiency in light of the relationship between Plaintiffs' individual and

3

municipal liability claims. It also reasonably rejected Defendants' contention that they would be prejudiced by the introduction of evidence relevant only to Plaintiffs' claim against the City, given its ability to mitigate prejudice via curative instructions and an appropriate jury charge. The risk of prejudice of which Defendants complained was of the type that could "be cured with proper instructions, and juries are presumed to follow their instructions," *see Zafiro v. United States*, 506 U.S. 534, 540 (1993) (internal quotation marks omitted). The district court therefore did not abuse its discretion.

## II. Evidentiary Rulings

"We review a district court's evidentiary rulings for abuse of discretion." *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 318 (2d Cir. 2004). Even when a district court has erred on evidentiary grounds, we will remand for a new trial only if the appellant demonstrates "that the error was not harmless." *Id.* at 319. Defendants argue that the district court abused its discretion by, among other things: (1) admitting various materials from the City's Citizen Review Board (the "CRB"); and (2) permitting the City's District Attorney, William J. Fitzpatrick, to testify on Plaintiffs' behalf and to present prejudicial exhibits.[1] We agree with Defendants that the district court erred in admitting this evidence. On analysis, however, we conclude that the errors do not require vacatur but, in the circumstances, were harmless.

### A. CRB Evidence

We first address Defendants' challenge to the admission of records from the CRB, including: (1) the CRB's annual report from 2014, which contains a narrative of the events at issue

---

[1] We do not specifically address Defendants' arguments that the district court erred in permitting certain expert testimony and in allowing the introduction of medical records during the testimony of Defendants' expert. Even assuming *arguendo* that the district court erred on these grounds, the errors were plainly harmless.

4

and the CRB's findings as to Lockett, Montalto, and Sergeant Brian Novitsky; and (2) a letter from CRB administrator Joseph Lipari informing Alonzo of the CRB's findings as to Lockett, Montalto, and Novitsky (together, the "CRB Findings").[2] Defendants argue that the CRB Findings contain inadmissible hearsay. Plaintiffs do not dispute that the materials contain hearsay; rather, they have consistently argued that the materials were admissible under Federal Rule of Evidence 803(6), the "business records exception." We disagree, as the requirements of Rule 803(6) were not met.

First, the CRB Findings were not "made at or near the time by—or from information transmitted by—someone with knowledge." Fed. R. Evid. 803(6)(A). Although the incident in this case occurred on June 28, 2014, Lipari did not provide his initial report to the CRB until August 25, 2014, and the CRB panel did not meet until October 15, 2014, to review the matter formally. Because "there is nothing in the record that suggests" the investigation that informed the CRB Findings was "conducted at or near the time of the underlying events," the CRB Findings cannot "be considered a contemporaneous recording." *Abascal v. Fleckenstein*, 820 F.3d 561, 565 (2d Cir. 2016). Second, the CRB Findings do not concern "the kind of 'regularly conducted

---

[2] The Defendants challenge on appeal the admission of various CRB records, including annual reports, disciplinary recommendations pertaining to unnamed officers, and the CRB Findings pertaining to Lockett, Montalto, and Novitsky. In its pre- and post-trial rulings, the district court found these materials admissible and broadly relevant only to Plaintiffs' claim against the City. Bearing in mind the "strong presumption that juries follow [] limiting instructions unless there is an overwhelming probability of their inability to do so," *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 457 (2d Cir. 2009), we discern no basis for disturbing the jury's verdict as to the admission of evidence related solely to Plaintiffs' municipal liability claim. The CRB Findings pertaining to Lockett, Montalto, and Novitsky, however, were not so cabined at trial. Although the district court advised the jury that the annual reports and other documents pertaining to unnamed officers were admissible only in connection with Plaintiffs' municipal liability claim, it did not do so with respect to the letter addressed to Alonzo. Moreover, the district court repeatedly permitted Plaintiffs' counsel to identify Lockett, Montalto, and Novitsky as the subjects of the CRB Findings and to question witnesses about them without any limiting instruction. Accordingly, we address the propriety of the district court's admission of the CRB Findings as to Lockett, Montalto, and Novitsky.

5

activity' contemplated by the business records exception." *Id.*; *see also* Fed. R. Evid. 803(6)(B). The business records exception generally permits the admission of hearsay documents that result from "recording observable information" as opposed to those that result from the subjective interpretation of interview results, *Abascal*, 820 F.3d at 565–66, or the "selection and interpretation of data," *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 633 (2d Cir. 1994). The CRB Findings, which the CRB produced after interviewing witnesses and interpreting evidence, fall firmly into the latter, proscribed category. *See Abascal*, 820 F.3d at 565–66 (holding that a report detailing conditions at a state correctional facility was not admissible under the business records exception). We therefore conclude that the CRB Findings were not admissible under the business records exception.[3] The district court erred in admitting them on this basis.

## B. District Attorney Evidence and Testimony

Defendants next argue that the district court abused its discretion by permitting Fitzpatrick to testify and admitting: (1) his office's draft of the press release announcing the dismissal of the charges against Alonzo (the "Draft Press Release"); and (2) a letter Fitzpatrick wrote to Plaintiffs' counsel concerning the dismissal of the charges (the "DA Letter"). Defendants assert that this

---

[3] Nor were the Findings admissible under Rule 803(8), which provides that a "record or statement of a public office" is admissible "if (A) it sets out . . . factual findings from a legally authorized investigation; and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness," Fed. R. Evid. 803(8). Defendants have shown that the CRB Findings were insufficiently trustworthy to be admissible for their truth. Although no one factor is determinative in assessing trustworthiness for Rule 803(8) purposes, we note that the findings here, among other things, were based on unsworn statements that were neither memorialized nor subject to cross examination and that these findings were made by a lay person, not an expert, and pursuant to a mere "substantial evidence" standard. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000) (noting that in assessing trustworthiness of public records, courts may consider "the level at which [a hearing] was conducted" and "the special skills or experience of the [investigating] official"). The CRB Findings were not admissible pursuant to the public records exception either.

6

evidence was inadmissible because it was irrelevant under Federal Rule of Evidence 401 and substantially more prejudicial than probative under Federal Rule of Evidence 403. Plaintiffs counter that it was relevant because favorable termination is an element of false arrest. Even assuming, *arguendo*, the relevance of this material, we conclude that the district court clearly abused its discretion in failing to preclude it under Rule 403.

First, contrary to Plaintiffs' argument, Plaintiffs did not need to establish that Alonzo's criminal charges were dismissed to succeed on their false arrest claim. *See Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996). Accordingly, the probative value of Fitzpatrick's testimony, the Draft Press Release, and the DA Letter was minimal at best—relevant, if at all, for the limited purpose of completing Plaintiffs' narrative at a trial in which the fact that Alonzo's criminal charges were dismissed was apparently undisputed and could have been confirmed with a stipulation or by asking Alonzo about the resolution of his charges. *See Old Chief v. United States*, 519 U.S. 172, 184 (1997) (noting that probative value "may be calculated by comparing evidentiary alternatives").

Under Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "In reviewing Rule 403 challenges, we accord great deference to the district court's assessment of the relevancy and unfair prejudice of proffered evidence . . . ." *United States v. Quinones*, 511 F.3d 289, 310 (2d Cir. 2007) (internal quotation marks omitted). "Provided the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice," we will disturb its conclusion "only if it is arbitrary or irrational." *United States v. Kadir*, 718 F.3d 115, 122 (2d Cir. 2013) (internal quotation marks omitted).

7

Here, in ruling on the admissibility of Fitzpatrick's testimony, the Draft Press Release, and the DA Letter, the district court failed to undertake the conscientious assessment that Rule 403 requires. Although the district court acknowledged that Defendants sought to preclude the evidence under Rule 403 in ruling on the parties' motions *in limine*, it provided no analysis as to either the probative value of the evidence or the risk of prejudice that would result from its admission. Likewise, when Defendants renewed their objection at trial, the district court overruled it without explanation. To be sure, "[w]e do not require a district court 'to articulate the relevant considerations on the record,' and we ordinarily assume that such due consideration was given." *United States v. Morgan*, 786 F.3d 227, 232 (2d Cir. 2015) (quoting *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 269 n.11 (2d Cir. 1999)). But this record simply "cannot support an inference that an appropriate balancing was performed." *Id.*

Fitzpatrick's "testimony [was] particularly significant" in itself "because it came from [an] ostensibly neutral government actor[]," *Cameron v. City of New York*, 598 F.3d 50, 66 (2d Cir. 2010). The opinions of such actors, we have explained, may "greatly influence jurors," *id.*, particularly to the extent that they "implicit[ly] vouch[]" for or "verify[] some of the . . . information" put forward by a party to a civil lawsuit, *id.* at 64. Moreover, Fitzpatrick's statements and the exhibits he read into the record went well beyond completing Plaintiffs' narrative. Fitzpatrick opined on an issue closely related to the central questions left for the jury, *see* Supp. App'x 637–38 (opining that "the original charge of disorderly conduct [was] not legally viable[,] thereby undermining the lawfulness of the arrest"), tended to bolster the credibility of both a party and his counsel, *see* Supp. App'x 629–30, 639, 645, and acted as a third-party corroborator of hotly contested facts of which he had no personal knowledge, *see* Supp. App'x 636–37. Ultimately, the introduction of Fitzpatrick's testimony and the challenged exhibits

8

risked provoking the jury both (1) to draw the inference that because Fitzpatrick dismissed the charges against Alonzo, the officers necessarily lacked probable cause to arrest Alonzo and acted unreasonably under the circumstances, and (2) to rule for Plaintiffs for the mere reason that an independent government actor validated Plaintiffs' account.  Under the circumstances, the prejudice resulting from Fitzpatrick's testimony and the challenged exhibits "substantially outweighed" their limited probative value.  *See* Fed. R. Evid. 403.  The district court therefore abused its discretion by permitting Fitzpatrick to testify and by admitting the DA Letter and the Draft Press Release.

### C. Harmlessness

We turn next to the question of whether the district court's clear evidentiary errors were nonetheless harmless.  An error is harmless if it is unlikely to have swayed the factfinder's judgment in any material respect.  *Tesser*, 370 F.3d at 319.  In determining whether an error is harmless, we may consider, among other things: (1) whether the evidence bore on the most important issues in the case; (2) whether the evidence was simply cumulative or corroborative; (3) whether the evidence was used in summation; and (4) whether the appellee's case was particularly strong.  *Abascal*, 820 F.3d at 567.  The "importance of the . . . wrongly admitted" evidence and the "overall strength of the [appellees'] case" are the "principal factors to be considered." *Cameron*, 598 F.3d at 61 (citation omitted) (alteration in original); *cf. United States v. McCallum*, 584 F.3d 471, 478 (2d Cir. 2009) (noting, in the criminal context, that the strength of the case "is the most critical factor in assessing whether error was harmless").  On review of these factors, Defendants have failed to demonstrate a likelihood that the jury was materially swayed by the district court's errors, however clear these errors were.

9

Here, Plaintiffs' case against Defendants was particularly strong. Apart from Alonzo, *five* eyewitnesses—including two witnesses who are not members of the Grant family—testified to facts establishing excessive force and false arrest. By contrast, only Lockett and Montalto testified to their respective eyewitness accounts of the altercation, and their accounts featured significant inconsistencies. Crucially, Lockett and Montalto admitted to striking Alonzo in the face roughly twelve times and performing a knee strike on Alonzo's thigh. A video depicting the end of the altercation likewise shows that Lockett placed Alonzo in an apparent chokehold and that Alonzo ultimately complied with the officers' command to put his hands behind his back with little, if any, resistance. Moreover, whereas Alonzo sustained serious injuries due to the altercation, the record gives no indication that Lockett or Montalto sustained any injury at all.

Three additional considerations inform our analysis. First, consistent with the district court's admonitions that most of the CRB evidence was admissible only as against the City, Plaintiffs' counsel discussed the CRB Findings in summation only briefly, and in the context of municipal liability. Second, the SPD's use-of-force investigation—which included a factual account of the incident and found that Plaintiffs' complaint of excessive force was "[u]nsubstantiated," Supp. App'x 1936–40—mitigated some of the prejudice from the CRB Findings. Third, some of the harm stemming from Fitzpatrick's testimony was mitigated by his testimony that he did not express any opinion as to the officers' credibility and that he "didn't make any determination . . . [as to] whether or not the[] officers had probable cause to make a[n] arrest," Supp. App'x 654.[4] On balance, we can say "with fair assurance . . . that the judgment

---

[4] In addition, Fitzpatrick did not testify at all as to whether the force employed by the officers was excessive.

was not substantially swayed by the error[s]." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).[5] We therefore decline to vacate the jury's verdict because of them.

### III. Supplemental Jury Instruction

"We review a district court's jury instructions *de novo*." *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 54 (2d Cir. 2019) (internal quotation marks omitted). During its deliberations, the jury sent the district court a note asking: "Is it true that in the course of a domestic 'incident' investigation, before it is determined that a crime has been committed, it is within the rights of an officer, under New York State law or SPD policy, to place handcuffs on an individual?" App'x 607. The court provided the following instruction in response:

> The police may lawfully handcuff an individual if they have a reasonable basis to think that the person detained poses a present physical threat and that handcuffing is the least intrusive means to protect against that threat. To determine whether such act was more intrusive than necessary, you should look to several factors[,] including[] the amount of force used by the police, the need for such force, the number of police officers involved, whether the police suspected the suspect of being armed, the duration of the stop, the extent to which the freedom of movement was restrained[,] and the physical treatment of the suspect.

App'x 609. Defendants contend that this supplemental instruction was erroneous because it failed further to explain that an officer may use handcuffs without probable cause. We disagree.

"Jury instructions are erroneous if they mislead the jury or do not adequately inform the jury of the law." *Uzoukwu v. City of New York*, 805 F.3d 409, 414 (2d Cir. 2015). "As to supplemental instructions given by the district court, if a supplemental charge is legally correct,

---

[5] Defendants argue that prejudice should be inferred from the fact that an *Allen* charge was given in this case. We disagree. Prior to the *Allen* charge, the jury noted only that it could not "come to consensus on all claims" and did not specify whether it sought guidance with respect to Plaintiffs' individual liability claims or the municipal liability claim. App'x 613. And whereas Plaintiffs' individual liability claims were particularly strong, their municipal liability claim was less supported.

11

the district court enjoys broad discretion in determining how, and under what circumstances, that charge will be given." *Id.* (internal quotation marks and brackets omitted).

The district court's instruction neither misled the jury nor inadequately informed the jury of the law. Although the instruction did not overtly specify that police may handcuff an individual in the absence of probable cause, it plainly indicated that officers may use handcuffs for safety reasons alone and was thus responsive to the jury's question. Mirroring language from our caselaw, the instruction correctly informed the jury that a police officer may use handcuffs during a stop "when the police have a reasonable basis to think that the person detained poses a present physical threat and that handcuffing is the least intrusive means to protect against that threat." *United States v. Fiseku*, 915 F.3d 863, 871 (2d Cir. 2018) (internal quotation marks and emphasis omitted). Therefore, the district court's supplemental jury instruction was not erroneous.

### IV. Special Interrogatories on Qualified Immunity

Defendants next contend that the district court erred in refusing to submit their requested interrogatories to the jury and in submitting the ultimate question of qualified immunity to the jury. We review a district court's refusal to provide special interrogatories for abuse of discretion. *See Stephenson v. Doe*, 332 F.3d 68, 81 n.19 (2d Cir. 2003). Similarly, "[d]ecisions as to the format and language to be used in a special verdict form are committed to the trial court's discretion." *Lore v. City of Syracuse*, 670 F.3d 127, 159 (2d Cir. 2012). An error in the trial court's "instructions and interrogatories is a ground for reversal only if it was prejudicial to the [complaining party]" and not simply harmless. *Schaafsma v. Morin Vermont Corp.*, 802 F.2d 629, 637 (2d Cir. 1986); *see also* Fed. R. Civ. P. 61.

We have previously outlined the proper allocation of duties between judge and jury as part of the qualified immunity inquiry. If there is a dispute as to the material facts, any "factual

12

questions must [first] be resolved by the factfinder." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (internal quotation marks omitted). "Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court." *Id.* In view of this delicate division of responsibilities, we have consistently recommended the use of special interrogatories in the qualified immunity context. *See, e.g.*, *Jones v. Treubig*, 963 F.3d 214, 224–25, 232–33 (2d Cir. 2020); *Stephenson*, 332 F.3d at 81 & n.19; *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990).

Here, the district court declined to submit Defendants' proposed special interrogatories to the jury and instead tasked the jury with determining whether each of Lockett and Montalto had "prove[n] by a preponderance of the evidence that it was objectively reasonable for him to believe that his actions were not violating plaintiff Alonzo Grant's right to be free from" excessive force or false arrest. Special App'x 76. Given the various disputed issues of fact in this case, it may have been preferable for the district court to submit special interrogatories to the jury. *See Warren*, 906 F.2d at 76. But the district court acted within its discretion in declining to do so because it could "discern from the general verdict how the jury may have resolved" the disputed issues. *See Jones*, 963 F.3d at 232–33; *Henry v. A/S Ocean*, 512 F.2d 401, 408 (2d Cir. 1975) ("[W]here a jury must make a finding on a certain issue in order to reach its verdict, failure to submit a special interrogatory on that issue is not reversible error."). Defendants provide no factual predicate under which they would be entitled to qualified immunity despite the jury's findings. Nor can we identify one.

The district court did, however, abuse its discretion in submitting the ultimate question of qualified immunity to the jury. The district court's question to the jury closely parallels one we

13

have deemed for the court rather than the jury. *See Zellner*, 494 F.3d at 367. Nevertheless, Defendants were not prejudiced by this error. Even if the district court had properly reserved the ultimate legal decision for itself, the facts the jury necessarily found in rendering its decision foreclosed any argument that it was objectively reasonable for Defendants to believe that their actions did not violate Alonzo's rights. *Cf. Posr v. Doherty*, 944 F.2d 91, 95–96 (2d Cir. 1991) ("[T]he defendants argue that . . . it was objectively reasonable for each of them to believe that his treatment of [the plaintiff] did not violate [his] right [not to be subjected to excessive force]. The problem with this argument is that it depends upon the officers' version of the facts—a version the jury plainly rejected."). We therefore decline to vacate the judgment on this ground.

## V. Motion for Remittitur

We review a district court's denial of remittitur for abuse of discretion, *see Mirlis v. Greer*, 952 F.3d 36, 48 (2d Cir. 2020), and "accord considerable deference to the factual findings of both judge and jury," *Restivo v. Hessemann*, 846 F.3d 547, 587 (2d Cir. 2017) (internal quotation marks omitted). Defendants contend that the district court abused its discretion in denying their motion for remittitur because the damage awards to Alonzo and Stephanie deviated materially from what would be reasonable compensation. We disagree.

The jury's award of $1,130,000 in compensatory damages to Alonzo neither shocks the conscience nor materially deviates from what would be reasonable compensation.[6] Plaintiffs

---

[6] The parties dispute the applicable standard governing our review of the jury's awards. Defendants argue that the New York state standard governs. Plaintiffs agree that New York law governs our review of the award to Stephanie for loss of consortium but claim that federal law governs our review of the award to Alonzo as to his § 1983 claims. Under New York state law, an award "is excessive or inadequate if it deviates materially from what would be reasonable compensation." N.Y. C.P.L.R. § 5501(c). Under federal law, "we may set aside a jury's award only if it is so high as to shock the judicial conscience and constitute a denial of justice." *Restivo*, 846 F.3d at 587 (internal quotation marks omitted). We need not determine the correct approach here, as "the result is the same whether we apply the state standard or the federal standard." *Id.*

14

adduced evidence showing that Alonzo suffered serious and long-lasting physical injuries and emotional distress due to the incident and to his arrest. Taking inflation into account, *see Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 163 & n.22 (2d Cir. 2014), the jury's award to Alonzo, while high, falls within a reasonable range of awards we have upheld in similar cases, *see, e.g.*, *Martinez v. Port Auth. of N.Y. and N.J.*, 445 F.3d 158, 160 (2d Cir. 2006) (per curiam); *Ismail v. Cohen*, 899 F.2d 183, 186–87 (2d Cir. 1990).

The jury's award of $450,000 in compensatory damages to Stephanie for loss of consortium likewise neither shocks the conscience nor materially deviates from what would be reasonable compensation. "[L]oss of consortium is not a claim for only lost household services, but is instead a more intangible yet more significant injury to the partner who suffers the loss of the relationship as it existed before the injury." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 209 (2d Cir. 2010) (summary order). The evidence at trial showed that the incident has caused tremendous hardship in Stephanie's and Alonzo's relationship that will continue well into the future. The jury's award to Stephanie, while also high, falls within a reasonable range of awards New York courts have upheld in similar cases. *See, e.g.*, *Garrison v. Lapine*, 900 N.Y.S.2d 770, 773 (3d Dep't 2010); *Kirschhoffer v. Van Dyke*, 577 N.Y.S.2d 512, 515 (3d Dep't 1991). We therefore conclude that the district court acted within its discretion in denying Defendants' motion for remittitur.

## VI. Attorneys' Fees and Costs

"We review a district court's award for attorney's fees, expenses, and costs for abuse of discretion." *Lilly v. City of New York*, 934 F.3d 222, 227 (2d Cir. 2019). 42 U.S.C. § 1988 authorizes "courts to award the prevailing party in civil rights actions 'a reasonable attorney's fee.'" *Id.* Courts calculate a presumptively reasonable fee under § 1988 by "determining the

15

appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables." *Id.* at 229–30 (internal quotation marks omitted). "Given the district court's inherent institutional advantages in this area, our review of a district court's fee award is highly deferential." *Id.* at 227 (internal quotation marks omitted).

Defendants' contention that the district court erred in awarding Plaintiffs *any* fees or costs is without merit. Our sister circuits have held that a district court considering a discretionary motion for fees may "deny a fee request altogether when, under the circumstances, the amount requested is 'outrageously excessive.'" *E.g.*, *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 398 (3d Cir. 2018) (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)). Even assuming that we would follow this approach, the amount that Plaintiffs requested was not so outrageous as to require the denial of all fees and costs. Although Plaintiffs submitted numerous unreasonable expense requests, we discern no abuse of discretion in the district court's decision to account for these requests instead by broadly reducing Plaintiffs' award for costs by 25 percent.

Defendants' next contention that the district court erred in reducing Plaintiffs' fee award by only 25 percent is likewise without merit. Defendants argue that a lower award was appropriate because Plaintiffs submitted vague, excessive, and non-contemporaneous billing records, overstaffed the case, and achieved only limited success. But the district court comprehensively addressed these considerations in its decision and factored them into its calculation of reasonable hours expended. Given the "highly deferential" nature of our review, we see no reason to disturb that calculation. *See Lilly*, 934 F.3d at 227 (internal quotation marks omitted).

Finally, Plaintiffs' argument that the district court erred in reducing lead counsel's hourly rate pursuant to the "forum rule" also misses the mark. Under the "forum rule," a court should

16

not award "higher out-of-district rates unless a reasonable client would have selected out-of-district counsel." *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 290 (2d Cir. 2011) (internal quotation marks omitted). A party seeking out-of-district rates "must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009). Plaintiffs failed to make that showing here. As the district court observed, Plaintiffs failed to explain why local counsel could not have achieved a similar result. Thus, the district court correctly calculated the fee award based on the prevailing hourly rates in the Northern District of New York.[7] We thus conclude that the district court's fee award was proper.

\* \* \*

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the October 23, 2018 judgment and order, the February 8, 2019 judgment and order, and the April 26, 2019 judgment and order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[7] We need not address the merits of Plaintiffs' claim that the district court erred in declining to award fees for work expended in connection with Alonzo's criminal proceeding, as the district court acted within its discretion in concluding that Plaintiffs waived the argument. *Cf. Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

17