UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALONZO GRANT and STEPHANIE
GRANT,

                              Plaintiffs,

    -v-                               5:15-CV-445

DAMON LOCKETT; and PAUL
MONTALTO,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF BONNER<br>   & BONNER<br>Attorneys for Plaintiffs<br>475 Gate 5 Road, Suite 211<br>Sausalito, California 94965 | CHARLES A. BONNER, ESQ.<br>A. CABRAL BONNER, ESQ. |
| RYDER LAW FIRM<br>Attorneys for Plaintiffs<br>6739 Myers Road<br>East Syracuse, New York 13257 | JESSE P. RYDER, ESQ. |
| BERGSTEIN & ULLRICH, LLP<br>Attorneys for Plaintiffs<br>5 Paradies Lane<br>New Paltz, New York 12561 | STEPHEN BERGSTEIN, ESQ. |
| HANCOCK ESTABROOK, LLP<br>Attorneys for Defendants<br>1800 AXA Tower I<br>100 Madison Street<br>Syracuse, New York 13202 | JOHN G. POWERS, ESQ.<br>MARY L. D'AGOSTINO, ESQ. |

| | |
|---|---|
| CITY OF SYRACUSE LAW DEPARTMENT<br>Attorneys for Defendants<br>233 East Washington Street, 300 City Hall<br>Syracuse, New York 13202 | TODD M. LONG, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION AND BACKGROUND[1]

On October 23, 2018, a jury awarded plaintiffs Alonzo Grant ("Alonzo") and his wife Stephanie Grant ("Stephanie" and together "plaintiffs") a verdict in the amount of $1,580,000.00 against defendant police officers Damon Lockett and Paul Montalto (together "defendants"). *Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 190 (N.D.N.Y. 2019). Alonzo recovered $1,130,000.00 on his claims of false arrest and excessive force under 42 U.S.C. § 1983 ("§ 1983"), as well as for his claims of assault and battery under New York state law. *Id.* at 190-91  For her part, Stephanie recovered $450,000.00 under New York law for the loss of Alonzo's consortium. *Id.* at 190.

On November 20, 2018, Alonzo moved to recover attorney's fees from defendants under 42 U.S.C. § 1988 ("§ 1988"), as was his prerogative as a

---

[1] The facts in this case have been relayed a number of times, so there is no need to dive into too much detail at this late stage concerning its factual underpinnings. *See, e.g.*, *Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 190-91 (N.D.N.Y. 2019) (briefly relaying relevant factual background).

2

prevailing plaintiff under § 1983.[2]  Dkt. 166.  On February 8, 2019, Alonzo's trial counsel of Charles A. Bonner, Esq. ("Charles"), A. Cabral Bonner, Esq. ("Cabral"), and Jesse P. Ryder, Esq. ("Ryder") were awarded $639,266.50 total in attorneys' fees and costs accrued throughout litigation for his § 1983 claim.  *Grant*, 357 F. Supp. 3d at 209.  The same order denied defendants' posttrial attacks on plaintiffs' verdict.  *Id.*  On April 26, 2019, Alonzo was awarded an additional $22,465.00 his attorneys billed for their opposition to defendants' post-trial motions.  Dkt. 208.

Defendants appealed that order on February 22, 2019.  Dkt. 196.  To assist in the defense of the verdict on appeal, plaintiffs enlisted Stephen Bergstein, Esq. ("Bergstein") as appellate counsel.  Dkt. 230-1 ("Bergstein Aff."), ¶4.  Bergstein handled much of the briefing on appeal, while Charles ultimately argued the case before the Court of Appeals for the Second Circuit.  *See id.* ¶¶ 5, 8.

On December 8, 2021, a Second Circuit panel affirmed the verdict.  *Grant v. Lockett* ("*Grant II*"), 2021 WL 5816245 (2d Cir. Dec. 8, 2021).  On December

---

[2] Section 1988 allows the prevailing party in a § 1983 claim to move for the attorneys' fees expended litigating that claim.  42 U.S.C. § 1988(b).  In a plaintiff's case, he prevailed if he successfully and materially "alter[ed] the legal relationship between the parties by modifying the defendant's behavior" to his benefit.  *Chabad Lubavatich Cnty., Inc. v. Litchfield Historic District Comm'n*, 934 F.3d 238, 243 (2d Cir. 2019).  As a consequence, defendants do not argue that Alonzo is not a prevailing party and entitled to fees under § 1988 for his successful § 1983 claims.  However, for Alonzo's state law claims and Stephanie's loss of consortium claims, the general American common law rule that the parties bear their own fees applies.  *See Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 154 & n.10 (2d Cir. 2009) (holding that successful state law claim not entitled to recover attorney's fees even when accompanied by successful § 1983 claim).

3

20, 2021, defendants petitioned for an *en banc* rehearing of the panel's opinion. *See* Dkt. 232. On December 21, 2021, plaintiffs' counsel moved to recover the portions of their attorneys' fees spent on the initial appeal, notwithstanding the pending decision on rehearing. Dkt. 230.

Alonzo's motion for attorneys' fees was denied without prejudice to renew once the Second Circuit handed down its mandate. Dkt. 235. The mandate followed on March 17, 2022. Dkt. 238. Plaintiffs' counsel then renewed their fee request. Dkt. 241. Defendants opposed plaintiffs' motion on April 29, 2022. Dkt. 244. Alonzo asked for leave to reply, and in the course of that reply asked for additional attorneys' fees to cover the expenses they ran up producing that document, as well as for plaintiffs' subsequent efforts to oppose filings by *amici curiae* related to the rehearing petition. Dkt. 248. Defendants then filed a surreply. Dkt. 251. Plaintiff's motion, having been fully briefed, will now be decided on the submissions and without oral argument.

## II. DISCUSSION

It would be far easier to list the portions of Alonzo's fee request to which defendants do not object than to list out each deficiency defendants claim. But generally speaking, defendants' objections fall into four categories: (1) Alonzo's requested fee rates are too high for every attorney; (2) Alonzo's counsel spent too much time reviewing documents and conferencing together;

(3) Alonzo's appellate counsel, Stephen Bergstein, Esq. ("Bergstein") inappropriately sought to recover for mere clerical tasks; and (4) Bergstein is attempting to recover additional fees only necessitated by his own wasteful decisions in moving for fees before the Second Circuit issued its mandate and in opposing the filing of *amicus curiae* briefs relating to the decision to review the panel opinion *en banc*. The analysis begins with the appropriate fee rate for each of Alonzo's attorneys.

### A. Reasonable Fees

In assessing whether a request for attorney's fees is reasonable, "[b]oth [the Second Circuit] and the Supreme Court have held that . . . the product of a reasonable hourly rate and the reasonable number of hours required by the case . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The resulting product "should be in line with the rates prevailing in the community for similar services by attorneys of comparable skill, experience, and reputation." *Kapoor v. Rosenthal*, 269 F. Supp. 2d 408, 412 (S.D.N.Y. 2003) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997)).

Naturally, this calculation depends on the hourly rates employed in the district in which the reviewing court sits. *Simmons v. New York City Transit*

5

*Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). Courts in this district have recently determined hourly rates of: between $250 and $350 for partners; between $165 and $200 for associates; and between $80 and $90 for paralegals, to be reasonable. *Deferio v. City of Syracuse*, 2018 WL 3069200, at *3 (N.D.N.Y. June 21, 2018).

Once the typical hourly rate is established, the court should "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill level required by the case; (4) the preclusion of employment with other clients due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the extent of involvement in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 186 n.3 (internal citations omitted).

Ultimately, a fee is presumptively reasonable if it is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend

6

the minimum necessary to litigate the case effectively." *Simmons*, 575 F.3d at 174 (internal citations and quotation marks omitted).

### 1. <u>Trial Counsel</u>

Alonzo's trial counsel was previously awarded fees at hourly rates of: (1) $350 for Charles; (2) $250 for Cabral; and (3) $250 for Ryder. *Grant*, 357 F. Supp. 3d at 202-03. Defendants argue against those numbers being carried over to their appellate work.

Specifically, defendants note that the three trial attorneys lack the same expertise in appellate work that they brought to bear for trial. To defendants' point, they hired Bergstein specifically to help them carry the appeal across the finish line. Bergstein Aff. ¶ 4. Similarly, Cabral and Ryder's role in the appeal was largely limited to offering advice and consultation. *See generally* Dkts. 230-10; 230-12 (listing hours spent by Cabral and Ryder frequently involving emails, document review, and consultation).

Charles, however, actually argued the case before the Second Circuit, so the argument does not carry quite the same weight for his part. Bergstein Aff. ¶ 8. And at the end of the day, Alonzo's trial counsel won him a hefty verdict, have worked with him for seven years now, and contributed to a sizeable, complex, and successful appeal. *Arbor Hill*, 522 F.3d at 186 n.3. Further, their knowledge and familiarity with the underlying trial would

7

have been vital in allowing Bergstein and Charles to be able to present an effective argument before the appellate court. *See id.*

Under these circumstances, there is no apparent cause to deviate from the fee rates set out earlier. Charles' hourly rate will remain $350, Cabral's and Ryder's will remain $250. Defendants' objections concerning the nature of the work the trial attorneys performed on the appeal—and the amount of time they spent doing it—are better left for defendants' challenge to the hours they expended.

### 2. **Bergstein**

Turning next to Bergstein, defendants raise four objections to his claimed rate of $350 per hour: (1) Bergstein cannot take credit for the substantial verdict, because he was only pulled into this case after trial; (2) Bergstein fails to point out what about the appeal was difficult enough to justify such a high rate; (3) Bergstein failed to establish that the appeal was particularly labor-intensive; and (4) Bergstein has been awarded fees at a lesser rate than $350 in other recent cases in the Northern District of New York.

Each of those arguments fails. As for the first, though it is true that Bergstein only joined the case after plaintiffs had won at trial, the resulting verdict would have been meaningless had the Second Circuit reversed it on appeal. Bergstein Aff. ¶ 4. What is more, defendants challenged not just the fact of the verdict, but also its size, which the Second Circuit acknowledged

was "high." *Grant II*, 2021 WL 5816245, at *6-7 (discussing defendants' appeal of motion for remittitur and acknowledging unusually large verdict). By successfully protecting a verdict of that size on appeal, Bergstein obtained a significant result for Alonzo, despite not participating in the trial below. *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (defining degree of success for purposes of *Arbor Hill* factors as "the quantity and quality of relief obtained").

Second, defendants' quibbles about the difficulties presented by the appeal ring just as hollow. Defendants' opening brief consisted of eighty-nine substantive pages. Dkt. 230-4, pp. 19-107.[3] Those nearly ninety pages raised ten different points of contention plaintiffs needed to address. *See id.* pp. 3-6. Plaintiffs' own brief was ninety-six substantive pages long. Dkt. 230-5, pp. 18-113. To all of that, defendants added another seventy-nine pages in reply. Dkt. 230-6, pp. 12-90. Bergstein has more than adequately established that this case presented a significant challenge on appeal. *Arbor Hill*, 522 F.3d at 186 n.3.

As for the extent of work required, once again, a ninety-six-page brief is no meager undertaking. Dkt. 230-5, pp. 18-113. And defendants can hardly object to its size as surplusage when their own initial brief comfortably rivals

---

[3] Pagination corresponds with CM/ECF.

its length. Dkt. 230-4, pp. 19-107. Accordingly, Bergstein has established that he expended a great deal of effort on appeal in this case. *Arbor Hill*, 522 F.3d at 186 n.3.

Finally, defendants point out that in a recent case before this Court, *Perez v. Cnty. of Rensselaer*, Bergstein was awarded fees at a rate of only $325 per hour. *See* 2021 WL 3022115, at *3 (N.D.N.Y. July 16, 2021). But there are two crucial differences between that case and this one. First, Bergstein only *requested* a $325 fee in that case. *Id.* Second, the appeal at issue in *Perez* was decidedly trivial compared to the exhaustive attack defendants launched in this case. *See id.* (noting that "[p]laintiff only needed to defend [the] determination on [defendant's] post-trial motion that the jury did not reach an inconsistent verdict"). Those distinctions undercut most—if not all—of *Perez*'s argumentative weight.

Ultimately, given the factors just discussed, and Bergstein's near-thirty-year legal career, his requested rate of $350 per hour is appropriate. Dkt. 230-3, p. 2.

As a final matter concerning the fee rates, Bergstein requests to be paid a $90 hourly rate for certain tasks that he identifies as more within the sphere of paralegal work than what an attorney would typically be expected to do. Typically, these entries included formatting documents and drafting tables of contents. *See* Dkts. 230-2; 248-2. Though defendants argue that work of that

sort should not be billable at all, courts typically award fees at paralegal rates for tasks such as preparing tables of contents or authorities. *See Sooroojballie v. Port Auth. of N.Y. and N.J*, 2020 WL 9934418, at *8 (E.D.N.Y. Nov. 10, 2020) (noting that revising tables of contents and authorities and uploading documents are tasks to be performed by paralegal), report and recommendation adopted by 2021 WL 1827116 (E.D.N.Y. May 7, 2021).

Accordingly, Bergstein may recover fees at paralegal rates for the work he identifies. And obviously enough, an experienced attorney performing paralegal duties should be able to recover fees at the apex of the usual billable rates in this district. *See Perez*, 2021 WL 3022115, at *5 (awarding Bergstein $90 hourly rate as peak rate available to paralegals in Northern District of New York). Accordingly, Bergstein may recover at $90 per hour for his paralegal work. As a whole, Alonzo's requested fee rates are reasonable.

## B. Hours Expended

However, defendants also take issue with the amount of time Alonzo's attorneys spent on the appeal, as well as how that time was spent. To that end, courts reviewing fee requests should exclude "excessive, redundant, or otherwise unnecessary" billed entries. *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009). In doing so, they rely on their "own familiarity with the

11

case . . . and experience generally as well as . . . the evidentiary submissions and arguments of the parties." *Id.*

This scrutiny is not an exact science, but rather an effort to capture a reasonable fee based on the work claimed. *See Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 215 (E.D.N.Y. 2019). As a result, "[a] percentage reduction is a practical means of trimming fat from a fee application and is a permissible way of reducing a fee award." *Id.* at 216. Percentage cuts are especially useful when the hours billed are "vague, duplicative, and[/or] excessive." *Id.*

Once again, defendants make very different arguments for trial counsel than they do for Bergstein. Those arguments will be addressed according to those groups.

### 1. <u>Trial Counsel</u>

Defendants' principal issue with trial counsel's timesheets is that each of them billed a great deal of time reviewing documents and conferencing amongst themselves. In fact, Cabral spent 3.8 hours reviewing and editing the final brief.[4] Dkt. 230-10, p. 2. The remaining 23.2 hours he spent sending emails, reviewing documents, and conferencing with the other attorneys. *See id.*, *passim*. For his part, Ryder spent approximately 3.1 of

---

[4] Although that number is somewhat generous. Only 2.8 hours' worth of time spent with the brief described Cabral "revis[ing]" it. Dkt. 230-10, p. 2. The rest only consisted of time spent reviewing it. *Id.*

his 40.7 hours reviewing the final brief and discussing it with cocounsel. *See* Dkt. 230-12, p. 3. The rest of his time was similarly spent reviewing other documents and conferencing with his colleagues. *Id.*, *passim*.

While the opinions and insight of each member of the trial team was of course valuable, it is impossible to justify such an enormous discrepancy between the time Cabral and Ryder spent on substantive work as opposed to the time they spent on mere preparatory work. *See Hargroves v. City of N.Y.*, 2014 WL 1271039, at *6 & n.9 (E.D.N.Y. Mar. 26, 2014) (finding "across-the-board reduction" appropriate to penalize attorneys for excessive communication with cocounsel). Accordingly, both Cabral and Ryder's hours claimed will be reduced by 40% to shave off the excess time they spent conferencing among themselves and reviewing documents while accounting for the meaningful contribution those conferences made to plaintiffs' eventual victory. *See, e.g., Feltzin v. Ciampa Whitepoint LLC*, 2017 WL 570761, at *3 (E.D.N.Y. Feb. 13, 2017) (noting that "reviewing" docket entries or emails with opposing counsel does not require partner and reducing hours by 40% when partner's billed hours consisted mostly of entries of that sort).

For Charles's part, he spent 1.3 hours revising the appellate brief and a full 11 hours preparing for and arguing this case before the Second Circuit. Dkt. 230-8, p. 2. Though the rest of his time seems to have been taken up almost exclusively with the same conferences and document review that filled

13

Cabral and Ryder's timesheets, his 12.3 hours of substantive work out of 42.10 is a much more reasonable proportion. *See generally id.*, *passim*. Accordingly, though his hours claimed must be reduced for similar excesses as plagued his cocounsel, Charles's hours will only be reduced by 30%. *See, e.g.*, *Ciampa Whitepoint*, 2017 WL 570761, at *3.

### 2. <u>Bergstein</u>

At last, the analysis turns to Bergstein's claimed hours. There are two subcategories of arguments that defendants raise in their efforts to pare down Bergstein's request. The first batch concerns Bergstein's initial fee application, while the second concerns his supplemental application filed in reply to defendants' opposition.

Concerning Bergstein's initial fee request, defendants argue for a 30% reduction to account for his unsuccessful arguments on appeal and general excess. Those arguments both fail. Once again, for the purposes of a fee request, the degree of success is rooted in "the quantity and quality of relief obtained." *Barfield*, 537 F.3d at 152. Whether some of Bergstein's arguments on appeal were rejected or not is ultimately beside the point: what matters is that plaintiffs received a substantial victory in allowing their verdict to stand.[5] Similarly, upon review there is nothing so beyond the pale

---

[5] Bergstein omitted any time spent on his unsuccessful efforts on Alonzo's appeal of the February 8, 2019 fee award, so there is no reason to further penalize him on that count. Bergstein Aff. ¶ 5.

about Bergstein's hours spent on this sizeable appeal that merits a reduction for waste. Bergstein's initial fee request must be granted as filed.

Bergstein's supplemental fee request is not quite so easy to justify, however. The supplemental request seeks compensation for two discrete projects: (1) Bergstein's reply to defendants' opposition to his initial request; and (2) his opposition to motions by *amici curiae* to file briefs in support of *en banc* rehearing of the panel opinion.

Concerning the first, Bergstein's reply's cardinal sin is that it was largely necessitated by his own errant tactical decisions. Remember, Bergstein only needed to reply in the first place because he curiously moved for attorney's fees before the Second Circuit issued its mandate. *See* Dkt. 230. According to Bergstein, his customary practice is to move for attorneys' fees within fourteen days of the Circuit Court's decision to ensure that he does not run afoul of Federal Rule of Civil Procedure ("Rule") 54(d)(2)(B). Dkt. 236.

But just because Bergstein customarily moves at that early hour does not mean that it is prudent to do so. After all, Rule 54(d)(2)(B) sets the deadline to move for attorney's fees in the absence of a court order at "no later than 14 days after the entry of judgment." Since in cases like this one, judgment has already been entered long before the Second Circuit has its say, that Rule offers little in the way of guidance for prevailing attorneys trying to decide when to move for fees.

15

As a result, courts treat applications for post-appeal fee requests as unconstrained by Rule 54(d)(2)(B).  *See, e.g.*, *Congregational Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 2021 WL 1222159, at *4 (S.D.N.Y. Mar. 31, 2021) (declining to apply Rule 54(d)(2)(B) to fee application after appeal to § 1988 fee request); *see Cush-Crawford v. Adchem Corp.*, 234 F. Supp. 2d 207, 210-11 (E.D.N.Y. 2002) (same for Title VII case). Instead, courts rely on equitable principles and consider whether a fee request was made "within a reasonable period of time after the circuit's entry of final judgment," meaning the mandate.  *Vill. of Pomona*, 2021 WL 1222159, at *4-5 (using date of mandate to calculate reasonable time to move for attorneys' fees and finding one month and eleven days to be reasonable period of time).

In other words, Bergstein's reliance on Rule 54(d)(2)(B) was both misguided and wasteful.  Had he simply waited out the mandate, he could have made a single, unified fee request and never would have needed to file a supplemental request with his reply.  He should not be rewarded for generating more work for everyone involved in this case through his own mistakes.  By extension, Alonzo cannot recover attorney's fees for waste that his own attorneys caused.  *Cf., e.g.*, *In re Arbitration Between Okyere & Houslanger & Assocs., PLLC*, 2015 WL 4366865, at *6 n.16

16

(S.D.N.Y. May 28, 2015) (disallowing attorneys' fees for unnecessary depositions owed to attorney waste).

Similarly, defendants object that Bergstein's efforts to oppose permission for *amici curiae* to file briefs urging the Second Circuit to rehear this case *en banc* was a tilt at a windmill that should not come at their expense. To defendants' point, attorneys may be denied payment for work "on motions that were unreasonable or had little chance of success[.]" *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008).

Defendants argue that the Second Circuit routinely grants motions for *amicus* briefing, and by extension Bergstein's efforts to oppose those briefs was frivolous. *See* 13 No. 1 Fed. Litigator 30 ("Leave to file an amicus brief usually is granted routinely."). That appears to be correct. After substantial research, there is no indication that the Second Circuit has ever so much as produced an opinion discussing the standard for granting leave to file an *amicus* brief handed down in Federal Rule of Appellate Procedure 29. Even in this case, and despite plaintiffs' thirteen-page brief arguing that leave for *amicus* briefing should be denied, the Second Circuit merely ordered that briefing be allowed without elaboration or consideration. *Grant v. Lockett*, 19-469, Dkts. 341; 345.

Accordingly, Bergstein's work on the *amicus* issue appears to have been entirely futile, and a preliminary examination of the legal landscape would

17

have revealed that futility.  Alonzo may not recover for Bergstein's opposition to the proposed *amici*, and his supplemental attorney's fee request must be denied in its entirety.  *See, e.g.*, *Rozell*, 576 F. Supp. 2d at 538.

## III. <u>CONCLUSION</u>

Alonzo's fee request was reasonable in the hourly rates it requested, but it missed the mark for asking for compensation for too much effort for too little result.  Accordingly, applying the reductions outlined above, Alonzo may recover from defendants: (1) $10,314.50, or 29.47 hours of work at $350 per hour, for Charles; (2) $6,105, or 24.42 hours of work at $250 per hour, for Ryder; (3) $4,050, or 16.2 hours of work at $250 per hour, for Cabral; (4) $38,867.50, or 111.05 hours of work at $350 per hour, for Bergstein as an attorney; and (5) $918.00, or 10.20 hours of work at $90 per hour, for Bergstein as a paralegal.  In total, that amounts to $60,255.00 in recoverable attorneys' fees spent defending plaintiffs' trial victory on appeal.

Therefore, it is

ORDERED that

1. Plaintiff Alonzo Grant's Motion for Attorney Fees Expended on Appeal is GRANTED in part and DENIED in part;

2. Plaintiff Alonzo Grant may recover from defendants $10,314.50, or 29.47 hours of work at $350 per hour, for attorney Charles Bonner; $6,105, or 24.42 hours of work at $250 per hour, for attorney

Jesse Ryder; $4,050, or 16.2 hours of work at $250 per hour, for attorney A. Cabral Bonner; $38,867.50, or 111.05 hours of work at $350 per hour, for attorney Stephen Bergstein as an attorney; and $918.00, or 10.20 hours of work at $90 per hour, for attorney Stephen Bergstein as a paralegal;

3. Plaintiff Alonzo Grant's supplemental fee request is DENIED;

4. Plaintiff Alonzo Grant may recover a total of $60,255 in appellate attorneys' fees from defendants; and

5. The Clerk of the Court is directed to enter judgment accordingly and close the file.[6]

IT IS SO ORDERED.

Dated: June 2, 2022
       Utica, New York.

David N. Hurd
U.S. District Judge

---

[6] This judgment marks the fourth in this case. Dkts. 156 (judgment on jury verdict awarding Alonzo $1,130,000.00 and Stephanie $450,000.00); 192 (judgment with decision on posttrial motions awarding Alonzo $639,266.50 in attorneys' fees); 208 (judgment awarding additional $22,465.00 in attorneys' fees for posttrial motion). Put together, all four judgments total $2,301,986.50, not including interest.